Westlaw.

Not Reported in F.Supp.  
1990 WL 155727 (S.D.N.Y.)  
**(Cite as: 1990 WL 155727 (S.D.N.Y.))**

Page 1

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.  
FEDERAL DEPOSIT INSURANCE COMPANY,  
Plaintiff,  
v.  
La ANTILLANA, S.A., Ricardo Mario Roveda, Juan Tomas Frias, Enrique Waterhouse,  
and Alberto Gabrielli, Defendants.  
No. 88 Civ. 2670 (JFK).

Oct. 5, 1990.

Ira L. Hyams, P.C., Jericho, N.Y. (Ira L. Hyams, Jericho, N.Y., of counsel), for plaintiff.

Fox & Horan, New York City, for Alberto Gabrielli; Carl L. Distefano, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for Ricardo Mario Roveda; Marisa A. Marinelli, New York City, of counsel.

Winston & Strawn, New York City, for Juan Tomas Frias and Enrique Waterhouse; Dan S. Durham, New York City, of counsel.

*OPINION AND ORDER*

KEENAN, District Judge.

**\*1** Before the Court are the motions of defendants Alberto Gabrielli, Ricardo Mario Roveda, Juan Tomas Frias and Enrique Waterhouse, for a protective order under Fed.R.Civ.P. 26(c), directing that defendants' depositions be conducted at defendants' residences in Argentina, and that plaintiff advance to defendants' New York counsel travel expenses and reasonable attorneys' fees incurred in attending the depositions in Argentina. Defendants Frias and Waterhouse move jointly for the protective order. Defendants Roveda and Gabrielli each move separately, although each joins in the motion of Frias and Waterhouse.

*BACKGROUND*

The parties are involved in an action over the default of certain loans extended from an account at the Central National Bank in New York, New York. Defendants were signatories and guarantors of this account, known as the La Antillana account. In May 1990, defendants were noticed to appear on July 19, 1990, at the offices of plaintiff, the Federal Deposit Insurance Company, in New York for oral depositions pertaining to this lawsuit. In July, 1990, defendants moved for a protective order, pursuant to Rule 26(c); plaintiff however refused to respond to the motions. Plaintiff claimed that defendants had not made full responses to plaintiff's document requests, and until they completed discovery, plaintiff asked the Court not to require him to respond to defendants' motions. On September 11, 1990, the Court found defendants' compliance with discovery to be proper, and ordered plaintiff to respond to defendants' motions for protective orders by September 21, 1990; plaintiff complied.

*DISCUSSION*

Ordinarily, the proper place for taking an individual's deposition is his or her place of residence. *See Deep South Oil Co. of Texas v. Metropolitan Life Insurance Co., 21 F.R.D. 340, 342 (S.D.N.Y.1958).* See also Buryan v. Max Factor & Co., 41 F.R.D. 565 (S.D.N.Y.1967) (court followed general rule that proper place for taking deposition of a corporate defendant is corporation's place of business or at officer's residence); *Kurt M. Jachmann Co. v. Hartley, Cooper & Co., Ltd., 16 F.R.D. 565 (S.D.N.Y.1954)* (court vacated plaintiff's notices to depose defendants, British subjects residing in England, in New York). If a plaintiff notices an individual defendant's deposition with a location other than defendant's residence or place of business and defendant makes an objection, the plaintiff has the affirmative burden of demonstrating "peculiar" circumstances which compel the Court to suspend the general rule and to order that depositions be held in the other location. *See Salter v. Upjohn Co., 593 F.2d 649 (5th Cir.1979). See also Zuckert v. Berkliff Corp., 96 F.R.D. 161, 162 (N.D.Ill.1982)* (defendant's objections to alternate deposition location should be sustained unless unusual circumstances exist which justify defendant's inconvenience). The rationale behind this presumptive deference to the defendant is that plaintiff has had the liberty of bringing the suit and has exercised choice as to the action's forum; because defendants are not before the Court by choice, it is the plaintiff who should bear any

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1990 WL 155727 (S.D.N.Y.)  
**(Cite as: 1990 WL 155727 (S.D.N.Y.))**

Page 2

reasonable burdens of inconvenience that the action presents. *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547 (S.D.N.Y.1989) (citing *Farquhar v. Shelden,* 116 F.R.D. 70, 72 (E.D.Mich.1987)).

**\*2** Plaintiff has failed to rise to the challenge of presenting "peculiar" circumstances to the Court in support of its noticing defendants in New York. Plaintiff claims:

[t]he defendants chose to do business through a New York bank account and there is no reason why they should not attend in New York for their depositions.... FDIC does not wish to conduct the depositions in New York.

Hyams Aff. at 2-3.

The Court finds that although plaintiff noticed defendants, all of whom live and work in Buenos Aires, Argentina, to appear in New York, plaintiff has provided the Court with no peculiar and certainly no compelling reason why the depositions should not take place at defendants' residence, except for plaintiff's convenience.

In *Mill-Run Tours, Inc. v. Khashoggi, supra,* cited by both parties, the Court found that while "caselaw has established a general presumption that an individual defendant's deposition will be held in the district of his or her residence," depending on the level of choice defendant had in coming before the Court, other factors influencing the designation of the deposition site might compel the Court to exercise its discretionary power over the site. *Mill-Run,* 124 F.R.D. at 550. The more choice a defendant had in coming before the Court, the more likely it is that the presumption will be suspended. If the presumption is suspended, other factors such as cost, convenience and efficiency, are weighed to determine whether the Court should exercise its discretionary power over the deposition site. While not putting forth any justification as to why the Court should suspend the presumption and consider the *Mill-Run* factors, plaintiff asserts that *Mill-Run* supports its position.

The Court found in *Mill-Run* that the plaintiff, seeking to recover for unpaid airline tickets from a number of members of the Khashoggi family, brought its suit in the only practical forum possible since the defendants were reputed to live in many Middle Eastern and European countries. The plaintiff had "little choice" but to proceed with its action in New York, noticing defendants in New York. Acknowledging plaintiff's lack of freedom in choosing a forum and defendants' ability to be in many places, including New York, the Court suspended the general rule presumption and consulted the other factors in ruling on defendants' protective order. 124 F.R.D. at 550. Plaintiff in the instant case is not in a similar predicament. Defendants in the instant case all reside in the same country and city; defendants have noted additionally that a number of non-party witnesses also live in Buenos Aires, Argentina. Plaintiff had pragmatic choices before it when choosing a forum and a deposition site and presents no like reasons to *Mill-Run* for the suspension of the general rule presumption.

Even assuming *arguendo* that the presumption should be suspended, plaintiff's choice of deposition site must fail pursuant to the three *Mill-Run* factors.

