# EXHIBIT C

CTDOCS/1594690.1



# AGENT'S
# AGREEMENT

**MARCH 15, 1987**

# AGENT'S AGREEMENT

## PREFACE

It is the intent of this Agreement to define the conditions governing the business relationship between the parties involved. Only if both parties understand their duties and responsibilities can a mutually satisfactory relationship be established and maintained. The overall objectives of this Agreement are:

1. To provide a relationship which will result in the best possible service to the customer.
2. To assist the Agent in establishing and maintaining a growing agency which is profitable to both the Agent and the Companies.
3. To maintain the Companies' financial strength at the level necessary to protect the policyholders' interest.

## AGENCY APPOINTMENT

Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, Nationwide Property and Casualty Insurance Company, Nationwide Variable Life Insurance Company, and Colonial Insurance Company of California, collectively referred to in this Agreement as "we," "us," "Nationwide" or the "Companies," insurance corporations organized and existing under the laws of the States of Ohio and California with their principal offices located at Columbus, Ohio, and Anaheim, California appoint, for those Companies which are authorized in the State listed below,

RONALD P. MORIN
<br>Name

referred to in this Agreement as "you" or the "Agent" of

497 Buckland Road, Brandywine Building, South Windsor, CT          Hartford
<br>Street-Route                    City                    State                    County

as an agent to represent the Companies in __Connecticut__, while properly licensed so to act in accordance with the
<br>State

provisions of this Agreement. This Agreement is to become effective __December 1__, 19__90__.

1. **Independent Contractor.** The parties agree that the purpose of this Agreement will be best served by your acting as an independent contractor. Therefore, it is agreed that you are an independent contractor for all purposes. In accordance with the provisions of the Tax Equity and Fiscal Reponsibility Act of 1982, this is to remind you that, since you are an independent contractor and not an employee, you are solely responsible for paying all federal, state, and local estimated income and self-employment taxes as well as the timely and correct reporting and paying of all taxes. As an independent contractor, you have the right to exercise independent judgment as to time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out provisions of the Agreement. Insurance being a closely regulated business, it is understood that it will be necessary for us to provide you with certain manuals, forms, records, and such other materials and supplies as are necessary in the conduct of an insurance business. All such property furnished to you by the Companies or on behalf of the Companies shall remain the property of the Companies and be returned to them in good condition upon any cancellation of this Agreement. We may offer to you, from time to time, training, counsel, and guidance based upon our accumulated experience in the sale and servicing of business. However, it is understood that you may reject or accept such offers at your discretion.

2. **Expenses.** As an independent contractor, you will pay all expenses in connection with your Nationwide insurance agency. You will not incur any indebtedness on behalf of us in connection with expenses resulting from your Nationwide agency.

3. **Licenses.** As an independent contractor, you will be responsible for securing and keeping in effect any required license to represent us as an agent. You agree not to solicit any lines of insurance unless you have the required license authorizing you to do so.

Master

All States except

Set forth below are the types of licenses you hold and the date acquired:

| | | |
|---|---|---|
| Casualty | October 14 | , 19 83 |
| Health and Accident | October 9 | , 19 81 |
| Fire and Inland Marine | October 9 | , 19 81 |
| Life | October 9 | , 19 81 |
| Variable Life | October 31 | , 19 88 |

4. **Exclusive Representation.** It is agreed and understood that you will represent us exclusively in the sale and service of insurance. Such exclusive representation shall mean that you will not solicit or write policies of insurance in companies other than those parties to this Agreement, either directly or indirectly, without the written consent of these Companies. It is not intended that the incidental use of voluntary or statutory state or federal insurance plans, or other similar agreements, shall be a violation of this clause.

5. **General Conduct and Representation.** You will maintain a good reputation in the community which you serve and will direct your efforts in the field of insurance toward advancing the business and interest of the Companies to the best of your ability. In the conduct of your business, you will comply with all applicable insurance laws and regulations.

6. **Company Funds.** All funds coming into your possession from customers as premiums or considerations for insurance policies issued by the Companies are funds of the Companies received by you in a fiduciary capacity and shall be immediately remitted to us. If any such funds are not remitted to us, we shall have a first lien on all compensation due or which may become due you to the extent of such funds. Each of the Companies is authorized to deduct the entire amount of such funds due, either before or after the cancellation of this Agreement, from any compensation due you.

