

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.
Tony B. JOBE etc.
v.
ATR MARKETING, INC. et al.
**No. CIV.A. 96-3396.**

May 15, 1998.

WILKINSON, Magistrate J.

**\*1** Five discovery motions are pending before me. At the request of counsel for both sides, oral argument was conducted on this date. Appearing were George Frazier and Terry O'Reilly representing plaintiff and Robert Harrington and George Miller representing defendants. Having considered the voluminous written submissions of counsel, their oral argument, the record and the applicable law, the motions are determined as follows:

(1) *Plaintiff's Motion to Compel Production of Documents in Response to His Fifth Request for Production*

This motion seeks production of all documents obtained by defendants in response to their third-party subpoena to Continental Airlines. At oral argument counsel stated that they had agreed to resolve this discovery dispute by arranging for production of the documents subject to the protective order previously entered by the Court. Accordingly, IT IS ORDERED that the motion is GRANTED insofar as it seeks document production. All responsive documents must be produced by defendants to plaintiff no later than May 18, 1998, but all such document production is subject to the protective order previously entered by the Court, Record Doc. No. 45 (October 24, 1997), which is hereby expressly extended to cover all documents of Continental Airlines produced pursuant to this order.

(2) *Plaintiff's Motion for Protective Order Concerning the Continuing Deposition of Gordon Long*

Counsel advised that this motion is moot. Accordingly, it is DISMISSED AS MOOT.

(3) *Defendants' Motion to Compel Answers to Interrogatories and Production of Documents (Long's "Chronologies" and Interrogatories No. 3-11 of Defendants' Second Set)*

This motion is GRANTED IN PART and DISMISSED AS MOOT IN PART as follows.

As to the motion to compel interrogatory answers, plaintiff's vague reference to documents and a 400-page document index in its answers to Interrogatories No. 3-11 does not satisfy the specification requirements of Fed.R.Civ.P. 33(d), which provides in pertinent part: "Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served ..., it is a sufficient answer to such interrogatory *to specify* the records from which the answer may be derived or ascertained.... A *specification shall be in sufficient detail* to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained" (emphasis added). Plaintiff's answers to these interrogatories fail to do so. The index, excerpts from which are attached to defendants' memorandum as Exhibit 4 and others of which were shown to me at oral argument, is wholly insufficient to satisfy Rule 33(d).

Accordingly, this part of the motion is granted, and plaintiff must provide defendants with narrative answers to Interrogatories No. 3-11 of defendants' second set of interrogatories, without objection and in compliance with all requirements of Fed.R.Civ.P. 33(b)(1) and (2), no later than May 18, 1998.

**\*2** As to the motion to compel production of Long's summaries on chronologies, counsel reported at oral argument that this portion of the motion had been rendered moot because plaintiff has produced the documents to defendants. Accordingly, this portion of the motion is dismissed as moot.

(4) *Plaintiff's Cross-Motion to Compel Discovery Responses*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 2
1998 WL 252382 (E.D.La.)
**(Cite as: 1998 WL 252382 (E.D.La.))**

In this motion, plaintiff seeks more specific responses to his second set of requests for production of documents. Plaintiff's motion is based on the assertion that defendants' obligation to respond to requests for production under Rule 34 is equivalent to plaintiff's obligation to identify documents with specificity when referring to them in lieu of providing interrogatory answers under Rule 33(d). Plaintiff argues that if I grant defendants' motion to compel plaintiff to answer their interrogatories (as I have done), I must also compel defendants "to respond to plaintiff's Second Request for Production of Documents in the same manner." However, the two requirements are not the same.

Unlike the specification requirement of Rule 33(d) (quoted above), in responding to requests for production under Rule 34, the responding party need only "state, with respect to each item or category, that inspection and related activities *will be permitted as requested, unless the request is objected to,* ... A party who produces documents for inspection shall produce them as they are kept in the usual course of business *or* shall organize and label them to correspond with the categories in the request." Fed.R.Civ.P. 34(b) (emphasis added).

The parties' motion papers indicate that defendants' written responses to plaintiff's second set of requests for production stated that inspection would be permitted and that the documents were then produced as kept in the usual course of business. Thus, defendants complied with Rule 34(b) and the specification plaintiff seeks, based on the inapplicable Rule 33(d) requirement for interrogatory answers, is not required. Accordingly, this motion is DENIED.

(5) *Plaintiff's Motion for Reconsideration*

This motion is GRANTED IN PART and DENIED IN PART as follows.

In this motion, plaintiff revisits his earlier denied motion to compel defendants to make a proper Rule 30(b)(6) representative available for deposition, to reimburse plaintiff for expenses incurred in connection with his counsel's travel to France for depositions, and to compel the production of documents (the so-called "trip reports" whose production was sought in plaintiff's third and fourth requests for production of documents) that defendants say do not exist or, alternatively, to require an explanation of what happened to the documents. At oral argument, plaintiff's counsel

made it clear that the various requests for relief by plaintiff were intertwined because the principal alleged deficiency in defendants' Rule 30(b)(6) designation was the failure to provide a witness in France capable of testifying about the handling and whereabouts of the "trip reports" that were not produced.

**\*3** Plaintiff's counsel has twice in this case traveled to France, where he deposed the following witnesses made available by defendants in response to plaintiff's various notices: In November 1997, he deposed (1) Mr. DeMessant, a retired ATR employee and software expert; (2) Mr. Daillencourt, a financier employed by defendant ATR; and (3) Mr. LeBreton, the former president of defendant ATR Marketing, Inc. In March 1998, he deposed (1) LeBreton again, and (2) Henri Puel, a senior executive of defendant Aerospatiale. According to defendants, these were all individuals with knowledge of the topics listed in plaintiff's Rule 30(b)(6) notices. At oral argument, plaintiff's counsel conceded that his Rule 30(b)(6) notices, Record Doc. Nos. 40 and 41, made no specific references to the allegedly missing trip reports, the principal topic about which he complains that an improper witness designation was made, and stated that his discovery to date had not suggested the name of any individual who might have more knowledge about these topics than LeBreton.

Viewed as a whole, defendants' action in making various witnesses, including LeBreton (twice), available for their depositions in France, coupled with their willingness again to make LeBreton available, live in France or via telephone or teleconference, to answer additional questions about trip reports that he was not asked when twice previously deposed satisfied their Rule 30(b)(6) obligations. No orders awarding expenses or requiring the further designation of witnesses are justified, and the motion to reconsider is DENIED IN PART as to the Rule 30(b)(6) deposition. Consistent with defendants' proposal, plaintiff is hereby specifically granted leave to depose LeBreton again concerning the trip reports, Fed.R.Civ.P. 30(a)(2)(B), live in France or via telephone or video-teleconference, Fed.R.Civ.P. 30(b)(7).

As to the trip reports, plaintiff's original motion was to compel responses to his third and fourth requests for production of documents. Defendants have produced only a few trip reports, but not all that were requested, including particularly some missing trip reports about which the witness Hugh Schmittle testified. Defendants' written responses to these

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
1998 WL 252382 (E.D.La.)
**(Cite as: 1998 WL 252382 (E.D.La.))**

requests for production consistently stated that "(d)efendants will produce all non-privileged documents responsive to this Request." Their opposition to plaintiff's original motion and correspondence between counsel reiterated that defendants had produced the trip reports in their possession, but no others had been located. The oral argument has clarified, however, what I did not previously understand: The trip reports heretofore produced by defendants to plaintiff are *not* responsive to *all* of the individual requests for production contained in plaintiff's third and fourth sets of requests. As to some specific requests, defendants have *no* responsive documents in their possession, custody or control. Thus, some of their present written responses may be construed as incomplete or evasive. Fed.R.Civ.P. 37(a)(3). Although defendants' counsel has consistently attempted to clarify this point in his letters and motion papers, the motion to reconsider is GRANTED IN PART to require that defendants submit to plaintiff, no later than May 18, 1998, supplemental written responses to plaintiff's third and fourth sets of requests for production, in compliance with Fed.R.Civ.P. 26(e)(2) and 26(g)(2), to state specifically that they have no documents in its possession, custody or control responsive to particular requests.

 **\*4** In all other respects, the motion to reconsider is DENIED. Plaintiff's original motion requested "that either the documents (trip reports) be produced or Defendants provide a clear answer indicating precisely what happened to these documents, why they no longer exist in the files of Defendants (as repeatedly defined in all Requests and both Appendices to the Notices of Deposition), who last had them, and the other particulars specified in the Requests for Production" (emphasis added). Record Doc. No. 62, memo in support at 18-19. I denied this part of the original motion, suggesting that additional responses to requests for production were not the appropriate way to obtain this information, which should be ascertained "by other means." Record Doc. No. 75.

 Plaintiff's motion for reconsideration states that "Plaintiff would be happy to obtain this information 'by other means' *if plaintiff had any idea what other remedy under the Federal Rules remains* " and reiterates that "plaintiff is not asking Defendant to produce something that does not exist. Defendants are asked only to honestly *answer the question in a manner that can be read to a jury.*" Record Doc. No. 88, memo in support at 18 (emphasis added).

 A motion to compel cannot be based on a party's general desire for information. In the discovery context, a motion to compel must be based on the responding party's failure to do something required by the Rules. Fed.R.Civ.P. 37(a)(2)(B). This part of plaintiff's motion is based on his requests for production of documents. Rule 34(b) does *not* require written responses that provide information about the location of allegedly missing documents, what happened to them, why they no longer exist, who last had them or any of the other particulars plaintiff requests in this motion. If plaintiff wants detailed information as to what happened to documents he believes once existed in a verified form he can read to a jury, he must ask questions to witnesses at depositions, Fed.R.Civ.P. 30-31, or submit interrogatories to which answers must be provided under oath, Fed.R.Civ.P. 33(b), or propound requests for admissions, Fed.R.Civ.P. 36. These are the "other means" under the Federal Rules available to plaintiff for obtaining the explanations he mistakenly seeks via motion to compel responses to requests for production of documents.

 1998 WL 252382 (E.D.La.)

 **Motions, Pleadings and Filings (Back to top)**

 •                         2:96CV03396              (Docket)
(Oct. 17, 1996)

 END OF DOCUMENT

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- F.R.D. ---
(Cite as: 2005 WL 1115861 (D.Md.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Maryland.
THE UNITED OIL COMPANY, INC.
v.
PARTS ASSOCIATES, INC., et al.
**No. CIV. WDQ-03-2949.**

March 4, 2005.

