UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD P. MORIN, SR., ET AL., | : | CIVIL ACTION NO. |
|     Plaintiffs, | : | |
| | : | 3:03 CV 277 (CFD) |
| v. | : | |
| | : | |
| NATIONWIDE FEDERAL CREDIT UNION, | : | |
| ET AL., | : | |
|     Defendants. | : | JULY 19, 2005 |

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS

Pursuant to the Federal Rules of Civil Procedure, Rule 37 and Local Rule 7(d), the Defendants Nationwide Federal Credit Union, et al. (collectively "NFCU"), hereby respectfully submit this Reply Memorandum of Law in Support of Motion To Compel Interrogatory Responses and Production of Documents.

Much of the Defendants' motion to compel is now moot. The Plaintiffs' objection ("Pl. Mem."), filed late on July 15, 2005 or ten (10) days *after the July 5, 2005 deadline*,[1] *concedes* that the Plaintiffs' interrogatory responses must be revised in conformity with Fed. R. Civ. P. 33(d), *concedes* that certain other documents must be produced and *concedes* that an answer must be provided to a certain interrogatory. The Defendants sought in good faith to resolve the parties' discovery disputes prior to filing any motion as required by Local Rule 37. *See* Ex. A to

**ORAL ARGUMENT REQUESTED**

CTDOCS/1633905.1

Affidavit of Michael D. Blanchard.  The Plaintiffs for some unknown reason did not even respond to the Defendants' request to confer, and in fact made no response to the Defendants at all until their filing of an untimely opposition, in which they *concede most of the requests and interrogatories and abandon their previously stated objections* which formed the basis for their prior refusal to comply.  With all due respect, the Plaintiffs' tactic caused the Defendants to incur unnecessary attorneys' fees.  Pursuant to Local Rule 37, the Plaintiffs should now be required to pay the Defendants' their reasonable attorneys' fees incurred in connection with this motion.

What little now remains at issue on this motion are the Plaintiffs' attempts to, in their memorandum, "object" to the requests and interrogatories.  The Plaintiffs *did not raise these objections* in their response (Ex. A to Def.'s Motion to Compel) nor did they raise these objections when counsel for Defendants attempted to resolve these issues (because the Plaintiffs never responded).  As this Court has held, a party "is not free to raise in its brief -- almost as an afterthought -- entirely new objections which it did not assert earlier."  *Kimbro v. I.C. System, Inc.*, 2002 WL 1816820 *1 (D. Conn. 2002) (Smith, M.J.) (quoted by *Williams v. Gillette Co.*, NO. 3:02CV2213 (WWE) 2004 WL 717173 *2 (D. Conn. Mar. 24, 2004)).[2]  Instead, "a party which fails to object to a discovery request waives any objections it might otherwise have made." *Id.*  Accordingly, the Defendants' motion to compel on those portions of the discovery requests which the Plaintiffs do not now concede outright should be granted.

---

[1] *See* Local Rule 7(a)(1), requiring opposition briefs to be filed within 21 days.  Defendants' motion was filed on June 14, 2005.

[2] All unreported cases are attached hereto.

I.  **THE PLAINTIFFS' ADMISSION THAT THEY MUST REVISE THEIR INTERROGATORY RESPONSES TO CONFORM TO RULE 33(D), ONLY AFTER THE DEFENDANTS MOVED TO COMPEL, JUSTIFIES AN AWARD OF ATTORNEYS FEES PURSUANT TO LOCAL RULE 37**

After the Defendants had attempted -- without response -- to gain the Plaintiffs' agreement that their interrogatory responses must conform to Rule 33(d), the Defendants were left with no choice but to move to compel. Now, after the costs of the motion were incurred, the Plaintiffs, without qualification, "will agree to provide a listing of documentation as requested." Pl. Mem. at 2.

Local Rule 37 provides in connection with discovery disputes that where "a party's position is not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law, sanctions will be imposed in accordance with applicable law" -- and such sanctions may include reasonable attorneys fees. Local Rule 37(4). The Plaintiffs had no basis for refusing to amend their responses when counsel for the Defendants so requested and concede that they must now, only after the Defendants suffered the costs of filing a motion to compel. These costs should be paid by the Plaintiffs, in the amount of $6,411.88 to date, or 15.7 hours at the normal hourly rate of $408.40 per hour, which amounts have been billed by the Defendants' counsel for this motion.

