# EXHIBIT A

CTDOCS/1594690.1

Westlaw.

Slip Copy                                                                                                                                           Page 1
Slip Copy, 2006 WL 1522988 (E.D.Mo.)
**(Cite as: Slip Copy)**

C.B.C. Distribution and Marketing Inc. v. Major League Baseball Advanced Media, L.P.
E.D.Mo.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Missouri, Eastern Division.
C.B.C. DISTRIBUTION AND MARKETING, INCORPORATED, Plaintiff,
v.
MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P., Defendant
MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P. Counter-Claim Plaintiff,
v.
C.B.C. DISTRIBUTION AND MARKETING INCORPORATED, Counter-Claim Defendant.
MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION, Intervenor-Counter-Claim Plaintiff
v.
C.B.C. DISTRIBUTION AND MARKETING INCORPORATED, Counter-Claim Defendant.
No. 4:05CV252MLM.

May 30, 2006.

Neil M. Richards, Washington University School of Law, St. Louis, MO, Rudolph A. Telscher, Jr., Douglas R. Wilner, Kara R. Yancey, Molly B. Edwards, Harness and Dickey, St. Louis, MO, for Plaintiff.
Jeffrey H. Kass, Jay A. Summerville, Armstrong Teasdale, LLP, St. Louis, MO, Michael J. Aprahamian, Patrick M. Kuhlmann, Foley & Lardner LLP, Milwaukee, WI, for Defendant.
Donald R. Aubry, Steven A. Fehr, Jolley And Walsh, Karen R. Glickstein, Russell S. Jones, Jr., Travis L. Salmon, Monica M. Fanning, Shughart And Thomson, Kansas City, MO, Virginia A. Seitz, Sidley Austin Brown & Wood, Washington, DC, for Intervenor-Counter-Claim Plaintiff.
Rudolph A. Telscher, Jr., Douglas R. Wilner, Kara R. Yancey, Molly B. Edwards, Harness and Dickey, St. Louis, MO, for Counter-Claim Defendant.

*ORDER CONCERNING AMENDING THE ANSWERS*
MEDLER, Magistrate J.
***1** This matter is before the court on Plaintiff C.B.C. Distribution and Marketing Corporation's ("CBC" or "Plaintiff") Motion to Amend the Answers. [Doc. 102] Intervenor, The Major League Baseball Players Association ("the Players Association") has filed a Memorandum in Opposition to the Motion to Amend [Doc. 110] in which defendant, Major League Baseball Advanced Media ("Advanced Media") has joined. See Footnote 1, Doc. 110. CBC has replied. [Doc. 115]

In its Motion, CBC asks to amend its Answers to the counter-claims of Advanced Media and the Players Association by adding the affirmative defense that federal copyright law preempts state rights of publicity to the extent rights of publicity are claimed to prevent the use of players' statistical information in connection with fantasy games. First, the Players Association argues that any amendments would be untimely in that they are beyond the July 29, 2005 deadline for amending pleadings established in the court's Case Management Order. Second, the Players Association claims that prejudice to the Players Association would result because the amendments are sought after the discovery cut-off and they did not have an opportunity to ask contention interrogatories or questions in depositions relevant to a preemption defense. Third, the Players Association argues any such amendments would be futile. The Players Association states:

Let there be no mistake: The Players Association is *not* seeking to remove *statistics* from the public domain. This case is not about publishing the number of hits, stolen bases, walks or strikeouts that a Major League baseball player obtains. The Players Association is not trying to stop plaintiff from listing game statistics on its website. The Players Association is not trying to stop plaintiff from commenting on Major League players or on the game of baseball, or from otherwise engaging in predominantly expressive activity. What the Players Association *is* working to stop is the non-consented commercial use of its members' *names and identities* in CBC's pay-to-play fantasy baseball games.

The Players Association's Memorandum in Opposition to Motion to Amend [Doc. 110] at p. 3-4. (emphasis in original; footnote omitted.)

Rule 15(a) of the Federal Rules of Civil Procedure states that pleadings may be amended with leave of court and leave "shall be freely given when justice so requires." Fed.R.Civ.P 15(a). Absent undue delay,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2006 WL 1522988 (E.D.Mo.)  
**(Cite as: Slip Copy)**

Page 2

bad faith, dilatory motive or repeated failure to cure deficiencies on the part of the movant, undue prejudice to the opposing party or the futility of the amendment, the leave sought should be granted. *Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The court finds no undue delay, bad faith, dilatory motive or repeated failure to cure deficiences on the part of plaintiff.

Although the Players Association (and Advanced Media) argue that their counter-claims are only about the use of players names and identities which use does not implicate the Copyright Act, plaintiff's Complaint clearly seeks declaratory judgment that its fantasy games do not violate the Copyright Act, specifically by the use of statistics in connection with its fantasy games. The issue of copyright law has therefore been in the case from the start and the Players Association and Advanced Media cannot claim surprise. The court finds that the issue of copyright is primarily a legal issue and would not necessitate further fact discovery. Thus, there is no prejudice to the Players Association or Advanced Media. The issue has already been briefed by all parties. Amendments will not cause delay because the case is not set for trial until September.

**\*2** In conclusion, the court finds that the amendments should be allowed both in the spirit of Rule 15(a) and because the interplay between and among the legal issues of copyright law, the right of publicity and the First Amendment should not be decided piecemeal. It would therefore be inappropriate to decide the futility of the amendments or the application of copyright law at this time. These issues will be taken up in the court's rulings on the parties' various Motions for Summary Judgment which are now pending.

Accordingly,

IT IS HEREBY ORDERED that CBC's Motion to Amend the Answers is GRANTED. [Doc. 102]

E.D.Mo.,2006.  
C.B.C. Distribution and Marketing Inc. v. Major League Baseball Advanced Media, L.P.  
Slip Copy, 2006 WL 1522988 (E.D.Mo.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport Authority
E.D.Pa.,1997.
Only the Westlaw citation is currently available.
  United States District Court, E.D. Pennsylvania.
      NORTHEAST JET CENTER, LTD., Plaintiff
                           v.
         LEHIGH-NORTHAMPTON AIRPORT
AUTHORITY; Jack Yohe; and Stanford Wartell, Defendants.
                **No.CIV. A. 90-CV-1262.**

                     May 5, 1997.

Joel E. Laiks, Galland, Kharasch, Morse & Garfinkle, P.C., Washington, DC, David K. Monroe, Galland, Kharasch & Garfinkle, P.C., Washington, DC, for Plaintiff.
Steven M. Janove, Teresa N. Cavenagh, Wendy R. Hughes. Jody A. G. Werner, Duane, Morris & Heckscher, Philadelphia, PA, J. Bruce Mc Kissock, Ingrid B. Hopkinson, Mc Kissock & Hoffman, P.C., Philadelphia, PA, Richard Feder, Fine, Kaplan & Black, Philadelphia, PA, for Defendants.

            *MEMORANDUM AND ORDER*
            VAN ANTWERPEN, District Judge.

                  I. INTRODUCTION

**\*1** Plaintiff brought this action in its Second Amended Complaint under 42 U.S.C. §§ 1983, 1985; 15 U.S.C. § 1, 2; 15 U.S.C. § 15; the Fourteenth Amendment to the United States Constitution; 53 Pa.C.S.A. § 306; Article I, Section 1, 9, and 26 of the Pennsylvania Constitution; 42 Pa.C.S.A. § 8343 and the common law of the Commonwealth of Pennsylvania. However, pursuant to our order of August 1, 1996 granting partial summary judgment the only remaining claims are those contained in Count I, and two state claims: intentional interference with a prospective contractual relationship and defamation. We have jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367. Venue for this action lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) and (c).

