**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RONALD P. MORIN, SR., ET AL., | : | CIVIL ACTION NO. |
|     Plaintiffs, | : | |
| | : | 3:03 CV 277 (CFD) |
| v. | : | |
| | : | |
| NATIONWIDE FEDERAL CREDIT UNION, | : | |
| ET AL., | : | |
|     Defendants. | : | April 11, 2007 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Ronald P. Morin, Sr. and Denise M. Morin presently assert twelve claims against the Defendants Nationwide Federal Credit Union ("NFCU") and Nationwide Mutual Insurance Company and its affiliates (collectively, "Nationwide"). Plaintiffs' borrower relationship with NFCU is the predicate for all of their claims. The undisputed facts establish that Plaintiff Ronald Morin unequivocally defaulted on his obligations under the loans and the actions undertaken by Defendants were entirely permissible under the loan documents. The Defendants violated no law, statute or duty, and accordingly, summary judgment should enter on Defendants' behalf on each Count of the Complaint.

## Brief Summary of Undisputed Material Facts

As shown by Defendants' Local Rule 56(a)(1) Statement of Facts ("Facts") with its accompanying affidavits and exhibits, deposition transcripts and the pleadings in this case, the following facts are not in dispute as between the parties.[1]

### 1.     The Agent's Agreement between Mr. Morin and Nationwide

Plaintiffs are husband and wife.  Plaintiffs' Complaint ("Compl."), Count 1, ¶ 2.  Mr. Morin was an exclusive agent of Nationwide for the sale of its insurance products pursuant to an Agent's Agreement.  Facts, ¶ 2. The Agent's Agreement provided that, if Mr. Morin elected to comply with certain conditions, Nationwide would make certain post-termination payments to Mr. Morin, referred to therein as extended earnings and Deferred Compensation Incentive Credits ("DCIC") under the Agency Security Compensation Program set forth in the Agreement (collectively, "ASC benefits").  Facts, ¶ 3.

Mr. Morin resigned as Nationwide's agent by letter dated February 6, 2000, upon receipt of which, Nationwide advised Mr. Morin that the Agent's Agreement was terminated.  Compl. ¶ 8; Facts, ¶ 29.

### 2.     The NFCU Loan Facility

Commencing in 1994, Mr. Morin entered into a business loan facility with NFCU (the "Loanliner facility").  Facts, ¶ 5.  Advances under the Loanliner facility (collectively, the "Advances") were made by NFCU from the period 1994 and afterwards.  The total amount

---

[1] For a full and complete statement of undisputed facts, Defendants rely upon their Local Rule 56(a)(1) Statement of Facts filed herewith and incorporated herein.

2

advanced and owing under the business loan as of February 7, 2000 was $173,245.86.  Facts, ¶ 21.

Each advance was accompanied by a Security Agreement (collectively, the "Security Agreement")

which, in identical language, expressly granted NFCU a security interest in Mr. Morin's

commissions, extended earnings and DCIC.  Facts, ¶¶ 6, 11, 14, 16, 18, 20.  Mr. Morin promised,

by the Security Agreement, that he owned the property securing the Advances.  Id.

Mr. Morin also executed an Assignment of all of his payments of any nature due him from

Nationwide at the termination of his agent relationship, dated January 5, 1994 and in favor of

NFCU.  Facts, ¶¶ 7, 11, 14, 16, 18, 20.   The Assignment set forth the following:

> For value received, I hereby transfer, set over, and assign to Nationwide Federal
> Credit Union any and all payments due me, including commissions, extended
> earnings, deferred compensation incentive credits, bonuses, and any other
> compensation due me under my Agent's Agreement or any Agent's Agreement
> executed hereafter, for all outstanding loans from the Credit Union which are now or
> hereafter made, and deposit said payments to the account of Nationwide Federal
> Credit Union.
>
> This assignment shall include all commission, extended earning, deferred
> compensation incentive credit, bonuses, and any other compensation becoming
> due upon me, or any time hereafter, and at the termination of my Agent's Agreement,
> such amounts due me shall be applied in their entirety to my indebtedness to
> Nationwide Federal Credit Union.

Facts, ¶ 7.  (emphasis added).

The loan agreements also state:  "Property given as security under this Plan or for any other

loan will secure all amounts you owe the credit union now and in the future." Facts, ¶ 12.

The default provisions of the Security Agreement for the Loanliner facility advise Mr.

Morin that "[y]ou will be in default if you break any promise you make under this agreement."

Facts, ¶ 12.  The default provisions of the "Loanliner Application And Credit Agreement," executed

3

by Mr. Morin further provide: "You will be in default if you do not make a payment of the amount required when it is due. You will be in default if . . . something happens which the credit union believes may substantially reduce your ability to repay what you owe." Id. Mr. Morin further agreed that, upon default, NFCU would be able to require immediate repayment of amounts owed under the Loanliner facility without notice. Id.

While his business loan was outstanding, Mr. Morin entered into a loan agreement with NFCU on or about October 12, 1999, for, *inter alia*, the purchase of a motor vehicle (a Dodge Durango) and granted NFCU a security interest in that vehicle. Facts, ¶¶ 22-23. Mr. Morin expressly agreed that the security interest granted NFCU in the Durango secured all of Mr. Morin's loans with NFCU. Facts, ¶ 23. Mr. Morin also took out a secured loan from NFCU to finance a "Ski-Doo." Facts, ¶ 25. Mr. and Mrs. Morin also held, jointly, a VISA credit card issued by NFCU. Facts, ¶¶ 27-28.

### 3. Defaults

The Agent's Agreement provides, in relevant part, that Nationwide's liability for ASC benefits (the security for Mr. Morin's loans) ceased if Mr. Morin elected to compete with Nationwide within one year following the termination of the Agreement within twenty-five miles from his former Nationwide office. Facts ¶ 4. Mr. Morin began competing with Nationwide immediately following his February 6, 2000 resignation within such geographic area and, accordingly, forfeited any right to payment of ASC benefits by Nationwide. Facts, ¶ 30. Nationwide promptly advised NFCU of the same. Facts, ¶ 31.

4

By letter dated February 9, 2000 NFCU advised Mr. Morin that it had been advised by Nationwide that he had elected to forfeit his ASC benefits (the security for his loans), and asked Mr. Morin to "state his intentions regarding repayment of the loans." Facts, ¶ 32. As of February 7, 2000, Mr. Morin was obligated to pay $4,076.42 per month to satisfy his total debt obligations under the LoanLiner Facility (i.e. for all his outstanding loans at that time), payable $2,038.21 semi-monthly. Facts, ¶ 39. After receiving the notice of default, Mr. Morin agreed to pay $2,300 semi-monthly for his loans, by automatic transfer from his NFCU savings account. Facts, ¶ 35.

In July 2000, Mr. Morin revoked authorization for payments for the business loans by automatic transfer, and became delinquent on those loan obligations. Facts, ¶¶ 37-39. In September 2000, Mr. Morin became current on his loan payments. Facts, ¶ 41. However, in October 2000, Mr. Morin again ceased making monthly payments on the business loan, directing instead that his automatic transfer payments be applied only to the Durango and other consumer loans. Facts, ¶¶ 43-45.

Mr. Morin subsequently failed to make timely payments on these loans from during December 2000 through February 2001, and in May 2001, while Mr. Morin was in default on his Durango loan and business loan, NFCU caused the Durango to be repossessed. Facts, ¶¶ 46-50. NFCU charged off all of Mr. Morin's outstanding loans (except the Visa card balance) by September 2001. Facts, ¶ 52.