I. *Cost*

**\*3** In *Mill-Run,* the cost of holding the depositions, while substantial, was agreed to be awarded to the prevailing party at the conclusion of the litigation. *Mill-Run,* 124 F.R.D. at 550. There is no such agreement in the instant case and thus consideration of which party is best able to absorb the related costs for the depositions, as noted in *Mill-Run,* is the measuring scale guiding this factor. Defendants are being sued in their individual capacity, and two of the four defendants have indicated meaningful financial difficulties in pursuing this matter, while plaintiff is a corporation of significant size and resources. The Court finds, therefore, that the cost factor weighs in defendants' favor.

II. *Convenience*

The *Mill-Run* court breaks convenience into three sub-factors: convenience of counsel, defendants' residence, and extent of disruption to defendants' affairs during travel to and from the depositions.

A. Convenience of counsel

Although it is impossible to conclude from his affirmation, plaintiff's counsel is possibly a solo practitioner. Accordingly, were the depositions to be held in Argentina, plaintiff's counsel would have to make burdensome schedule changes in order to attend the depositions. *Mill-Run,* 124 F.R.D. at 551. Defendant's New York counsel are employed by large firms which realistically makes their trip to Argentina less difficult to schedule. However, if the depositions were held in New York, the only

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 3
1990 WL 155727 (S.D.N.Y.)
**(Cite as: 1990 WL 155727 (S.D.N.Y.))**

inconvenience to either party's counsel would be to Mr. Alejandro Allende, defendants Frias and Waterhouse's Argentine counsel who, due to his clients' inability to communicate effectively in English, would need to accompany defendants to New York.

B. Residence of defendants

Unlike the defendants in *Mill-Run* who were unable to demonstrate to the Court proof of their residence outside the United States, defendants in the instant case have offered affidavits in support of their claim that each of them resides in Argentina. Additionally, plaintiff has provided no evidence challenging these assertions except in the case of defendant Gabrielli's place of employment. However, according to Gabrielli's Reply Declaration, the information that plaintiff cites in support of his claim that Gabrielli should be deposed in the United States is no longer accurate: Gabrielli now lives and works in Buenos Aires, Argentina. Gabrielli Reply Declaration at ¶ 2.

C. Disruption of defendants' affairs

The majority of defendants have demonstrated in detail in their affidavits that their business affairs would be considerably disrupted were they to be compelled to travel to New York for the taking of their depositions. Plaintiff has again provided no evidence to refute these declarations and thus this sub-factor is resolved in favor of defendants.

III. *Efficiency*

The *Mill-Run* court noted two considerations to be evaluated when resolving the efficiency factor: retrieval of documents and the need for judicial supervision. In the instant case, the parties agree that accessibility to documents for both plaintiff and defendants is not an important consideration. Since the parties in the instant case have conducted their discovery process with no unusual degree of acrimony, the Court does not anticipate that there will be a need for the resolution of discovery disputes which might prove to be unwieldy should the depositions be held in Argentina.

**\*4** Thus, even if the Court suspends the general rule presumption of a defendant's residence being the best place to conduct depositions, the three *Mill-Run* factors do not compel the Court to exercise its discretionary power over the deposition site. In addition, the Court also notes that plaintiff has failed to comply with Local Rule 3(b) by neglecting to provide the Court with a memorandum of law. [FN1] That in and of itself is sufficient cause for the Court to grant defendants' motions by default.

The Court orders plaintiff to take defendants' deposition at their residences or places of business, in Buenos Aires, Argentina. The Court declines to direct plaintiff to advance defendants' New York counsel their travel expenses since these expenses are anticipated costs in the representation of defendants in foreign countries. In addition, the Court also declines to order plaintiff to shoulder defendants' attorneys' fees since these fees are necessarily part of defendants' defense expenses.

*CONCLUSION*

For the reasons stated above, the Court grants defendants' motions for a protective order under Fed.R.Civ.P. 26(c) and orders that plaintiff take defendants' depositions in Buenos Aires, Argentina.

SO ORDERED.

> FN1. Rule 3. Motions.
> (b) Upon any motion the moving party shall serve and file with the motion papers a memorandum setting forth the points and authorities relied upon in support of the motion divided, under appropriate headings, into as many parts as there are points to be determined. The opposing party shall serve and file with the papers in opposition to the motion and an answering memorandum, similarly divided, setting forth the points and authorities relied on in opposition. *Failure to comply may be deemed sufficient cause for the denial of the motion or the granting of the motion by default.* (emphasis added).

1990 WL 155727 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:88CV02670 (Docket) (Apr. 15, 1988)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2003 WL 21910861 (S.D.N.Y.)
**(Cite as: 2003 WL 21910861 (S.D.N.Y.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Darryl L. DAGEN, Plaintiff,
v.
CFC GROUP HOLDINGS LTD., et al., Defendants.
**No. 00 Civ. 54682(CBM).**

Aug. 11, 2003.

Former employee sued employer financial services company, claiming wrongful termination by constructive discharge. Company moved for protective order requiring that deposition of its chief executive officer (CEO) be taken in Hong Kong. The District Court, Motley, J., held that deposition must be taken in Hong Kong.

Order accordingly.

See, also, 2003 WL 194208.

West Headnotes

**Federal Civil Procedure** 🔑1383
170Ak1383 Most Cited Cases
Former employee bringing wrongful termination claim against financial services firm was required to take deposition of firm's chief executive officer, who hired him, in Hong Kong, where CEO lived; there was presumption in favor of having deposition take place where deponent resided, which remained in force in light of relative equal burden on nonresident party if deposition were held in Hong Kong or New York.

Chaim B. Book, Moskowitz & Book, LLP, New York, NY, for the Plaintiff.

Steven M. Hecht, Lowenstein Sandler PC, Roseland, NJ, for the Defendants.

MEMORANDUM OPINION & ORDER

MOTLEY, J.

**\*1** This case was transferred to the undersigned from the docket of Judge Deborah A. Batts on May 20, 2003. In accordance with the rulings in this opinion, defendants' motion for a protective order directing that individual defendant Boris Merkenich be deposed in Hong Kong is GRANTED. Plaintiff's application to compel the deposition of Mr. Merkenich in the Southern District of New York is DENIED.

I. Background

This action arises out of the employment of plaintiff, Darryl L. Dagen ("plaintiff" or "Dagen"), by defendants, a group of affiliated corporate entities specializing in the provision of financial services. In September, 1998, plaintiff met with defendant Boris Merkenich ("Merkenich") of CFC Group Holdings Limited and Steve Domney of CFC Securities, Inc., to discuss the prospect of plaintiff's employment by defendants. Merkenich, who is at the center of the dispute before the court, is the Chairman of CFC Group Holdings Limited and President of CFC Securities Limited in Hong Kong. Merkenich Decl. ¶ 1. On November 3, 1998, plaintiff signed an employment contract with CFC Group Holdings and CFC Securities. Pursuant to this agreement, Dagen was hired to become president and a managing director of the company's new Hong Kong affiliate, CFC Securities Asia.