7. **Compensation.** Any compensation due you under this Agreement from any of the Companies, may be paid, to you, on their behalf, by any of the other Companies. For all services rendered under this Agreement by you, you shall be compensated solely in accordance with the General Conditions and the Schedules of each Company, attached hereto and made a part hereof except for such additional compensation payable to you under paragraph 11.

It is agreed that we will pay you any and all original and renewal commissions earned by you, but not credited to your account at the time of entering into this Agreement, on business written by you while employed by us under our Agent's Employment Agreement. It is understood, however, that we may deduct from any compensation due you under this Agreement any commissions previously credited to your account while an employee agent, which subsequently become unearned as a result of the termination or lapse of any policy or coverage.

Should any Company desire to amend its General Conditions or Schedules, notification in writing of such amendment shall be given to you prior to its effective date, and shall become a part of this contract on its effective date.

8. **Overpayment of Compensation.** Any compensation paid to you for premiums later returned or credited to the customer or any other overpayment of compensation shall be a debt due us from you. In addition to all other rights available to us as a creditor, we shall have the right to deduct such compensation or overpayment from any future compensation due you.

9. **Cancellation.** This Agreement shall be in force until cancelled by either party.

This Agreement shall automatically cancel upon the date your license to act as an agent for the Companies is revoked or cancelled, or upon death. Further, due to the personal nature of our relationship you or the Companies have the right to cancel this Agreement at any time after written notice has been delivered to the other or mailed to the other's last known address. It is understood that the Agent shall have access to the Agents Administrative Review Board, and its procedures, as it may exist from time to time.

10. **Service to Customer Upon Cancellation.** Upon cancellation of this Agreement, it is understood that the Companies retain the right to continue to provide insurance services to any and all customers and to continue to solicit such customers for additional business.

11. **Agency Security Compensation.**

    a.    Computation of Deferred Compensation Incentive Credits.

For each full calendar year you act as an agent for the Companies, beginning in the first year your annual DCIC Class Earnings equal or exceed the Threshold Amount, until you are age sixty-five (65), the Companies will credit to your account as Deferred Compensation Incentive Credits the percentage set forth below of your DCIC Class Earnings. The Threshold Amount is four times the minimum amount of earnings for which Deferred Compensation Incentive Credits will be credited as set forth in the table below and as further adjusted from time to time in accordance with this paragraph 11-a. DCIC Class Earnings are identified as your annual original and renewal service fee earnings, including earnings from Nationwide Financial Services, Inc., but excluding earnings from joint underwriting associations, reinsurance facilities, auto insurance plans, the variable life policy known as "Investment Life," and line 19 auto business, and limiting earnings from Colonial Insurance Company business to 25% of such earnings. If you entered into an Agent's Agreement providing for an Agents Security Compensation Plan for the first time prior to January 1, 1987, qualification for Deferred Compensation Incentive Credits will occur on the earlier of the satisfaction of the requirement set forth above or the completion of your fifth year of service as an agent with the Companies, crediting all years of service under an Agent's Employment Agreement, Agency Representative Agreement, or Agent's Agreement.

          0% of such earnings under $13,100.00.
          3% of such earnings from $13,100.00 to $19,599.99.
          6% of such earnings from $19,600.00 to $26,299.99.
       10% of such earnings from $26,300.00 to $32,799.99.
       15% of such earnings from $32,800.00 to $462,100.00.
          0% of such earnings in excess of $462,100.00.

It is understood that the Deferred Compensation Incentive Credit formula set out above is applicable to credits calculated for the calendar years of 1987 and 1988 only. For each succeeding two (2) year period, the formula ranges shall be adjusted based on fifty (50) percent of the percentage change that has occurred in the Consumer Price Index (CPI) for all Urban Consumers, U.S., City Average, All Items during the preceding two (2) year period. (The change in the CPI will be measured over a two year period based on the month of June, with formula changes, if any, effective the following January 1.) These changes will be communicated prior to their effective date and shall supersede the previous formula.

    b.    Extended Earnings Payable Upon Qualified Cancellation of this Agreement.

When you qualify for the Deferred Compensation Incentive Credits, you will also qualify for extended earnings payable upon qualified cancellation of this Agreement. Upon qualified cancellation of this Agreement an amount equal to the renewal service fees paid to you by each Company for the last full twelve (12) calendar months immediately proceeding such cancellation subject to the following exceptions:

    (1)    Renewal service fees earned from joint underwriting associations and state automobile insurance plans shall be excluded.

    (2)    For purposes of extended earnings renewal services shall be reduced by 50% on reinsurance facility and line 19 auto business.