**Background:** Distributor of hydraulic oils and industrial chemicals brought action for indemnity and contribution against dye manufacturer and brake cleaner distributor, seeking to recover settlement that it paid on products liability claims asserted against it pursuant to theory that chemicals in dyes and in brake cleaning fluids to which products liability claimant was exposed caused his liver disease. Distributors filed motions to compel discovery.

  **Holdings:** The District Court, Gauvey, United States Magistrate Judge, held that:
  (1) information about same or similar claims asserted against defendants was relevant to failure-to-warn claim, and thus could be discovered;
  (2) information about claims, complaints, and lawsuits that arose after claimant developed liver disease could be discovered;
  (3) discovery requests seeking identity of, and related documents for, all persons with discoverable information were overly broad;
  (4) discovery requests pertaining to licensing information were too broad and non-specific to warrant order compelling compliance;
  (5) distributor could not respond to interrogatories through reference to boxes of files of documents; and
  (6) oils and chemicals distributor had to provide factual basis for contention that conduct of brake cleaner distributor was proximate cause or contributing factor to claimant's injuries.
  Motions granted in part and denied in part.

**[1] Federal Civil Procedure** 🔑1272.1

170Ak1272.1 Most Cited Cases
Distributor of hydraulic oils and industrial chemicals

had to demonstrate that certain reportable ingredients in manufacturer's dyes were liver toxicants to obtain order compelling manufacturer to provide discovery responses pertaining to those ingredients in action for indemnity and contribution by which distributor sought to recover amounts it had paid in settlement of products liability claims, pursuant to theory that chemicals in manufacturer's dyes had caused claimant's liver disease and manufacturer had failed to properly warn of dangers of liver damage from exposure to its dyes.

**[2] Federal Civil Procedure** 🔑1271

170Ak1271 Most Cited Cases
In response to resisting party's challenge to its discovery requests on grounds of relevance, requesting party had obligation to demonstrate threshold relevance of discovery requests.

**[3] Federal Civil Procedure** 🔑1272.1

170Ak1272.1 Most Cited Cases
Discovery seeking information about prior claims and lawsuits against dye manufacturer related to manufacturer's products and chemical compounds used therein was relevant to notice and causation elements of failure-to-warn claim upon which distributor of hydraulic oils and industrial chemicals relied in pursuing indemnity and contribution from manufacturer for settlement that distributor paid to products liability claimant, and therefore distributor, in seeking to compel such discovery, did not have to demonstrate good cause pursuant to rule allowing for discovery of matters relevant to subject matter of litigation upon good cause showing. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[4] Federal Civil Procedure** 🔑1272.1

170Ak1272.1 Most Cited Cases
Relevance of evidence for discovery purposes is viewed more liberally than relevance for evidentiary purposes. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.; Fed.Rules Evid.Rule 401, 28 U.S.C.A.

**[5] Federal Civil Procedure** 🔑1267.1

170Ak1267.1 Most Cited Cases
Broad discretion is given to the trial court in determining relevance of evidence for discovery purposes. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[6] Products Liability** 🔑15

2005 WL 1115861                                                                                    Page 2
  --- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

313Ak15  Most Cited Cases
Under Maryland law, products liability plaintiff must prove that plaintiff's exposure to allegedly defective product was proximate cause of plaintiff's injury.

**[7]** Federal Civil Procedure 🗝️1272.1
170Ak1272.1  Most Cited Cases
Information about same or similar claims that had been asserted against dye manufacturer was relevant to failure-to-warn claim asserted by distributor of hydraulic oils and industrial chemicals in its action against manufacturer for indemnity and contribution to the extent that such claims, like the failure-to-warn claim, involved alleged dangers of liver damage due to exposure to manufacturer's dyes, including strict liability or negligence claims resting on theories other than failure to warn, and therefore such information could be discovered by distributor, but distributor could not discover information related to claims, complaints, or litigation concerning any other dangers of exposure to manufacturer's products or sufficiency of related product warnings. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.; Fed.Rules Evid.Rule 401, 28 U.S.C.A.

**[8]** Federal Civil Procedure 🗝️1272.1
170Ak1272.1  Most Cited Cases
Information as to other claims, complaints, and lawsuits brought against dye manufacturer based on products that had same chemical compounds as those contained in dyes underlying failure-to-warn claim of distributor of hydraulic oils and industrial chemicals could be probative of what manufacturer knew or

shown have known about dyes' liver toxicity and could also provide admissible evidence on causation, and therefore distributor could obtain discovery as to such products, without first proving products' substantial similarity to targeted dyes, in its action for indemnity and contribution arising from settled products liability case, given manufacturer's failure to demonstrate irrelevance or overarching harm that discovery would cause; substantial similarity was established, for discovery purposes, by limiting request to products containing same liver toxic chemical constituents in dyes. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

**[9]** Federal Civil Procedure 🗝️1271
170Ak1271  Most Cited Cases
Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper, given the broad and liberal construction of the federal discovery rules, and this includes instances in which resisting party asserts that

discovery is irrelevant.

**[10]** Evidence 🗝️99
157k99  Most Cited Cases
At trial, offering party bears the burden of demonstrating evidence's relevance.

**[11]** Federal Civil Procedure 🗝️1271
170Ak1271  Most Cited Cases
Burden on question of relevance does not shift from party resisting discovery to proponent of discovery request, at least not once threshold relevance is demonstrated.

**[12]** Federal Civil Procedure 🗝️1270
170Ak1270  Most Cited Cases
There are grounds, such as burdensomeness, upon which a party can resist relevant discovery.

**[13]** Federal Civil Procedure 🗝️1272.1
170Ak1272.1  Most Cited Cases
For purposes of failure-to-warn claim asserted by distributor of hydraulic oils and industrial chemicals against dye manufacturer, in action for indemnity and contribution arising out of settled products liability case, information about claims, complaints, and lawsuits that were asserted against manufacturer based on its products that were substantially similar to targeted dyes and arose after products liability claimant developed liver disease allegedly due to exposure to dyes could be relevant as to causation, and thus could be discovered.

**[14]** Federal Civil Procedure 🗝️1272.1
170Ak1272.1  Most Cited Cases
Post-accident discovery is allowed in products liability actions, even though only earlier accidents can be relevant to the issue of notice, given that causation is an issue affected only by the circumstances and the equipment, and is not related to the date of the occurrence.

**[15]** Federal Civil Procedure 🗝️1512
170Ak1512  Most Cited Cases

**[15]** Federal Civil Procedure 🗝️1515
170Ak1515  Most Cited Cases

**[15]** Federal Civil Procedure 🗝️1581
170Ak1581  Most Cited Cases

**[15]** Federal Civil Procedure 🗝️1600(3)
170Ak1600(3)  Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1115861                                                                          Page 3
 --- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

Interrogatory and request for production of documents by which distributor of hydraulic oils and industrial chemicals sought identification of all persons, except expert witnesses, with discoverable information tending to support position taken or expected to be taken by dye manufacturer in distributor's action for indemnity and contribution arising from settled products liability case, as well as documents related to identified persons, were overly broad and sought work product information to the extent that responding counsel were required to decide what information tended to support particular legal position, and therefore manufacturer could not be compelled to respond.

**[16]** Federal Civil Procedure ☞1515
170Ak1515 Most Cited Cases
Interrogatory violated work product doctrine by requiring defendant, if it intended to rely upon any documents or other tangible things to support position taken or intended to be taken in action, to provide brief description, by category and location, of such documents or things and persons having control thereof.

**[17]** Federal Civil Procedure ☞1581
170Ak1581 Most Cited Cases
Request for production of documents that requested "[a]ll documents that relate or refer to the allegations in this case" was too broad, precluding order compelling compliance.

**[18]** Federal Civil Procedure ☞1501
170Ak1501 Most Cited Cases

**[18]** Federal Civil Procedure ☞1581
170Ak1581 Most Cited Cases
Interrogatory and request for production of documents that sought information about all licenses and certificates obtained by dye manufacturer in past 10 years, production of all licenses or certificates to sell products for past five years, and information as to whether licenses or certificates were suspended or revoked, whether renewal of licenses or certificates was refused or delayed, and surrounding facts were too broad and non-specific, and therefore distributor of hydraulic oils and industrial chemicals was not entitled to order compelling such discovery in its action for indemnity and contribution arising out of settled products liability case.

**[19]** Federal Civil Procedure ☞1272.1
170Ak1272.1 Most Cited Cases
Distributor of hydraulic oils and industrial chemicals

was not precluded from seeking discovery as to toxic chemical constituents of brake cleaner that allegedly caused liver disease of claimant in settled products liability case by failure of complaint, in distributor's subsequent action for indemnity and contribution against distributor of brake cleaner, to specifically identify those constituents, but oils and chemicals distributor could not obtain discovery as to trichloroethane, which it did not identify as liver toxicant, without threshold showing of relevance, and could not obtain discovery as to methyl chloride in the absence of evidence that brake cleaner contained that substance. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

**[20]** Federal Civil Procedure ☞1272.1
170Ak1272.1 Most Cited Cases
Discovery rule's focus on the specific claim or defense alleged in pleadings does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

**[21]** Federal Civil Procedure ☞1272.1
170Ak1272.1 Most Cited Cases
Information about claims and lawsuits that were brought against distributor of brake cleaner both before and after products liability claimant's employment with company to which distributor provided products was relevant to notice and causation elements of failure-to-warn claim asserted by distributor of hydraulic oils and industrial chemicals in its action for indemnity and contribution arising from its settlement of claimant's case, and therefore oils and chemicals distributor could obtain discovery as to those claims and lawsuits against brake cleaner distributor which involved products containing perchloroethylene and were alleged to cause liver damage for 10 years preceding date of original discovery requests.

**[22]** Federal Civil Procedure ☞1506
170Ak1506 Most Cited Cases
Interrogatory that required answering party to state in detail the entire basis for any contention that it did not cause or contribute to injuries and damages alleged in complaint was overbroad and demanded proof of a negative, and thus did not have to be answered.

**[23]** Federal Civil Procedure ☞1581
170Ak1581 Most Cited Cases
Discovery request that sought production of all documents relied upon in answering propounded

interrogatories was overbroad, precluding order compelling compliance.