II.  **THE PLAINTIFFS' "OBJECTIONS" TO REQUESTS NO. 14, 20, 21, 22 AND 23 -- RAISED FOR THE FIRST TIME EVER ONLY AFTER A MOTION TO COMPEL WAS FILED -- ARE WAIVED**

Regarding document requests numbers 14, 20, 21, 22 and 23, the Plaintiffs now claim for the first time that the requests are "overly broad in terms of time." *See* Pl. Mem. at 3-5. Yet the

3

Plaintiffs *never made any such objection* when they responded to the requests.[3] "It is not good faith for a lawyer to frustrate discovery requests and court orders with successive objections like a magician pulling another and another and then still another rabbit out of a hat." *Massachusetts School of Law v. American Bar Association*, 914 F. Supp. 1177 (E.D. Pa. 1996). Under the law in the District of Connecticut, the purported "objection" is waived. *Kimbro v. I.C. System, Inc.*,

---

[3] The Document Requests and responses are as follows:

Document Request No. 14. All documents that evidence or relate to contracts or agreements between Ronald Morin and any Other Insurance Company.

Response: **Objection. Documents deemed confidential, proprietary, not relevant or material and not likely to assist in defense of this instant action.**

Document Request No. 20. All Documents which refer to, relate to or memorialize any agreement between Bonnie Johnson, Diane Deming, Edward McMahon, Robert Bardin and/or Ronald Morin, jointly or severally, or between the Community Agency Network and Bonnie Johnson, Diane Deming, Edward McMahon, Robert Bardin and/or Ronald Morin, jointly or severally.

Response: **Objection. Irrelevant, immaterial and propriety and will not assist in the defense of this matter.**

Document Request No. 21. All Documents which refer to, relate to or memorialize any agreement between the Community Agency Network and any insurance carrier.

Response: **Objection. Irrelevant, immaterial and propriety and will not assist in the defense of this matter.**

Document Request No. 22. All Documents which refer to, relate to or memorialize any remuneration paid by any insurance carrier to the Community Agency Network or any participant in the Community Agency Network.

Response: **Objection. Irrelevant, immaterial and propriety and will not assist in the defense of this matter.**

Document Request No. 23. All Documents which refer to, relate to or memorialize any oral or written correspondence or communication between any of the following: Bonnie Johnson, Diane Deming, Edward McMahon, Robert Bardin and/or Ronald Morin, jointly or severally.

Response: **Objection. Irrelevant, immaterial and propriety and will not assist in the defense of this matter.**

2002 WL 1816820 *1 (D. Conn. 2002) (Smith, M.J.) (quoted by *Williams v. Gillette Co.*, NO. 3:02CV2213 (WWE) 2004 WL 717173 *2 (D. Conn. Mar. 24, 2004)).

Further, the Plaintiffs now explain that they would "have no objection" to producing documents within certain time frames.  When the Defendants attempted to resolve these issues prior to filing a motion to compel, the Plaintiffs could have --  but did not  -- offer to produce documents in conformity with their newly developed position.  Again, the Defendants have unnecessarily incurred attorneys fees associated with this motion.  In any event, with respect to requests 14 and 20-23, the time limitations that the Plaintiffs seek are too narrow.  These requests seek documents related to Mr. Morin's agreements with businesses and individuals in the insurance business other than Nationwide, which as explained in the Defendants' initial motion, may be critical to the case concerning Mr. Morin's competition with Nationwide.  Mr. Morin proposes to limit production to three months prior to three months after his resignation, or for No. 14 only, six months prior to resignation.  However, at *any time* prior to his resignation, if he competed with Nationwide, he was in breach of his agreement, and for that time period through one year following his resignation, such competition affected certain potential payments that Mr. Morin pledged as security for his loans.  The Plaintiffs' proposal is far too narrow.

**III.   THE PLAINTIFFS' NEW OBJECTIONS TO REQUESTS NOS. 11 AND 15 ARE WAIVED AND THE PLAINTIFFS' ATTEMPT TO ANSWER INTERROGATORY NO. 11 IN THEIR MEMORANDUM IS IMPROPER**

The Plaintiffs also now "object" to Request No. 15 on the ground that "it is overly broad in scope, vague and ambiguous." Pl. Mem. at 3.  Plaintiffs have not made this objection in their

responses, and it is waived.[4]  Similarly, the Plaintiffs object to request No. 11 on the ground that the Defendants already have the documents requested.  That objection was not made originally, but rather, the Plaintiffs claimed that the documents were produced in other litigation.[5]  The objections are waived.  *See Kimbor*, 2002 WL 1816820 at *1.