                II. PROCEDURAL HISTORY

This is not a case which is new to this court. Plaintiff filed a complaint on February 22, 1990. On May 31, 1991 we granted Defendants' Motion to Dismiss in part and denied it in part. 767 F.Supp. 672 (E.D.Pa.1991). Plaintiff then filed its Second Amended Complaint on June 21, 1991. Subsequently, this case was delayed pending the criminal trials and subsequent conviction of Plaintiff's President, Mr. Earl M. Holtz for conspiracy to defraud the United States through improper filings with Federal Aviation Administration. *See* United States v. Holtz, 1993 WL 482953 (E.D.Pa. Nov.15, 1993), *aff'd* 31 F.3d 1174 (3d Cir.1994); United States v. Holtz, 1994 WL 750674 (E.D.Pa. Feb.6, 1994); United States v. Holtz, 1995 WL 106895 (E.D.Pa. March 13, 1995); United States v. Holtz, 1995 WL 312537 (E.D.Pa. May 19, 1995). Thereafter, Defendants filed for summary judgment through two motions on January 22, 1996 and February 8, 1996. We granted those motions in part, but denied them as to the constitutional violations alleged in Count One, and the state claims alleged in count three (intentional interference with a prospective contractual relationship) and count six (defamation). We noted in our opinion of August 1, 1996 that neither party had sufficiently discussed the charges alleged in Count One, and we denied summary judgment pending further briefing on the issues. *Northeast Jet Center v. Lehigh-Northampton Airport Authority,* 1996 WL 442784 (E.D.Pa. Aug.1, 1996). In a letter dated September 3, 1996 to Defendants' counsel, Plaintiff's counsel outlined its Constitutional claims to ease discussion of this issue; he specified that Plaintiff's claims in Count One are brought under 42 U.S.C. § 1983, and are based upon a violation of equal protection and substantive due process. Consequently, on February 19, 1997, Defendants filed a Motion for Partial Summary Judgment on Count One, and Plaintiffs responded thereto on March 21, 1997. We therefore focus our discussion on Count One, and on whether Defendants' actions rise to the level of a violation of Section 1983. Due to the large quantity this court has previously written on this matter, we will not repeat the detailed facts we set out in our May 31, 1991 and August 1, 196 opinions; rather we will simply make reference to them as the need arises.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

### III. GENERAL STANDARD

**\*2** Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted where:
the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Rule 56(e) further provides that, when a properly supported motion for summary judgment is made, the adverse party then "must set forth specific facts showing that there is a genuine issue for trial."

Of course, we must view all inferences in a light most favorable to the non-moving party and facts asserted by the non-moving party, if supported by sufficient affidavits and other evidentiary matter, must be regarded as true. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176, (1962); Aman v. Cort Furniture Rental, 85 F.3d 1074, 1080 (3d Cir.1996). However, the nonmoving party's burden is more than insignificant; "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also J.F. Feeser Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir.1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (stating that, "the nonmovant must establish the existence of each element on which it bears the burden of proof") (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; Matsushita Electrical Industry Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538, § 87 (1986). See also Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 148 (3d Cir.1993); Petruzzi's IGA Supermarkets, Inc. v. Darling Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir.), cert. denied, 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993) (nonmovant cannot rest on pleadings and must do more than create some metaphysical doubt).

Therefore, summary judgment must be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. More generally, a genuine issue of fact is only present, precluding summary judgment, "when a reasonable trier of fact, viewing all the evidence, could rationally find in favor of the nonmoving party in light of the burden of proof placed on the nonmover." U.S. v. Premises Known as RR No.1 Box 224, Dalton Tp. and North Abington Tp., Lackawanna County, Pa., 14 F.3d 864, 870 (3d Cir.1994) [citations omitted]. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. See also Kowalski v. L & F Products, 82 F.3d 1283, 1288 (3d Cir.1996).

**\*3** While the nature of its remedy is indeed powerful, the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " Celotex, 477 U.S. at 327 [citations omitted]. As the Third Circuit noted, "we are, after all, attempting to balance the defendants' need for protection from unfounded claims and vexatious litigation, with the plaintiff's rights to vindicate his or her constitutional guaranteed rights." Grant v. City of Pittsburgh, 98 F.3d 116, 126 (3d Cir.1996).

### IV. DISCUSSION

A. 42 U.S.C. § 1983 Standard

Section 1983 provides for the imposition of liability on any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or the laws of the United States. 42 U.S.C.A. § 1983 (1996). The statute is not a source of substantive rights, but merely provides " 'a method for vindicating federal rights elsewhere conferred.' " Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)  
**(Cite as: Not Reported in F.Supp.)**

Page 3

In conjunction with the Due Process Clause of the Fourteenth Amendment, Section 1983 allows plaintiffs to assert three kinds of federal claims: (1) claims for the deprivation by state officials of any of the specific protections defined in the Bill of Rights; (2) claims under the substantive component of the Due Process Clause that bar certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them; and (3) claims under the procedural component of the Due Process Clause relating to the deprivations of life, liberty, or property without due process of law. Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

To state a claim under Section 1983, a plaintiff must show both that (1) the offending conduct deprived the plaintiffs of rights secured by the Constitution of the United States, and (2) that such conduct was committed by a person acting under color of state law. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds,* Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The first issue we address is whether the plaintiff has presented evidence of a deprivation of a right secured by the Constitution. *See* Baker, 443 U.S. at 140; Collins v. City of Harker Heights, Texas, 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ("when a § 1983 claim is asserted against a municipality, [look at]:(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation"). In the instant case, Plaintiff alleges that the Defendants acted to deprive it of equal protection and to deprive it of substantive due process. We will address each of these in turn.

B. Deprivation of Right

*1. Res Judicata*

Before we can reach Plaintiff's equal protection claim, we must decide the extent to which Plaintiff's claim is precluded by *res judicata.* Defendants did not include *res judicata* as an affirmative defense in their answer as is required by Fed.R.Civ.P. 8(c). Affirmative defenses not raised at that time are usually deemed waived pursuant to Rule 8(C); however, Rule 15(a) permits a party to amend its answer at any time by leave of the court and states that "leave shall freely be given when justice so requires." In an on-the-record telephone conference with the parties on April 10, 1997, a stipulation was entered into whereby Defendants' Motion for Partial Summary Judgment on Count One was deemed as also being a Motion to Amend Defendants' Answer to Plaintiff's Second Amended Complaint. Both Plaintiff and Defendants were given leave to address themselves more fully to this issue.

**\*4** The Third Circuit has recognized that "failure to raise an affirmative defense by responsive pleading or appropriate motion ... does not always result in waiver." Charpentier v. Godsil, 937 F.2d 859, 863 (3d Cir.1991). Indeed, we should permit an amendment unless the opposing party will be prejudiced. Plaintiff contends prejudice because of the length of time since the answer, and the fact that discovery is closed. However, neither of these actually prejudice Plaintiff to the extent that Defendants should be precluded from amending their answer.

Certainly, the passage of time alone is insufficient to create prejudice. Adams v. Gould, Inc., 739 F.2d 858, 867 (3d Cir.1984). In addition, due to the intense similarities between the prior suit and the instant one, Plaintiff cannot credibly claim that it is surprised by the affirmative defense, or that the defense is unexpected. Finally, the fact that discovery is closed does not greatly prejudice Plaintiff, because the amendment that Defendants seek to make presents only a legal question for which all of the relevant facts are already before the court. As such, the addition of *res judicata* as an affirmative defense does not require any further discovery. *See* Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1376 (3d Cir.1993); Brathwaite v. St. John's Episcopal Hospital, 1987 WL 25911, \*2 (E.D.N.Y. Nov.18, 1987). Therefore, we will permit Defendants to amend their answer to assert the affirmative defense of *res judicata,* and for purposes of the present motion will deem it to be so amended.