On or about January 27, 2003, Plaintiffs brought this action to the Connecticut state court. Nationwide removed the case to this Court based on diversity and federal question jurisdiction.

## **Legal Standards**

Summary judgment is warranted where the movant shows the absence of a genuine dispute over a material fact and the entitlement to judgment as a matter of law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  On issues where the moving party does not have the burden of proof, he need only demonstrate that there is a lack of evidence to support the nonmovant's claim.  See Linskey v. City of Bristol, Civil No. 3:05-CV-872 CFD, 2007 WL 963179, at *2 (D. Conn. March 30, 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-325 (1986)).[2]  Upon such a demonstration, the nonmovant must provide evidence as would support a jury's verdict in his favor.  If the nonmoving party has failed to make a sufficient showing on an essential element of its case, summary judgment is appropriate.  See id. (citing Celotex, 477 U.S at 323 and Tops Mkts., Inc .v Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1988)).

## **ARGUMENT**

**I.    NFCU BREACHED NO CONTRACT AND IS THEREFORE
       ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNTS 1 AND 2**

Based upon the undisputed facts, NFCU is entitled to judgment as a matter of law on Mr. Morin's Count 1 for breach of contract and Count 2 for breach of the implied covenant of good faith and fair dealing, both asserted against NFCU only.[3]  While the complaint is vague and unspecific

---

[2]  Copies of all unreported decisions are submitted herewith in Defendants' Compendium Of Unreported Decisions.

[3]  The elements of a cause of action for breach of contract are:  (1)  the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages.  See SACS Global Trust & Mortgage, LLC v. Thomas, No. 3:06cv1228 (JBA), 2007 WL 853327, at *3 (D. Conn.  Mar. 21, 2007); Bross v. Hillside Acres, Inc., 92 Conn. App. 773, 780-781 (2005).  In order to prevail on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove three things:  (1) that the parties entered  into a contract from which

6

about precisely what contractual terms NFCU purportedly breached, Mr. Morin testified in his deposition that NFCU breached his agreements because "the loans were being paid and they defaulted, put the loans in default and/or repossessed the vehicle." Blanchard Aff., Ex. 3 (Morin Dep. at 237:4-6). The undisputed fact of Mr. Morin's multiple defaults in his loan obligations to NFCU defeat those claims.

The undisputed facts establish that Mr. Morin was in default on numerous occasions, for numerous reasons. First, when Mr. Morin terminated his agency with Nationwide on February 6, 2000 and began competing, he forfeited the ASC benefits that served as the collateral for his loan. See Facts, ¶ 30. Pursuant to the loan documents, Mr. Morin would be in default if he broke "any promise" he made under his agreement. See Facts, ¶ 12. He promised he owned the security, yet upon his termination, due to his choice to compete with Nationwide, he no longer owned the security. The default provision of the "Loanliner Application And Credit Agreement" also provides: "You will be in default if . . . something happens which the credit union believes may substantially reduce your ability to repay what you owe." See Facts, ¶ 12. As Mr. Morin terminated his agreement with Nationwide, which agreement provided the basis for Mr. Morin's income to repay his loans, NFCU was plainly justified in declaring a default.

Mr. Morin also came into default for failure to pay his loans as agreed on multiple occasions, and he ultimately failed to cure those defaults. See Facts, ¶¶ 37-39, 43-45, 48, 51. Indeed, while Mr. Morin originally worked out an agreement with NFCU to make monthly

---

the plaintiff reasonably expected to benefit; (2) the defendant's actions damaged the benefit of the contract; and (3) that the defendant's bad faith caused the damage. Zembko v. Northwestern Mut. Life Ins. Co., No. 3:05CV918(AHN)., 2007 WL 948323, at *5 (D. Conn. Mar. 26, 2007), (citing Owen v. Georgia-Pacific Corp., 380 F. Supp. 2d 382, 393 (D. Conn. 2005)). Bad faith is defined as "that state of mind affirmatively operating with furtive purpose or ill will…" Id. (citing Buckman v. Peoples Express, Inc., 205 Conn. 166, 171 (1987)). A sinister or dishonest purpose is required to prove bad faith. Id. (citing Owen, 380 F. Supp. at 394 and Franco v. Yale Univ., 238 F. Supp. 2d 449, 455 (D. Conn. 2002)).

payments on all of his loans by automatic transfer, in July 2000 he cancelled the automated payments on his business loan entirely and failed to pay that loan for several cycles. See Facts, ¶¶ 37-39. While he became current, briefly, in September, he thereafter failed to make any other payments on the loan—ever. To date he continues to owe over $130,000 on the loan. See Facts, ¶ 52. Similarly, Mr. Morin became delinquent on his Durango loan, and after NFCU exercised its rights to repossess and sell the vehicle, Mr. Morin never paid to NFCU the deficiency on the Durango, of which had NFCU notified him. Again Mr. Morin was in default for failure to pay his loan. In sum, Mr. Morin forfeited the security he promised to NFCU for his loans (the ASC Benefits), stopped paying his business loan entirely and missed payments on the Durango loan.

Nor was it a breach of any agreement for NFCU to repossess the vehicle. Pursuant to the loan documents, the Durango was security for both the Durango loan, and Mr. Morin's business loans. See Facts, ¶ 23. ("The security interest [i.e the Durango] secures the advance and . . . any other advances you now have or receive in the future under the LOANLINER Credit Agreement, any loans you have with the credit union, including any credit card loan, and any other amounts you owe the credit union for any reasons now or in the future."). NFCU was entitled to repossess the Durango upon Mr. Morin's failure to pay his Durango loan, and Mr. Morin had failed to make two payments, never cured, in the months before the vehicle was repossessed. Facts, ¶ 49. Further, because the loans were cross collateralized, NFCU was entitled to repossess the Durango upon Mr. Morin's default on any of his loans, and he had been in default on his business loan since February 2000, and in monetary default on the business loan since October 2000. Facts, ¶ 45-48. There is no evidence to suggest that Mr. Morin could simply choose to pay some loans and not others.

Mr. Morin also testified that NFCU "breached disbursement agreements as to how the funds were to be disbursed to the loans." Blanchard Aff., Ex. 3 (Morin Dep. Tr. at 237:4-6). Even assuming *arguendo* that such an event occurred, Mr. Morin cannot pursue a claim for breach of

8

contract.  Pursuant to the automated transfer forms (the contracts which Mr. Morin claims NFCU breached), "NFCU's only responsibility to [Mr. Morin] [t]hereunder for failure to perform or error solely caused by NFCU shall be to correct at its own expense any such error."  <u>See</u> Brisendine Aff., Ex. 17.  The same forms also include hold harmless and indemnification clauses.  <u>See i.d.</u>  Thus, according to the plain language of these contracts, Mr. Morin has no actionable breach of contract, nor any damages from such breach.

Nor can Mr. Morin show any breach of the implied covenant of good faith and fair dealing. Whatever his claim (to date not articulated) may be, Connecticut law does not permit a claim for breach of the implied covenant of good faith and fair dealing, in effect, to vary the express terms of the parties' agreement.  <u>Verrastro v. Middlesex Ins. Co.</u>, 207 Conn. 179, 190 (1988) ("The concept of good faith and fair dealing is [e]ssentially ... a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." (internal quotations omitted)).   As NFCU complied with the express terms of its loan agreements, Mr. Morin's attempt to assert such a claim is futile.  Moreover, Mr. Morin must show that NFCU acted in bad faith.  <u>See</u> <u>De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.</u>,  269 Conn. 424, 433 (2004) ("To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.").  He cannot do so.  At all times, NFCU acted in good faith.  <u>See</u> Facts, ¶ 61.