Since Magistrate Judge Katz's March 7, 2002 Report and Recommendation ("Report") to Judge Batts on defendants' motion to dismiss presents a summary description of plaintiff's allegations, it is not necessary for the court to present a detailed discussion of the facts of the case. While presuming familiarity with Judge Katz's Report, the court briefly notes that Dagen generally claims that Merkenich took various unreasonable actions which undermined his ability to succeed in his capacity as a director at CFC and ultimately resulted in his constructive discharge.

On August 1, 2000, plaintiff commenced this lawsuit in federal district court. In April 2001, defendants filed a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient service of process, *forum non conveniens,* and failure to state a claim. On March 6, 2002, Magistrate Judge Katz issued his Report, denying defendants' motion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
2003 WL 21910861 (S.D.N.Y.)
**(Cite as: 2003 WL 21910861 (S.D.N.Y.))**

to dismiss on various grounds, and dismissing several counts of the complaint, with leave for plaintiff to replead. *See* Report at 67. On September 24, 2002, Judge Batts adopted the Report. Defendants answered the amended complaint and counterclaimed, alleging breach of contract, intentional and negligent misrepresentation, conversion, unjust enrichment, and breach of fiduciary duties. Defendants claim, *inter alia,* that plaintiff made repeated and deliberate misrepresentations regarding his purported skills and expertise which induced CFC Group Holdings and CFC Securities to hire him to manage the Hong Kong office. Defendants claim that plaintiff was incompetent, dishonest, unqualified for the position for which he was hired and incapable of discharging the duties which inhered in that position.

**\*2** These intriguing factual details aside, the very narrow matter now before the court arises out of plaintiff's issuance upon Merkenich of a notice of deposition designating plaintiff's counsel's office in New York City as the location of the deposition. Merkenich resides and is employed far from New York, in Hong Kong. At a June 12, 2003 pretrial conference, the parties expressed their disagreement regarding the appropriate location for the deposition of Merkenich. Defendants, who assert that the proper location for the deposition is Hong Kong, suggested that the court could easily dispose of this issue with reference to the Hague Evidence Convention. The court granted defendants' request for leave to move for a protective order, agreeing to consider briefs on the "applicability of the Hague Convention" to the issue of where Merkenich ought properly to be deposed. Thus, in accordance with the schedule set out by the court, defendants have made an application styled as a motion for a protective order "directing that certain Hong Kong Defendants be deposed, if at all, in their place of residence and employment in Hong Kong...." Def. Br. at 1. Plaintiff, opposing this motion, has submitted a motion to compel the deposition of Merkenich in New York.

II. Location of Deposition of Boris Merkenich

There is a general presumption that the deposition of a defendant should "be held in the district of his residence." *In Re Livent Securities Litigation,* 2002 WL 31366416, at \*1 (S.D.N.Y. Oct.21, 2002) (citing *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.,* 203 F.R.D. 98, 107 (S.D.N.Y.2001); *Devlin v. Transp. Communications Int'l Union,* 2000 WL 28173, at \*3 (S.D.N.Y. Jan.14, 2000); *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989)). Generally, if a plaintiff notices a defendant's deposition with a location other than defendant's residence or place of business and defendant objects, the plaintiff has the affirmative burden of demonstrating "peculiar" circumstances which compel the court to order the depositions to be held in an alternate location. *See Six West Retail Acquisition, Inc* 203 F.R.D. at 107 (citing *Federal Deposit Insurance Co. v. La Antillana, S.A.,* 1990 WL 155727, at \*1 (S.D.N.Y. Oct.5, 1990)) (plaintiff may overcome presumptive deference to defendant "by showing 'peculiar' circumstances favoring depositions at a different location"). The rationale for the presumption of deference to the defendant is that the plaintiff is free to choose the forum within which to litigate. Since "defendants are not before the court by choice, it is the plaintiff who should bear any reasonable burdens of inconvenience that the action presents." *Federal Deposit Insurance,* 1990 WL 155727, at \*1.

Plaintiff has failed to rise to the challenge of presenting evidence of "peculiar" circumstances in support of its noticing defendant Merkenich in New York. It appears that plaintiff wishes to depose Merkenich in New York for significant but seemingly unremarkable reasons, including cost and convenience. While cognizant of the fact that travel between Hong Kong and New York is both costly and time-consuming, the court finds that plaintiff has failed to describe any peculiar reasons why the depositions should not take place at the deponent's location of residence.

**\*3** The court notes that the force of the presumption of deference to the defendant is diminished if the plaintiff was constrained in choosing the forum for litigation. *See Devlin,* 2000 WL 28173, at \*3; *Doe v. Karadzic,* 1997 WL 45515, at \*3 (S.D.N.Y.1997); *Mill-Run Tours, Inc.,* 124 F.R.D. at 550. In the instant case, plaintiff has made no argument that he was limited in his ability to choose the forum for litigation. Indeed, defendants appear to have been amenable to suit in Hong Kong. While the circumstances of the case suggest that travel to New York in the event of a legal action such as this cannot be said to have been unforeseeable, the court is initially prepared to accord a slight, albeit defeasible, presumption in favor of the depositions occurring in Hong Kong.

It is now well-settled, though, that the familiar presumption in favor of locating a deposition at the deponent's residence or place of business "can be overcome by a showing that factors of cost, convenience, and litigation efficiency militate in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 3
2003 WL 21910861 (S.D.N.Y.)
**(Cite as: 2003 WL 21910861 (S.D.N.Y.))**

favor of" a different location. *Livent Securities,* 2002 WL 31366416 at *1; *Six West Retail Acqusition, Inc.,* 203 F.R.D. at 107; *Devlin,* 2000 WL 28173, at *3; *Mill-Run Tours, Inc.,* 124 F.R.D. at 550. Plaintiff fails to convince the court with respect to these issues.

*A. Cost*

Cost considerations related to the location of depositions can be viewed through at least two lenses: the relative ability of the parties to bear the expense of depositions in a given location, and the effect that the choice of location will have upon the total costs of litigation. In the instant case, both plaintiff and defendants insist that cost considerations militate in favor of designating their preferred locations for the deposition. Plaintiff, for example, is currently unemployed; accordingly, he notes that it would be financially prohibitive for him to have to pay expenses related to sending at least one attorney and a court reporter to Hong Kong for a deposition. Arguing pursuant to the "relative ability to pay" strand of the cost analysis, plaintiff asserts that defendants are much better positioned to absorb the cost of Merkenich's round trip travel to New York.