    (3)    Extended Earnings on Nationwide General business shall be calculated at 70% of the last 12 months total compensation paid to you on such business.

    (4)    Extended Earnings on Colonial business shall be calculated at 25% of the last 12 months total compensation paid to the Agent.

    (5)    Extended Earnings will be retroactively reduced by the amount of renewal commissions originally included in the extended earnings calculation on any commercial policy or account which does not renew in the 12 months following cancellation of this agreement on which policy or account you were paid $20,000 or more in renewal commissions during the preceding 12 month period. This chargeback will not apply if cancellation of this agreement occurs due to your death, permanent and total disability, or attainment of age 65.

Master

c.   Amounts Payable Upon Qualified Cancellation.

   (1)   **If you live until retirement,** you will receive your Extended Earnings, provided you have completed five years of service with the Companies as an agent. In addition, you will receive Deferred Compensation Incentive Credits in accordance with the provisions outlined in paragraph 11-c(3) and 11-d(2).

   (2)   **If you die or become totally and permanently disabled** which results in the cancellation of this Agreement, provided that you have completed five years of service with the Companies as an agent, you or your beneficiary, or the estate of your beneficiary will receive your Extended Earnings and 100% of your accumulated Deferred Compensation Incentive Credits.

   (3)   **If at the time this Agreement is cancelled** for reasons other than death or total and permanent disability you have completed at least five years of service with the Companies as an agent, you will receive the Extended Earnings. Deferred Compensation Incentive Credits will be paid to you in accordance with the following schedule and the provisions of paragraph 11-d(2):

      (a)   50% of Benefit Payable — When age plus length of service as agent equals the sum of 45.

      (b)   10% Additional Benefit Payable for each year of service after the sum of 45 as defined in paragraph (a) above is attained, subject to a maximum under (a) and (b), of 100% of such benefit.

d.   Provisions for Payment

After deducting any amount paid to you under this paragraph for cancellation or termination of any prior Agreement, or as extended renewal service fees under any former agreement, or any amounts due the Companies from you, the Companies will pay to you, or should you not survive, your beneficiary or the estate of your beneficiary:

   (1)   Your Extended Earnings divided into ten (10) equal parts as follows:

Commencing within sixty (60) days following qualified cancellation of this Agreement:

The first part shall be payable in twelve (12) equal monthly installments, each monthly installment after the first on the first day of subsequent consecutive months.

The remaining parts shall be paid in equal annual installments, the first annual installment payable thirty (30) days after payment of the last monthly installment and each other annual installment thereafter on the anniversary of that date until paid. At your election prior to your cancellation, such annual installments may be made in equal monthly payments.

All States except
California, Massachusetts, Texas, West Virginia   — 4 —

Master
Eff. 3-15-87

(2)    The amount of Deferred Compensation Incentive Credits to which you are entitled payable in ten (10) equal parts as follows:

Commencing sixty (60) days after your death or total and permanent disability which results in the cancellation of this Agreement, or sixty (60) days after other qualified cancellation of this Agreement.

It is understood that in the event such payments would commence prior to age 60, for reasons other than death or total and permanent disability, such payments shall be reduced to the percentages shown in the following table:

| Age At Which Benefit Payments Commence | Percent of Accrued Benefits To be Paid |
| --- | --- |
| 60 | 100.00% |
| 59 | 94.34% |
| 58 | 89.00% |
| 57 | 83.96% |
| 56 | 79.21% |
| 55 | 74.73% |
| 54 | 70.50% |
| 53 | 66.51% |
| 52 | 62.74% |
| 51 | 59.19% |
| 50 | 55.84% |
| Under 50 | None |

*These sums shall be payable as outlined in d-(1) above.*

(3)    Election for Different Payment.

At your written election, received by the Companies prior to the time of cancellation of this Agreement, the Companies will agree to make payments of Extended Earnings and/or Deferred Compensation Incentive Credits under one of the following methods. Amounts payable as Deferred Compensation Incentive Credits, regardless of election, are not payable prior to your reaching age fifty (50) except in the case of death or total and permanent disability.

(a)    To make payments in not less than three (3) nor more than ten (10) equal parts.

Commencing within sixty (60) days after qualified cancellation or such other later date as provided by the election and the terms of this Agreement, and the parts shall be payable as in d-(1) above.

(b)    To pay to you the amounts payable in accordance with paragraph 11, under one of the following three forms of annuity benefits. Such benefits to be determined as actuarial equivalent amounts in accordance with such interest rates and mortality tables as adopted by the Companies for this purpose.