**[24]** Federal Civil Procedure ⟪⟫1534
170Ak1534 Most Cited Cases
Plaintiff in action for indemnity and contribution arising out of settled products liability case could not respond to interrogatories through reference to certain boxes of files of documents when interrogatories posed questions of fact or mixed questions of law and fact that required exercise of particular knowledge and judgment on plaintiff's part. Fed.Rules Civ.Proc.Rule 33(d), 28 U.S.C.A.

**[25]** Federal Civil Procedure ⟪⟫1503
170Ak1503 Most Cited Cases
Interrogatory that required plaintiff in action for indemnity and contribution arising out of settled products liability case to state date on which persons identified in other answers to interrogatories first had knowledge of facts set forth in those answers and identify documents relied upon was impermissibly overbroad and would, if answered, produce much tangential, if not irrelevant, information, and therefore plaintiff would not be compelled to respond.

**[26]** Federal Civil Procedure ⟪⟫1503
170Ak1503 Most Cited Cases

**[26]** Federal Civil Procedure ⟪⟫1506
170Ak1506 Most Cited Cases

**[26]** Federal Civil Procedure ⟪⟫1515
170Ak1515 Most Cited Cases
Date on which distributor of hydraulic oils and industrial chemicals first identified conduct of brake cleaner distributor as proximate cause of or contributing factor to injuries suffered by claimant in settled products liability case underlying oils and chemicals distributor's action for indemnity and contribution was questionably relevant and approached inquiry into work product, and therefore oils and chemicals distributor would not be compelled to reply to interrogatory seeking such information, but it was required to provide factual basis for contention that conduct of brake cleaner distributor was proximate cause or contributing factor, without reference to documents.
Karen Ann Doner, Williams Mullen Clark and Dobbins, McLean, VA, Lynn Kanaga Brugh, IV, Williams Mullen, Richmond, VA, for The United Oil Company, Inc.

James A. Dunbar, Venable Baetjer and Howard LLP, Towson, MD, Kathleen F. Sullivan, Venable LLP, Baltimore, MD, for Parts Associates, Inc.

Joseph William Hovermill, John Celeste, Miles and Stockbridge PC, Baltimore, MD, Howard M. Klein, Kelly Grace Huller, Nancy J. Gellman, Conrad O'Brien Gellman and Rohn PC, Philadelphia, PA, for Rohm and Haas Company.

*MEMORANDUM AND ORDER*

GAUVEY, United States Magistrate Judge.

*BACKGROUND*
 **\*1** United Oil Company, Inc. ("United Oil"), a distributor of hydraulic oils and industrial chemicals has brought an action in indemnity and contribution to recover the $820,098.89, which it paid to Mr. and Mrs. Jerry Tiede in settlement of their product liability claims against United Oil. Plaintiff sued Rohm & Haas ("R & H") as the manufacturer of dyes to which Mr. Tiede was allegedly exposed and sued Parts Associates ("Parts") as the distributor of the Fleet-Fill brake cleaner to which Mr. Tiede was allegedly exposed. United Oil's expert, Dr. Kenneth Brown, has opined that certain chemicals in the dyes, specifically xylene and ethyl benzene, and in the brake cleaning fluid, specifically perchloroethylene (a.k.a tetrachloroethylene) caused Mr. Tiede's liver disease. [FN1]

Presently pending before the Court are three discovery motions: motion to compel discovery by the United Oil Company, Inc. (Paper No. 31); motion to compel discovery by The United Oil Company, Inc. (Paper No. 42); and Motion to compel discovery by Parts Associates, Inc. (Paper No. 45.) A hearing was held on January 6, 2005. The Court will consider each motion in turn.

**Plaintiff United Oil Company's Motion to Compel R & H to Answer
Interrogatories & Requests (Paper Nos. 31, 35 & 39)**
 United Oil complains in this discovery motion that R & H has refused to produce four general categories of information, which it seeks to compel. The Court will discuss each category of information in turn.

**-- Prior Claims and Lawsuits related to the products and chemical compounds at issue here. [FN2]**

 **[1]** The theory of the lawsuit against R & H and

2005 WL 1115861                                                                                        Page 5
 --- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

Parts is a failure to properly warn about the dangers of liver damage, specifically hepatitis, from exposure to R & H's red and blue dyes and Parts' brake cleaner. United Oil asserts that "R & H and Parts Associates' knowledge about these dangers is ... relevant [to the failure to warn]. In addition, information concerning any other claims or lawsuits, whether before or after Mr. Tiede's injuries, is relevant on the issue of causation." (Paper No. 87 at 2.)

 [2] R & H challenges the discoverability of this information based on lack of relevance. To evaluate R & H's challenge, the Court must determine the standard of relevance at the discovery stage and which party carries the burden on the issue of relevance at the discovery stage--the propounding or resisting party. For the reasons set forth below, the Court has determined that United Oil had the obligation to demonstrate threshold relevance of discovery requests to its failure to warn claim under applicable rules and case law, that United Oil successfully made such a showing, and that R & H, as the resisting party, did not demonstrate and support the irrelevance of the discovery requests under governing law.

 [3] Rule 26 governs discovery entitlement and provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ...." [FN3] Fed.R.Civ.P. 26(b)(1). While the Federal Rules of Civil Procedure do not define relevance, the Federal Rules of Evidence do, as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Or, as rephrased in the commentary, "[d]oes the item of evidence tend to prove the matter sought to be proved?"

 *2 Contrary to R & H's suggestion, the 2000 amendments to Rule 26 have not effected any radical change in the availability of discovery in this situation. "The present standard--'relevant to the claim or defense of any party'--is still a very broad one." 8 Wright, Miller & Marcus, *Federal Practice and Procedure:* Civil 2d § 2008 (Supp.2004). *See also* Christopher G. Frost, Note, *The Sound and the Fury or the Sound of Silence,* 37 Ga. L.Rev. 1039, 1067 (Spring 2003). ("All of the reported cases [post 2000 amendments] seem to stand for the proposition, whether expressly or impliedly, that a requesting party need only make a rudimentary showing of relevance by articulating a cogent nexus between a claim or defense and the piece of information sought-

-a request that appears relevant on its face.")

 [4][5] Moreover, relevance for discovery purposes is viewed more liberally than relevance for evidentiary purposes. *See, e.g., Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 198 (N.D.W.Va.2000); *Hofer v. Mack Trucks,* 981 F.2d 377, 380 (8th Cir.1992) (cases cited therein). And, of course, broad discretion is given to the trial court in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross,* 974 F.2d 482 (4th Cir.1992).

 [6] The commentary to the 2000 amendments to Fed.R.Civ.P. 26 admonishes courts to "focus on the actual claims and defenses involved in the action" in determining relevance. United Oil has brought a failure to warn claim against the defendants. To prove a failure to warn claim, plaintiff must prove, *inter alia,* that the supplier or manufacturer "knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied [or manufactured]." Restatement (Second) of Torts § § 388, 394. And, of course, as in any tort case, plaintiff must prove that the exposure was a proximate cause of Mr. Tiede's injury. *See, e.g.,* Maryland Civil Pattern Jury Instructions § 19:10 (4th ed.2004) (listing cases that deal with proximate cause).

 Courts have allowed plaintiffs to introduce evidence of substantially similar occurrences or lawsuits on the issue of notice and causation. 3 Frumer & Friedman, *Products Liability* § 18.02[1][b]-[g] (2004); 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.41[1][a] (3d ed.2004). ("[O]ther incidents similar to, or involving the same product as, the incident in the lawsuit ... may be relevant to the claims and defenses under certain circumstances.)" Accordingly, there appears to be little dispute that R & H's notice of claims, complaints or lawsuits regarding the dyes, or products "substantially similar" to the dyes would be admissible on the notice and causation elements of the failure to warn claim.

 The question thus becomes whether United Oil is entitled to the discovery it seeks: information on claims, complaints and lawsuits involving R & H products (other than the dyes) containing xylene and ethyl benzene as substantially similar products.

 *3 R & H acknowledges that "some courts have permitted discovery of other litigation where it involves (1) the same or similar claims arising from (2) the same or similar products at issue." (Paper No. 86 at 4). Indeed, that is the widely-accepted view.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 2005 WL 1115861 (D.Md.))**

"[D]iscovery of similar, if not identical, models is routinely permitted in product liability cases." *Culligan v. Yamaha Motor Corp.,* 110 F.R.D. 122, 126 (S.D.N.Y.1986). "[Discovery] of other accidents involving similar products is relevant in products liability cases to show notice to defendants of the danger and cause of the accident." *In re Aircrash Disaster Near Roselawn, Ind., Oct., 31,1994,* 172 F.R.D. 295, 306 (N.D.Ill.1997). *Accord Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261, 1268 (7th Cir.1988); *Gardner v. Q.H.S.,* 448 F.2d 238, 244 (4th Cir.1971). Moreover, courts have allowed discovery of information regarding the same component part in a different product in a number of product defect cases. *See, e.g., Fine v. Facet Aerospace Products Co.,* 133 F.R.D. 439, 441 (S.D.N.Y.1990) ("Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation."); *Schaap v. Executive Industries, Inc.,* 130 F.R.D. 384, 387 (N.D.Ill.1990) (holding information concerning similar models that have the same component parts to be discoverable); *Bowman v. General Motors Corp.,* 64 F.R.D. 62, 70-71 (E.D.Pa.1974) (allowing discovery of information about subsequent vehicle model with similar fuel system); *Uitts v. General Motors Corp.,* 58 F.R.D. 450, 451 (E.D.Pa.1972) (allowing discovery of all information relating to similar accidents in vehicles manufactured by defendant with a spring identical to the one at issue). However, R & H makes two arguments in resisting the scope of discovery United Oil seeks here.