Also, the Plaintiffs attempt to answer interrogatory No. 11 in their memorandum.  *See* Pl. Mem. at 5.  Interrogatories must be answered under oath, and the Plaintiffs' attempt to circumvent the Federal Rules of Civil Procedure should not be permitted.

## CONCLUSION

For the foregoing reasons, NFCU respectfully submits that its Motion To Compel be granted in all respects, and it be awarded its reasonable attorneys fees in connection with this motion.

---

[4] Request No. 15 and the objection is as follows:

Document Request No. 15.  All documents reflecting, evidencing, or relating to commission records or any other compensation, remuneration, or other payments of monies received by Ronald Morin directly or indirectly as consideration for transferring Nationwide's Policyholders to any Other Insurance Company.

Response:  **Objection.  Irrelevant, immaterial and not likely to assist in the defense of this instant action.**

[5]  The Request is as follows:

Document Request No. 11.  All documents that evidence communications and correspondence between the Plaintiffs and the Defendants concerning the Plaintiff Ronald Morin's purported interest in Agency Security Compensation, DCIC or extended earnings.

Response:  **Objection.  The foregoing request is already within the possession of the defendant from other litigation between parties.**

**THE DEFENDANTS,**
**NATIONWIDE FEDERAL CREDIT UNION, ET AL**


By: /s/ Michael D. Blanchard
Deborah S. Freeman (ct05257)
Michael D. Blanchard (ct25891)
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT  06103-3178
(860) 240-2700
(860) 240-2818 (fax)
Their Attorneys
deborah.freeman@bingham.com
michael.blanchard@bingham.com

7

**CERTIFICATION**

This is to certify that on this 19th day of July, 2005, a copy of the foregoing was sent via

U.S. Mail, postage prepaid, to:

Richard P. Weinstein, Esq.
Weinstein & Wisser P.C.
29 South Main Street - Suite 207
West Hartford, CT  06107

/s/ Michael D. Blanchard_____
Michael D. Blanchard



Not Reported in F.Supp.2d
2002 WL 1816820 (D.Conn.)
**(Cite as: 2002 WL 1816820 (D.Conn.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.
Lauren KIMBRO, -Plaintiff
v.
I.C. SYSTEM, INC., -Defendant
**No. 3:01 CV 1676(DJS).**

July 22, 2002.

*RULING ON MOTION TO COMPEL*

SMITH, Magistrate J.

**\*1** The plaintiff has brought this action against defendant I.C. System, Inc. (hereafter "I.C.S."), alleging that I.C.S.'s debt collection efforts against her have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. Plaintiff's motion to compel is pending before the court. The motion (Dkt.# 13) is GRANTED. [FN1]

> FN1. It is worthy to note that a majority of the discovery disputes that are at issue in this motion could have been resolved without court intervention. Experienced legal professionals should know, *without* Court direction, what is within the realm of permissible discovery pursuant to Fed.R.Civ.P. 26 and D. Conn. L. Civ. R. 38 & 39.

The court finds that I.C.S.'s resistance to plaintiff's discovery efforts is unjustified and contrary to well-established legal principles. Among the principles defendant I.C.S. ignores is the axiom that discovery is normally allowed into any matter that bears upon the issues or reasonably could lead to relevant information. *Oppenheimer Fund Inc. v. Sanders,* 473 U.S. 340, 351 (1978). Information need not be admissible as evidence in order to be discoverable. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 29-30 (1984). "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Fed.R.Civ.P. 26(b)(1). In the Second Circuit, "[t]his obviously broad rule is liberally construed." Daval Steele Products v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir.1991), citing Oppenheimer, supra, 437 U.S. at 351.

Defendant I.C.S. also overlooks that, as the objecting party, it bears the burden of showing why discovery should be denied. Blakenship v. Hearst Corp., 519 F.2d 418 (9th Cir.1975). The mere statement by a party that discovery is "irrelevant and immaterial" is not enough to discharge this burden. Joseph v. Harris Corp., 677 F.2d 985, 992 (3rd Cir.1982). Moreover, a party which fails to object to a discovery request waives any objections it otherwise might have made. Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir.1992); Smith v. United States, 193 F.R.D. 201, 207 n. 19 (D.Del.2000).