We now turn to the merits of the affirmative defense. The doctrine of *res judicata* provides that "a subsequent suit based on the same cause of action as a prior suit that involved the same parties or their privies is barred where there has been a final judgment on the merits in the prior suit." Labelle Processing Co. v. Swarrow, 72 F.3d 308, 313 (3d Cir.1995), (citing Board of Trustees of Trucking Employees v. Centra, 983 F.2d 495, 504 (3d Cir.1992)). Of course, the party asserting the defense bears the burden of showing that it applies. United States v. Athlone Industries, Inc., 746 F.2d 977, 983 (3d Cir.1984). Defendants must show that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

"there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action" has presently been filed. *Arab African International Bank v. Epstein,* 10 F.3d 168, 171 (3d Cir.1993); *see also A.C. Elfman & Sons, Inc. v. Clime,* 355 Pa.Super. 394, 513 A.2d 488, 489 (Pa.Super.1986).

Defendants here assert that Plaintiff's equal protection claim based on the denial of a "through-the fence" agreement is precluded because it was the subject of a prior federal suit that was dismissed with prejudice. We agree. In 1986, the Northeast Jet Company filed a complaint in this court against the Lehigh-Northampton County Airport Authority alleging, inter alia, a cause of action under Section 1983 for violation of its equal protection rights because the Authority had not granted it a "through-the-fence" agreement and had granted one to another company, ITT. *Northeast Jet Company v. Lehigh-Northampton County Airport Authority,* No. 86-CV-0179 (E.D.Pa.1986). This case was dismissed with prejudice upon settlement of the parties. "Dismissal with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial." *Gambocz v. Yelencsics,* 468 F.2d 837, 840 (3d Cir.1972). Therefore, the dismissal with prejudice of the earlier suit in this case fulfills the first requirement of *res judicata.*

**\*5** The second requirement is also satisfied, as the parties in the first and present suits are either the same or their privies. A party is considered a privy to an action when it has a mutual interest in the same action by some relationship with a party to an action, or when its interests are represented by that party. See *Lawlor v. National Screen Service Corporation,* 349 U.S. 322, 329-30, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). Certainly, given the closeness of the relationship between Northeast Jet Center and Northeast Jet Company, the fact that they are both controlled by the same man, and the fact that Jack Yohe and Sanford Wartell act at and for the direction of the Lehigh-Northampton Airport Authority, all of the parties involved in the instant suit can be considered either parties or privies of the first suit.

Finally, the third prong, a subsequent suit based on the same causes of action, is also satisfied. The instant suit alleges, *inter alia,* that Defendants violated Section 1983 by unconstitutionally discriminating against Plaintiff because Defendants refused to give Plaintiff a "through-the-fence" agreement subsequent to granting one to another company, ITT. This claim is virtually identical to the one in the original suit which was dismissed with prejudice. As such, to the extent that the instant claim of a violation of Section 1983 is based on the equal protection allegation concerning the desired 1985 "through-the-fence" agreement, that claim is barred from consideration by this court by *res judicata.*

*2. Equal Protection Claim*

To the extent that Plaintiff's equal protection claims are not barred by *res judicata,* we will discuss the merits of each. Plaintiff asserts that its equal protection rights were violated because the Defendants intentionally discriminated against it by enforcing fixed-base operator ("FBO") standards that were both (1) not in effect and (2) not enforced against other FBOs at the airport; and by (3) not granting Plaintiff a "through-the-fence" agreement although they had granted one to another company previously. However, Plaintiff has failed to present sufficient evidence of discrimination, intentional or otherwise.

The Supreme Court has repeatedly held that a law which is "fair on its face and impartial in its appearance may nonetheless constitute illegal discrimination between persons if it is applied and administered by public authority with an evil eye and an unequal hand." *Holder v. Allentown,* 987 F.2d 188, 197 (3d Cir.1993), *quoting Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Even if the duty imposed by the applicable statute or standard is "mandatory," public officials engage in unconstitutional discrimination when they seek to enforce the statute in order "to prevent the exercise of a fundamental right." *Holder* 987 F.2d at 197, *quoting United States v. Schoolcraft,* 879 F.2d 64, 68 (3d Cir.), *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989). In an equal protection claim of this sort, though, the plaintiff must provide evidence of intentional, or purposeful, discrimination by the defendants. *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Mere unequal treatment via a standard fair on its face is insufficient; there must be a showing of "clear and intentional discrimination.", *Id., citing Gundling v. City of Chicago,* 177 U.S. 183, 186, 20 S.Ct. 633, 44 L.Ed. 725 (1900). Moreover, "to establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must [provide evidence] that similarly situated persons have been treated differently." *Gagliardi v. Village of Pawling,* 18 F.3d 188, 193

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Page 5

(2nd Cir.1994).

**\*6** Plaintiff points out that issues of intent are generally unsuited for summary judgment because courts should not resolve any genuine issues of credibility. Coolspring Stone Supply, Inc. v. American States Life Insurance Company, 10 F.3d 144, 148 (3d Cir.1993); Ness v. Marshall, 660 F.2d 517, 519 (3d Cir.1981). Nevertheless, if the plaintiff is unable to make an initial evidentiary showing of intent, there is no genuine issue of credibility for the jury to sort out, and summary judgment is appropriate.

In the instant case, Plaintiff has not met even this light burden; it has instead made mere conclusory allegations without support in evidence. It alleges that Defendants enforced FBO standards against it and did not enforce them against other companies; however, there is no reference to the record or any evidence to support this argument. It alleges that Defendants gave another company, ITT, a "through-the-fence" agreement but intentionally did not give it one; again, there is no reference to any evidence to support this. Plaintiff cannot survive at this stage solely on the statement that "there is ample evidence of animus against Center and its owner Earl Holtz by Defendants," *Plaintiff's Brief* at 22, without providing us with at least one example of this evidence.

Defendants, to the contrary, point us to many places in the record where an absence of an intent to discriminate is clear. They note that the lease which Plaintiff held with Defendants specifically references the applicable FBO standards; that those standards required that tenants providing FBO services have an FAA license which permitted them to do so; and that when Plaintiff turned in that license to the FAA, Defendants properly considered Plaintiff to be in breach of its lease. *Defendant's Brief* at 21-25 and included cites to the record therein. These actions seem eminently reasonable to us in light of the evidence which has been presented to us. There has been no evidence of the requirements within the leases of the other companies involved, or of whether there are differences or similarities therein to Plaintiff's lease that would require certain action by Defendants.

Plaintiff places a great deal of reliance on our dicta in our August 1, 1996 opinion that there is no mention of a Part 145 certificate in the lease or the applicable standards; however, this reliance is misplaced. Upon further review of the lease and standards, we find that fourth requirement under "Aircraft Maintenance" on page 10 of the FBO minimum standards incorporated into the lease states that, "The Fixed Base Operator must be able to obtain from the F.A.A. a license to operate a Class One and Three repair station." This statement, as Defendants point out, is a direct reference to a Part 145 certificate, and was relied upon by them in finding the plaintiff to be in breach of its lease.

Defendants also provide evidence to contradict Plaintiff's bare allegations regarding the "through-the-fence" agreement.FN1 They state that they had provided anther company, ITT, with such an agreement in 1984; however, the FAA subsequently informed them that it did not approve of these agreements, it did not want Defendants to grant any more, and it then provided Defendants with a copy of its new policy "Minimum Compliance Standards for Through-the-Fence Operations" in July 1985. Therefore, Defendants declined to provide such an agreement with Plaintiff in 1985 not out of a desire to discriminate, but solely to acquiesce to a recent FAA mandate. *Defendants Brief* at 26-27 and included cites to the record therein. Plaintiff has provided us with absolutely no evidence to rebut this. As such, its claim cannot survive.

> FN1. Although we have decided that this claim is barred by *res judicata,* above, we will discuss the issue for clarity.

*2. Substantive Due Process*

**\*7** Plaintiff also bases its Section 1983 claim on an allegation of a violation of substantive due process. Plaintiff argues that Defendants, under color of state law, intentionally acted to deprive it of property rights protected by the Constitution. Specifically, it claims that Defendants forced Plaintiff into financial despair, destroyed Plaintiff's FBO business, and forced Plaintiff to leave the Lehigh Valley International Airport through defamation and intentional interference with potential business relations. *Defendants' Brief,* Exhibit A at 1. Regardless of the extent to which Plaintiff makes a state cause of action, it has not provided us with any evidence of a constitutional violation.