## II.    NFCU DID NOT CONVERT MR. MORIN'S PROPERTY AND IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNTS 3 AND 9

Based upon the undisputed facts, NFCU is entitled to judgment as a matter of law on Mr. Morin's Count 3 for conversion and Count 9 for violation of Connecticut General Statutes § 42a-9-503. In both Counts 3 and 9, Mr. Morin complains of the repossession of the Durango.[4] NFCU was entitled to repossess the Durango, and is therefore entitled to judgment on both Counts 3 and 9.

Former § 42a-9-503, *et seq.* is Connecticut's codification of, *inter alia*, the Uniform Commercial Code ("UCC") provisions as to the rights of a secured party to its collateral upon the debtor's default and the remedies available to the debtor in the event of non-compliance with those provisions.[5] Conversion under Connecticut law is the unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the owner's rights. See Macomber v. Travelers Property and Cas. Corp., 261 Conn. 620, 649 (2002); Stuart & Sons, L.P. v. Curtis Pub. Co., Inc., 456 F. Supp. 2d 336, 343 (D. Conn. 2006). The undisputed facts prove that NFCU was entitled to repossess the Durango, its security, upon Mr. Morin's default. Thus, NFCU is entitled to judgment on Counts 3 and 9.

––––––––––––––––––––––––

[4] Count 9 of Plaintiffs' Complaint alleges "[t]he repossession of the motor vehicle violated Connecticut General Statutes § 42a-9-503 *et seq.*, all to the special loss and damage of plaintiff." Count 3 alleges "[t]he seizure of the motor vehicle by the defendant Credit Union constituted a conversion of plaintiff's personal property, all to his loss and damage."

[5] Connecticut adopted the revised Article 9 of the Uniform Commercial Code by Public Act 01-132 and has recodified the new provisions. The counterpart to former § 42a-9-503, pertaining to a secured party's right to take possession after default, is now § 42a-9-625. The counterpart to former § 42a-9-507, pertaining to remedies for secured party's failure to comply with this article, is

The loan documents conclusively establish that Mr. Morin granted NFCU a security interest in the vehicle and, also, that the loans were cross-collateralized.  See Facts ¶ 23;  Hartford National Bank & Trust Co. v. Essex Yacht Sales, Inc., 4 Conn. App. 58, 63 (1985) (security interest is enforceable against the debtor when debtor signed a security agreement containing a description of the collateral, value is given, and debtor has rights in the collateral).  Mr. Morin was in default on the business loan and the Durango loan.  See Facts, ¶¶ 45-49.  It is axiomatic that, upon the borrower's default, the creditor is entitled to take possession of a vehicle securing the loan without judicial process so long as the repossession does not breach the peace.  See, e.g., Clark v. Auto Recovery Bureau Conn., Inc., 889 F. Supp. 543, 546-547 (D. Conn. 1994); Conn. Gen. Stat. § 42a-9-503(a).  "If no breach of the peace occurred, then defendant exercised a 'present right' to possession in compliance with section 42a-9-503 of the UCC . . ." Clark, 889 F. Supp. at 547.[6]  For the same reasons, Mr. Morin's conversion claim fails.

---

now § 42a-9-625.  As Plaintiffs acknowledge, their UCC claim is governed by the former version of these provisions.

[6]    In their prayer for relief, Plaintiffs also make claim for "treble damages for theft." Compl., p. 13, ¶ 4.  Section 52-564 of the Connecticut General Statutes states:  "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."  Plaintiffs allege nothing whatsoever to support this claim and, indeed, the documents they reference disprove it.  Moreover, it is well established that Plaintiffs' (deficient) assertion of conversion is insufficient to support a claim for statutory theft.  Statutory theft under Section 52-564 is synonymous with larceny under General Statutes § 53a-119.  Lauder v. Peck, 11 Conn. App. 161, 165 (1987).  "Therefore, statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion."  Suarez-Negrette v. Trotta, 47 Conn. App. 517, 520-21 (1998) (internal quotation marks and citations omitted).  At no time did NFCU intend to steal Mr. Morin's car.  Indeed, NFCU's communications to Mr. Morin all indicate that NFCU believed it was entitled to repossess the vehicle due to default. NFCU is entitled to judgment on Mr. Morin's (unpled) civil theft damages assertion.

11

**III.    ALL OF PLAINTIFFS' STATE LAW CLAIMS**
**BASED ON FURNISHING INFORMATION TO CONSUMER**
**REPORTING AGENCIES ARE PREEMPTED BY FEDERAL LAW**

Although Plaintiffs fail to allege with specificity the basis for their several alleged state law claims, the claims are apparently premised on NFCU's provision of information regarding Plaintiffs to consumer reporting agencies ("CRAs").    Plaintiffs' claims include:    infliction of emotional distress (Count 4), invasion of privacy (Count 5, asserted by Mr. Morin only), libel and/or slander (Count 6), CCPA violations (Count 8 asserted by Mr. Morin only) and CUTPA violations (Count 12).    To the extent that Plaintiffs base these claims on furnishing allegedly false information to CRAs, such claims are preempted by the express provisions of the FCRA.[7]

Section 1681t(b)(1)(F), the broad preemption clause of the FCRA, provides:

No requirement or prohibition may be imposed under the laws of any State-... with respect to any subject matter regulated under ... section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies ...

---

[7]    Plaintiffs have failed to allege sufficient facts to discern the precise bases for their numerous claims, but the claims appear to be potentially subject to statute of limitations and preemption.  Defendants have accordingly raised federal statutes of limitations and federal preemption as legal bars to several of the Plaintiffs' claims herein.  As it is unsettled as to whether express statutory clauses providing for limitations periods and preemption of state law are jurisdictional or rather should be raised as affirmative defenses, (see, e.g., Fishman v. Delta Air Lines, Inc., 132 F.3d 138 (2d Cir. 1998) ("Ordinarily, a time limitation is deemed a condition precedent if it is fixed in the statute that creates the cause of action, whereas a statutory time limitation must be pleaded as the affirmative defense of statute of limitations if the cause of action was previously cognizable either at common law or by virtue of another statute."); Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411 F.3d 1369, 1376 -1377 (Fed. Cir. 2005) ("preemption defense [is] not waived if raised anytime before the pretrial order, even if not pled as an affirmative defense"); see also Fitzgerald v. Mallinckrodt, Inc., 681 F. Supp. 404, 405, n. 1 (E.D. Mich. 1987) ("the Court is not convinced preemption qualifies as an affirmative defense"); Savings Bank of Rockville v. Wieglos, No. CV970065409, 2001 WL 835411, at *2 (Conn. Super. Ct. June 27, 2001) ("Since the TILA provides for statutory rights and remedies, the statute of limitations applicable to the Act is jurisdictional")) in an abundance of caution, Defendants have filed concurrently with this Motion a Motion to Amend their Answer to add federal preemption and statutes of limitations as affirmative defenses.