Plaintiff presents little evidence in support of his assertion that defendants are better able to bear the significant costs of travel and lodging related to the deposition. By contrast, defendants claim that their firm is not a large corporate entity, but actually a "small securities trading business" made up of only one shareholder. Defendants claim that CFC Securities Asia is on precarious financial footing. Whereas Merkenich is the company's principal trader, defendants argue that his absence from the office during a deposition in New York will result in significant financial losses which the company is poorly positioned to absorb at this time. In addition, defendants assert that only one person--Dagen's counsel--would have to travel to Hong Kong to conduct the deposition. Defendants posit that a court reporter in Hong Kong can transcribe the deposition, thus obviating the need for a reporter to travel from the United States. [FN1]

> FN1. Defendants also note that under the Hague Evidence Convention, plaintiff's lawyer may use a tape recorder to record the deposition and have a certified transcript prepared in the United States.

***4** It is unclear whether overall costs would be greater if the depositions were held in New York or Hong Kong. Plaintiff's counsel work in New York; defendants' counsel are based nearby in New Jersey. If the deposition were held in New York, only one person--Merkenich--would have to make the trip between Hong Kong and New York. Plaintiff acknowledges that only one of plaintiff's attorneys would have to travel to Hong Kong. Pl.'s Br. at 4. Defendants have suggested that they would use local counsel if the deposition were located in Hong Kong. Def. Reply at 2. This factor does not appear to definitively favor either party; the presumption in favor of defendants, while slight, remains in force.

*B. Convenience*

Factors relevant to convenience include convenience of counsel, defendants' residence, and the extent of disruption of defendants' affairs during travel to and from the depositions. *See Federal Deposit Insurance Company,* 1990 WL 155727, at *3 (citing *Mill-Run Tours, Inc.,* 124 F.R.D. at 550). Plaintiff is represented by a small firm comprised of four attorneys which does business almost exclusively in New York. If the depositions are scheduled to take place in Hong Kong, the absence of one of the attorney's from the office could place a significant strain on the other attorneys. Defendants' counsel are employed by a large New Jersey law firm. Presumably, sending an attorney to Hong Kong would be less difficult to schedule and would inconvenience the larger firm to a lesser degree. Indeed, if depositions occur in Hong Kong, only plaintiff's attorney will be discommoded. In any event, "the convenience of counsel is less compelling than any hardship to the witnesses." *Devlin,* 2000 WL 28173 at *4.

In this case, the relevant witness, Boris Merkenich, resides in Hong Kong. He occupies a senior management position in the firm's Hong Kong office. He is the principal securities trader for CFC Securities operating in Hong Kong. His absence from the workplace for a number of days, and perhaps an entire work-week, would have an adverse impact on Merkenich and the company. Merkenich Decl. ¶ 5.

Plaintiff fails to make his case with respect to considerations of litigation efficiency. While it is true that the court would likely be unable to make rulings contemporaneous with the deposition, plaintiff does not explain why it is likely that the court will need to intervene during a deposition in this matter.

For all of these reasons, and without reference to the Hague Evidence Convention, the court rules that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 21910861 (S.D.N.Y.)  
**(Cite as: 2003 WL 21910861 (S.D.N.Y.))**

Page 4

defendants' application for a protective order designating Hong Kong as the site for Merkenich's deposition is GRANTED. Plaintiff's motion to compel deposition in New York is DENIED.

  SO ORDERED.

 2003 WL 21910861 (S.D.N.Y.)

  **Motions, Pleadings and Filings (Back to top)**

• 1:00CV05682     (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                             Page 1
2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
**(Cite as: 2000 WL 28173 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
Robert J. DEVLIN, Andrew Hagan, Thomas Hewson, Steven Milone (Mary Milone, his successor in interest), Frederick Rinckwitz, Individually, and on behalf of the
Retired Employees and their Beneficiaries of the Transportation Communications
International Union, Plaintiffs,
v.
TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION, Robert A. Scardelletti,
International President, Plan Administrator and Fiduciary Under the Railway
Labor Organizations Group Life, Hospital, Surgical and Medical Insurance Plan
for Their Officers and Employees, Defendants.
Robert J. DEVLIN, Andrew Hagan, Thomas Hewson, Steven Milone (Mary Milone, his successor in interest), Frederick Rinckwitz, Individually, and on behalf of the
Retired Officers, Employees their Beneficiaries of the Transportation
Communications International Union, Plaintiffs,
v.
TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION and Robert A. Scardelletti,
International President, Defendants.
**Nos. 95 Civ. 0752 JFK JCF, 95 Civ. 10838 JFK JC.**

Jan. 14, 2000.

*MEMORANDUM AND ORDER*

FRANCIS, Magistrate J.

**\*1** These consolidated cases are putative class actions brought on behalf of retired members and former officers of the Transportation Communications International Union (the "Union" or "TCU"). The actions currently include claims by the plaintiffs against the TCU and its president, Robert A. Scardelletti, challenging the Union's termination of the TCU Death Benefit Fund and the imposition of a $100 per month fee to participate in the TCU Medical Benefit Plan. The defendants have moved pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for a protective order: (1) requiring the depositions of defendant Scardelletti and other TCU representatives to be taken in Maryland; (2) disallowing certain discovery as irrelevant; and (3) barring the plaintiffs from revealing certain confidential information to third parties or using it for purposes beyond the boundaries of this litigation. The plaintiffs have cross-moved for sanctions pursuant to Rule 37(c)(1) on the ground that in their motion the defendants mischaracterized as confidential certain information that is publicly available. After setting the factual context, I will address each of these discovery issues.

*Background*

A. *Medical Benefits*

The Union traditionally provided both its employees and its retirees with free medical benefits under the Railway Labor Organizations Group Life, Hospital, Surgical and Medical Insurance Plan (the "Medical Plan"). However, the Medical Plan was modified as of January 1, 1994 to require retirees to pay a $100 per month fee in order to maintain their benefits. No such fee was imposed on active employees.

The plaintiffs challenged this change in the Medical Plan in the first of the two pending consolidated actions, 95 Civ. 0742 (S.D.N.Y.1995) (*"Devlin I"*). They argued that the modification violated the Employee Retirement Income Security Act, 29 U.S.C. § § 1001 *et seq* ("ERISA"), that it constituted age discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law § § 290 *et seq.,* and that it was a common law breach of contract. In the second action, 95 Civ. 10838 (S.D.N.Y.1995) (*"Devlin II"*), the plaintiffs attacked the medical benefits fee on the additional ground that it violated the Age Discrimination in Employment Act, 29 U.S.C. § § 621 *et seq.* (the "ADEA").

B. *Death Benefits*

For many years, the Union paid benefits of $300 to the family of any employee or retiree who died. However, at the 1995 TCU convention the Death Benefit Fund was eliminated, purportedly for financial reasons. In *Devlin II,* the plaintiffs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
**(Cite as: 2000 WL 28173 (S.D.N.Y.))**

Page 2

challenged this decision as a violation of ERISA and of the ADEA. Further, they asserted a common law claim for conversion of the monies in the Death Benefit Fund.