1.    Life Annuity — No Death Benefit
2.    Life Annuity — Installment Refund, or
3.    Life Annuity — Joint and Survivorship

Payments shall commence within sixty (60) days after qualified cancellation or such other later date as provided by the election and the terms of this Agreement.

Master
Eff. 3-15-87

— 5 —

All States except
California, Massachusetts, Texas, West Virginia

(c) To divide the amounts payable to you as you elect, paying part in equal annual installments, not less than three (3) nor more than ten (10), with the balance payable under subparagraph (b) above.

The amount payable as equal annual installments shall be paid as provided in subparagraph (a) and the balance as in subparagraph (b).

(4) Payment in Event of Employment.

If this Agreement is cancelled as a result of your employment by the Companies, payments to you shall be deferred until your separation from the Companies, death or total and permanent disability. At that time, payment shall commence as provided by this paragraph 11 as if employment had not intervened.

e. Qualified Cancellation.

Unless you have induced or attempted to induce, either directly or indirectly, policyholders to lapse, cancel, or replace any insurance contract in force with the Companies, the cancellation of this Agreement shall be a qualified cancellation for the purpose of this Agreement.

f. Cessation of Agency Security Compensation.

All liability of the Companies for Agency Security Compensation provided for in paragraph 11 and its subparagraphs shall cease and terminate in the event any one or more of the following shall occur:

(1) You either directly or indirectly, by and for yourself or as an agent for another, or through others as their agent, engage in or be licensed as an agent, solicitor, representative, or broker or in anyway be connected with the fire, casualty, health, or life insurance business, within one year following cancellation within a 25 mile radius of your business location at that time; or

(2) You fail to return in good condition, within ten days, all materials, records, and supplies furnished to you by the Companies during the course of this Agreement, together with any copies thereof; or

(3) After cancellation of this Agreement, you directly or indirecty induce, attempt to induce, or assist anyone else in inducing or attempting to induce policyholders to lapse, cancel, or replace any insurance contract in force with the Companies; furnish any other person or organization with the name of any policyholder of the Companies so as to facilitate the solicitation by others of any policyholder for insurance or for any other purpose.

g. The Agency Security Compensation is intended to be in lieu of the compensation and/or benefits awarded by any state statute or regulation. If you elect any benefits of any such statute or regulation then the amount of such benefits so received shall be deducted from the benefits due you under paragraph 11. If the exact amounts of any such statutory or regulatory benefits are known at the time of the cancellation of this Agreement, then this deduction shall be immediately made and the balance of such benefits under paragraph 11 shall commence as provided for under the provision of paragraph 11. If the exact amount of such statutory or regulatory benefits are not known at the time of the cancellation of this Agreement, then the payment of any benefits under paragraph 11 shall be deferred until such time as the amount of such statutory or regulatory benefits becomes known.

h. Amendments and Termination.

The Companies hope and expect to continue the Agency Security Compensation Plan indefinitely, and every effort has been made to meet future conditions. In order to protect you and the Companies against unforeseen conditions however, the right to amend or terminate this plan is necessarily reserved by the Companies. The Companies may terminate this plan by notification, at least sixty (60) days prior to such termination, in writing. No change in the Plan or termination however can alter or modify rights or benefits received or granted prior to such change or termination.

All States except
California, Massachusetts, Texas, West Virginia            — 6 —                                                          Master

12. **Agent's Activities After Cancellation.** (Applicable only to agents entering an independent contractor's agreement for the first time on and after July 1, 1969.)

You agree that if the Agreement is cancelled within a period of five years from the date of your first contract as an agent with the Company, you will not, either directly or indirectly, by and for yourself or as agent for another or through others as their agent, engage in or be licensed as an agent, solicitor, representative, or broker or in any way be connected with the fire, casualty, health, or life insurance business, within a 25 mile radius of your last business location for a period of one year from the date of the voluntary or involuntary cancellation of this Agreement or, should we find it necessary by legal action to enjoin you from competing with us, one year after the date such injunction is obtained.

In any jurisdiction where a covenant similar to that appearing above is held to be invalid either by statute or by judicial decision, you agree upon cancellation of this Agreement you shall thereafter refrain from further solicitation or servicing of policyholders of the Companies and from interfering in any way for a period of one year with existing policies and policyholders in the geographical area described above.

In the event that we are successful in any suit or proceeding brought or instituted by us to enforce any of the provisions of this Agreement or on account of any damages sustained by us by reason of the violation by you of the terms and/or provisions of this Agreement, you agree to pay to us such reasonable attorneys' fees as are permitted by statute and fixed by the court.