[7] First, R & H argues that "the same or similar claims" should be limited to failure to warn claims both involving exposure to the identified dyes and alleging liver damage. The Court agrees in part. The claim here against R & H is for the failure to sufficiently warn as to the dangers of exposure to the dyes as to liver damage. Claims, complaints, and litigation about other dangers and the sufficiency of the product warning as to those dangers are plainly not relevant, as that evidence would not "tend to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Obviously, claims involving alleged heart disease as a result of exposure to the dyes would not assist the trier of fact to determine what the manufacturer knew or reasonably should have known about the effect of exposure to the liver. *See, e.g., Renfro v. Black,* 52 Ohio St.3d 27, 556 N.E.2d 150 (1990)(concluding that where plaintiff suffered paralysis as adverse reaction to a drug, evidence of other adverse reactions to drug was not admissible to show prior knowledge on part of drug manufacturer on issue of duty to warn in products liability suit absent proffer of evidence showing how other reactions were substantially similar to circumstances leading to patient's paraplegia). However, other strict liability or negligence claims against the manufacturer alleging liver damage as a result of exposure to the dyes or their identified liver toxic chemical constituents could constitute a "similar claim" as they could demonstrate defendant R & H's knowledge of risks posed by xylene and ethyl benzene.

**\*4** [8] Second, as to the "same or similar products" prong, R & H argues that the mere fact that other R & H products contain xylene or ethyl benzene-- in any amount--does not make those products the "same or similar" to the subject dyes for purposes of relevancy and discoverability in this case. (Paper No. 86 at 5).

Neither R & H's nor the Court's research has revealed any case directly on point. However, review of Rule 26 and the core principles of relevancy and discovery and existing case law suggest that discovery of R & H's knowledge of the dangers of exposure to xylene and ethyl benzene to the liver through claims, complaints, and lawsuits regarding *other* products containing these chemical compounds is probative of what R & H knew or should have known about the liver toxicity of the dyes at issue here and may also provide admissible evidence on causation.

Plaintiff's position is that claims, complaints, and lawsuits regarding liver damage from exposure to other products containing xylene and ethyl benzene would demonstrate R & H's notice of the liver toxicity of the dyes at issue here. In theory, that seems correct. Of course, it may well be that the claims, complaints, and lawsuits, if any, will concern products so different in formulation, so different in the quantity of the liver toxic chemical constituents or method of exposure, that the trial judge would exclude the evidence of these claims. Essentially, R & H posits that at this point in the litigation United Oil must prove the substantial similarity of other R & H products, containing, as they logically do, different amounts of the chemical constituents, different formulations, and possibly a different method of exposure. The Court disagrees.

[9] Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal

**(Cite as: 2005 WL 1115861 (D.Md.))**

construction of the federal discovery rules.
*DIRECTV, Inc. v. Trone,* 209 F.R.D. 455, 458
(C.D.Cal.2002); *Aircrash Disaster,* 172 F.R.D. 295,
307 (N.D.Ill.1997); *Obiajulu v. City of Rochester,*
166 F.R.D. 293, 295 (W.D.N.Y.1996); *Nestle Foods
Corp. v. Aetna Cas. and Sur. Co.,* 135 F.R.D. 101
(D.N.J.1990). This includes, of course, where the
resisting party asserts that the discovery is irrelevant.
*Chavez v. DaimlerChrysler Corp.,* 206 F.R.D. 615,
619 (S.D.Ind.2002); *National Credit Union Admin. v.
First Union Capital Markets Corp.,* 189 F.R.D. 158
(D.Md.1999); *Schaap v. Executive Industries, Inc.,*
130 F.R.D. 384, 386 (N.D.Ill.1990); *Spell v. Daniel,*
591 F.Supp. 1090, 1114 (E.D.N.C.1984).

 [10] By contrast at the trial, it is the offering party
that bears the burden of demonstration of relevance.
It is at that juncture that courts require the plaintiff to
demonstrate the "substantial similarity" of other
accidents, complaints, claims or lawsuits. [FN4]
*Drabik v. Stanley-Bostitch, Inc.,* 997 F.2d 496, 508
(8th Cir.1993) (placing burden on plaintiffs for
evidence of other accidents); *Cooper v. Firestone
Tire & Rubber Co.,* 945 F.2d 1103, 1105 (9th
Cir.1991) (requiring a "showing" of substantial
similarity when a plaintiff attempts to introduce
evidence of other accidents as direct proof of
negligence, a design defect, or notice of a defect.);
*Buckman v. Bombardier Corp.,* 893 F.Supp. 547, 552
(E.D.N.C.1995) (placing burden on plaintiff for the
introduction of evidence of "substantially similar"
accidents).

 **\*5** Some courts in product liability cases, however,
require parties to evince some "threshold showing of
relevance" of its discovery request. *See e.g., Hofer v.
Mack Trucks,* 981 F.2d 377, 380 (8th Cir.1992);
*McCoy v. Whirlpool Corp.,* 214 F.R.D. 642, 643
(D.Kan.2003) (requiring the requested discovery to
"appear[ ] relevant on its face"); *Chavez v.
DaimlerChrysler Corp.,* 206 F.R.D. 615, 619
(S.D.Ind.2002) (the discovery must "appear [ ]
relevant"); *Tucker v. Ohtsu Tire & Rubber Co.,* 191
F.R.D. 495, 497 (D.Md.2000). *State Farm Fire and
Cas. Co. v. Black & Decker, Inc.,* 2003 WL 103016,
2003 U.S. Dist. LEXIS 375 (E.D.La.2003); *see also
Beach v. City of Olathe,* 97 F.Supp.2d 1065
(D.Kan.2000) (the discovery must "appear" relevant).
When this threshold or apparent relevance is
demonstrated, these courts shift the burden to the
resisting party to establish the lack of relevance by
demonstrating that the requested discovery (1) does
not come within the broad scope of relevance as
defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such
marginal relevance that the potential harm

occasioned by discovery would outweigh the
ordinary presumption of broad discovery. [FN5]

 [11] Accordingly, the law does not shift the burden
on the question of the relevance from the party
resisting discovery to the proponent of the discovery,
at least after threshold relevance is demonstrated, as
discussed below.

 Nonetheless, R & H attempts to resist the discovery
pointing out:
> [a]lthough two products may contain one or more
> of the same constituent chemicals such as xylene
> and ethyl benzene, the toxicity level of each of the
> final end products may vary greatly depending on
> what other chemicals and concentrations are mixed
> in. Thus, despite United Oil's assertion, it cannot be
> said that merely because another product contains
> xylene or ethyl benzene--in any--amount--that
> product is the "same or similar" to the dyes for the
> purpose of relevancy and discoverability in this
> case.

 (Paper No. 86 at 5). However, R & H notably does
not contest that xylene and ethyl benzene are liver
toxicants. (Paper No. 86 Exhs. A, B & D). The Court
believes that substantial similarity has been
established for discovery purposes by the limitation
of the discovery request to other products containing
the same admittedly liver toxic chemical constituents
in the dyes.

 The Court is not insensitive to R & H's arguments
that the manner of application, quantity of the
particular chemical component, and indeed the
different formula of the product might affect the level
of toxicity of the constituent chemical and thus the
duty to warn. However, R & H's arguments are
lawyerly, though quite effective in raising questions
about the similarity of products in terms of relative
dangerousness, etc. But, R & H has only raised
lawyerly issues and has not provided scientific
support for its argument, which in effect is that none
of R & H's other (unidentified) products contain
xylene or ethyl benzene in the quantity or in a similar
formulation to be a comparator to the blue and red
dyes at issue here. Courts have been unwilling to
limit discovery as to allegedly substantially similar
incidents on a defendant's "unverified and factually
unsupported claim that the other incidents in which it
has been involved are 'substantially dissimilar' from
the plaintiff's allegations...." *Amcast Indus., Corp. v.
Detrex Corp.,* 138 F.R.D. 115, 120 (N.D.Ind.1991).
Of course, R & H is in a far superior position to
identify its products during the relevant period that
contained the liver toxicants, and to present the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

testimony of its chemists as to the lack of similarity of other products in terms of liver toxicity. Accordingly, R & H has not demonstrated the irrelevance of the discovery sought or any overarching harm that the discovery would cause, in light of an argued marginal relevance of the information sought.

**\*6** The refinement of the issue is for consideration at trial. Ultimately, the trial judge, with the assistance of expert scientific testimony, will determine whether notice as to other products (assuming there are claims, etc. for other products containing the subject chemical components) should be admitted for the jury's consideration on whether R & H had notice of the liver toxicity of xylene and ethyl benzene in the subject dyes by claims of liver damage due to exposure to other products containing the same chemical components (which are indisputably toxic to the liver) and whether other incidents involving the same chemical constituents demonstrate causation here.

United Oil is entitled to discovery of those products containing the same injury-causing chemical compounds exposure to which United Oil asserts resulted in Mr. Tiede's liver damage. *See Fine v. Facet Aerospace Prod. Co.,* 133 F.R.D. 439, 441 (S.D.N.Y.1990) ("Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation.")

If discovery reveals that R & H received claims, complaints, and lawsuits complaining of liver damage involving other products containing the subject chemical compounds, it will be the plaintiff's responsibility to show that notice as to the dangerous properties of those products--with different amounts of xylene and/or ethyl benzene and in different formulation--should have put R & H on notice of the dangerous properties of the red and blue dyes and of the insufficiency of the existing warning. To decide that issue now--without knowledge of how similar the amounts, formulation, etc. of the other products and without scientific input and context--would be premature and possibly deprive plaintiff of discovery which might demonstrate notice and causation in similar exposure situations.

[12] Of course, there are other grounds, such as burdensomeness, upon which a party can resist even relevant discovery. While R & H has complained generally about the burdensomeness of such a discovery request (Paper No. 86, 8), R & H has not

demonstrated that burden with the requisite specificity and formal affidavit. *See Tucker v. Ohtsu Tire and Rubber Co.,* 191 F.R.D. 495, 498 (D.Md.2000); *Oleson v. Kmart Corp.,* 175 F.R.D. 560, 565 (D.Kan.1997).

Accordingly, the Court grants the motion to compel answers to interrogatory nos. 15 (as modified in the June 2, 2004, meet and confer conference) and 16 (limited to the last 10 years) and requests for production nos. 20 (limited to the last 10 years) and 27(limited to the last 10 years). [FN6] Unless the parties have agreed otherwise, the ten years shall be measured backwards from the date of the discovery request.