Nor may I.C.S. withhold discovery on the strength of its own overly optimistic speculation that it might one day be successful in achieving dismissal of, or summary judgment on plaintiff's complaint. Because an adjudication on the merits normally comes only *after* discovery, "it is no objection to an interrogatory that it relates to a defense or claim which is insufficient in law." Anderson Co. v. Helena Cotton Oil Co., 117 F.Supp. 932, 945 n. 9 (E.D.Ark.1953). Finally, I.C.S. is not free to raise in its brief--almost as an afterthought--entirely new objections which it did not assert earlier. Davis v. Fender, 650 F.2d 1154, 1160 (9th Cir.1981); Eureka Financial Corp. v. Hartford Act. and Index. Co., 136 F.R.D. 179 (E.D.Cal.1991).

I. UNOBJECTIVE DISCOVERY REQUESTS: Interrogatory 1, 2, and 10 *and* Request for Production 1, 4, 5, 8 and 21

Defendant I.C.S. did not object to the above mentioned Interrogatories or Requests for Production. In addition, I.C.S. has not sought an extension of time to produce these discovery materials. Therefore, I.C.S. is ordered to respond to these interrogatories and production requests unless it has already satisfied this obligation.

II. DISPUTED DISCOVERY REQUESTS

A. INTERROGATORIES NOS. 3 and 4

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d												Page 2
2002 WL 1816820 (D.Conn.)
**(Cite as: 2002 WL 1816820 (D.Conn.))**

 ***2** Interrogatory No. 3 simply asks I.C.S. to "itemize the components of the $1,494.90 amount demanded, including principal, interest and charges." (Dkt. 14 at 2.) In addition, Interrogatory 4 requests that the defendant "itemize the components of interest or charges still accruing on the Providian account as of the date of the 50% off letter." (*Id.*) Defendant I.C.S. objects to providing this information on grounds that it is "irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence." (Dkt. # 14 at 3). [FN2] The objection is overruled. The court finds that the information plaintiff seeks in these two discovery requests goes directly to whether the "50% off" was based on an accurate figure, and whether assertions in the letter that amounts were still accruing were within § 1692e and § 1692f of the FDCPA. The Court finds that this information is relevant, material, non-privileged, and reasonably related to plaintiff's claims.

> FN2. In its opposition papers, the defendant indicates that it will provide a response to these interrogatories. However, the plaintiff contends that, as of June 11, 2002, the defendant has failed to comply.

 B. INTERROGATORY NO. 5

 Plaintiff seeks a "plain English transcript" of defendant's "contact history" including the meaning of code numbers and abbreviations. To the extent that there are aspects of the history that is not apparent to counsel, plaintiff shall contact defendant by telephone or letter and identify which portions of the "contact history" require further explanation.

 C. INTERROGATORIES NOS. 6 and 7

 Interrogatory No. 6 requests that the I.C.S. "[i]dentify each consumer reporting agency (credit bureau) to which the defendant reported the plaintiff's debt and the dates of each such report." (Dkt. 14 at 4.) Interrogatory No. 7 states "set forth your procedures reasonably adapted to comply with the Fair Credit Reporting Act." (*Id.*) In its opposition papers to the motion to compel, I.C.S. stated that it will provide a response to No. 6 indicating that it did not report with respect to the plaintiff's account. (Dkt. 18 at 2.) In addition, I.C.S. stated that, as a result, plaintiff has agreed that Interrogatory No. 7 is unnecessary. (*Id.*) To the extent that I.C.S. has not already complied with its representations, the court orders it to do so.

 D. INTERROGATORY NO. 8

 Plaintiff has requested that I.C.S. set forth its procedures reasonably adapted to make sure that its form letters comply with the FRCPA. (Dkt. 14 at 5.) The plaintiff and I.C.S. have agreed to what discovery is permissible regarding this interrogatory. (Dkt. No. 18 at 2.) Specifically, I.C.S. has agreed to supplement its previous response. (*Id.*) According to the plaintiff, however, I.C.S. has failed to resolve this issue. Therefore, this court orders I.C.S. to supplement its response as agreed.