The Due Process Clause of the Fourteenth Amendment declares that no state shall deprive any person of life, liberty, or property, without due process of law. The clause has a substantive component that bars "certain government actions regardless of the fairness of the procedures used to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00277-CFD   Document 87-2   Filed 04/11/2007   Page 9 of 19

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Page 6

implement them." *Planned Parenthood v. Casey,* 505 U.S. 833, 846, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (*quoting Daniels v. Williams,* 474 U.S. 327, 331 (1986)). Thus, where public officials "invoke administrative processes with an illicit purpose, they are violating substantive due process." *Grant v. City of Pittsburgh,* 98 F.3d 116, 125 (3d Cir.1996). In order to succeed on a substantive due process claim, Plaintiff "must prove that the governmental authority acted to infringe a property interest encompassed by the Fourteenth Amendment." *DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell,* 53 F.3d 592, 600 (3d Cir.) [citations omitted], *cert. denied,* 516 U.S. 937, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995).

The first question, whether a basic property interest has been alleged and supported with evidence, is a question of state law. *Acierno v. Cloutier,* 40 F.3d 597, 616 (3d Cir.1994). However, "[u]nder the law of this circuit, 'not all property interests worthy of procedural due process protections are protected by the concept of substantive due process.' " *Homar v. Gilbert,* 89 F.3d 1009, 1021 (3d Cir.1996) (quoting *Reich v. Beharry,* 883 F.2d 239, 244 (3d Cir.1989)), *cert. granted,* --- U.S. ----, 117 S.Ct. 678 (U.S. Jan. 3, 1997) (No. 96-651). Therefore, plaintiff must instead have been deprived of " 'a certain quality of property interest.' " *Homar,* 89 F.3d at 1021 (*quoting DeBlasio,* 53 F.3d at 600). This is because, "substantive due process protects fundamental interests, not state-created contract rights." *Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir.1990). Indeed, what constitutes a property interest for the purposes of procedural due process might not so constitute for the purposes of substantive due process, because "property rights for procedural due process purposes are created by state law, [and] substantive due process rights are created by the Constitution." *DeBlasio,* 53 F.3d at 599. The Supreme court has held that where claims are more analogous to state-law tort claims, substantive due process is usually not implicated. *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

**\*8** The second question to be considered is whether, in the context of a governmental deprivation, the government authority "deliberately and arbitrarily abused its power." *Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority,* 103 F.3d 1165, 1179 (3d Cir.1997) (*citing Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 683 (3d Cir.1991), *cert denied,* 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992)); *see also Rogers v. Bucks County Domestic Relations Section,* 959 F.2d 1268, 1277 (3d Cir.1992) ("the fundamental question underlying a substantive due process claim is whether a statute or regulation irrationally or arbitrarily deprives an individual of an established right").[FN2] This abuse occurs where actions are taken that are intentional or "motivated by bias, bad faith, or partisan or personal motives unrelated to the merits of the matter before it." *Id.*

> FN2. While Defendants contend that the appropriate standard is that the government action "shocks the conscience" per *Fagan v. City of Vineland,* 22 F.3d 1296, 1303 (3d Cir.1994), this is incorrect. The Third Circuit has suggested, albeit not very clearly, that this standard is used only in police pursuit cases, or where there is a state created danger. *See, Evans v. Avery,* 100 F.3d 1033, 1037 (3d Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3611 (U.S. Feb. 28, 1997) (No. 96-1390); *Kneipp v. Tedder,* 95 F.3d 1199, 1207 (3d Cir.1996); *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1153 n. 13 (3d Cir.1995), *cert. denied,* 516 U.S. 858, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). We note, though, that Defendants' actions are not only not arbitrary, they do not "shock the conscience."

Plaintiff frames its claim by saying that Defendants "undertook an intentional course of conduct designed to destroy plaintiff's FBO business, undermine the value of plaintiff's assets, force plaintiff off of the ABE Airport, and acquire plaintiff's hangar and business for less than it was worth." *Defendants' Brief,* Exhibit A at 1. Certainly, "ownership is a property interest worthy of substantive due process protection." *DeBlasio,* 53 F.3d at 600. However, a closer examination of Plaintiff's claim demonstrates that it boils down to a claim of defamation (lost reputation), loss of the backing of a bank, and loss of a potential contract with another company, Union Pacific. Therefore, despite the ultimate result, Plaintiff has demonstrated no evidence that supports a tangible property interest protected by the Fourteenth Amendment.

In *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that injury to reputation is not a liberty or property interest protected by the due process clause of the Fourteenth Amendment. To state a claim for defamation under Section 1983, "a plaintiff must

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00277-CFD    Document 87-2    Filed 04/11/2007    Page 10 of 19

Not Reported in F.Supp.                                                                                                Page 7
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

allege loss of a recognizable property or liberty interest in conjunction with the allegation of injury to reputation." *Cooper v. Dupnik,* 924 F.2d 1520, 1532 (9th Cir.1991). This has been called the "stigma-plus" or "defamation-plus" test. To meet the "plus", the plaintiff must demonstrate that the defamation caused the denial of a federally protected right, or that the defamation occurred in connection with a federally protected right. Business losses and public scorn have been held to not meet the "plus" requirements, because such consequences would not usually be the direct result of any affirmative conduct by the parties making the defamation. *Id.; Buckey v. County of Los Angeles,* 957 F.2d 652, 655 (9th Cir.1992); *Green v. DeCamp,* 612 F.2d 368, 371 (8th Cir.1980).

In the instant case, Plaintiff has not brought forth any evidence which connects the alleged defamation with any specific property or liberty interest protected by the Fourteenth Amendment. Plaintiff appears to assert that merely because this court found that Plaintiff had sufficiently pled a Section 1983 action following Defendants' Motion to Dismiss, we should consequently find, without more, that the claim withstands summary judgment. This is a gross misstatement of summary judgment law, as discussed above; Plaintiff cannot avert summary judgment by simple denials, and must at the very least produce sufficient evidence to support each element of its claim. Our earlier memorandum on Defendants' First Motion for Summary Judgment also does not provide Plaintiff with the support it seeks; we ruled only that the issues of equal protection and substantive due process had not adequately been briefed and thus the motion would be denied pending further briefing. *Northeast Jet Center,* 1996 WL 442784 at *7.

*9 Plaintiff also argues without evidentiary support that the "plus" part of their defamation can be found in the loss of prospective business relationships. *Plaintiff's Brief* at 29. However, we do not believe there is any support for the proposition that there is a constitutionally protected property interest in potential business. As the Ninth Circuit held in *Cooper,* business loss generally does not create the "plus" needed to turn defamation into a Section 1983 violation. *Cooper,* 924 F.2d at 1534. Plaintiff's reliance on *DeBlasio,* 53 F.3d 592 (3d Cir.1995), is misplaced, as the statement regarding potential property interests came in dicta in the context of a procedural due process claim, not substantive due process. Plaintiff's reference to *Petrone v. City of Reading,* 541 F.Supp. 735 (E.D.Pa.1982), in a footnote is similarly unavailing. That case, which is not controlling to us, held that the plaintiff had satisfied the "plus" requirement by asserting a direct loss of his business and his employment, not a loss of potential business relationships. Despite the interest that tort and contract law has in preserving business relationships, this is not a property interest worthy of constitutional protection. *See Charles v. Baesler,* 910 F.2d 1349, 1354 (6th Cir.1990) (citing *Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 229-30, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)); *Reich v. Beharry,* 883 F.2d 239, 243-44 (3d Cir.1989). Simply, Plaintiff has not provided us with any evidence that would create a genuine issue as to the existence of a property or liberty interest protected by the Fourteenth Amendment.[FN3]

> FN3. Nor does Plaintiff have the required level of property interest in the loss of potential business, relationships in and of themselves. Because actions which may state a claim in tort do not necessarily rise to the level of Constitutional protection, Plaintiff's must produce evidence of something more. *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). They have not done so, and thus have not met their very limited burden in this regard.