12

15 U.S.C. § 1681t(b)(1)(F) (2005).  Thus, to the extent that NFCU's conduct falls within the "subject matter regulated under ... section 1681s-2,"[8] all of Plaintiffs' state law claims based on that conduct -- infliction of emotional distress, defamation, CUTPA, invasion of privacy, libel and/or slander -- are preempted.  See Ryder v. Washington Mut. Bank, 371 F. Supp. 2d 152, 154-55 (D. Conn. 2005) (dismissing, in part, defamation and CUTPA claims based on preemption under § 1681t(b) where such claims were "based on actions of a furnisher of information [to a CRA] after the furnisher has received notice of the inaccuracies), citing with approval Kane v. Guaranty Residential Lending, Inc., No. 04-CV-4847(ERK), 2005 WL 1153623, at *8 (E.D.N.Y. May 16, 2005); see also Holtman v. Citifinancial Mortgage Co., Inc., No. Civ. A. 3:05-CV-1751, 2006 WL 1699589 at *3-*5 (D. Conn. June 19, 2006) (dismissing defamation, CUTPA and infliction of emotional distress claims related to furnishing information to a CRA based on preemption under § 1681t(b)); Jarret v. Bank of America, 421 F. Supp. 2d 1350, 1354 (D. Kan. 2006) (observing that § 1681t(b) would preempt a claim for invasion of privacy against a furnisher of credit information); Pirouzian v. SLM Corp., 396 F. Supp. 2d 1124, 1130 (S.D. Cal. 2005) (consumer's claim under California's fair debt collection practices act premised on furnishing information to CRAs was preempted by § 1681t(b)); Hasvold v. First USA Bank, N.A., 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002) (state law claims for libel, interference with prospective advantage and invasion of privacy related to defendant's furnishing information to CRAs preempted under § 1681t(b)); Jaramillo v. Experian Information Solutions, Inc. 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001) (claims for violations of Pennsylvania consumer protection statute, defamation and tortious interference with contractual relations with respect to furnishing of information to a CRA preempted under §

---

[8] Section 1681s-2 expressly regulates the "[r]esponsibilities of furnishers of information to consumer reporting agencies."  15 U.S.C. § 1681s-2 (2005).

CTDOCS/1631685.3

1681t(b)); <u>Carney v. Experian Information Solutions, Inc.</u>, 57 F. Supp. 2d 496, 503 (W.D. Tenn. 1999) (claim under Tennessee consumer protection statute preempted under § 1681t(b)).

Additionally, Section 1681h of the FCRA provides in relevant part:

(e) Limitation of liability.... [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h (2005). This section similarly provides that state law claims based on the furnishing of information to CRAs are preempted by federal law, but is somewhat narrower than § 1681t(b)(1)(F) because it excepts claims involving malice or willful intent to injure. <u>Id.</u> This Court has interpreted section 1681h(e) to apply to conduct of furnishing information to CRAs <u>prior</u> to the furnisher's receiving notice of a dispute as to the furnished information. <u>See</u> <u>Ryder</u>, 371 F. Supp. 2d at 154-55.[9] Thus, to the extent that Plaintiffs allege that their state law claims arise from any

_____

[9] In <u>Ryder,</u> the Court (Squatrito, J.) recognized the seeming inconsistency between the language of § 1681t(b)(1)(F) and §1681h(e) in that the former preempts all state law claims and the latter excepts claims involving malice or a willful intent to injure. 371 F. Supp. 2d at 154. To reconcile the two, the Court adopted what it found to be the "persuasive" analysis set forth by the court in <u>Kane v. Guaranty Residential Lending, Inc.</u>, No. 04-CV-4847(ERK), 2005 WL 1153623, at *8 (E.D.N.Y. May 16, 2005). <u>Id.</u> The Court in <u>Kane</u> explained as follows:

Under the temporal approach, state law claims based on actions of a furnisher of information after the furnisher has received notice of inaccuracies are held preempted by § 1681t(b)(1)(F), while actions taken before notice has been received may not be preempted....It is important to note that the notice referred to here need not be from a credit reporting agency, as is required to sustain a private cause of action under § 1681s-2(b) of FCRA; notice may be receive from the...credit reporting agency or from the consumer himself. . . .

As a result, according to the temporal approach, plaintiffs may bring claims for actions that take place before a furnisher has notice of inaccuracies, but-pursuant to the plain language of § 1681h(e)-these claims can only go forward if a plaintiff

14

purported furnishing of information to CRAs prior to receiving notice of Plaintiffs' dispute of that information, those claims are also preempted absent allegations and proof of "malice or willful intent to injure." See, e.g., Gorman v. Wolpoff & Abramson, LLP, 435 F. Supp. 2d 1004, 1010 (N.D. Cal. 2006) (where plaintiff bringing libel claim related to bank's furnishing of information to CRA failed to present any evidence at summary judgment to counter bank's presentation of evidence that it did not act with "malice" or "willful intent to injure," plaintiff failed to raise a genuine issue of material fact and summary judgment was granted in bank's favor based on preemption under the FCRA); Kane, 2005 WL 1153623, at *10 (holding that plaintiffs failed to allege sufficiently that bank acted with malice or willful intent to injure where "[a]side from invoking the term malicious…plaintiffs…alleged nothing to support contention that, before receiving notice that the information was disputed, [defendant] acted with malice or willful intent to injure the plaintiffs" and dismissing complaint).

Not only have Plaintiffs failed to allege such malice or willfulness, based upon the undisputed material facts before this Court, they are incapable of proving such malice or willfulness. NFCU took no actions with malice toward Plaintiffs. At most, NFCU reported truthful information concerning Mr. Morin's delinquencies on his loan payments. Facts, ¶ 54.

Consequently, all of Plaintiffs' state law claims, no matter when the conduct on which they are purportedly based occurred, are preempted under the unambiguous provisions of the FCRA and summary judgment should be granted in NFCU's favor on all such claims.

---

alleges that the furnisher of information provided inaccurate information with malice or willful intent to injure the consumer."

2005 WL at *8; see also Harrison v. Ford Motor Credit Corp., No. 3:03 CV 01291 RNC, 2005 WL 15452 at *1 (D. Conn. Jan. 3, 2005) (adopting temporal approach).

**IV.    NFCU AND NATIONWIDE ARE ENTITLED TO
JUDGMENT ON PLAINTIFFS' CLAIMS FOR AIDING AND
ABETTING INFLICTION OF EMOTIONAL DISTRESS, COUNT 4**

Plaintiffs claim all Defendants "aided and abetted each other to cause the injuries aforesaid to plaintiffs, including wrongfully affecting Denise M. Morin's credit, which actions were done recklessly and/or willfully and have caused substantial emotional distress and anguish for the plaintiffs." Count 4, ¶ 19. Defendants are entitled to judgment because, in addition to being preempted (see supra Section III) (i) Mrs. Morin's credit was never "wrecked"; (ii) Defendants engaged in no "outrageous" conduct sufficient to predicate a claim for infliction of emotional distress; and (iii) there can be no claim for aiding and abetting where there is no predicate claim.

First, the facts of record demonstrate that, at most, Mrs. Morin's credit history as reported by credit reporting agencies (not NFCU) erroneously indicated that Mrs. Morin was joint with Mr. Morin on loans charged off by NFCU. See Facts, ¶ 63. There is no evidence whatsoever that NFCU made any misreport of Mrs. Morin's credit. Plaintiffs' speculation will not create a genuine issue of fact for summary judgment. See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) ("[N]on-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." (internal quotations and citations omitted)). In any event, the month after Mrs. Morins' received the negative credit report, Mrs. Morin succeeded in causing the credit reporting agency to delete the information as it was an "error." Facts, ¶ 64. Indeed, Mrs. Morin's credit report indicates that she has "a good score and a wide array of loans and credit products will likely be available to you." Facts, ¶ 65. The only negative factors on her report have no relation to NFCU -- that the "proportion of balances to credit limits on your charge accounts is too high" and "you have too many bank card accounts." Id. Her credit is hardly "wrecked," and in any event, is unaffected by any action of NFCU.