C. *Retirement Plan COLA*

In 1990, the trustees of the TCU Staff Retirement Plan (the "Retirement Plan"), the Union's pension program, instituted an automatic cost of living adjustment, or COLA. However, in 1995 the current Retirement Plan trustees brought an action in the United States District Court for the District of Maryland alleging that enactment of the COLA violated the fiduciary duty of the prior trustees because it placed too great a financial burden on Union funds. *See Scardelletti v. Bobo,* 897 F.Supp. 913 (D.Md.1995). The court agreed, and held that the current trustees could repeal the 1991 COLA amendment with respect to former employees who retired before 1991. *See Devlin v. Transportation Communications International Union,* 175 F.3d 121, 125 (2d Cir.1999) (explaining *Scardelletti v. Bobo,* Civil No. JFM-95-52, 1997 U.S. Dist. LEXIS 14498, at *29-33 (D.Md. Sept. 8, 1997)). The trustees did so, and also filed a related case in Maryland seeking a determination that the 1991 COLA amendment was null and void as of the date of its adoption. *See Scardelletti v. Santoro,* 97 Civ. 3464 (D.Md.1997). The defendants in that action are a class of all participants and beneficiaries of the Retirement Plan.

*\*2* In *Devlin II,* the plaintiffs challenged the elimination of the COLA on the ground that it constituted age discrimination.

D. *Prior Proceedings*

The Honorable John F. Keenan, United States District Judge, dismissed the plaintiffs' challenges to the Medical Plan participation fee in *Devlin I.* He found that the state law age discrimination claims were preempted by ERISA, and he granted summary judgment to the defendants on the ERISA claims, finding that the Medical Plan had been properly amended. *See Devlin I,* No. 95 Civ. 0742, 1995 WL 380374 (S.D.N.Y. June 26, 1995), and 1997 WL 570512 (S.D.N.Y. Sept. 15, 1997).

Judge Keenan also ruled in the defendants' favor in *Devlin II.* He dismissed the medical benefits fee claim on grounds of *res judicata,* relying on his prior decision in *Devlin I.* He further granted summary judgment to the defendants on the death benefits claim, finding that the Death Benefit Fund, if it was governed by ERISA at all, had been properly amended, and that the plaintiffs had failed to demonstrate age discrimination since the elimination of benefits affected employees and retirees of all ages. Finally, Judge Keenan dismissed the COLA claims on the basis that they were being adjudicated in the district of Maryland. *See Devlin II,* No. 95 Civ. 10838, 1997 WL 634179 (S.D.N.Y. Oct. 15, 1997), and 1998 WL 37545 (S.D.N.Y. Jan. 29, 1998).

The plaintiffs then appealed Judge Keenan's decisions in both cases. With respect to *Devlin I,* the Second Circuit vacated dismissal of the plaintiffs' state law age discrimination claim relating to the Medical Plan fee, finding that it is not preempted by ERISA. In all other respects, the court affirmed Judge Keenan's decision. *Devlin v. Transportation Communications International Union,* 173 F.3d 94, 104 (2d Cir.1999).

In the appeal of *Devlin II,* the Second Circuit remanded the plaintiffs' claim that elimination of the Death Benefits Fund constituted conversion because this issue had not been considered by Judge Keenan. *Devlin,* 175 F.3d at 128. It also vacated dismissal of the plaintiffs' ADEA challenge to the Medical Plan participation fee and suggested that this claim might be consolidated with *Devlin I. Id.* at 128-30. Finally, the court again affirmed Judge Keenan in all other respects and found in particular that the COLA claim should be adjudicated in the Maryland actions. *Id.* at 130-32.

Thus, the claims remaining in the instant litigation are the claim of conversion with respect to the Death Benefit Plan and the federal and state age discrimination claims as they relate to imposition of a participation fee for the Medical Plan.

*Discussion*

A. *Location of Depositions*

The first discovery dispute concerns the location for the depositions of TCU representatives. The plaintiffs have noticed the depositions of Mr. Scardelletti, the TCU president, and the unidentified witnesses who will testify as to specific topics pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Both notices identify New York as the place of deposition. (Memorandum in Support of Defendants' Motion for Protective Order ("Def.Memo."), Exhs. 1, 2). The defendants argue that these depositions should instead be conducted in Rockville, Maryland, which is the site of the TCU headquarters. That is the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721  
**(Cite as: 2000 WL 28173 (S.D.N.Y.))**

Page 3

place of business of Mr. Scardelletti and of the persons likely to be designated as Rule 30(b)(6) witnesses. (Declaration of LuAnn Taylor dated Aug. 3, 1999, attached as Exh. 3 to Def. Memo. ("Taylor Decl.") ¶ ¶ 4, 5).

**\*3** The plaintiffs respond that New York is the proper locus for the depositions under the circumstances of this case. They argue that as retirees they have limited resources to conduct depositions outside New York. Further, they contend that the Union has offices in New York and that its representatives travel frequently.

As a general matter, there is a presumption that a defendant or non-party witness shall be deposed in the district where the deponent resides or has a principal place of business. *See Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 155 (S.D.N.Y.1997); *Doe v. Karadzic,* Nos. 93 Civ. 878, 93 Civ. 1163, 1997 WL 45515, at \*3 (S.D.N.Y. Feb. 4, 1997); *Federal Deposit Insurance Co. v. LaAntillana, S.A.,* No. 88 Civ. 2670, 1990 WL 155727, at \*2 (S.D.N.Y. Oct. 5, 1990) (*"FDIC"* ); *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989). However, the force of this presumption may be diminished if the plaintiff was constrained in choosing the forum for litigation. *See Doe,* 1997 WL 45515, at \*3; *Mill-Run,* 124 F.R.D. at 550. Furthermore, it can be overcome by a showing that factors of cost, convenience, and litigation efficiency militate in favor of holding the deposition somewhere other than the district of the deponent's residence or place of business. *See Doe,* 1997 WL 45515, at \*3- \*4; *FDIC,* 1990 WL 155727, at \*3; *Mill-Run,* 124 F.R.D. at 550-51.

1. *Choice of Forum*

In the instant cases, the plaintiffs have made no argument that they were limited in their ability to choose the forum for litigation. Indeed, as discussed above, some of the same issues initially raised in the complaint here are currently being litigated in Maryland. Therefore, the standard presumption for location of depositions is not weakened.

2. *Cost*

Cost considerations relevant to the location of a deposition may be looked at from two perspectives: the impact that the choice of site has on total costs and the relative ability of the parties to bear the expenses. Here, overall costs would be greater if the depositions were held in New York. While plaintiffs' counsel is based in New York, defendants' attorney works from Washington, D.C., which is close to the TCU headquarters. Thus, the choice of location would have little effect on the total costs incurred by counsel. The critical additional costs are those that would be generated only if the deponents were required to appear here rather than in the district of their residence.