13. **Agent Number.** For the benefit of the Companies and the agent, a number is assigned to each agent to facilitate more efficient use of the Companies computer system. This number is the property of the Companies and may be reassigned for identification within that system. Your name will be printed for your benefit on billings and materials received by our policyholders. If this agreement is cancelled, your name will be removed as soon as possible, but you acknowledge that occasional error may cause it to continue to be printed.

14. **Pricing, Products, Rules, and Regulations.** The insurance business being subject to changing laws, regulations, and conditions, it is understood and agreed that each Company will prescribe rules, regulations, prices, and terms under which it will insure risks, and each Company retains the right to change, alter or amend such rules, regulations, prices, and terms, including the right to limit, restrict, or discontinue entirely the acceptance or writing of any policies, coverages, lines or kinds of insurance, at any time it deems it advisable to do so, and without notice to or consent of the Agent, and any such change, alteration, amendment or limitation shall become effective on the date specified by the Company.

In order to maximize productivity and lower operating expenses to the benefit of the customer, agent and Companies, the Companies are investing in a computerized transaction and record-keeping system with our agency force. Agents Office Automation (AOA) is designed to assist the agent and ultimately reduce expenses. During the transitional period, the Company will utilize and accept transmittal of both hardcopy and electronic transactions. This dual system will not continue indefinitely. On the date that total policies in force of agents using the AOA system represent 70% of the Company's personal lines policies in force, the Company will notify you that the dual system (hardcopy and electronic transactions) will continue to operate for only one year after that date. Six months after notification, the Company reserves the right to require all transactions to be through the AOA system.

15. **Authorization to Direct Bill.** The agent and the Companies agree that it is to their mutual benefit for the Companies to bill the policyholders directly. The agent hereby gives the Companies permission to use his name on those billings and for use of his name for a reasonable period following the cancellation of his Agreement.

16. **Extent of Authority.** You will obligate us only to the extent authorized by the rules and regulations set forth by us from time to time, or as may be authorized in writing by an officer of the Companies.

17. **Amendments or Modifications.** Except as otherwise provided herein, this Agreement may be changed, altered, or modified only in writing signed by you and an officer of the Companies.

18. **Assignment of Agreement.** The Companies rely upon your particular personal abilities in carrying out your obligations under this Agreement, therefore, no assignment of your rights, responsibilities, or any sums due you under this Agreement shall be made without prior written consent signed by an officer of the Companies.

19. **Agreement Defined, Prior Agreements Superseded.** Whenever used in this Agreement, the term "Agreement" shall mean any contract in writing captioned "Standard Agent's Agreement," "Master Agent's Agreement," "Agent's Employment Agreement," "Corporate Agency Agreement" or "Agent's Agreement" between you and the Companies executing this Agreement. The execution and delivery of this Agreement shall supersede and take the place of any prior Agreement, provided that the execution and delivery of this Agreement shall not affect your obligation to pay any money due the Companies from you under the provisions of any other agreement, written or oral, nor shall the execution of this Agreement nullify any negotiated compensation Agreement, differing from the schedules of compensation attached to former Agreements, entered into between you and the Companies on cases written prior to the execution of that Agreement.

20. **Severability.** If any clause or part of this Agreement shall be held invalid for any reason, then such invalidity shall not affect any part of this Agreement and the parts thereof not invalid shall remain in full force and effect.

21. **Legal Action Under This Agreement.** It is agreed that no action, suit, proceeding at law or in equity shall be brought under this contract unless it is commenced and process is served within three years after the cause of action for which suit is brought. If the limitations set forth in this paragraph are prohibited by the statutes of the state in which this Agreement is issued, then these limitations shall be deemed amended to agree with the minimum period of limitation permitted by such statutes.

IN WITNESS WHEREOF, the Agent has signed his name and the Companies have caused their corporate names to be affixed by their duly authorized representative to duplicate copies hereof.

NATIONWIDE MUTUAL INSURANCE COMPANY
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
NATIONWIDE LIFE INSURANCE COMPANY
NATIONWIDE GENERAL INSURANCE COMPANY
NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY
NATIONWIDE VARIABLE LIFE INSURANCE COMPANY
COLONIAL INSURANCE COMPANY OF CALIFORNIA

By _____   5/1/91
For the Companies            (Date)

_____   5/1/91
Agent                      (Date)

All States except
California, Massachusetts, Texas, West Virginia   — 8 to 10 —   Master