[13][14] Information about claims, complaints, and lawsuits about other substantially similar products post-incident may be relevant as to causation and would be admissible for causation only. "While an accident occurring after the one under investigation might not have been relevant to show defendant's prior knowledge or notice of a product defect, it may have been highly relevant to causation...." *Dollar v. Long Mfg.,* 561 F.2d 613, 617 (5th Cir.1977). Post-accident discovery is allowed because "[w]hile only earlier accidents can be relevant to the issue of notice, causation is an issue affected only by the circumstances and the equipment, and is not related to the date of the occurrence." *Uitts v. Gen'l Motors Corp.,* 58 F.R.D. 450, 452 (E.D.Pa.1972). Accordingly, United Oil is entitled to post-incident discovery, which the definition of the 10-year period permits.

**\*7** As to request for production no. 22, [FN7] it is too broad as drafted, and the request should be limited to defined categories of documents and to a 10 year period. However, within 10 business days of this Memorandum and Order, United Oil may pose a request for defined categories of documents.

As to request no. 23, [FN8] it is too broad as drafted, and the request should be limited to the chemicals at issue and to defined categories of documents and for a 10 year period. Again, within 10 business days of this Memorandum and Order, United Oil may pose a request for defined categories of documents.

Of course, in conformance with local rules, a privilege log should be produced, if privilege is asserted, as it was in R & H's answer to interrogatory no. 15 and request nos. 22 and 23.

**-- Persons with Knowledge**

2005 WL 1115861                                                                          Page 9
--- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

[15] As to the interrogatory no. 9 [FN9] and request no. 17 [FN10] seeking the identification of persons with knowledge, the Court agrees with R & H that this interrogatory and request are too broad and appear to seek work-product in terms of requiring the responding counsel to decide what information "tends to support" a particular legal position. However, within 10 business days of this Memorandum and Order (and if United Oil has not received the information as a result of R & H corporate designee's deposition), United Oil may pose a more tailored interrogatory and request as to specific areas of knowledge. R & H shall answer by identifying specific employees or consultants, their titles and departments, and the subject matter of their knowledge. The Court agrees with United Oil that R & H clearly employs persons with knowledge of toxicity of the subject chemicals and whom (should be identified) once properly tailored interrogatories are propounded.

[16] Similarly, as formulated, the Court agrees with R & H that interrogatory no. 12 [FN11] violates the work-product doctrine. However, within 10 business days of this Memorandum and Order, United Oil may pose a proper interrogatory asking for the custodian of substantive categories of relevant documents--not all documents that defendant R & H believes supports its positions, without greater specificity.

In response to these discovery requests, R & H asserts certain privileges and must provide a privilege log as to specifically withheld documents.

**-- Discovery Regarding Denials and Affirmative Defenses**

The Court grants the motion to compel as to interrogatory no. 3 (the answer to which appears non-responsive), interrogatory no. 4, and request no. 4. [FN12] R & H should clarify if it is claiming that Material Safety Data Sheets are the only responsive documents; otherwise, R & H should produce other responsive documents and schedule on a privilege log any documents withheld on that basis.

The Court also grants the motion to compel as to the listed "contention" interrogatories 5, 6, 7, and 8, [FN13] and responses are due within 10 business days of this Memorandum and Order.

*8 [17] The Court denies the motion to compel as to request for production no. 3 as too broad. [FN14]

The Court grants the motion as to request for production no. 7 insofar as it tracks the substance of the R & H answer to interrogatory no. 8, request no. 8 as to documents showing the negligence of United Oil, if any, and request no. 9. [FN15]

**-- Documents regarding regulatory framework**

[18] The Court denies the motion to compel as to interrogatory 17 and request for production no. 24 as too broad and non-specific. [FN16]

**R & H shall provide all ordered discovery responses within 15 business days of the date of this Memorandum and Order.**

**Plaintiff United Oil's Motion to Compel Parts Associates (Paper Nos. 42, 48 and 51)**

In its motion to compel, United Oil complains about Parts' refusal to produce four categories of documents: (1) information concerning substances other than those identified in United Oil's complaint; (2) information that post-dates the filing date of the underlying Tiede action (December 2000); (3) prior claims and lawsuits related to the chemicals at issue in the case; and (4) documents and persons who will support Parts' denials and affirmative defenses as stated in its Answer and other responsive pleadings. The Court will discuss each category in turn.

**-- Information concerning substances other than those identified in United Oil's complaint**

[19][20] Parts argues that United Oil has no entitlement to discovery about products or chemical constituents not mentioned in the complaint. [FN17] The Court disagrees. The fact that the complaint does not specifically identify the toxic chemical constituents in the Fleet Fill brake cleaner, does not, in the Court's opinion necessarily preclude discovery as to those toxic chemical constituents. The focus of the 2000 amendments to Rule 26 on the specific claim or defense alleged in the pleadings "does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact." 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.41[2][a] (3d ed.2004). On the other hand, that does not mean, of course, that discovery is limitless. United Oil has alleged that exposure to Fleet Fill brake cleaner was a cause of the liver disease of Mr. Tiede and that United Oil is entitled discovery of the Parts' knowledge of the liver toxicity of the products it distributed. There is no apparent disagreement that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 2005 WL 1115861 (D.Md.))**

Fleet Fill contains perchloroethylene, that it is a liver toxicant, and that perchloroethylene is also known as tetrachloroethylene. (Paper No. 42 at 12; Paper No. 48, Exh. 1). The complaint identifies both perchloroethylene and trichloroethane as the injury-causing constituents of Fleet Fill. (Paper No. 1 at ¶ ¶ 10, 23, 24). The 1990 MSDS for Fleet Fill Brake Cleaner also lists trichloroethane as a "hazardous component." (Paper No. 51 Exh. 3). While the MSDS also states that the health hazards of the product include liver damage under certain circumstances, it is unclear which component poses that risk. Neither Dr. Brown's report nor any of the briefing papers or oral argument indicate that this ingredient is a liver toxicant. Until plaintiff provides some evidence of threshold relevance or the parties otherwise agree, Parts is not required to provide discovery responses specifically as to trichloroethane.

**\*9** The complaint does not reference methyl chloride. Neither of the MSDSs in Parts' possession show Fleet Filler to contain methyl chloride. Based on counsel's representations at the hearing, the Court finds that Parts has made reasonable efforts to obtain any additional MSDSs from the now defunct manufacturer of the Fleet Fill brake cleaner. United Oil has no evidence that Fleet Fill specifically (as opposed to brake cleaners in general) contained methyl chloride. Accordingly, Parts is not required to answer any discovery requests as to methyl chloride.

   **-- Prior claims and lawsuits related to the chemicals at issue in the case**

 Parts resists providing discovery of other products it distributes containing the same toxic chemicals contained in Fleet Fill brake cleaner. Parts asserts such information is not relevant to any claim and further asserts that United Oil has not demonstrated the "good cause" necessary for subject matter discovery. [FN18] (Paper No. 48 at 5).

 For the same reasons set out above in the ruling on United Oil's motion against R & H, the Court believes that discovery of "substantially similar" products is relevant to the claim of failure to warn and thus not subject to proof of good cause before discovery entitlement. At this discovery phase, the Court finds that the presence of the same toxic chemical constituent in other products establishes threshold relevance for discovery purposes regarding those other products' information.

 [21] Parts also challenges the discoverability of information on claims and lawsuits either before or after Mr. Tiede's employment at Johnson Control. As discussed *supra,* the Court rejects the argument that discovery should be limited solely to the Fleet Fill brake cleaner and solely during the period of Mr. Tiede's employment. Courts admit evidence of notice derived from earlier claims and lawsuits of the same or similar products for purposes of establishing notice and causation in a failure to warn case. The relevant time period is not defined by Mr. Tiede's period of employment nor are the relevant products only those distributed to Johnson Control. As in the case of R & H, Parts is ordered to produce information about all claims and lawsuits that involved products it distributed containing perchloroethylene (tetrachloroethylene) and alleged to cause liver damage for ten years (dated back from the date of the original discovery requests).

   **-- Information which post-dates the date the underlying Tiede action was filed**

 Parts argues that no good cause has been demonstrated for information post-dating the Tiede complaint. (Paper No. 48 at 7). As stated *supra,* United Oil does not have a good cause burden for discovery related to its claim and courts have found that post-incident data can be relevant to causation.

 Accordingly, as to these first three categories of information, the Court grants the motion to compel.

 -- Interrogatory no. 15  [FN19]--The defendant need only have answered this interrogatory as to Fleet-Fill Brake Cleaner and its constituents. For the reasons discussed *supra,* United Oil is certainly entitled to information of proceedings or lawsuits alleging personal injury of the type alleged here-- liver damage--regarding the Fleet Fill brake cleaner and proceedings or lawsuits involving the toxic constituents of Fleet Fill. Moreover, because post-Tiede information may be relevant to causation, Parts should have answered through the date of its answer to this discovery request. In its supplemental response, it appears to have done so notwithstanding its objections, but if not, Parts Associates shall do so. However, given assertion of privilege, defendant should either attach a privilege log or confirm that there are no responsive privileged documents.

 **\*10** -- Request no. 14  [FN20]--(only related to any policies dealing with the sale of Fleet Fill and its hazardous properties).

 -- Request no. 4  [FN21]--(only related to hazardous nature of product).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1115861                                                                                    Page 11
--- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

-- Request no. 6 [FN22]--(only related to hazardous nature of product).

-- Request no. 13 [FN23]--Parts need only answer as to documents relating to the hazardous nature Fleet-Fill Brake Cleaner and its constituents, which it appears to have done. However, because Parts' original response asserted attorney-client, work-product, or other privilege, Parts should provide a privilege log or confirm that no responsive, privileged documents were withheld.

-- Request nos. 20, 21, 22, 23, 27 [FN24]--(only related to hazardous nature of product or constituent, same limits as to interrogatory no. 15 apply).

**-- Documents and persons who will support denials and affirmative defenses**

Parts should answer interrogatories 5, 7, and 17, and requests for production 7, 8, and 9. [FN25]

[22][23] Parts need not further answer interrogatory no. 6, which is overbroad and demands proof of a negative, interrogatory no. 11, which is overbroad and seeks work product, and requests for production 2 and 3, which are overbroad. [FN26]

**-- Documents regarding regulatory framework**

The Court denies the motion to compel an answer to request for production no. 24. [FN27]

The Court grants the motion as to interrogatory nos. 3 and 4 and request nos. 4 and 6, [FN28] but limits Parts' required response to information related only to the hazardous nature of the product or its constituent and its distribution or sale.