 E. INTERROGATORY NO. 9

 In its Interrogatory No. 9, the plaintiff requests that I.C.S. specify all changes made in the format of the 50% letter since July, 13, 2001. (Dkt. 14 at 5.) Defendant asserts that it will provide an answer to this interrogatory. In the event that I.C.S. has not already complied, the court orders it to provide a satisfactory response to this interrogatory.

 F. Production Requests NOS. 2, 12, 14, and 19

 ***3** These requests seek the manuals, written procedures, and protocols defendant uses in complying with the FDCPA and in accessing and reporting to credit bureaus. The court finds that the information sought is relevant, is not overly broad, and is properly discoverable. The court finds that, while I.C.S. must expend some effort in gathering this information, the documents requested are not so voluminous that their production is unfairly or unduly burdensome.

 G. PRODUCTION REQUEST NO. 6

 In this production request, plaintiff seeks copies of all judgments, court opinions, complaints, and consent order concerning the defendant's practices under the FDCPA and the Fair Credit Reporting Act in or after the year 2000. Contrary to defendant's objection, this request does not seek irrelevant and immaterial information; nor is the requested information not reasonably calculated to lead to the discovery of admissible evidence.

 Plaintiff's request is reasonably limited as to scope and time. The material sought is clearly relevant to the state of mind with which I.C.S. acted. It is also relevant to whether defendant's alleged statutory violations occurred after it had actual notice that its practices were actionable. While it may be burdensome to require defendant to compile and permit discovery of the various legal complaints and

Not Reported in F.Supp.2d                                                                                                          Page 3
2002 WL 1816820 (D.Conn.)
**(Cite as: 2002 WL 1816820 (D.Conn.))**

judgments against it from 2002 to the present, surely these documents are not so voluminous that it is an unreasonable or unfair burden for defendant to shoulder.

H. PRODUCTION REQUEST NO. 7

This production request is not opposed in defendant's opposition papers. Absent objection, the court orders I.C.S. to respond to this production request.

I. PRODUCTION REQUEST NOS. 10, 17, and 22

The plaintiff has requested the following information: [FN3]

> FN3. Plaintiff's requests also included "[a] screen dump of the first and latest reports to any consumer reporting agency concerning plaintiff's debt." (Dkt. 14 at 8.) I.C.S. indicated that an agreement was reached with the plaintiff as to this request. (Dkt. 18 at 3.)

10. All agreements with Providian National Bank or its assignee concerning the collection of plaintiff's debt.

* * *

17. All agreements of defendant with any entity concerning servicing, or collection of the debt of plaintiff.
22. Documents concerning the payment arrangements defendant/Providian would accept.
(Dkt. 14 at 8.)

I.C.S. objects to these requests on the grounds that they are irrelevant, immaterial, and not reasonably limited to any of the issues raised in plaintiff's complaint. The court disagrees finding that these request are relevant, material, and reasonably limited in their scope.

For all of the these reasons, plaintiff's motion to compel (Dkt.# 13) is granted and the defendant is ORDERED to produce the aforesaid information and material to plaintiff within twenty (20) days hereof. The documents shall be used by counsel for the plaintiff in this litigation only without prejudice to plaintiff's right to seek leave from the court for an enlargement of this limitation if necessary. At the conclusion of this case, or upon application, the plaintiff is free to seek an award of attorney's fees in connection with successful prosecution of this motion. *See* Fed.R.Civ.P. 37.

**\*4** This is not a recommended ruling. This is a discovery ruling and order which can be reviewed pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ.P. 6(a) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court unless reversed or modified by the district judge upon motion timely made.

IT IS SO ORDERED at Hartford, Connecticut, this *22* nd day of July, 2002.

2002 WL 1816820 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

• 3:01CV01676 (Docket) (Aug. 29, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
2004 WL 717173 (D.Conn.), 15 A.D. Cases 1119  
**(Cite as: 2004 WL 717173 (D.Conn.))**

Page 1

**Motions, Pleadings and Filings**

United States District Court,
D. Connecticut.
Daniel WILLIAMS, Plaintiff,
v.
THE GILLETTE COMPANY, Defendant
**No. 3:02CV2213 (WWE).**

March 24, 2004.

Katrena K. Engstrom, Norman A. Pattis, Williams & Pattis, New Haven, CT, for Plaintiff.