Even assuming a property interest, Plaintiff has not offered any evidence that Defendants "deliberately and arbitrarily" abused their power. Plaintiff argues rather summarily, and without reference to the record, that because there is no reference to a Part 145 license in the lease or the FBO standards, Defendants acted arbitrarily by finding Plaintiff in breach of its lease in October 1988. Further, Plaintiff states that Defendants acted arbitrarily by refusing to release Plaintiff from its breach of lease following the reissuance of its Part 145 license from the FAA in February of 1989 and instead waiting to do so until May, 1989. Finally Plaintiff states, without more, that "Defendants embarked upon a year-long campaign to undermine [Plaintiff's] business-and drive it off the Airport." *Plaintiff's Brief* at 32.

None of these statements create a genuine issue of material fact in light of the evidence currently before the court. Rather, it is apparent that, as we noted above, the standards incorporated into the lease do require that Plaintiff, if acting as an FBO, to obtain

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)  
**(Cite as: Not Reported in F.Supp.)**

Page 8

the appropriate FAA license. When Plaintiff voluntarily forfeited its license to the FAA, it was in breach of that lease, and it was far from arbitrary for the Defendants to so inform Plaintiff. The "consultant's opinion" to which Plaintiff refers does state that Plaintiff was not in breach of its lease when its sister company lost its Part 135 operating license following a plane crash; however, the opinion does not discuss the issue of whether the loss of a Part 145 license would create a breach and is therefore irrelevant. The lease additionally required Defendants to inform those holding a first mortgage lien on Plaintiff's leasehold of any breach. *Defendant's Motion for Summary Judgment,* January 22, 1996, Exhibit C at III D.1.. Therefore, the notice provided to Plaintiff's bank was not done by arbitrary or bad faith decisions. As for the delay in the release of the breach, Plaintiff offers no evidence to contradict the testimony and evidence offered by Defendants that the sole reason Defendants did not declare Plaintiff to have repaired its breach as early as February, 1989 was that they were awaiting the final report from their consultants, Airport Corporation; when they received a report stating the conclusion that Plaintiff was in compliance with the lease on April 22, 1989, Defendants placed it on the agenda for the next board meeting in May. *See Plaintiff's Brief,* Exhibit 11 at 1740. Finally, despite the plethora of exhibits attached to Plaintiff's brief, Plaintiff makes no reference to any evidence therein which would create a genuine issue as to the arbitrariness or inappropriate nature of Defendants' actions regarding Union Pacific. It is clear to us that Defendants acted carefully and reasonably in the context of the situation, and in the absence of evidence to the contrary, summary judgment is appropriate.

### C. Under Color of State Law

**\*10** To set forth a claim under Section 1983, the plaintiff must not only show that it has been intentionally and arbitrarily deprived of a constitutionally protected right, but must also demonstrate that the person who deprived him of this right did so under the color of state law. We have found that Plaintiff has not been so deprived of a right protected by the Constitution, above; however, we will discuss the matter further for clarity.

#### 1. Official Custom or Policy

It is well established that respondeat superior is not a basis for municipal liability under § 1983; however, municipalities may be directly liable under § 1983 for acts implementing a policy, practice, or custom which deprive a person of constitutional rights. *Colburn v. Upper Darby Township,* 946 F.2d 1017, 1027 (3d Cir.1991); *Monell v. City of New York Dep't of Social Services,* 436 U.S. 658, 691-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There are two predicates to direct municipal liability under section 1983: (1) identification of the relevant policymakers and (2) evidence that the policymakers' decisions caused the deprivation of rights at issue by policies which affirmatively commanded that such deprivation occur or by acquiescence in a longstanding practice or custom which constituted the " 'standard operating procedure' " of the local government entity. *Simmons v. Philadelphia,* 947 F.2d 1042, 1062 (3d Cir.1991). *cert. denied,* 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992); *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990). Execution of the government's policy or custom must inflict the injury. *Simmons,* 947 F.2d at 1059 (citing *Monell,* 436 U.S. at 694).

To show the first prong, the plaintiff must show that an official who has the final power to make policy is responsible for the particular course of action which caused the deprivation at issue. *Bielevicz,* 915 F.2d at 850. That is, "scienter-type evidence must have been adduced with respect to a high-level official determined ... in accordance with local law, to have final policymaking authority in the areas in question." *Simmons,* 947 F.2d at 1063. The Supreme Court has held that to be an "authorized decision maker," that official must be vested with full policy making authority; it is not enough that the official have discretionary authority to make a decision if that decision can be overturned by another who has the final authority to make policy that binds the municipality. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Bielevicz,* 915 F.2d at 850 (the official must have "final, unreviewable discretion to make a decision or take an action"). Indeed, municipal liability attaches "where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur,* 475 U.S. at 483-84. Whether an individual or group is a policymaker for purposes of Section 1983 is a question of state law. *Pembaur,* 475 U.S. at 483.

**\*11** In the case at bar, it is clear that the Board of Governors for the Airport Authority is the group

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00277-CFD    Document 87-2    Filed 04/11/2007    Page 12 of 19

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)  
**(Cite as: Not Reported in F.Supp.)**

Page 9

responsible for establishing final airport policy. See Pa. Stat. Ann. tit. 53, § 309(A) (1996) ("Governing Body"). See also Jett v. Dallas Independent School District, 7 F.3d 1241, 1245-6 (5th Cir.1994) (holding that pursuant to relevant municipal code, neither Superintendent nor Principal had final authority because the code vested such authority in the district's board of trustees) Neither Defendant Yohe nor Defendant Wartell have the final discretion required for their actions to bind the Authority, and Plaintiff has not demonstrated any evidence to the contrary.

The second prong can be satisfied in a variety of ways. Certainly, the existence of a policy or custom authorizing the conduct is sufficient. A "policy" is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." Simmons, 947 F.2d at 1059 (*quoting* Monell, 436 U.S. at 690). It is also made when "a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Bielevicz, 915 F.2d at 850. A "custom" lacks formal approval but is a given course of conduct that is so well settled and permanent that it has the force of law. *Monell,* 436 U.S. at 651. In addition, the Supreme Court has held that the second prong can be satisfied for "a single decision by municipal policymakers under appropriate circumstances." Pembaur, 475 U.S. at 480.

Plaintiff points to the decision to find it in breach of its lease, the FBO standards, and the "through-the-fence" policy as policies approved and authorized by the Board of Governors. However, these examples disguise what appears to be Plaintiff's true argument: that Defendants "undertook an intentional course of conduct designed to destroy plaintiff's FBO business." *Defendants Brief,* Exhibit A at 1. Plaintiff is really contending that Defendants made specific decisions to destroy its business and force it off the Airport, but has produced no evidence to the effect that the Board of Governors either affirmatively approved such decisions or were deliberately indifferent to them. Moreover, even if Plaintiff could demonstrate that Defendants Yohe and Wartell had the requisite position of final authority, it has pointed us to no evidence that would support the conclusion that Defendants had made any decisions or actions to ruin Plaintiff's business or force it to leave the Airport.

*2. Qualified Immunity*

To the extent that it is necessary to discuss the qualified immunity of Defendants Yohe and Wartell, given the above, we find that they are so protected. The Supreme Court established the standard for a grant of qualified immunity in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. In order to apply this test, the Court concluded that on summary judgment, the trial judge must determine "whether the law was clearly established at the time the action occurred." *Id.*

**\*12** The Third Circuit expanded on this, saying that, "the right an official is alleged to have violated must have been 'clearly established' in a 'particularized' sense. That is, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Abdul-Akbar v. Watson, 4 F.3d 195, 202 (3d Cir.1993) (*citing* Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that the question revolves around whether the official would know that his specific conduct was violate a clearly established right). Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). We note that the Third Circuit has also delineated the tension between the Supreme Court's instruction that qualified immunity be determined preferably at the summary judgment stage, and the need to carefully examine the specific conduct of the defendants. Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir.1996).