16

Second, NFCU engaged in no conduct that was sufficiently "outrageous" to predicate an intentional infliction of emotional distress claim.  See Smith v. City of New Haven, 166 F. Supp. 2d 636, 645 (D. Conn. 2001) ("In order to succeed on a claim for intentional infliction of emotional distress, Plaintiff must establish … that the conduct was extreme and outrageous….[M]ere insults, indignities, or annoyances that are not extreme or outrageous will not suffice.") (citing Appleton v. Stonington Bd. of Ed., 254 Conn. 205, 210 (2000)).  Plaintiffs allege a series of vague troubles they supposedly had with NFCU.  See Compl. ¶ 15.[10]  However, none are so outrageous as to support a claim for intentional infliction of emotional distress.  See, e.g., Richardson v. Fleet Bank of Mass., 190 F. Supp. 2d 81, 90 (D. Mass. 2001) (granting summary judgment in favor of Equifax where there was no evidence that its conduct was "extreme and outrageous"); Evans v. Credit Bureau, 904 F. Supp. 123, 127 (W.D.N.Y. 1995) (granting summary judgment in favor of credit bureau on emotional distress claim where "[e]ven if plaintiff could demonstrate that defendant failed to correct

_____

[10]  Specifically, Plaintiffs allege:

> Thereafter, a series of events befell the plaintiffs which continued for several years including the defendant Credit Union misapplying payments to said loans; the defendant Credit Union improperly debiting plaintiffs' accounts established for automatic payments to be made to said loans; the defendant Credit Union's failure to timely and adequately advise plaintiff in regard to the status of said loans; the defendant Credit Union changed loan numbers to create confusion in regard to payments and accountings as well as automatic withdrawals for payments; the defendant Credit Union made artificial demands, defaults and claims of financial charges based on such improper and wrongful application of funds; the defendant Credit Union sent false reports to credit reporting agencies, including reflecting the plaintiff Denise M Morin as a co-maker on one or more loans when she was never a co-maker on any of said loans; the defendant Credit Union wrongfully repossessed one of the motor vehicles; and the defendant Credit Union generally created a paper morass to negatively impact plaintiffs' credit and maximize the retaliation for his departure.

Compl., ¶ 15.

CTDOCS/1631685.3

the alleged inaccuracies in his credit report, that conduct does not constitute 'extreme and outrageous conduct'"); <u>Vidrine v. American Professional Credit, Inc.</u>, 477 S.E. 2d 602, 605 (Ga. Ct. App. 1996) (granting summary judgment in favor or collection agency on emotional distress claim and explaining that defendant's failure to communicate plaintiffs dispute of debt "fails to rise to the level of the outrageousness and egregiousness" required to support such a claim).

Additionally, Plaintiffs have not and cannot point to any conduct of the Defendants that created an unreasonable risk of causing foreseeable emotional distress severe enough to result in illness or bodily harm so as to support a claim for negligent infliction of emotional distress. <u>See</u> <u>Vincent v. Essent Healthcare of Conn.</u>, 470 F. Supp. 2d 140, 148-49 (D. Conn. 2007) ("In Connecticut, negligent infliction of emotional distress requires proof that: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.") (citing <u>Carrol v. Allstate Ins. Co.</u>, 262 Conn. 433, 444 (2003)).

Third, a "civil action of aiding and abetting cannot stand alone and depends on the existence of a valid underlying cause of action." <u>Calore v. Stratford</u>, No. CV98035714S, 2001 WL 58364 at *5 (Conn. Super. Ct. 2001) Jan. 8,. (aiding and abetting cause of action stricken where it failed to allege sufficient facts to support allegation of negligent assault or that assistance was given in doing so) (citing <u>Fink v. Manger</u>, 988 F. Supp. 70, 72 (D. Conn. 1997) (without the underlying cause of action for vexatious litigation, the aiding and abetting claim fails); <u>see also</u> <u>Citibank, N.A. v. K-H Corp.</u>, 968 F.2d 1489, 1496 (2d Cir. 1992). As there is no viable underlying cause of action, NFCU is entitled to judgment as a matter of law.

18

**V.    DEFENDANTS ARE  ENTITLED TO JUDGMENT AS A MATTER
OF LAW ON PLAINTIFFS' CLAIMS OF INVASION OF
PRIVACY AND LIBEL AND SLANDER, COUNTS 5 AND 6,
BECAUSE DEFENDANTS  ENGAGED IN NO SUCH TORTIOUS CONDUCT**

In addition to being preempted, (see supra Section III), the Plaintiffs' claims for invasion of

privacy and libel/slander fail in their own right based upon the undisputed facts.

**A.    NFCU Is Entitled To Judgment On Plaintiffs' Privacy Claims**

Mr. Morin alleges in Count 5 (against NFCU only) that "[t]he apparent exchange of

information by and between the defendant Credit Union and Nationwide in regard to plaintiff's

accounts and his relationship with the defendant Credit Union constitutes an invasion of privacy, all

to his special loss and damage."  Compl. Count 5, ¶ 20.  Of the four manners in which privacy may

be invaded, the only one pertinent here is invasion by unreasonable publicity given to another's

private life.  See Restatement (Second), Torts §§ 652A, 652D;  Honan v. Dimyan, 52 Conn. App.

123, 131, cert. denied, 249 Conn. 909 (1990); Venturi v. Savitt, Inc., 191 Conn. 588, 591 n. 1,

(1983).  As stated  in the Restatement:  "One who gives publicity to a matter concerning the private

life of another is subject to liability to the other for invasion of his privacy, if the matter publicized

is of kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate

concern to the public."  Restatement (Second), Torts § 652D.

Plaintiffs' allegation that NFCU exchanged information with Nationwide does not establish

the element of publicity (an essential element) and is fatal to the invasion of privacy claim.

Publicity does not mean publication.   "Publicity… means that the matter is made public, by

communicating it to the public at large, or to so many persons that the matter must be regarded as

substantially certain to become one of public knowledge..."  Restatement (Second), Torts § 652D,

cmt. c.  "It is not an invasion of the right to privacy to communicate a fact concerning the plaintiff's

private life to a single person or even to a small group of persons."   Graff v. O'Connell, No.

CV0100955185, 2002 WL 450534 at *5 (Conn. Super. Ct. Mar. 5, 2002).

19

Similarly, at his deposition Mr. Morin testified that NFCU invaded his privacy by having conversations about his financial affairs with his daughter (who happened to be a co-maker on a note with him).  See Blanchard Aff., Ex. 3 (Morin Dep. Tr., at 242, 243).  He could recall no other instances of invasion of privacy.  Id..  For the same reasons that NFCU's alleged communications with Nationwide fail, so too do these communications with a single person, as opposed to the public at large, fail.