There is little doubt that any costs are more easily borne by the Union than by any individual plaintiff. However, these cases were filed as class actions. Thus, the plaintiffs implicitly represented that they had the ability to fund the litigation, either through the aggregation of their own resources or on the basis that the plaintiffs' counsel would advance the costs of the lawsuit. *See Weber v. Goodman,* 9 F.Supp.2d 163, 172-73 (E.D.N.Y.1998); *Krueger v. New York Telephone Co.,* 163 F.R.D. 433, 443 n. 6 (S.D.N.Y.1995). Having committed to pursuing a class action, the plaintiffs cannot now complain of the relatively minor cost of funding their attorney's travel from New York to Maryland to take depositions. Thus, the cost factor tips in favor of deposing the TCU representatives in Maryland.

3. *Convenience*

**\*4** Factors relevant to convenience include any hardship to counsel, the residence of the deponents, and the extent to which the witness' affairs might be disrupted. *See Mill-Run,* 124 F.R.D. at 551. In this case, one attorney or the other will be discommoded, depending upon the choice of site. In any event, the convenience of counsel is less compelling than any hardship to the witnesses.

The witnesses here all work in Maryland and presumably reside near their place of business. (Taylor Decl. ¶ 5). They are all high-ranking TCU officers and employees whose absence from their workplace would have an adverse impact on the functioning of the Union. (Taylor Decl. ¶ ¶ 1, 4). The plaintiffs argue that the TCU has offices in New York and that the deponents are often absent from Union headquarters attending the TCU convention and conducting union business. But the deponents work in the Union's Maryland headquarters, not in any New York office. And the fact that a deponent is required to travel for business purposes may make it all the more important that he or she be available at the principal place of business at other times. The convenience criteria thus favor conducting the depositions in Maryland.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4
2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
**(Cite as: 2000 WL 28173 (S.D.N.Y.))**

4. *Litigation Efficiency*

Considerations of efficient litigation dictate the same result. Relevant Union records that may be referred to during the depositions are likely located in Maryland. Furthermore, while judicial supervision of the depositions may be necessary, this can be accomplished by telephone, as would likely be the case even if the depositions were held here. *Cf. Mill-Run,* 124 F.R.D. at 551 (judicial supervision by telephone less feasible for overseas depositions).

For all of these reasons, the defendants' application for a protective order designating the District of Maryland as the site for the depositions of TCU representatives is granted.

B. *Scope of Discovery*

The defendants have raised two general issues concerning limitations on the scope of discovery. First, they contend that the TCU Staff Retirement Plan is irrelevant to any issue currently encompassed by the litigation, and discovery related to that program should therefore be disallowed. Second, the defendants argue that the Union's financial information after January 31, 1996 is not a legitimate subject of inquiry.

1. *Staff Retirement Plan*

The defendants maintain that the Staff Retirement Plan is now irrelevant because it relates only to the COLA issue which was dismissed from these cases and is being litigated in Maryland. The plaintiffs do not dispute that such discovery would be pertinent only to the COLA claim. However, they contend that they should be permitted to amend their complaint to reassert that claim here because a proposed settlement of the Maryland actions threatens their ability to raise it in that forum. (Memorandum of Law In Opposition to Defendants' Motion for Protective Order ("Pl.Memo.") at 11-13). The plaintiffs' motion to amend their complaint is currently pending before Judge Keenan.

*5 While relevance is broadly construed in the context of discovery, "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken...." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 (1978) (footnote omitted). That is the case here. Apart from its connection to the dismissed COLA claim, information about the Staff Retirement Plan is only pertinent to the extent that the plaintiffs could use it to attack the proposed settlement of the Maryland actions. But, "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Id.* at 352 n. 17 (citations omitted); *see also Southwest Hide Co. v. Goldston,* 127 F.R.D. 481, 484 (N.D.Tex.1989). Therefore, no discovery shall be taken concerning the Staff Retirement Plan, though this determination shall be reconsidered in the event that Judge Keenan allows the plaintiffs to replead the COLA claim.

2. *Union Financial Information*

Nor are the plaintiffs entitled to discovery of the Union's financial information for any period after January 31, 1996. The plaintiffs seek such information on the grounds that: (1) "it is directly relevant to tracing what has become of the proceeds of the funds from the ... Death Benefit Fund," (2) it would undermine the Union's claims that it was motivated by financial hardship to impose the Medical Fund participation fee and eliminate the Death Benefit Fund, and (3) it is relevant to the defendants' purported breach of their fiduciary duty. (Pl. Memo. at 14-16).

None of these arguments withstand scrutiny. The plaintiffs allege that the decision to eliminate the Death Benefit Fund was made in 1995 and that a conversion took place when the monies were transferred to the Union's general fund by January 1996. Thus, the Union finances after January 31, 1996 cannot be relevant to that claim. Similarly, the decision to impose the $100 fee on retirees for participation in the Medical Plan was made in 1993 and implemented effective January 1, 1994. Any information pertinent to a fiscal rationale for that change would therefore relate to the period prior to 1994. The plaintiffs' vague assertions of breach of fiduciary duty do not relate to any claim currently in their complaint and therefore do not justify broader discovery. Finally, until the plaintiffs have prevailed they are not entitled to discovery to trace funds that would be available to satisfy a judgment.

C. *Specific Discovery Requests*

The defendants further object to certain specific topics of discovery identified in the plaintiffs' Rule 30(b)(6) deposition notice.

First, Request No. 8 seeks information concerning money in the TCU Retirement Plan lost through investment in the Crabbe Huson Small Cap Fund. But

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 5
2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
**(Cite as: 2000 WL 28173 (S.D.N.Y.))**

because the request relates to the Staff Retirement Plan, it is relevant only to the dismissed COLA claim. Furthermore, it cannot be pertinent to any defense of financial necessity since the Union itself never invested with Crabbe Huson, and the Staff Retirement Plan did not do so until May 1997. (Taylor Decl. ¶ 2). Accordingly, the defendants' objection to Request No. 8 is upheld.

**\*6** Next, in Request No. 21, the plaintiffs seek the names and addresses of all participants in the Staff Retirement Plan. While this information would be relevant to the COLA claim, that claim, as discussed above, is not within the pleadings currently before the Court. Nevertheless, the plaintiffs contend that they need to identify all retirees to ascertain "whether TCU engages in a discriminatory pattern or practice in its treatment of its older employees and/or retirees...." (Pl. Memo. at 19). This argument sweeps far too broadly. First, the plaintiffs have not limited their demand to the identity of retirees who have at some time made an allegation of discrimination against the TCU. Nor have they articulated how any of a variety of potential claims of age discrimination by retirees might relate to the subject matter at issue here: the specific decision by the defendants to impose a surcharge on retirees for participation in the Medical Plan. Absent some more direct nexus between the discovery demands and the claims at issue in this litigation, the identity of all participants in the Staff Retirement Plan need not be disclosed.