Parts is not required to answer any of the interrogatories or requests not mentioned above, as they were overbroad or not relevant, especially in light of burdensomeness, including but not limited to interrogatory no. 16 and requests for production 16 and 24.

**Parts shall provide all ordered discovery responses within 15 business days of the date of this Memorandum and Order.**

**Defendant Parts Associates, Inc.'s Motion to Compel (Paper Nos. 45, 49 and 50)**

[24] The Court grants in part and denies in part the defendant's motion, as set forth below. As a general matter, the Court agrees with Parts that the plaintiff's answers to interrogatories through reference to certain boxes of files of documents is inadequate under Rule 33. Production of documents under Rule 33(d) is inappropriate where, as here, the burden of ascertaining the answer is not the same for defendant as for plaintiff. Rule 33 production is suited to those discovery requests requiring compilation or analysis, accomplished as easily by one party as another, or where neither side has clear superiority of knowledge or familiarity with the documents. Accordingly, Rule 33 is well-suited to reply to inquiries of an intensely objective nature.

Here, however, the interrogatories pose questions of fact or mixed questions of law and fact which require the exercise of particular knowledge and judgment on the part of the responding party. Moreover, United Oil as a defendant in the *Tiede* suit obviously has superior familiarity with the documents at issue.

**\*11** Here defendant Parts has said that even after review of the referenced documents, it still cannot derive the answer to its specific questions. Accordingly, even if the Court accepted the burden of ascertainment as the same between the parties (which the Court does not), or determined that Parts' law firm had the resources to do the necessary review (which the Court does not), the documents do not provide any certain or clear answers to the interrogatories. This Court agrees that "[d]efendants are entitled to know the factual content of plaintiff's claims with a reasonable degree of precision." *Martin v. Easton Publishing Co.*, 85 F.R.D. 312, 315 (E.D.Pa.1980). Thus, as to interrogatory nos. 8, 9, 10, 11, 12, 15 and 16, [FN29] plaintiff should answer completely and specifically rather than by reference to documents.

[25] As to interrogatory no. 13, [FN30] the Court agrees that this interrogatory is impermissibly overbroad, and if answered would produce much tangential if not irrelevant information. Accordingly, the Court denies the motion to compel as to interrogatory no. 13. Parts may pose a reasonably limited number of follow-up interrogatories as to specific persons and specific facts within 10 business days of receipt of the above ordered answers.

[26] As to interrogatory no. 18, [FN31] the Court agrees that the date that United Oil first identified the conduct of Parts as a proximate cause or a contributing factor is questionably relevant and approaches inquiry into work product so the Court

  --- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

denies the motion to compel. However, the defendant is entitled to know the factual basis for plaintiff's contention that Parts' conduct was a proximate cause or a contributing factor, without reference to documents.

 As to the request for documents, the Court grants the motion to compel as to request no. 9, [FN32] as the initial objection asserted a work product privilege and the response referred to the availability of "non-privileged" responsive documents, but no privilege log was provided. The plaintiff should provide a privilege log or state affirmatively that no responsive documents were withheld based on privilege.

 The Court denies the motion to compel as to request no. 21, [FN33] finding the response to that request sufficient at this point in the litigation.

   **United Oil shall provide all ordered discovery within 15 business days of the date of this Memorandum and Order.**

 Accordingly, the Court hereby grants in part and denies in part the motion to compel discovery by the United Oil Company, Inc. (Paper No. 31); motion to compel discovery by the United Oil Company, Inc. (Paper No. 42); and motion to compel discovery by Parts Associates, Inc. (Paper No. 45).

   **Future Schedule**
 The order of referral from Judge Quarles included scheduling revisions associated with these discovery motions. Accordingly, **the fact discovery deadline in this case shall be 90 days from the date of this Memorandum and Order.**

     FN1. Dr. Brown's report only identifies these three chemical compounds as known "liver toxicants." (*See* Paper No. 39 Exhibit A).

     FN2. Plaintiff's discovery requests seeks information regarding Automate Blue 8, Anthraquinone dye, C.I. Solvent Blue 98, Automate Red B, Disazo dye, C.I. Solvent Red 164, Xylene or Ethyl Benzene. According to the Material Safety Data Sheets ("MSDS") provided, "Automate Red B" is the "product ID," "Disazo dye" is the "generic description" of "Automate Red B" and "C.I. Solvent Red 164," "Xylene" and "Ethyl Benzene" are ingredients of the red dye. Similarly, as to the blue dye at issue, "Automate Blue 8" is the product ID and

"Anthraquinone dye" is the generic description and C.I. Solvent Blue 98, Xylene and Ethyl Benzene are ingredients of the dye. The MSDS includes CI Solvent Blue 98 and CI Solvent Red 98 as reportable ingredients in the dyes and "toxicity information" is provided. Plaintiff's discovery requests include these ingredients. It is not clear from Dr. Brown's report or any of the briefing papers or oral argument that these ingredients are liver toxicants. Until plaintiff provides some evidence of same or the parties agree, R & H is not required to provide discovery responses specifically as to CI Solvent Blue 98 or CI Solvent Red 98.

     FN3. The rule further provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1). The 2000 amendments to Rule 26 created these two categories of discoverable information, one as a matter of right and one conditional on proof of good cause. Commentators have noted that "[i]t is [only] at this point where a *new* claim or defense is the focus of discovery not relevant to the current ones that calls for a determination whether to allow discovery that goes to the subject matter limit." *See, e.g.,* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure:* Civil 2d § 2008 (Supp.2004). (emphasis added). For the reasons discussed, the type of discovery sought here is not subject to the demonstration of good cause, as it is relevant to the elements of notice and causation in the claim of failure to warn in this case.
The commentary rejects the bright line urged by the parties here, to allow only discovery as to the specific incident and specific product as a matter of right, with all other discovery requiring demonstration of good cause.
Rather the commentary states:
A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard.
*Id.* Accordingly, the commentary strongly indicates that "same" and, by extension,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1115861                                                                                    Page 13
  --- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

similar incidents, products, etc. are related to the claim, not the subject matter; and therefore discovery is not dependent on demonstration of good cause.

FN4. "The substantial similarity rule may be relaxed [if evidence is used to prove notice or awareness of a dangerous condition rather than causation] and the similarity issue becomes one going to the weight of the evidence." Frumer & Friedman, *Products Liability* § 1802[1][b]; *see also* 2 *Weinstein's Federal Evidence* § 401.08[2] (2d ed.2004); *Benedi v. McNeil-P.P.C., Inc.,* 66 F.3d 1378, 1386 (4th Cir.1995). ("When prior incidents are admitted to prove notice, the required similarity of the prior incidents to the case at hand is more relaxed than when prior incidents are admitted to provide negligence. The incidents need only be sufficiently similar to make the defendant aware of the dangerous situation.") (citations omitted).

FN5. A few courts have held that plaintiffs bear the burden of establishing that the different products are substantially similar and that the discovery is relevant. *Barcenas v. Ford Motor Co.,* 2004 WL 2827249 (N.D.Cal. Dec.9, 2004). *See Piacenti v. General Motors,* 173 F.R.D. 221, 226 (N.D.Ill.1997). But as discussed above, others do not. *State Farm,* 2003 WL 103016, at *4, 2003 U.S. Dist. LEXIS 375, at *11 ("At the discovery stage, however, the plaintiff need not lay the same foundation concerning 'substantial similarity' as would be necessary to support admission into evidence."); *Tucker,* 191 F.R.D. at 497, *Rider v. Caterpillar Tractor,* 1989 WL 106820, at *1 (D.Kan. Aug. 4, 1989) (denying motion to compel for other models, but only based on defense expert affidavit as to the lack of similarity due to differences in wheel base, width, speed, capabilities, etc., *Culligan v. Yamaha,* 110 F.R.D. 122, 124 (S.D.N.Y.1986)) (holding that defendant failed to demonstrate that other models were so dissimilar that testing information for them would not be likely to lead to evidence germane to the defect at issue).

FN6. Interrogatory No. 15: "State whether you have ever been a party in any administrative, civil, or criminal proceeding

or lawsuit arising out of or resulting from personal injury of Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride exposure related to your business, indicating in your answer the case name, case number, name of the complaining party, state, county, and tribunal before whom the proceeding took place."
Interrogatory No. 16: "Identify each and every license or certificate that you have obtained in the past 10 years, and if such license pr [sic] certificate has ever been suspended or revoked, or your renewal has ever been refused or delayed, set forth all the facts surrounding such suspension, revocation, refusal, or delay, including, but not limited to, the date of such suspension, revocation, refusal, or delay, and the reason(s) thereof."
Request for production No. 20: "All deposition and trial transcripts related to any other claims or lawsuits based in whole or in part on alleged hazards of Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride."
Request for production No. 27: "Produce copies of all workers compensation claims filed by defendant employees related to exposure to Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride."
As mentioned previously, R & H need not provide responses with respect to CI Solvent Blue 98 or CI Solvent Red 98. *See supra* note 2.

FN7. Request for production No. 22: "All documents that relate or refer to every claim that has ever been filed against you (whether or not the claim resulted in the filing of a lawsuit) for alleged personal injuries related to Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride."

FN8. Request for production No. 23: "All documents that relate or refer to any administrative, civil, or criminal proceeding or lawsuit arising out of or resulting from the sale of products, including, but certainly not limited to all pleadings, discovery

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1115861                                                                Page 14
--- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

responses, and deposition transcripts in every claim that has ever been filed against you (that resulting [sic] in the filing of a lawsuit) for personal injuries."

FN9. Interrogatory No. 9: "Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, including any position relating to damages, and state the subject matter of the information possessed by that person."

FN10. Request for production No. 17: "All documents that relate or refer to each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action including any position relating to damages."

FN11. Interrogatory No. 12: "If you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in the action, including any claim for damages, provide a brief description, by category and location, of all such documents and other tangible things, and identify all persons having possession, custody, or control of them."