Albert Zakarian, Victoria Woodin Chavey, Day, Berry & Howard, Hartford, CT, for Defendant.

*RULING ON DEFENDANT'S MOTION TO COMPEL PRODUCTION OF MEDICAL RECORDS*

EGINTON, Senior J.

**\*1** This is an action seeking money damages for an alleged violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* and for a violation of Connecticut law prohibiting discriminatory employment practices, codified at Connecticut General Statutes § 46a-60(1). Pending before the Court is the motion to compel production of plaintiff Daniel Williams' ("Williams") mental health/medical records by the defendant Gillette Company ("Gillette"). For the reasons set forth below, Gillette's motion to compel production will be granted.

*Facts*

The following facts are taken from the plaintiff's complaint. Williams was employed by the Gillette as a senior engineer. In December, 2000, and again in January, 2001, Williams' personal physician called Gillette and informed Gillette personnel that Williams would be unable to work because he was suffering from a medical illness, and that Williams requested medical leave. Gillette requested additional information about Williams' medical condition to substantiate his claim of medical illness. Williams alleges that his physician provided Gillette and/or Gillette's agents with medical documentation indicating that Williams suffered from depression. Gillette terminated Williams, effective April 30, 2001, for failure to provide adequate documentation demonstrating his illness or disability. Williams alleges that the stated reasons for his termination were pretextual.

*Discussion*

The Supreme Court recognizes a psychotherapist privilege, and all 50 states and the District of Columbia have enacted laws for some form of psychotherapist privilege. The Court asserts that as in all other testimonial privileges, the patient may waive the protection. *Jaffee v. Redmond,* 518 U.S. 1, 12-15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). District courts in this circuit have held that although the Second Circuit recognizes a psychotherapist-patient privilege, the protection is waived when a plaintiff puts his or her mental or emotional health at issue in the case. *Alden v. Time warner, Inc.,* 1995 WL 679238 \*3 (S.D.N.Y.1995). Courts have long recognized that a party waives the psychotherapist-patient privilege by commencing an action for recovery based on his mental condition. *Kerman v. City of New York,* 1997 WL 666261 \*2 (S.D.N.Y.1997). In *Sidor v. Reno,* 1998 WL 164823 \*2 (S.D.N.Y.1998), the court cites *Weinstein's Federal Evidence* for the proposition that "there is no privilege as to communications relevant to the mental or emotional condition of the patient in any proceeding in which the patient relies on the condition as an element of the patient's claim or defense. A claim for mental pain and suffering waives protection of the psychotherapist-patient privilege because the claim puts the patient's mental condition in issue." 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 504.07(7-8) (2d ed.1997). The court in *Sidor* stated that there is no distinction in waiver analysis between the records of a psychotherapist and those of a physician, because "clearly, physician's records can contain equally sensitive and/or embarrassing information." *Sidor V. Reno* at 2.

**\*2** As a threshold issue, Williams initially had no objection to providing the documentation in question, and agreed to produce said documents. At his deposition, Williams reversed himself, and refused to provide any information about his medical and/or psychiatric history, and stated that he would not provide Gillette with copies of his medical records.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
2004 WL 717173 (D.Conn.), 15 A.D. Cases 1119
**(Cite as: 2004 WL 717173 (D.Conn.))**

After consultation with his counsel during the deposition, Williams ultimately agreed to testify about his psychiatric treatment, and he agreed to provide his own counsel with authorizations for the release of his medical and/or psychiatric records. Gillette asserts that by failing to make a timely objection to the discovery request for his medical records, Williams has waived his right to do so. The Court concurs. "A party which fails to object to a discovery request waives any objections it might otherwise have made." Kimbro v. I.C. System, Inc., 2002 WL 1816820 *1 (D.Conn.2002).

*Conclusion*

 For the reasons set forth above, the Court GRANTS Gillette's motion to compel the production of medical records (Doc. # 22). Williams is instructed to produce his medical records, including psychiatric and/or mental health records, for the years 1998 through the present. Williams is also instructed to make himself available to Gillette's counsel for a continuation of the deposition concerning the alleged disability discrimination claim and mental health records Williams is ordered to produce.

 SO ORDERED


   **Motions, Pleadings and Filings (Back to top)**

• 3:02cv02213 (Docket) (Dec. 13, 2002)

END OF DOCUMENT