In the instant case, we have reviewed the conduct of the Defendants in detail, and it is plain that Defendants Yohe and Wartell were neither incompetent nor knowingly violating the law. As we discussed more fully, above, express provisions in the lease warranted the notice of default, and FAA policy required the denial of the 'through-the-fence' agreement. Moreover, there has been no evidence that Defendants were acting to violate any law when they negotiated with Union Pacific, or issued a statement that the Airport did not have a satisfactory FBO operator. Rather, the evidence suggests legitimate reasons for Defendants actions such that qualified immunity for Mr. Yohe and Mr. Wartell is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

appropriate.

### D. Proximate Cause

Finally, Plaintiff has also failed to produce evidence which demonstrates a genuine issue with regard to the final element of a Section 1983 claim, that the alleged unlawful policy or custom was the proximate cause of the injuries suffered. To do so, "a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Bielevicz, 915 F.2d at 850 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). The question of proximate cause is generally a question for the fact-finder; however, if the causal link is so tenuous or without evidence as to be implausible, it may be decided at summary judgment. Bielevicz, 915 F.2d at 851.

In the instant case, Plaintiff attempts to combat a very tenuous causal link with blanket, conclusory statements and no reference to the record. The evidence demonstrates that as a result of a 1988 plane crash and FAA investigation, Plaintiff's sister company was required to turn in its Part 135 (flying) certificate. The ensuing business loss greatly affected Plaintiff's ability to provide FBO services, and consequently it turned in its Part 145(FBO) certificate to the FAA. This put Plaintiff in breach of its lease, and caused Union Pacific, a potential business partner, a great deal of concern about the viability of any co-projects. This court therefore sees little causal connection between any of Defendants' actions and Plaintiffs loss of business. As such, Plaintiff has failed to create any genuine issues of material fact relating to its Section 1983 claims, and summary judgment for the defendants is appropriate at this time.

### V. CONCLUSION

**\*13** For the foregoing reasons, we will grant Defendants' Motion for Partial Summary Judgment on Count One.

The two remaining counts, defamation and interference with a prospective contractual relationship, are state counts. There is no diversity in this action, and we decline to retain supplemental jurisdiction now that all of the federal claims have been eliminated.

An appropriate order follows.

### ORDER

AND NOW, this 5th day of May, 1997, upon consideration of Defendants' Motion for Partial Summary Judgment on Count One, filed February 19, 1997 and which we previously deemed to also be a Motion to Amend Answer, Plaintiff's Opposition to Defendants' Motion, filed March 21, 1997, Defendants' response thereto, filed April 16, 1997, Plaintiff's Opposition to Defendants' Motion to Amend Answer, filed April 17, 1997, and Defendants' response thereto, filed April 21, 1997, it is hereby ORDERED, consistent with the foregoing memorandum, that:

1. Defendants' Motion to Amend Answer is GRANTED

2. Defendants' Motion for Partial Summary Judgment on Count One is GRANTED;

3. This court no longer has jurisdiction over the remaining two state claims, and therefore this case is DISMISSED without prejudice to Plaintiffs' ability to bring those claims in the appropriate state court. We express no opinion as to the merits of those claims; and

4. This case is CLOSED.

E.D.Pa.,1997.
Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport Authority
Not Reported in F.Supp., 1997 WL 230821 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

205 F.3d 1324    Page 1
205 F.3d 1324, 2000 WL 232766 (C.A.2 (N.Y.))
**(Cite as: 205 F.3d 1324)**

Royal Ins. Co. of America v. DHL Worldwide Exp.
C.A.2 (N.Y.),2000.
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA2 s 0.23 for rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Second Circuit.
ROYAL INSURANCE COMPANY OF AMERICA a/s/o Ivoclar North America, Plaintiff-Appellant,
v.
DHL WORLDWIDE EXPRESS and DHL Airways Inc., Defendants-Appellees.
**No. 99-7951.**

Feb. 28, 2000.

Appeal from the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., Judge.

William D. Broderick, Marcigliano & Campise, New York, NY, for appellant.
John N. Romans, Kupfer, Rosen & Herz, LLP, New York, NY; Scott A. Korenbaum, of counsel, for appellees.

Present STRAUB, SOTOMAYOR, Circuit Judges, and HURD, Judge.[FN*]

> [FN*] The Honorable David N. Hurd, United States District Judge for the Northern District of New York, sitting by designation.

SUMMARY ORDER

***1** AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgement of the District Court is hereby AFFIRMED.

Royal Insurance Company of America ("Royal Insurance") appeals from a judgment of the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., *Judge* ), granting summary judgment to DHL Worldwide Express and DHL Airways Inc. (collectively "DHL") on Royal Insurance's claim to recover damages sustained by its subrogor, Ivoclar North America ("Ivoclar"), as a result of a lost shipment of medical supplies sent by Ivoclar through DHL. Summary judgment was granted on the grounds that Ivoclar failed to file written notice of claim within 30 days of DHL's acceptance of the package, as explicitly required in the agreement between DHL and Ivoclar.

On appeal, Royal Insurances argues, as it did below, that (1) DHL received legally sufficient notice of claim in the form of a letter written by DHL to Ivoclar within the 30-day period, (2) DHL waived the notice of claim defense because of DHL's admission in correspondence between the parties that it lost the shipment, and (3) DHL should be estopped from raising the notice of claim defense because it "invited Ivoclar to contact its cargo insurer to recoup the value of the loss of shipment" and "[i]nherent in this invitation was that Ivoclar should not claim against DHL." In addition, Royal Insurance contends that the District Court abused its discretion by allowing DHL to raise the unpleaded defense of insufficient notice of claim.

We affirm the District Court's grant of summary judgment against Royal Insurance for substantially the reasons stated in the District Court's opinion filed July 12, 1999, *see* Royal Ins. Co of Am. v. DHL Worldwide Express, No. 98 Civ. 3743, 1999 WL 494118 (S.D.N.Y. July 13, 1999), and its opinion denying Royal Insurance's Motion for Reconsideration, filed on August 25, 1999, 1999 WL 672557 (S.D.N.Y. Aug. 26, 1999).

In addition, we reject the argument that the District Court abused its discretion in allowing DHL to raise the notice of claim defense in its summary judgment motion. The District Court construed DHL's summary judgment motion as a motion to amend under Fed.R.Civ.P. 15(a). A district court has the discretion to grant leave to amend, and, in exercising that discretion, should freely grant leave "when justice so requires." Fed.R.Civ.P. 15(a); *see* Foman v. Davis, 371 U.S. 178, 182 (1962); John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir.1994). We will reverse a decision to grant leave only for abuse of discretion. *See* Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993). Royal Insurance failed to establish prejudice or bad faith which would call the District Court's decision

205 F.3d 1324 Page 2
205 F.3d 1324, 2000 WL 232766 (C.A.2 (N.Y.))
**(Cite as: 205 F.3d 1324)**

into question. Thus, we find the District Court did not abuse its discretion in allowing the amendment. *See, e.g., id.* at 351 (affirming a district court's treatment and grant of a summary judgment motion as one to amend the pleadings where there was no showing of bad faith or substantial prejudice).

C.A.2 (N.Y.),2000.
Royal Ins. Co. of America v. DHL Worldwide Exp.
205 F.3d 1324, 2000 WL 232766 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d                                                                                                                   Page 1
Not Reported in A.2d, 2001 WL 835411 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**



Savings Bank of Rockville v. Wielgos
Conn.Super.,2001.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut.
The SAVINGS BANK OF ROCKVILLE,
v.
Sharon WIELGOS.
**No. CV970065409.**

June 27, 2001.

MEMORANDUM OF DECISION ON MOTION TO DISMISS

SCHOLL.