In addition, liability for invasion of privacy attaches only when the invasion is "highly offensive" to the reasonable person and, also when "it is not of legitimate concern" to the public.  Pane v. City of Danbury, 267 Conn. 669, 675 (2004).  Here, Plaintiffs have alleged no facts warranting their conclusion that NFCU engaged in an "apparent exchange" of financial information pertaining to Mr. Morin with Nationwide.  To the contrary, the only communication between the two entities alleged by Plaintiffs and born out by the undisputed facts are (1) Nationwide's advice to NFCU that Mr. Morin was not entitled to ASC benefits and (2) Nationwide's tender to NFCU of Mr. Morin's commission bonus.  Facts, ¶ 46.  In view of the fact that the loan documents provide that Mr. Morin pledged his ASC benefits as security for the loan and, further, assigned any bonus to Nationwide, the exchange of this information can in no manner be deemed highly offensive to Mr. Morin and, further, is of legitimate concern to both entities.  Thus, Plaintiffs' invasion of privacy claim is properly dismissed.

### B.    Defendants Are Entitled to Judgment On Plaintiff's Libel/Slander Claim

Plaintiffs assert in Count 6 that all Defendants committed libel and/or slander concerning plaintiff's financial affairs.  "Defamation is comprised of the torts of libel and slander.  Defamation is 'that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant

CTDOCS/1631685.3

feelings or opinions against him...   Slander is oral defamation.'"   Devito v. Schwartz, 66 Conn. App. 228, 234, (2001).[11]

To establish a defamation claim under Connecticut law, a plaintiff must prove that the defendant published unprivileged false statements that harmed the plaintiff.  See Cweklinsky v. Mobile Chemical Co., 297 F.3d 154, 158 (2d Cir. 2002 (citing Torosyan v. Boehringer Ingelheim Pharms., Inc., 234 Conn. 1, 27 (1995)); Gallo v. Eaton Corp., 122 F. Supp. 2d 293, 307 (D. Conn. 2000).

Truth is a complete defense to a defamation claim.  See Dacey v. Connecticut Bar Assn., 170 Conn. 520, 538 (1976); Emerick v. Kuhn, 52 Conn. App. 724, 732 n. 32 (1999); Hartwig v. Albertus Magnus College, 93 F. Supp. 2d 200, 218 (D. Conn. 2000);   see also Goodrich v. Waterbury American-Republican, Inc., 188 Conn. 107, 112-113 (1982) (modern rule is that only substantial truth need be shown); Libby v. Santangelo, No. CIVA3:94CV1274 (AWT), 1998 WL

_____

[11] Libel or slander are deemed per se when the defamatory meaning of the communication is apparent on its face.  See Devito v. Schwartz, 66 Conn. App. 228, 234 (2001); see also Lyons v. Nichols, 63 Conn. App. 761, 767, (2001) ("'Libel per se... is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages,'") (quoting Battista v. United Illuminating Co., 10 Conn. App. 486, 491-92, cert. denied, 204 Conn. 803 (1987)).  Libel or slander per quod is a communication which is not defamatory on its face, but becomes so in light of extrinsic facts known by the recipient of the communication.  See Battista, 10 Conn. App. at 491.  "The statements contained therein, taking them in the sense in which common and reasonable minds would understand them, are determinative, and they may not for this purpose be varied or enlarged by innuendo."  Battista, 10 Conn. App. at 492 (internal quotation marks and citations omitted).  Defamation which is actionable per se consists of false communications charging crimes or which injure the subject in his profession or calling -- i.e., "[i]t charges improper conduct or lack of skill or integrity in one's profession and is of such a nature that it is calculated to cause injury to one in his profession."  'Miles v. Perry, 11 Conn. App. 584, 601 (1987).  Unlike libel/slander per se, libel/slander per quod requires plaintiff to plead and prove actual damages of a material and, generally, pecuniary nature.  Urban v. Hartford Gas Co., 139 Conn. 301, 308 (1952).  Whether the defamation alleged is per se is a question of law for the court.  Battista, 10 Conn. App. at 492; Proto v. Bridgeport Herald Corp., 136 Conn. 557, 565 (1950).

229917 at *4 (D. Conn. Mar. 31, 1998); (summary judgment granted on defamation claim where plaintiff did not contest the truthfulness of the damaging statements made against him).

The only defamatory statement that Plaintiffs alleged to be false is NFCU's alleged representation to credit reporting agencies that Mrs. Morin was a co-maker of one of the loans. See Compl., ¶15.[12]  In her deposition, Mrs. Morin admitted that she jointly held an NFCU Visa credit card with Mr. Morin, a fact demonstrated by her and Mr. Morin's joint Visa application.  Facts ¶¶ 27-28.  Accordingly, even if NFCU did make such a statement (and Plaintiffs can point to no evidence demonstrating as much), the statement was truthful.

Mr. Morin also testified at his deposition that he was damaged by defamatory statements made by NFCU to CRAs and his daughter.  See Blanchard Aff., Ex. 3 (Morin Dep. Tr., at 243-46).  Again, NFCU's statements to the CRAs, if any such statements were made, were truthful.  Facts, ¶ 54.  With respect to statements made to Mr. Morin's daughter, Mr. Morin can point to no damage resulting from the statements, nor could he even identify with any specificity when testifying at his deposition what those supposed statements were.  See Blanchard Aff., Ex. 3 (Morin Dep. Tr., at 243-46).

## VI.   NFCU IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT 7 BECAUSE NFCU NEVER VIOLATED CONN. GEN. STAT. § 36A-41 ET SEQ

NFCU is entitled to judgment as a matter of law on Count 7.  Connecticut General Statutes, Section 36a-42 prohibits a financial institution from disclosing financial records "to any person, except to the customer or the customer's duly authorized agent, any financial records relating to such customer unless the customer has authorized disclosure to such person..."  Section 36a-41(2) defines "'Financial records'" as any:

---

[12]  Because such a statement is not defamation per se, Mrs. Morin is required to prove that she sustained pecuniary loss by reason of this misrepresentation.  See Urban, 139 Conn. at 308.  No such damage is alleged nor may it reasonably be inferred.  Count 6, therefore, is not legally viable.

22

original or any copy, whether physically or electronically retained, of:  (A) A document granting signature authority over a deposit account or a share account with a financial institution; (B) a statement, ledger card or other record on any deposit account or share account with a financial institution which shows each transaction with or respect to that account; (C) any check, draft or money order drawn on a financial institution or issued and payable by such institution or (D) any item, other than an institutional or periodic charge, made pursuant to any agreement by a financial institution and a customer which constitutes a debit or credit to that person's deposit account or share account which such financial institution if the item is not included in subparagraph (C) of this provision.

Conn. Gen. Stat. § 36a-41(2) (emphasis added).

While the complaint is obscure as to how the violation occurred, Mr. Morin complained in deposition about NFCU disclosures to credit reporting agencies and to Nationwide, apparently about defaults, as well as some conversation that NFCU had with his daughter.  See Blanchard Aff. Ex. 3, (Morin Dep. Tr. at 237-40) (Nationwide and NFCU made disclosures where they "intended to get me").  The only alleged third party disclosure is that NFCU advised credit reporting agencies that Mrs. Morin was a co-maker on one of the loans when, in fact, she was not.  Compl., ¶ 15. These communications, some of which were oral and none of which involved "documents granting signature authority," a "statement, ledger card or other record," a "check, draft or money order," or a "debit or credit, -- are not "financial records" within the purview of the Act.  See Conn. Gen. Stat. § 36a-41(2).  Judgment on Count 7 is, therefore, warranted.

Moreover, Conn. Gen. Stat. § 36a-44 sets forth a laundry list of exceptions to confidential treatment of customer financial records, including "the exchange, in the regular course of business, of credit information between a financial institution and other financial institutions or commercial enterprises, directly or through a consumer reporting agency."  Conn. Gen. Stat. § 36a-44(6).  The undisputed facts establish that NFCU made its reports to CRAs in the ordinary course of its business, and never made disclosures in violation of the statute.  Facts, ¶¶ 54-60.  NFCU's

purported disclosures to Nationwide and CRAs in the ordinary course of its business are, therefore, exempted.