In Request No. 29, the plaintiffs seek information about the compensation and benefits provided to active employees and TCU officers after January 1989. This information is relevant to any argument by the defendants that the challenged decisions were driven by economic necessity. However, since, as discussed above, those decisions were made prior to February 1996, only information pertaining to the period through January 1996 need be produced.

Plaintiffs' Request No. 30 asks for the identity of TCU officers and employees whose compensation is paid through a Department of Labor manpower training program. The plaintiffs contend that "the amount of money TCU receives from the Department of Labor is directly related to TCU's ability to handle the potential liability it faces due to the Trustees' illegal conversion of the Death Benefit Fund." (Pl. Memo. at 21). But, as discussed above, it is premature to take discovery relevant only to enforcement of a judgment that has not yet been won. Accordingly, the defendants need not produce the requested information.

Similarly, the information demanded in Requests No. 31 and 32--the cost of the TCU's 1999 convention and the source of contributions to the cost of that event--has no relevance to the claims in this case. The convention post-dated the decisions at issue and so cannot be pertinent to arguments of financial necessity. While the plaintiffs argue that they should be permitted to "trace" funds allegedly converted from the Death Benefit Fund, they have not asserted that they have any reason to believe that the alleged converted monies were used to pay for the convention.

Finally, plaintiffs' Requests No. 34, 35, and 36 relate to an escrow account established by the TCU pursuant to a court order in an unrelated case. The plaintiffs have not attempted to justify their demand for such information here, and it therefore need not be disclosed.

D. *Confidentiality Order*

**\*7** The parties have failed to agree on the appropriate form of a confidentiality order that would govern the dissemination of information obtained through discovery in these cases. The defendants argue that any such order should prevent pretrial disclosure of confidential information and bar the plaintiffs or others from using information obtained through discovery for purposes unrelated to this litigation. In particular, the defendants are concerned about the use or dissemination of the TCU's financial records and its lists of retirees and benefit plan members. The plaintiffs oppose any such restrictions.

Pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure, a court may issue a protective order providing that confidential information not be revealed in discovery or that it be revealed only in a designated way. The burden is on the party seeking the protective order to demonstrate good cause for its issuance. *See In re Agent Orange Products Liability Litigation,* 821 F.2d 139, 145 (2d Cir.1987); *Pavlovich v. City of New York,* No. 91 Civ. 5030, 1992 WL 230472, at \*4 (S.D.N.Y. Aug. 31, 1992). Here, the defendants have not met this burden with respect to the full range of restrictions that they seek.

The defendants are concerned that the plaintiffs will use information obtained in this litigation to bolster their position in the Maryland actions or in other proceedings. Therefore, the defendants rely on the Supreme Court's admonition in *Oppenheimer Fund,* 437 U.S. at 352 n. 17, that pretrial disclosure is not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 6
2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
**(Cite as: 2000 WL 28173 (S.D.N.Y.))**

intended to assist in litigation other than that for which the discovery is being taken. But the defendants are confusing the initial determination of whether information should be disclosed with the purposes for which it may thereafter be used. In *Oppenheimer Fund,* the Court was addressing only the circumstance in which a party seeks to *obtain* information irrelevant to the litigation in which it is sought in order to use it elsewhere.

"However, where the discovery sought is relevant to a good faith [claim or] defense in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order." *Dove v. Atlantic Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992). On the contrary,

> [s]o long as the initial litigation has not itself been instituted in bad faith for the purpose of obtaining documents for other actions, and so long as the interests of those represented in the initial litigation are being fully and ethically prosecuted, the Federal Rules do not foreclose the collaborative use of discovery.
>
> *Cipollone v. Liggett Group, Inc.,* 113 F.R.D. 86, 91 (D.N.J.1986).

Accordingly, "the mere fact that plaintiffs intend to use these materials outside of this litigation is not 'good cause' to support the protective order, unless defendants can establish that the discovery was not procured in good faith for the purposes of this litigation." *Id.* at 93; *see also Baker v. Liggett Group, Inc.,* 132 F.R.D. 123, 126 (D.Mass.1990). Since I have already precluded discovery of information relevant only to other litigation, such as that concerning the COLA claim, there is no basis for a further limitation on the use of material legitimately discovered here.

**\*8** The defendants also argue that disclosure of the names and addresses of TCU retirees for purposes other than this litigation would impinge on the privacy rights of these persons. [FN1] Indeed, in some circumstances, the privacy rights of non-parties may be invaded if information obtained through discovery was widely disseminated. For example, in *Welch v. Board of Directors of Wildwood Golf Club,* 146 F.R.D. 131, 141 (W.D.Pa.1993), the court issued a protective order barring the parties from disclosing information regarding health, financial, or other personal problems of the members of the defendant club, or regarding disciplinary action taken against them.

> FN1. This may not be an immediate concern, since I have denied the plaintiffs' outstanding request for such information. However, the plaintiffs may reframe their request in a manner that is targeted to more relevant information, and it is therefore appropriate to address this issue in drafting a confidentiality order.

But this is not such a case. Here, the plaintiffs have sought only names and addresses of retirees, presumably to contact them about instances of alleged discrimination. Revealing that someone is a retired employee and perhaps contacting them regarding litigation hardly runs the risk of humiliation that was at issue in *Welch.*

This does not mean that there should be unrestricted disclosure of confidential information in this case. It would hardly be appropriate for the plaintiffs to share proprietary TCU financial information with an employer with which the Union is bargaining or to sell the list of TCU retirees to a mail order company. Therefore, any confidential information disclosed in discovery shall be used solely for purposes of this litigation or any related pending or potential litigation. Further, to the extent that such information is shared in connection with other litigation, it shall be subject to all provisions of the confidentiality order entered here. *See Baker,* 132 F.R.D. at 126.

E. *Motion for Sanctions*

Finally, the plaintiffs seek sanctions on the ground that the defendants misrepresented that the TCU financial records are confidential while at the same time they were making those records public in the Maryland action. This application is apparently based on a misunderstanding of the records that the defendants claim are confidential. They do not seek protection for the audited financial statements that were disclosed in the Maryland action. Rather, they have asserted a claim of confidentiality with respect to the TCU's internal accounting documents such as balance sheets, ledgers, and budget reports that were not publicly disclosed. Therefore there is no inconsistency in the defendants' position and no basis for sanctions.

*Conclusion*

For the reasons set forth above, the defendants' motion for a protective order is granted in that: (1) Robert A. Scardelletti and other TCU representatives shall be deposed in Maryland; (2) there shall be no discovery regarding the Staff Retirement Plan; (3) discovery of TCU financial information shall be limited to the period prior to February 1, 1996, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 7
2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
**(Cite as: 2000 WL 28173 (S.D.N.Y.))**

(4) the defendants need not respond to the plaintiffs' discovery Requests No. 8, 21, 30, 34, 35, or 36 and shall respond to Request No. 29 only with respect to information for the period prior to February 1, 1996. The defendants' application for a protective order barring the plaintiffs from using confidential information obtained through discovery for any purpose outside this litigation is denied. Instead, such information may be used only for purposes of this litigation or related or pending or prospective proceedings, provided that it continue to be subject to the confidentiality order to be entered here. Counsel shall submit a draft confidentiality order for my approval. Finally, plaintiffs' application for sanctions is denied.