FN12. Interrogatory No. 3: "Identify all federal laws and regulations with which you are required to comply from 1/94 through 10/98 for the manufacture, sale and/or distribution of Automate Blue 8, Anthraquinone dye, C.I. Solvent Blue 98, Automate Red B, Disazo dye, C.I. Solvent Red 164, Xylene, or Ethyl benzene."
Interrogatory No. 4: "Identify all documents that you were required by law and/or regulation to provide to persons and/or organizations to whom you sold Automate Blue 8, Anthraquinone dye, C.I. Solvent Blue 98, Automate Red B, Disazo dye, C.I. Solvent Red 164, Xylene, or Ethyl benzene from 1/94 through 10/98."
Request for production No. 4: "All documents that you were required by law to prepare and maintain for the manufacture and sale of Automate Blue 8, Anthraquinone dye, C.I. Solvent Blue 98, Automate Red B,

Disazo dye, C.I. Solvent Red 164, Xylene, or Ethyl benzene from 1/94 through 10/98."

FN13. Interrogatory No. 5: "Is Automate Blue 8, Anthraquinone dye, C.I. Solvent Blue 98, Xylene, and Ethyl benzene safe for unprotected human exposure under all circumstances? If not, why?"
Interrogatory No. 6: "Is Automate Red B, Disazo dye, C.I. Solvent Red 164, Xylene, and Ethyl benzene safe for unprotected human exposure under all circumstances? If not, why?"
Interrogatory No. 7: "If you contend that you did not cause or contribute to the injuries and damages that are alleged in the Complaint, state in detail the entire basis for such contention."
Interrogatory No. 8: "If you contend that any person(s) other than you caused or contributed to any of the alleged occurrences described in the Complaint, identify the other person(s) and state each and every fact upon which you rely in support of your contention."

FN14. Request for production No. 3: "All documents that relate or refer to the allegations in this case."

FN15. Request for production No. 7: "If you contend or have information tending to show that any person(s) other than you allegedly caused or contributed to any of the injuries and damages that are alleged in the Complaint and Demand for Jury Trial, provide all documents that relate or refer to such contention and/or information."
Request for production No. 8: "If you contend or have information tending to show that the Plaintiff(s) was/were guilty of any negligence causally contributing to the injuries and damages claimed by the Plaintiff(s), provide all documents that relate or refer to such contention and/or information."
Request for production No. 9: "If you contend or have any information tending to show that the injuries and damages claims by the underlying Plaintiff Mr. Tiede were due to any cause other than the occurrence, provide all documents that relate or refer to such contention and/or information."

FN16. Interrogatory No. 17: "Identify each

and every license, or certificate that you have obtained in the past 10 years, and if such license or certificate has ever been suspended or revoked, or your renewal has ever been refused or delayed, set forth all the facts surrounding such suspension, revocation, refusal, or delay including, but not limited to, the date of such suspension, revocation, refusal or delay, the name of the authority which directed such suspension, revocation, refusal or delay, and reason(s) thereof."
Request for production No. 24: "All licenses or certificates to sell products for the past five years."

FN17. Based on representations at the hearing, the Court understands that United Oil is no longer seeking discovery regarding Permatex.

FN18. Parts also argued, without any supporting authority, that United Oil is limited in a subrogation case to the claims and evidence in the underlying case. The Court disagrees. In his Memorandum and Order, Judge Quarles laid out plaintiff's burden in the subrogation case. Nothing more is required.

FN19. Interrogatory No. 15: "State whether you have ever been a party in any administrative, civil, or criminal proceeding or lawsuit arising out of or resulting from personal injury of Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride exposure related to your business, indicating in your answer the case name, case number, name of the complaining party, state, county, and tribunal before whom the proceeding took place."

FN20. Request for production No. 14: "The table of contents and index of all standards, protocols, and/or policies regarding your manufacture and sale of Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride products."

FN21. Request for production No. 4: "All documents that you were required by law to prepare and maintain for the manufacture

and sale of Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride from 1/94 through 10/98."

FN22. Request for production No. 6: "Identify all documents that you received from manufactures [sic] and/or suppliers of Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride from 1/90 through 10/98."

FN23. Request for production No. 13: "All reports of any investigation conducted on your behalf and/or on behalf of anyone else relating to injuries or risks associated with Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride."

FN24. Request for production No. 20: "All deposition and trial transcripts related to any other claims or lawsuits based in whole or in part on alleged hazards of Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride."
Request for production No. 21: "All deposition and trial transcripts of any person named as an expert by the Plaintiff(s)."
Request for production No. 22: "All documents that relate or refer to every claim that has ever been filed against you (whether or not the claim resulted in the filing of a lawsuit) for alleged personal injuries related to Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride."
Request for production No. 23: "All documents that relate to any administrative, civil, or criminal proceedings or lawsuit arising out of or resulting from the sale of products, including, but certainly not limited to all pleadings, discovery responses, and deposition transcripts in every claim that has ever been filed against you (that resulting [sic] in the filing of a lawsuit) for personal injuries."
Request for production No. 27: "Produce copies of all workers compensation claims filed by defendant employees related to exposure to Permatex or Fleet-Fill Brake Cleaner, perchloroethylene,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1115861                                                                                                        Page 16
--- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

tetrachloroethylene, trichloroethane, or methylene chloride."

FN25. Interrogatory No. 5: "Is Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride safe for unprotected human exposure under all circumstances? If no, why?"
Interrogatory No. 7: "If you contend that any person(s) other than you caused or contributed to any of the alleged occurrences described in the Complaint, identify the other person(s) and state each and every fact which you rely [on] in support of your contention."
Interrogatory No. 17: "State all facts upon which you rely in support of each defense in your Answer or Complaint."
Request for production No. 7: "If you contend or have information tending to show that any person(s) other than you allegedly caused or contributed to any of the injuries and damages that are alleged in the Complaint and Demand for Jury Trial, provide all documents that relate or refer to such contention and/or information."
Request for production No. 8: "If you contend or have information tending to show that the Plaintiff(s) was/were guilty of any negligence causally contributing to the injuries and damages claimed by the Plaintiff(s), provide all documents that relate or refer to such contention and/or information."
Request for production No. 9: "If you contend or have any information tending to show that the injuries or damages claimed by the underlying Plaintiff Mr. Tiede were due to any cause other than the occurrence, provide all documents that relate or refer to such contention and/or information."

FN26. Interrogatory No. 6: "If you contend that you did not cause or contribute to the injuries and damages that are alleged in the Complaint, state in detail the entire basis for such contention."
Interrogatory No. 11: "If you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in the action, including any claim for damages, provide a brief description, by category and location, of all such documents and other tangible things,

and identify all persons having possession, custody, or control of them."
Request for production No. 2: "All documents relied upon in answering the interrogatories propounded to you."
Request for production No. 3: "All documents that relate or refer to the allegations in this case."

FN27. Request for production No. 24: "All licenses or certificates to sell products for the past five years."

FN28. Interrogatory No. 3: "Identify all federal laws and regulations with which you are required to comply from 1/94 through 10/98 for the manufacture, sale and/or distribution of Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride."
Interrogatory No. 4: "Identify all documents that you were required by law and/or regulation to provide to persons and/or organizations to whom you sold Permatex or Fleet-Fill Brake Cleaner, perchloroethylene, tetrachloroethylene, trichloroethane, or methylene chloride from 1/94 through 10/98."
See *supra* notes 21 and 22 for text of requests for production nos. 4 and 6.

FN29. Interrogatory No. 8: "State each fact on which United Oil bases the allegation in paragraph 10 of the Complaint that Fleet-Fill Brake Cleaner contains the chemicals Trichloroethane and Perchloroethylene; identify all documents you rely on in support of your answer to this interrogatory and each and every person who has knowledge of the facts set forth in your answer to this interrogatory. For each such person identified, state the nature or substance of his or her knowledge, and the basis of his or her knowledge."
Interrogatory No. 9: "State each fact on which United Oil bases all allegations in paragraph 14; identify all documents you rely on in support of your answer to this interrogatory and each and every person who has knowledge of the facts set forth in your answer to this interrogatory. For each such person identified, state the nature or substance of his or her knowledge, and the basis of his or her knowledge."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Interrogatory No. 10: "State each fact on which United Oil bases the allegation in paragraph 20 of the Complaint in this action that 'any and all liability, joint and several, that could be found against United Oil for proximately causing any injury to the Tiedes is directly attributable to the active and primary acts and/or omissions of Parts;' identify all documents you rely on in support of your answer to this interrogatory and each and every person who has knowledge of the facts set forth in your answer to this interrogatory. For each such person identified, state the nature or substance of his or her knowledge, and the basis of his or her knowledge."

Interrogatory No. 11: "State each fact on which United Oil bases the allegation in paragraph 21 of the Complaint in this action that 'Fleet-Fill Brake Cleaner, which is designed, manufactured, and/or sold by Parts and contains the chemicals Trichloroethane and Perchloroethylene, is a direct and proximate cause of the Tiedes' injuries;' identify all documents you rely on in support of your answer to this interrogatory and each and every person who has knowledge of the facts set forth in your answer to this interrogatory. For each such person identified, state the nature or substance of his or her knowledge, and the basis of his or her knowledge."

Interrogatory No. 12: "State each fact on which United Oil bases the allegation in paragraph 36 of the Complaint in this action that '[t]he active and primary culpable conduct of Parts proximately caused and/or contributed to the injuries suffered by the Tiedes;' identify all documents you rely on in support of your answer to this interrogatory and each and every person who has knowledge of the facts set forth in your answer to this interrogatory. For each such person identified, state the nature or substance of his or her knowledge, and the basis of his or her knowledge."

Interrogatory No. 15: "Identify all individuals not otherwise identified above who have knowledge of any and all facts that form the basis for any and all allegations set forth in the Complaint; and for each such person identified, state the nature or substance of his or her knowledge, and the basis for his or her knowledge."

Interrogatory No. 16: "Identify any and all

witnesses, including fact and expert witnesses, who testified, opined, or stated in the *Tiede* Action that Fleet-Fill Brake Cleaner was the cause of Mr. Tiede's injuries; for each such witness identified provide the page and line deposition citation(s), expert witness disclosure(s) or report(s), and/or any written statement(s) in which they so testified, opined, or stated."

FN30. Interrogatory No. 13: "With respect to your answers to Interrogatory Nos. 8 through 12, state the date on which each person identified in Interrogatory Nos. 8 through 12 first had knowledge of the facts set forth in your answers and for each person and date provided, identify each and every document on which you rely."

FN31. Interrogatory No. 18: "State the date on which United Oil first identified the conduct of Parts Associates as the proximate cause or a contributing factor of the injuries suffered by the Tiedes."