**\*1** This action was originally instituted in 1997 by the Savings Bank of Rockville (the "Bank") against Sharon Wielgos seeking reformation of a note that Wielgos gave the Bank, collection on that note, and for unjust enrichment. The Bank claimed that in 1987 it committed to loan Wielgos $94,000 at 8.875% to be repaid within 15 years. The note was secured by a mortgage on Wielgos' home. At the closing, however, the note executed by Wielgos provided for payments that would amortize the loan over 25 rather than 15 years. This error was not discovered by the parties until 1994. In its action, the Bank sought a reformation of the note to reflect the payments necessary to amortize the loan over 15 years, damages for Wielgos' failure to make the agreed upon payments, and unjust enrichment. Wielgos counterclaimed, claiming the Bank had violated the Truth In Lending Act ("TILA"), unjust enrichment, negligence, reformation and promissory estoppel. In 1999 Wielgos refinanced her home and paid off the Bank's note. The Bank then withdrew its complaint.

Trial on Wielgos' counterclaim commenced on May 23, 2001. After Wielgos rested and the Bank had begun its defense on May 24th, the Bank filed a Motion to Dismiss the counts of the counterclaim claiming a violation of the TILA, unjust enrichment, reformation and promissory estoppel on the grounds that the court lacked subject matter jurisdiction to proceed on these counts because the TILA claim was barred by the statute of limitations and the other counts were moot because Wielgos had paid off the Bank's note. Upon receipt of the Bank's Motion to Dismiss, the court suspended the trial since, " 'once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented ... and the court must fully resolve it before proceeding further with the case ... Subject matter jurisdiction, unlike jurisdiction of the person, cannot be created through consent or waiver.' (Internal quotation marks omitted.) *Figueroa v. C & S Ball Bearing,* 237 Conn. 1,4-5, 675 A.2d 845 (1996)." *Salmon v. Dept. of Public Health,* 58 Conn.App. 642, 649 (2000). Wielgos was giving an opportunity to file a brief in opposition to the Motion to Dismiss and oral argument on the Motion was held on June 13, 2001.

In the First Count of Wielgos' counterclaim, she alleges that the Bank violated the state TILA, Conn. Gen.Stat. § 36a-678 which adopts the provisions of the Federal Consumer Credit Protection Act, 15 USC 1601 et seq. The Bank claims that this cause of action is barred by the statute of limitations set forth in the Acts. Conn. Gen.Stat. § 36a-683 provides for certain penalties for failure to comply with the TILA and in subsection (e) states:

Any action under this section shall be brought in any court of competent jurisdiction within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of sections 36a-675 to 36a-685, inclusive, in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action.

**\*2** The Bank claims that since it has withdrawn its complaint, Wielgos' claim of violations of the TILA is barred by this statute of limitations. Wielgos claims that it is well-settled that a counterclaim survives the withdrawal of the complaint and that since the counterclaim is allowed under the Act, despite being filed more than one year after the date of the alleged violation, the counterclaim is within the applicable statute of limitations.

Ordinarily a statute of limitations claim does not involve the subject matter jurisdiction of the court but where a specific limitation on a cause of action is contained in the statute which establishes the remedy, the remedy exists only during the prescribed period and not thereafter and the statute of limitations is considered substantive or jurisdictional, and not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2001 WL 835411 (Conn.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 2

subject to waiver. *Ambroise v. William Raveis Real Estate, Inc.,* 226 Conn. 757, 766 (1993).[FN1] Since the TILA provides for statutory rights and remedies, the statute of limitations applicable to the Act is jurisdictional.

> FN1. Since the applicability of the statute of limitations involves the subject matter jurisdiction of the court, Wielgos' claim that the Bank should be estopped from claiming that her TILA claim is barred is of no avail; subject matter jurisdiction cannot be waived or conferred on the court by any action of the parties.

There is no dispute that Conn. Gen.Stat. § 36a-683(e) allows a debtor to plead a violation of the TILA defensively by way of recoupment or set-off notwithstanding the statute of limitations in an action by the creditor on the debt. In *Jewett City Trust Co. v.. Gray,* 35 Conn.Sup. 508, 509 (1977), the plaintiff commenced an action to recover the balance due on a promissory note and the defendant filed a counterclaim, by way of recoupment, claiming violations of the TILA. The plaintiff claimed that the counterclaim was barred because it was brought more than one year from the date of the occurrence of the alleged violation of the TILA. The court held that the counterclaim was not barred:

Recoupment is the defendant's right to cut back, reduce or overcome the plaintiff's demand. It may be for liquidated or unliquidated damages. In recoupment a defendant may cut down to the full amount of the plaintiff's claim, but may not recover for any balance due him. *Nickerson v. Martin,* 34 Conn.Sup. 22, 28. To a claim by way of recoupment the statute of limitations has no application. "Not only does the bringing of an action stop the operation of the statute as to a proper matter of set-off, but it also seems that it revives a claim which is actually barred, but which is the proper subject of recoupment in the action, as damages growing out of the same transaction." Wood, Limitation of Actions (1st Ed.) 602; *Beecher v. Baldwin,* 55 Conn. 419, 432; *Mulville v. Brown,* 9 Conn.Sup. 387, 389; *Orsi v. Hall,* 8 Conn.Sup. 92, 94. "The defense of recoupment exists as long as the plaintiff's cause of action exists and may be asserted though the claim as an independent cause of action is barred by limitations." *Orsi v. Hall, supra,* 94; *Stone v. White,* 301 U.S. 532, 539.

*Jewett City Trust Co. v. Gray,* 35 Conn.Sup. 508, 509-10 (1977).

Citing *Jewett City,* the Appellate Court in *Genovese v. J.N. Clapp Co.,* 4 Conn.App. 443, 446 (1985), noted that "[r]ecoupment is available defensively as long as the plaintiff's cause of action exists. It may be asserted even though the defendant's claim, as an independent suit, is barred by the statute of limitations. *Beecher v. Baldwin,* [55 Conn. 419], 431; *Jewett City Trust Co. v. Gray,* 35 Conn.Sup. 508, 510, 390 A.2d 948 (1977)."

**\*3** Here the counterclaim for recoupment no longer exists as a defense to a claim but as an independent action. Section 10-55 of the Practice Book specifically allows a counterclaim to survive the withdrawal of the complaint which it counters.[FN2] However, as a counterclaim it survives as an independent affirmative claim for relief. " '[A] counterclaim is a cause of action existing in favor of the defendant against the plaintiff and on which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action. See Ballentine's Law Dictionary (3d Ed.) p. 279.' *Wallingford v. Glen Valley Associates, Inc.,* 190 Conn. 158, 160, 459 A.2d 525 (1983); see *Conservation Commission v. Price,* 193 Conn. 414, 433, 479 A.2d 187 (1984)." *Fairfield Lease Corp. v. Romano's Auto Service,* 4 Conn.App. 495, 496 (1985). It is "an independent action." *United States Trust Co. v. Bohart,* 197 Conn. 34, 45 (1985). The question then is whether it is now subject to the statute of limitations.

> FN2. Practice Book § 10-55 provides that: "The withdrawal of an action after a counterclaim, whether for legal or equitable relief, has been filed therein shall not impair the right of the defendant to prosecute such counterclaim as fully as if said action had not been withdrawn, provided that the defendant shall, if required by the judicial authority, give bond to pay costs as in civil actions."

Here the defendant's claim of recoupment can clearly be asserted defensively, despite being outside the applicable statute of limitations, because of the specific provisions of Conn. Gen.Stat. § 36a-683(e). But once the complaint was withdrawn, the defendant's claim is no longer "a matter of defense" as contemplated by the TILA and must, as an independent action, withstand the requirements that it state a cause of action and that it be brought within any applicable statute of limitations. Where

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                       Page 3
Not Reported in A.2d, 2001 WL 835411 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

recoupment has been allowed to be used affirmatively, it is subject to the operation of the statute of limitations. *Zurback Steel Corp. v. Edgcomb,* 411 A.2d 153, 155 (Supreme Court of New Hampshire, 1980); 51 Am.Jur.2d Limitation of Actions § 123. " 'For the purpose of the statute of limitations, an action upon the subject of a counterclaim is deemed to have begun when it is filed or, where permission to do so is necessary, when a proper motion for that purpose is served on the opposing party. *Id.,* 108-09.' *Pacelli Bros. Transportation, Inc. v. Pacelli,* 189 Conn. 401, 413-14, 456 A.2d 325 (1983)." *Howard v. Robertson,* 27 Conn.App. 621, 625 fn.4 (1992).