**VII.    NFCU IS ENTITLED TO JUDGMENT AS A
        MATTER OF LAW ON COUNT 8 BECAUSE THERE IS NO
        PRIVATE RIGHT OF ACTION UNDER CONN. GEN. STAT. § 36A-645**

In Count 8, Mr. Morin purports to state a claim against NFCU under Connecticut's Creditor's Collection Practices Act ("CCPA"), General Statutes §§ 36a-645a, *et seq.*, which, *inter alia*, precludes "abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect a debt." Conn. Gen. Stat. § 36a-646. In addition to being preempted (see supra Section III) judgment should enter in favor of NFCU on this count, because "the CCPA does not authorize private causes of action; rather, the CCPA conveys the power to enforce the CCPA upon the State Banking Commission." Krutchkoff v. Fleet Bank, N.A., 960 F. Supp. 541, 548 (D. Conn. 1996); see also Cordova v. Larson, No. 3:96CV2111, 1997 WL 280496, at *3 (D. Conn. April 30, 1997) ("Under the CCPA, only the Connecticut Banking Commissioner may initiate a cause of action against persons engaging in collection practices prohibited by the Act."); Yale New Haven Hospital v. DeMatteo, No. 9704073AS, 1998 WL 563817, at *2 (Conn. Super. 1998) (observing that legislative history of CCPA indicates that the legislature rejected inclusion of a private remedy in CCPA).

Moreover, Plaintiffs' failure to allege any facts in support of their claim under the CCPA renders their assertion that Defendants violates CCPA a mere conclusions, insufficient to state a claim for violation of the Act under Connecticut law. See Homestead Funding Corp. v. Welch, No. 067260, 2002 WL 31234716, at *6 (Conn. Super. Ct. Aug. 28, 2002) (where defendant "[h]as not alleged any facts to support the mere conclusion of law," CCPA counterclaim was subject to a motion to strike).

24

## VIII.  COUNT 10 IS TIME BARRED [13]

Count 10 asserts a claim by Mr. Morin against NFCU for violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq*.  The complaint is devoid of any factual allegations to either identify or sustain that claim.  However, Mr. Morin has asserted, *inter alia*, that NFCU failed to respond to his inquiries regarding his loans.     See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, p. 19.

Section 1640(e), which creates a private right of action for violations of the Truth-in-Lending Act, imposes a one-year limitation period for the assertion of claims thereunder, including claims under § 1666, *et seq*.  See 15 U.S.C. § 1640(e); see also Raney v. First National Bank of Nebraska, Inc., No. 06-8-DLB, 2006 WL 2588105  (E.D. Ky. Sept 8, 2006) ("The Fair Credit Billing Act, 15 U.S.C. § § 1666-1666j, is enforced by the TILA….   Both the TILA and FCBA are governed by the one year statute to limitations set forth in 15 U.S.C. § 1640(e).").  Claims must be brought within one year of the creditor's failure to correct the billing error of which it had been given notice by the obligor pursuant to the statute;   see also Douce v. Banco Popular North America, No. 05CV89ALAK, 2006  WL  2627966 at *8 (S.D.N.Y. Sept. 12, 2006); Davis v. Maryland Bank, 2002 WL 32713429, at *6 (N.D. Cal. June 19, 2002); see also Burstein v. Saks Fifth Ave. & Co., 208 F. Supp. 2d 765, 776 (E.D. Mich. 2002) (limitations period commences upon creditor's failure to comply with the statutory scheme for resolving billing disputes).

---

[13]   See supra note 7.

This action, originally brought to the Connecticut Superior Court, was commenced, at the earliest, on or about January 27, 2003 upon Plaintiffs' service of the original complaint upon Defendants. See Facts, ¶ 66; see also Converse v. General Motors Corp., 893 F.2d 513, 514 (2d Cir. 1990) (referring to "the longstanding Connecticut rule that an action is considered commenced by service on the defendants"); Kotec v. Japanese Educational Institute of N.Y., 321 F. Supp. 2d 428, 431 (D. Conn. 2004) (noting that "[i]t is well settled that in Connecticut (unless otherwise specified by the legislature) a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant"). Mr. Morin's FCBA claim, therefore, may encompass only claims arising after January 28, 2002 concerning his consumer loans. Mr. Morin's claim by definition pertains only to his consumer loans with NFCU. See Mundaca Investment Corp. v. D'Arcangelo, No. 320687, 1996 WL 397728, at *1 (Conn. Super. Ct. June 16, 1996); Douce, 2006 WL 2627966, at *8.

Mr. Morin has no FCBA claim arising from events before January 28, 2002. By letter of August 31, 2001, NFCU advised Mr. Morin that the Durango had been sold at auction on August 6, 2001. See Facts, ¶ 50. The Durango loan was the only alleged consumer loan outstanding at that time. Mr. Morin's FCBA claim, well over one year after the repossession of the Durango, is time-barred. "[E]ven if [plaintiff] had placed [defendant] on notice of a billing error, the one-year statute of limitations would bar any FCBA claim asserted by the plaintiff in this action, since [ plaintiff] would have been aware that [defendant] had not corrected the error ... when the car repossessed vehicle was sold." Douce, 2006 WL 2627966, at *8; see also Savings Bank of Rockville v. Wielgos, No. CV970065409, 2001 WL 835411, at *3 (Conn. Super. Ct. June 27, 2001) ("The

26

failure to bring an action within the one-year limitation of the TILA bars the action.") (citing

Basham v. Finance America, Corp., 583 F.2d 918, 927 (7th Cir. 1989)).

## IX.    NFCU IS ENTITLED TO JUDGMENT
##         ON COUNT XI FOR MULTIPLE REASONS.

In Count 11, Mr. Morin makes a claim against NFCU for violation of § 1681m(b)(1) of the

FRCA.  See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss

("Plaintiffs' Opp. Brief"), p. 20.[14]   This Section states:

> Whenever credit for personal, family or household purposes involving a consumer is denied
> or the charge for such credit is increased either wholly or partly because of information
> obtained from a person other than a consumer reporting agency bearing upon the consumer's
> credit worthiness, credit standing, credit capacity, character, general reputation, personal
> characteristics, or mode of living, the user of such information shall, within a reasonable
> period of time, upon the consumer's written request for the reasons for such adverse action
> received within sixty days after learning of such adverse action, disclose the nature of the
> information to the consumer.  The user of such information shall clearly and accurately
> disclose to the consumer his right to make such written request at the time such adverse
> action is communicated to the consumer.

15 U.S.C. § 1681m(b)(1) (emphasis added).

Mr. Morin argues that NFCU took action on his consumer auto loans (the Durango) by

defaulting him on that loan and repossessing the Durango in May of 2001, based on information

that it received from Nationwide regarding his resignation and the forfeiture of his ASC benefits.

See Plaintiffs' Opp. Brief, p. 21.  Judgment in favor of Nationwide on this claim is warranted on a

number of grounds.

---

[14] Mr. Morin there limited his claim to subsection b(1) in response to Nationwide's moving
brief in support of its motion to dismiss.