**Motions, Pleadings and Filings (Back to top)**

• 1:95CV10838 (Docket) (Dec. 22, 1995)

• 1:95CV00752 (Docket) (Feb. 03, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.2d                                                                                                                      Page 1
2000 WL 303221 (D.Conn.)
**(Cite as: 2000 WL 303221 (D.Conn.))**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.
MEDIA GROUP, INC.,
v.
IN-FINN-ITY PRODUCTIONS, INC.
**No. 3:99CV1014 (PCD).**

Feb. 1, 2000.

RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER

MARGOLIS.

**\*1** On May 27, 1999, plaintiff Media Group, Inc., a Connecticut corporation with its principal place of business in Stamford, Connecticut, commenced this diversity action against defendant In-Finn-Ity Productions, Inc., a California corporation with its principal place of business in West Los Angeles, California, regarding an "infomercial" that defendant was to produce for plaintiff for the latter's "Hot Shine" for automobiles.

On January 7, 2000, defendant filed the pending Motion for Protective Order, and brief and affidavits in support (Dkt. 13-16). [FN1] Plaintiff has filed a brief and two affidavits in opposition (Dkt. 17-19), to which defendant has filed a reply brief. (Dkt. # 20.) On January 14, 2000, Senior U.S. District Judge Peter C. Dorsey referred the motion to this Magistrate Judge. (Dkt. # 21.)

> FN1. Attached to the affidavit of defense counsel (Dkt. # 16) were copies of the five Notices of Deposition at issue here. (Exh. A.)

For the reasons stated below, defendant's Motion for Protective Order (Dkt. # 13) is *granted.*

I. DISCUSSION

The issue here is a rather simple one. On November 3, 1999, plaintiff served five Notices of Deposition upon Pat Finn, Cathy Finn, and Terry Finn, defendant's officers, for depositions to be held in New York City. (Dkt. 16, Exh. A.) [FN2] Defense counsel argues that the depositions should be held in California, in accordance with the general principle that corporate officers normally are deposed at the corporation's principal place of business. (Dkt. # 14, at 3-5.) In addition, defendant argues that it will be unduly disruptive to defendant, a closely held family corporation with approximately twenty employees, to have three corporate officers fly to New York for depositions, particularly when defendant has no present plans for any business travel to the East Coast. (*Id.* at 5-12.) Plaintiff argues, in opposition, that a plaintiff should be permitted to select the location of depositions (Dkt. # 17, at 3-4), and that it would be equally expensive and disruptive to plaintiff and its attorney to travel to California for depositions. (*Id.* at 4-7.)

> FN2. During a brief telephonic discovery conference held on January 27, 2000, plaintiff's counsel agreed that he is no longer seeking the Rule 30(b) deposition of the defendant, or that of former employee Erin Perry, who has relocated to Germany.
> Plaintiff's counsel further indicated that if the depositions were held in California, only one attorney from his law firm, and one representative from plaintiff, would attend the depositions.

In *Buzzeo v. Board of Education,* 178 F.R.D. 390, 392 (E.D.N.Y.1998), a U.S. Magistrate Judge summarized the prevailing law as follows:

  As a general rule, "the party noticing the deposition usually has the right to choose the location." The deposition of a non-resident defendant, however, is generally conducted at the defendant's place of residence. Where a corporation is involved as a party to the litigation, there is a general presumption in favor of conducting depositions of a corporation in its principal place of business. "Underlying this rule appears to be the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice." In addition, "the plaintiff is generally required to bear any reasonable burdens of inconvenience that the action presents.' "
  Conversely, "[c]orporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all the parties and in the general interests of judicial economy." The place to

Not Reported in F.Supp.2d  
2000 WL 303221 (D.Conn.)  
**(Cite as: 2000 WL 303221 (D.Conn.))**

Page 2

conduct the deposition of a corporate defendant and its agents depends upon an analysis of three factors: cost, convenience, and litigation efficiency. Furthermore, "[b]ecause courts retain substantial discretion to designate the site of a deposition, the presumption appears to be merely a decisional rule that facilitates determination when other relevant factors do not favor one side over the other."

*2 (Multiple citations omitted.) *See also Boss Mfg. Co. v. Hugo Boss AG,* No. 97 CIV 8495(SHS)(MHD), 1999 WL 20828, at *1-3 (S.D.N.Y. Jan. 13, 1999) (ordering depositions of defendant's Chief Financial Officer and Assistant Product Manager be conducted at defendant's corporate headquarters in Germany); *Doe v. Karadzic,* No. 93 Civ. 878(PKL)(HBP), 1997 WL 45515, at * 3-4 (S.D.N.Y. Feb. 4, 1997) (ordering that deposition of Bosnian Serbian military leader be held in New York City, and not in Srpska, to minimize foreign travel necessary, and in light of instability in that region of the world).

Plaintiff seeks to take the depositions of the three principal officers of defendant, who manage the company on a daily basis, none of whom have any travel plans to the Northeast. (Finn Aff't, ¶ ¶ 5-6; Dkt. # 15.) Defendant further contends that it would be "highly disruptive" to have all three officers away at the same time, and could jeopardize current production schedules. (*Id.* § 7.) Thus, there appears to be no significant reason to depart from the general presumption in favor of conducting depositions of corporate officers at the corporation's principal place of business.

Even in the absence of this general presumption, consideration of the three additional factors--cost, convenience, and litigation efficiency--lead to the same conclusion. [FN3] As previously stated, it would be "highly disruptive" to defendant's business to force its three principal officers to travel 3,000 miles for their depositions.

> FN3. Cost is a neutral factor--if the depositions were held in California, three individuals would need to travel from the East Coast (plaintiff's counsel and one representative of plaintiff, and defendant's attorney), while if the depositions were held in New York, the three deponents would be required to fly from Los Angeles. Judicial efficiency apparently is not a significant factor either. Defense counsel concedes that the documents to be retrieved "will not be substantial and can be easily transported in no more than a couple of file folders." (Dkt. # 14, at 11.) Moreover, to the extent that disputes arise during the depositions, this Magistrate Judge has a long-standing policy not to rule on disputes during the course of depositions, except in the rarest of circumstances. Thus, telephonic access to a judicial officer, whether calling from the East Coast or California, is not determinative here.

II. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion for Protective Order (Dkt. # 13) is hereby *granted.*

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED.R.Civ.P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b) *(written objections to ruling must be filed within ten days after service of same);* Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* 892 F.2d 15, 16 (2d Cir .1989) *(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).*

2000 WL 303221 (D.Conn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.