FN32. Request for production No. 9: "All documents concerning any investigation of the allegations and facts concerning the *Tiede* Action, including but not limited to statements and interviews of persons with knowledge of any allegations or facts concerning in [sic] the *Tiede* Action and reports of investigation."

FN33. Request for production No. 21: "To the extent not produced in response to the above requests, all arguments that United Oil contends support its claims against Parts Associates, including but not limited to, its claim for damages and it claim that products supplied by Parts Associates to Mr. Tiede's employer proximately caused the Tiede's injuries."

2005 WL 1115861 (D.Md.)

## Motions, Pleadings and Filings (Back to top)

• 2004 WL 2782679 (Trial Motion, Memorandum and Affidavit) Opposition to Motion to Strike (Nov. 09, 2004)

• 2004 WL 2782673 (Trial Motion, Memorandum and Affidavit) Motion for Summary Judgment of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1115861                                                                                          Page 18
  --- F.R.D. ---
**(Cite as: 2005 WL 1115861 (D.Md.))**

Defendant Rohm and Haas Company (Jul. 21, 2004)

• [2004 WL 2782726](#) (Trial Pleading) Rohm and Haas Company's Answer to Plaintiff's Complaint (Apr. 05, 2004)

• [2004 WL 2782671](#) (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion to Dismisss of Defendant Rohm and Haas Company (Jan. 20, 2004)

• [1:03CV02949](#) (Docket) (Oct. 15, 2003)

• [2003 WL 23922275](#) (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant Rohm and Haas Company's Motion to Dismiss (2003)

• [2003 WL 23922295](#) (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant Rohm and Haas Company's Motion for Summary Judgment (2003)

• [2003 WL 23922314](#) (Trial Motion, Memorandum and Affidavit) Plaintiff United Oil Company's Reply to Defendant Rohm and Haas Company's Opposition to Plaintiff's Motion to Strike (2003)

• [2003 WL 23922317](#) (Trial Motion, Memorandum and Affidavit) Defendant Parts Associates, Inc.'s Opposition to Palintiff United Oil Company's Motion to Compel Discovery (2003)

• [2003 WL 23922529](#) (Trial Pleading) Parts Associates, Inc.'s Answer to Plaintiff's Complaint (2003)

• [2003 WL 23922536](#) (Trial Pleading) Third Party Complaint (2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
1996 WL 745587 (D.Kan.)
**(Cite as: 1996 WL 745587 (D.Kan.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Kansas.
William R. CARUTHERS, Plaintiff,
v.
PROCTOR & GAMBLE MANUFACTURING
COMPANY, Defendant.
**Civil Action No. 96-2071-GTV.**

Dec. 27, 1996.

Patrick F. Hulla, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for plaintiff.

Daniel B. Boatright, James G. Baker, Spencer, Fane, Britt & Browne, Kansas City, MO, for defendant.

*MEMORANDUM AND ORDER*

RUSHFELT, United States Magistrate Judge.

**\*1** Under consideration is a Motion To Compel (doc. 25). Plaintiff thereby seeks an order to compel defendant to produce "essential functions" for all positions filled by defendant since May, 1994 and tests identified by defendant in its answer to Interrogatory 23. He also seeks to compel defendant to fully answer Interrogatories 3, 4, 5, 11, 13, 20, 21, 22, 24, 25, 26, and 28. In addition he seeks sanctions for the failure of defendant to provide discovery. Defendant opposes the motion.

The motion appears moot in part. Defendant asserts that it has produced documents identifying the essential functions of those positions which have had vacancies since January 1, 1992. Plaintiff does not contest that assertion. Such production appears to negate any need for an order to compel production of "essential functions." The court thus deems the motion moot to that extent.

Plaintiff also seeks an order to compel production of "tests" identified in answer to Interrogatory 23. Interrogatory 23 states: "Identify all tests, evaluations or procedures administered by Defendant relative to positions filled by Defendant from January 1, 1992 to the present date." Defendant answered by identifying a number of tests. Plaintiff does not question the sufficiency of the answer. He claims that defendant has refused to permit him to copy the identified tests. He asserts that he may copy them pursuant to Fed.R.Civ.P. 34. He suggests that defendant has asserted no valid ground against the proposed copying. Defendant claims it has fully answered Interrogatory 23.

The answer to Interrogatory 23 appears sufficient. No rule of procedure requires production of documents or other items identified in an answer to an interrogatory. Plaintiff misplaces his reliance upon Fed.R.Civ.P. 34. It applies only to requests for production. It has no applicability to interrogatories. Plaintiff has identified no formal request in accordance with Rule 34 for production of the tests identified in answer to Interrogatory 23. Without a formal request, an order to compel production would be premature. Answering interrogatories does not require production of identified documents, absent an accompanying request for production in accordance with Fed.R.Civ.P. 34. Such a request accords the responding party opportunity either to produce the documents or object to their production, before any motion is filed. The court overrules the motion to the extent it seeks to compel production of tests identified in answer to Interrogatory 23.

The court next addresses the sufficiency of the answers to the interrogatories at issue. Interrogatory 5 states: "For each allegation in Plaintiff's Petition which Defendant denies, specify as much as the allegation is as is admitted; specify so much of the allegation as is denied; and specify the qualification contained within the allegation upon which the Defendant relies in its denial of the Allegations." Defendant directs plaintiff to its Answer to the Petition to determine which allegations it admits and denies. It also objects that the phrase "the qualification contained within the allegation" is vague and confusing. The court sustains the objection. It finds the quoted phrase vague and ambiguous. The interrogatory, furthermore, appears inappropriate. It serves no significant purpose, besides simply duplicating a pleading. The information sought is the type normally contained within an Answer to a Complaint. *See* Fed.R.Civ.P. 8(b). The court sees no need to answer an interrogatory merely redundant of the Answer (doc.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                   Page 2
1996 WL 745587 (D.Kan.)
**(Cite as: 1996 WL 745587 (D.Kan.))**

30) filed in the case.   Defendant need not further respond to Interrogatory 5.

 **\*2** Plaintiff contends that the answers to Interrogatories 3, 4, 11, 13, 20, 21, 22, 24, 25, 26, and 28 are insufficient.   Defendant answers each of these interrogatories, except Interrogatory 24, by referring plaintiffs to documents that "will be produced."

   Without an election to produce its business records under Fed.R.Civ.P. 33(c) [now 33(d) ], a party generally may not answer interrogatories by referring the other party to extraneous documents or other material.   That general rule, however, usually applies to answers which incorporate documents not attached to the answers.   A report, attached to the answer and incorporated into the answer, is part of the answer under oath.   If the written answer, along with the attached documents, fully answer the interrogatory, then such procedure normally qualifies as an adequate answer to the interrogatory.

   *Kolich v. Sysco Corp.,* No. 92-2273-GTV, unpublished op. at 5 (D.Kan. May 27, 1993).   When parties answer interrogatories, they shall comply with Rule 33(d), attach all referenced documents to the specific answer, or answer without referring interrogating parties to documents for answers. Absent compliance with Rule 33(d), defendant may not direct plaintiffs to find answers from documents which it will subsequently produce.

 In response to the motion, defendant attempts to identify specific produced documents which purportedly answer the interrogatories.   Such identification does not comport with procedures established by the Federal Rules of Civil Procedure. A party may elect to produce its business records to answer an interrogatory, but must affirmatively do so in accordance with Fed.R.Civ.P. 33(b) and (d) and D.Kan. Rule 33.2.   To rely on Fed.R.Civ.P. 33(d), a respondent must state in its answer to the interrogatory its election to produce its business records and adequately identify them.   A party may produce its business records in lieu of answering when "the answer to an interrogatory may be derived or ascertained from [them] or from an examination, audit or inspection of [them] ... and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served."   Fed.R.Civ.P. 33(d).   A party electing to produce documents under Rule 33(d), moreover, must

   specify the records from which the answer may be derived or ascertained and ... afford to the party serving the interrogatory reasonable opportunity to

   examine, audit, or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained. *Id.*

 Defendant has made no specific election under Fed.R.Civ.P. 33(d).   It purportedly will produce or has produced documents in response to some of the interrogatories.   For the most part, however, the court finds nothing to suggest defendant has specifically designated in its sworn answers to the interrogatories which documents answer which interrogatory.   Under the guise of Fed.R.Civ.P. 33(d) defendant may not simply refer generically to past or future production of documents.   It must identify in its answers to the interrogatories specifically which documents contain the answer.   Otherwise it must completely answer the interrogatories without referring to produced documents or those that will be produced.

 **\*3** In response to Interrogatory 11 defendant states that it will produce personnel records of plaintiff. The court finds the response equivocal, not in compliance with Rule 33(d).   If defendant desires to rely upon that Rule, then it should say so in its sworn answer to the interrogatory and comply with all the requirements of the Rule.   It shall otherwise fully answer the interrogatory without the ambiguous reference to documents which have been or will be produced.

 Plaintiff also wants a full answer to Interrogatory 24. It seeks identification of "the job duties for all positions filled by Defendant from January 1, 1992 through the present."   Defendant initially objected to the interrogatory on various grounds.   It relies upon no objection in response to the motion.   It simply states that it has produced documents which answer the interrogatory.   While that may be the case, defendant shall, nevertheless, supplement its sworn answer to comply with Fed.R.Civ.P. 33(d).   If it does not or cannot rely upon Rule 33(d), then it shall fully answer Interrogatory 24 without reference to produced documents.   Defendant has abandoned the objections raised against the interrogatory.

 For the foregoing reasons, the court sustains in part, overrules in part, and deems moot in part the Motion To Compel (doc. 25).   Within twenty days of the date of this order, defendant shall fully answer Interrogatories 3, 4, 11, 13, 20, 21, 22, 24, 25, 26, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1996 WL 745587 (D.Kan.)
**(Cite as: 1996 WL 745587 (D.Kan.))**

28.   The court deems the motion moot to the extent plaintiff seeks an order compelling production of "essential functions" of positions filled by defendant, since May, 1994.   It otherwise overrules the motion.

 IT IS SO ORDERED.

 1996 WL 745587 (D.Kan.)


   **Motions, Pleadings and Filings** **(Back to top)**

•         2:96CV02071                (Docket) (Feb. 08, 1996)

END OF DOCUMENT

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.