As a matter of defense, Conn. Gen.Stat. § 36a-683(e) permits the defendant's claim despite the passing of the time provided in the applicable statute of limitations, but, as an independent action, seeking affirmative relief, it is subject to that statute. The statute provides that an action must be brought within one year from the date of the occurrence of the violation. In the First Count of the counterclaim, Wielgos alleges that on or about March 17, 1987 she applied to the Bank for a residential loan and that on May 6, 1987 the Bank provided her with a TILA statement which disclosed that her payments would be $946.43 per month for a period of 179 months and one final payment of $947.46. She also alleges that on or about June 10, 1987 she signed a note setting the payments at $780.82 per month and that the note did not indicate that the payments would not fully amortize the loan in fifteen years and that the Bank did not disclose to her the existence of a lump sum or balloon payment at the end of the fifteen-year period. Therefore Wielgos claims that the Bank violated the TILA because the Bank's TILA statement did not accurately disclose the actual finance charges, the total payments contemplated under the note, and the number, amount and due dates of payments. Thus the occurrence of the violations of the TILA as alleged by Wielgos was in 1987. The failure to bring an action within the one-year limitation of the TILA bars that action. See, *Basham v. Finance America, Corp.,* 583 F.2d 918, 927 (7th Cir.1978). The filing of Wielgos' original counterclaim in 1998 was clearly outside the statute of limitations.[FN3] Therefore the First Count of her counterclaim must be dismissed.

> FN3. The parties conceded that the transaction at issue here is a closed-end credit transaction. The general rule involving closed-end consumer credit transactions is that the TILA statute of limitations period begins to run either at the time of execution of the credit contract or at the time of performance of the contract and a continuing violation theory has been rejected. Time Limitations Under 15 USCS § 1640(e) On Truth In Lending Act Suits, 36 ALR Fed. 657, 670; *Wachtel v. West,* 476 F.2d 1062 (6th Cir.1973).

**\*4** The Bank also moves to dismiss the Second, Fourth and Fifth Counts of Wielgos' counterclaim on the grounds that her claims are moot. "Mootness implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. See *Fiddelman v. Redmon,* 59 Conn.App. 481, 483, 757 A.2d 671 (2000)." *Hechtman v. Savitsky,* 62 Conn.App. 654, 657 (2001). In the Second Count of her counterclaim, Wielgos claims unjust enrichment in that the Bank has collected more interest from her than was originally provided by a properly amortized fifteen-year loan at eight and seven eighths percent. The Bank moves to dismiss this count on the grounds that the existence of an express contract renders this claim moot. However "unjust enrichment applies whenever 'justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract ...' 12 S. Williston, Contracts (3d Ed.1970) § 1479, p. 272." *Gagne v. Vaccaro,* 255 Conn. 390, 401 (2001). Therefore the fact that there may have been an express contract is not conclusive as to the unjust enrichment claim, recovery pursuant to the doctrine of unjust enrichment may still be appropriate where there is a contract but no remedy under the contract. In *Gagne v. Vaccaro* the Court stated:

Unjust enrichment is a very broad and flexible equitable doctrine that has as its basis the principle that it is contrary to equity and good conscience for a defendant to retain a benefit that has come to him at the expense of the plaintiff. *National CSS, Inc. v. Stamford,* ... 195 Conn. 597. The doctrine's three basic requirements are that (1) the defendant was benefitted, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment. *Bolmer v. Kocet,* 6 Conn.App. 595, 612-13, 507 A.2d 129 (1986). All the facts of each case must be examined to determine whether the circumstances render it just or unjust, equitable or inequitable, conscionable or unconscionable, to apply the doctrine. *Meaney v. Connecticut Hospital Assn., Inc.,* ... 250 Conn. 511-12.

*Id.,* 409.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2001 WL 835411 (Conn.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 4

The Court in *Gagne* described this process as a "highly fact-intensive inquiry." Since Wielgos' claim for unjust enrichment is not rendered moot simply by the existence of an express contract and her entitlement to any relief under that doctrine involves a factual inquiry, the Bank's Motion to Dismiss the Second Count of the counterclaim is denied.

In the Fourth Count of her counterclaim, Wielgos seeks a reformation of the note that she signed so that the $780.82 monthly payment will fully amortize the loan in fifteen years by reforming the interest rate to a nominal rate of 5.755% or such reformation as the court deems fair and equitable. The Bank moves to dismiss this count on the grounds that Wielgos' claim is moot because no practical relief can be awarded to her on this count because the mortgage and the note were paid off and released. The Bank cites *Weisman v. Kasper,* 233 Conn. 531 (1995), for the proposition that where a party has paid the amount demanded for release of a mortgage, it cannot claim reformation of that mortgage. There Kasper claimed reformation of the mortgage on the grounds that the terms were unconscionable. The trial court held this claim was moot because the mortgage had been released. On appeal, the Supreme Court found that Kasper could not revive this claim because of the Court's conclusion, as a matter of law, that she was under no duress when she paid off the mortgage. The Court did not address the issue of whether, simply having paid the mortgage off, rendered Kasper's claim for reformation moot even if she was under duress when she did so. Therefore the decision in *Weisman* is of little assistance to the court here.

**\*5** Reformation is an equitable remedy. *Harlach v. Metropolitan Property & Liability Ins.,* 221 Conn. 185, 191 (1992); *Derby Savings Bank v. Oliwa,* 49 Conn.App. 602, 603 (1998). The purpose of reformation is to "restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties ..." *Lopinto v. Haines,* 185 Conn. 527, 532 (1981), quoting *George Backer Management Corporation v. Acme Quitling,* 46 N.Y.2d 211, 219, 385 N.E.2d 1062 (1978). But here the agreement of the parties is no longer in effect or operation, the obligations of each of the parties thereunder having been satisfied. To allow reformation of the mortgage note now, when it has been paid and the mortgage released, would be creating a fiction. Both parties agree that no longer does the note or mortgage govern the relationship of the parties. In fact, there is no present relationship between the parties subject to any existing agreement. Since no practical relief can be awarded under the claim for reformation in the Fourth Count of Wielgos' counterclaim, it is ordered dismissed.

In the Fifth Count of the counterclaim Wielgos claims promissory estoppel. Wielgos claims that the promise of the Bank to make her a loan which would fully amortize over fifteen years should be enforced. The Bank moves to dismiss this count as moot on the basis that since the note and mortgage have been paid, it is no longer possible for the Bank to be estopped from claiming an amount which is at variance with the agreement. Generally, promissory estoppel lies where there is no written contract or where the contract cannot be enforced. *Lark v. Post Newsweek Stations Conn.,* 1995 Ct.Sup. 9480 (1995). Here the parties agree that there is a written agreement but that it does not reflect the actual agreement entered into by the parties. The purpose of promissory estoppel is to enforce the actual agreement of the parties. "Under a promissory estoppel theory, a party may maintain a claim for damages based upon a promise which induces the party's action or forbearance, if such action or forbearance is undertaken in reasonable reliance upon the promise." *Finley v. Aetna Life & Casualty Co.,* 202 Conn. 190, 205 (1987) (citations omitted). Therefore the fact that the written agreement may no longer be enforceable or of any effect does not render Wielgos' claim for damages on the basis of promissory estoppel moot. The Bank's Motion to Dismiss the Fifth Count of the Counterclaim is denied.

In conclusion, the Bank's Motion to Dismiss is granted as to the First and Fourth Counts of the Counterclaim and denied as to the Second and Fifth Counts.

Conn.Super.,2001.  
Savings Bank of Rockville v. Wielgos  
Not Reported in A.2d, 2001 WL 835411 (Conn.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.