27

In the first instance, Mr. Morin's allegation is simply untrue under the undisputed facts—NFCU's May 2001 repossession of the Durango was predicated on Mr. Morin's monetary default in his repayment obligations under his NFCU Loanliner facility—and not based upon any information shared by Nationwide. See Facts, ¶¶ 49-50. In Castro v. Union Nisson, Inc., No. 01 C 4996, 2002 WL 1466810 (N.D. Ill. Jul. 8, 2002), the court rejected plaintiffs' claim that defendant had violated § 1681m(a) upon defendant's repossession of plaintiff's vehicle, for reasons squarely applicable here. "In this case, there is no indication that Union Nisson repossessed the car due to the condition of the Castros' credit reports; rather, the car was repossessed because it had not been paid for. As the Castros have not shown the requisite nexus between the information contained in their credit reports, their motion for summary judgment on their § 1681m(a) claim is denied." Id. at *4; see also Cannon v. Metro Ford, Inc., 2-61208-CIV-LENARD, 2002 WL 31958926, at *6 (S.D. Fla. Dec. 23, 2002) (dismissing FCRA claims where complaint did not allege that Defendant accessed and/or relied upon Plaintiffs' credit report in taking an adverse action). Mr. Morin's claim here suffers from the same fatal flaw.

Second, the statute is inapposite, both on its face and on the undisputed facts. Subsection (b)(1) is operative when credit "is denied or the charge for such credit is increased." NFCU has averred that it has never denied or increased the charge of credit for Plaintiffs based upon information provided by any third party. See Facts, ¶ 56. A creditor does not implicate, much less violate, §1681m(b)(1) by declaring a default and recovering upon its collateral on credit previously extended.

28

Third, the statute, even if it somehow applied based upon Nationwide's notification to NFCU that Mr. Morin was no longer an agent and would not be receiving ASC benefits, is satisfied. The February 9, 2000 letter from NFCU declaring a default expressly advised Mr. Morin of the information on which it was based. See Facts, ¶ 32. ("The loan was secured by Extended Earnings and DCIC, which were forfeited upon the termination of your relationship with Nationwide Insurance.").[15]

Fourth, because Mr. Morin, at all times, knew the information which (he alleges) prompted NFCU's acts (because NFCU told him), Mr. Morin cannot prove that he sustained actual damage by reason of NFCU's alleged (but non-existent) noncompliance with § 1681m(b)(1).[16] See 15 U.S.C. § 1681o(a)(1) ("Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of – (1) any actual damages sustained by the consumer as a result of the failure..."); see also McMillan v. Experian, 170 F. Supp. 2d 278, 284 (D. Conn. 2001) ("Where a plaintiff claims a negligent violation of the FCRA, he must also provide some evidence from which a reasonable fact finder could conclude that he suffered actual damages as a result of defendant's actions in order to

---

[15] And, indeed, this statement is true because Mr. Morin engaged in competition with Nationwide within the purview of paragraph 11f of his Agent's Agreement, i.e. immediately after his resignation within a 25-mile radius of his former Nationwide office. See Facts, ¶ 30.

[16] Plaintiffs' allege, as damage they sustained, that "plaintiffs' credit has been negatively impacted, his ability to do business has been substantially impaired; his ability to enjoy normal social pleasures through the use of credit, including credit cards, has been negatively impacted; he has wrongfully been deprived of a motor vehicle; and he may well have overpaid financial charges to the defendant Credit Union which can only be determined after a true accounting." Compl., Count 1, ¶ 18.

29

survive summary judgment."); Casella v. Equifax Credit Information Services, 56 F.3d 469, 474 (2d Cir. 1995), cert. denied, 517 U.S. 1150 (1996).

And fifth, the claim is time-barred.[17]  Section 1681p of the FRCA provides that an action brought for negligent violation of § 1681m(b), must be brought "within two years from the date on which the liability arises..." 15 U.S.C. § 1681p.[18]  The limitations period commences when liability arises, not from the date plaintiff claims to have first discovered the alleged violation.  See TRW, Inc. v. Andrews, 534 U.S. 19, 31-34 (2001) (holding that FCRA statue of limitations begins to run form the date when liability arises and not from the date plaintiff claims to have first discovered the alleged violations); see also Saraiva v. Citigroup, Inc., No. 01 CIV 3298 LMM, 2002 WL 227070 (S.D.N.Y. Feb. 13, 2002) (claims filed April 19, 2001 and August 2, 2001 based on April 1, 1999 violation dismissed as time-barred, regardless of plaintiffs' assertion that he first discovered the violation in June 2000).  Mr. Morin asserts that his FRCA claim is based on NFCU's February 9, 2000 letter.  Mr. Morin's FRCA claim, first asserted three years later in his original 2003 complaint, is time-barred and judgment should enter in favor of NFCU on Count 11 on this ground as well.[19]

---

[17]  See supra note 7.

[18]  Section1681p extends the limitations period in the limited instance "[w]here a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter, the action may be brought at any time within two years after discovery of the misrepresentation."

[19]  Plaintiffs' allege, as damage they sustained, that "plaintiffs' credit has been negatively impacted, his ability to do business has been substantially impaired; his ability to enjoy normal social pleasures through the use of credit, including credit cards, has been negatively impacted; he has wrongfully been deprived of a motor vehicle; and he may well have overpaid financial charges

CTDOCS/1631685.3

**X.     PLAINTIFFS' CUTPA CLAIM IS PREEMPTED BY
        FEDERAL LAW IN PART, AND OTHERWISE FAILS
        BECAUSE EACH OF PLAINTIFFS' PREDICATE CLAIMS FAIL**

To the extent Plaintiffs' claims for CUTPA violations are predicated upon matters regulated by the FCRA enumerated in 15 U.S.C.A § 1681t(b), they are preempted.  See supra Section III. Further, Plaintiffs' CUTPA claim consists only of reiterating all of their prior allegations of Defendants' misconduct and asserting that they constitute CUTPA violations as well.  Where, as shown above, Plaintiffs have not stated legally viable claims against Defendants in their prior counts, their CUTPA claim also fails.  See, e.g., Clark, 889 F. Supp. at 548 (CUTPA claim falls with the wrongful repossession count).

---

to the defendant Credit Union which can only be determined after a true accounting."  Compl., Count 1, ¶ 18.  The harm which Plaintiffs claim to have suffered stems not from the NFCU's alleged (but unspecified and unsubstantiated) violation of § 1681m(b), but instead, from Mr. Morin's own default in his loan obligations to NFCU.

CTDOCS/1631685.3

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Motion For Summary Judgment be granted in all respects.


**THE DEFENDANTS,**
**NATIONWIDE FEDERAL CREDIT UNION, ET AL**


By: /s/ Michael D. Blanchard
    Deborah S. Freeman (ct05257)
    Michael D. Blanchard (ct25891)
    BINGHAM McCUTCHEN LLP
    One State Street
    Hartford, CT  06103-3178
    (860) 240-2700
    (860) 240-2818 (fax)
    Their Attorneys
    deborah.freeman@bingham.com
    michael.blanchard@bingham.com

CTDOCS/1631685.3

**<u>CERTIFICATION</u>**

I hereby certify that on this 11th day of April, 2007, a copy of the foregoing was sent via the

Court's electronic notification system or by first class U.S. mail to:

> Richard P. Weinstein, Esq.
> Nathan A. Schatz, Esq.
> Weinstein & Wisser, P.C.
> 29 South Main Street, Ste. 207
> West Hartford, CT 06107
> *Counsel for Plaintiff*

/s/ Michael D. Blanchard
Michael D. Blanchard

33