## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD P. MORIN, SR., ET AL, | : | CIVIL ACTION NO. |
| | : | 3:03CV277 (CFD) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| NATIONWIDE FEDERAL CREDIT UNION, | : | APRIL 25, 2007 |
| ET AL, | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANTS' MOTION FOR LEAVE TO AMEND AFFIRMATIVE DEFENSES

The plaintiffs in the above-entitled matter hereby oppose the Defendants'

Motion to Amend Answer, Affirmative Defenses and Counterclaim, which motion is

dated April 11, 2007. In that motion, the defendants seek leave to assert two

additional affirmative defenses, to wit, one alleging that plaintiffs' claims are barred by

certain unspecified "federal statutes of limitations" (proposed Fifteenth Affirmative

Defense) and the other claiming that plaintiffs' state law claims are "preempted by

federal law" (proposed Sixteenth Affirmative Defense). The requested leave to amend

should be denied because there has been considerable delay by the defendants in

asserting the proposed new affirmative defenses, because the defendants have

offered no explanation for the delay notwithstanding that they were aware of the

possible (albeit mistaken) application of these defenses to this case for more than 4

years, because the defendants' tardy assertion of affirmative defenses is an improper

attempt to evade the Court's scheduling order, and because the plaintiffs will be prejudiced if the requested leave to amend is granted.

Rule 8(c) of the Federal Rules of Civil Procedure requires that a responsive pleading must set forth certain enumerated affirmative defenses as well as "any other matter constituting an avoidance or affirmative defense." "[A] party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." Doubleday & Co., Inc. v. Curtis, 763 F.2d 495, 503 (2d Cir. 1985), citing Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984) ("Failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case.") (internal quotation marks omitted).

The defenses that the defendants now wish to assert – statute of limitations and preemption of state law claims based on federal law – appear to be matters that must be raised by way of affirmative defense. The "statute of limitations" is an affirmative defense that is specifically enumerated in Rule 8(c). Case law, too, recognizes that the statute of limitations must be pleaded as an affirmative defense. See, e.g., Harris v. Secretary, U.S. Dept. of Veterans Affairs, 126 F.3d 339, 343 (D.C. Cir. 1997). Likewise, whether state law claims are preempted by a federal statute that regulates the underlying conduct is a choice of law question, and federal preemption claims in that regard are a matter of affirmative defense that is waived if not timely raised. See,

e.g., Saks v. Franklin Covey Co., 316 F.3d 337, 349-50 (2d Cir. 2003) (ERISA preemption).

Therefore, the defendants are not permitted to rely on any statute of limitations or preemption defenses in this case, unless the defendants' belated assertion of these defenses is excused by the Court. However, under the circumstances of this case, the defendants' belated assertion of these defenses should not be excused.

Rule 15(a) of the Federal Rules of Civil Procedure permits parties to amend pleadings. At this stage of these proceedings, however, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." F.R.Civ.P. 15(a). While Rule 15(a) further provides that leave to amend "shall be freely given when justice so requires," there are limits to when amendment should be permitted. Leave to amend is properly denied where there has been, *inter alia*, undue delay, bad faith or dilatory motive on the part of the movant, or undue prejudice to the opposing party by virtue of the allowance of the amendment. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962); Saks, 316 F.3d at 350. Thus, "a refusal to grant leave must be justified by grounds such as undue delay, bad faith, or futility," and "[p]rejudice to the opposing party is an additional reason to deny leave to amend." Levy v. Kosher Overseers Association of America, Inc., 2000 WL 294842 at *6 (S.D.N.Y. 3/21/2000) (copy attached).

3

In the instant case, the defendants suggested *over four (4) years ago* – in their Motion to Dismiss dated March 28, 2003 – that the plaintiffs claims might be preempted by federal law or barred by federal statutes of limitations    <u>See</u> Memorandum In Support of Defendants' Motion to Dismiss (dated March 28, 2003), pp. 18 n. 10, 22-23; <u>see</u> <u>also</u> Reply Memorandum Upon Defendants' Motion to Dismiss (dated June 11, 2003), pp. 6-7. The plaintiffs responded to those arguments by specifically addressing the defendants' federal statute of limitation argument (<u>see</u> Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Dismiss, p. 22) and by explaining the scope of their claims (which made clear that the scope of the plaintiffs' claims did not implicate the preemption concerns suggested by the defendants). After the Court denied the motion to dismiss without prejudice, the defendants filed their Answer, Affirmative Defenses and Counterclaim on or about November 15, 2004 – nearly 2½ years ago – without pleading any statute of limitations or preemption defense. In light of the arguments raised by the plaintiffs in opposition to the motion to dismiss, it was certainly reasonable to conclude that the defendants recognized that those defenses would not apply to the circumstances of this case. Yet, now the defendants, without explanation, seek to reverse course, and burden the plaintiffs with issues that appear to have been disposed of.

Where, as here, a party is aware of potential defenses but fails to include such defenses in it original answer, and then waits for years before making a belated

request for leave to amend, that request for leave to amend should be denied, and the defense must be deemed to have been forfeited.  See, e.g., Atkinson v. General Research of Electronics, Inc., 24 F.Supp.2d 894, 896 (D. III. 1998) (leave denied to amend answer to include statute of limitation defense).  Thus, "courts have decided such motions [to amend] on the basis of the reasons given for the delay. . . . Courts have denied leave to amend in situations where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend."  Federal Insurance Co. v. Gates Learjet Corp., 823 F.2d 383, 387 (10th Cir. 1987).  Furthermore, where a considerable amount of time has passed between the original pleading and the motion to amend, the case law properly places the burden on the movant to show some valid reason for its neglect and delay.  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990); Deere v. Goodyear Tire and Rubber Co., 175 F.R.D. 157, 165-66 (N.D.N.Y. 1997).  "The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay."  Cresswell, 922 F.2d at 72.  Here, the delay has been considerable, and the defendants have offered absolutely no explanation for not asserting these defenses in their November 15, 2004 answer.  They do not explain the delay, or even claim neglect.  Under such circumstances, the defendants have utterly failed to meet their burden of providing a "satisfactory explanation" for the delay.[1]  "[I]n this case,

---

[1]  Certainly, in the absence of any attempt by the defendants to explain their

[defendant] has not identified any matters about which [it] has not known all along. In addition, if, as here, the [defendant] offers no excuse for the delay, denial of leave to amend is appropriate." Dias v. Lane Bryant, Inc., 2000 WL 145755 at * 2 (S.D.N.Y. 2/8/2000) (copy attached).  Under such circumstances, it would be improper for the Court to excuse the delay, which itself causes prejudice to the opposing party. Cresswell, 922 F.2d at 72; see also Federal Ins. Co., 823 F.2d at 387 (where defendant knew of its potential application but failed to assert statute of limitations defense for several years, delay was unreasonable and allowing amendment at such a late date would result in undue prejudice to plaintiff).

In addition, the circumstances of the belated motion for leave to amend support that conclusion.  The date for the completion of discovery and the date by which the defendants were to file any motion for summary judgment have been extended several times.  Discovery has been completed, and the defendants, in fact, filed a motion for summary judgment on April 11, 2007, the last day for the filing of such motion.  Yet, that motion rests, in part, on the newly asserted affirmative defenses of federal preemption and statute of limitations, notwithstanding that those putative defenses are not properly part of this case.  In effect, the defendants have sought to obtain a *de facto* extension of time with respect to the motion for summary judgment beyond the

default, the Court can properly conclude that there has been bad faith or dilatory motive on the part of the defendants, and deny the motion on that additional ground as well.

6

time set by the Court for its filing, by moving for summary judgment on grounds that are not yet part of the case, and by simultaneously seeking leave of court to assert and brief those grounds.  While the defendants' reliance on statute of limitations and preemption grounds will not be part of this case and therefore should not have been relied on or briefed, if at all, until some future point in time at which the defendants' opportunity to move for summary judgment would have passed, they have effectively made those putative defenses part of the summary judgment proceedings – in defiance of the Court's order regarding the time for the filing of the motion – by choosing to proceed in the manner in which they have.  In doing so, they have put the plaintiffs in an untenable position.   The motion for summary judgment relies on defenses that are not in the pleadings; yet, the plaintiffs cannot run the risk of not resting on the procedural defect in regard to those newly asserted defenses, and the plaintiffs will therefore have to respond to those arguments on their merits notwithstanding their procedural deficiencies.  Forcing the plaintiffs to respond to summary judgment arguments based on affirmative defenses that are not yet, and may not ever be, properly part of this case, is prejudicial to the plaintiffs and defies the rules of pleading and the goals of notice and order that underlie them.

The defendants' memorandum of law in support of the motion to amend suggests, albeit subtly, that the granting of the motion is all but automatic.  However, a careful consideration of the issue suggests otherwise.  While the plaintiffs recognize

7

that the case law in the Second Circuit does not bar belated defenses that are raised at the summary judgment stage, it is clear that our case law does not allow such belatedly raised defenses in all cases; instead, the District Court is to exercise its discretion to regulate the conduct of the parties and the course of the proceedings when confronted with such situations. See Saks, 316 F.3d at 350-51 (if defense raised for first time at summary judgment stage, district court must exercise its discretion to allow or disallow such belated defense). In this regard, the analysis of the issue by the D.C. Circuit in Harris v. Secretary, U.S. Dept. of Veterans Affairs, 126 F.3d 339 (D.C. Cir. 1997), is instructive. There, the court observed that allowing a party to raise a new defense for the first time in its motion for summary judgment so long as no prejudice is shown (which is the position urged by the defendants here)

> subtly alters the structure dictated by Rules 8(c) and 15(a) in two ways. First, . . . [it] allows parties to omit affirmative defenses in pleadings strategically, in violation of the notice purpose [of Rule 8(c)]. It will often prove difficult for a party to support a claim of prejudice in circumstances involving only inconvenience or surprise. And, by the time the opposing party raises the prejudice claim, a strategic advantage may already have been gained by the party who failed to amend its pleading. . . . [I]f the District Court systematically follows the procedural structure required by Rules 8(c) and 15(a), it can conduct its own inquiry in every case into the circumstances of the delay, and need not rely solely on a convincing showing of prejudice by one party. It likely will articulate the basis for the amendment, and will not simply approve it as a matter of course.
>
> Second, automatically permitting late raising of affirmative defenses where no prejudice has occurred reduces the multifarious reason for denying leave to amend envisioned by the [Supreme] Court in Foman to the single, non-exhaustive factor of prejudice.  Improper circumstances such as

> "undue delay, bad faith or dilatory motive on the part of the movant . . . ," Foman, 371 U.S. at 182, 83 S.Ct. at 230, do not necessarily result in quantifiable prejudice to an opposing party. Nonetheless, taken collectively rather than individually, they may undercut the fairness and efficiency of litigation generally. Strategic or merely lazy circumventions of a legal process grounded in a sound policy have the effect of eroding the regularized, rational character of litigation to the detriment of practitioners and clients alike.

Harris, 126 F.3d at 344-45; see also First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1132-33 (10th Cir. 1987) (where undue delay is shown, prejudice is not required because requiring prejudice in addition to delay or improper motive would conflict with Foman, which enumerated several factors that were each a sufficient ground to deny leave to amend). Although the courts in our circuit do not appear to dispense with a showing, the presence of the other Foman factors certainly diminishes the degree of prejudice that must be shown. See, e.g., Deere, 175 F.R.D. at 166 (recognizing that where the period of unexplained delay is lengthy, less is required of the nonmoving party in terms of a showing of prejudice); Dias, 2000 WL 145755 at * 2 (where moving party offers no excuse for delay, denial of leave to amend is proper; in addition, a longer period of delay, requires less to establish prejudice to nonmoving party).

Here, as urged above, the circumstances of this case demonstrate that there has been considerable delay by the defendants in asserting the proposed new affirmative defenses; that the defendants have offered no explanation for the delay

notwithstanding that they were aware of the possible (albeit mistaken) application of these defenses to this case for more than 4 years; that the defendants' tardy assertion of affirmative defenses is an improper attempt to evade the Court's scheduling order; and that the plaintiffs will be prejudiced if the requested leave to amend is granted.

Under these circumstances, the Court is authorized, and, the plaintiffs believe, compelled, to conclude that the requested leave to amend the answer to assert new affirmative defenses should be denied.

PLAINTIFFS,

By   /s/  Richard P. Weinstein
Richard P. Weinstein, Esquire of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT  06107
Telephone No. (860) 561-2628
Facsimile No. (860) 521-6150
Federal Bar No. ct06215
rpw1@dtg.net

10

## **CERTIFICATION**

I hereby certify that on this 25th day of April, 2007, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Michael D. Blanchard, Esquire
Bingham McCutchen LLP
One State Street
Hartford, CT  06103-3178

/s/  Richard P. Weinstein
Richard P. Weinstein

# UNREPORTED DECISIONS CITED IN MEMORANDUM OF LAW

## (ARRANGED ALPHABETICALLY)



Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2000 WL 145755 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Dais v. Lane Bryant, Inc.
S.D.N.Y.,2000.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
James B. DAIS, Plaintiff,
v.
LANE BRYANT, INC., Defendant.
**No. 97Civ.2011(PKL)(RLE).**

Feb. 8, 2000.

*MEMORANDUM ORDER*
LEISURE, J.
*1 Plaintiff James B. Dais brings this action alleging unlawful racial discrimination and employment termination in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); New York Exec. Law § 296 (the "NYHRL"); and New York City Administrative Code § 8-107 (the "NYCHRL" ). On May 12, 1998, plaintiff moved for leave to file a Second Amended Complaint to add a claim of gender discrimination. This Court referred the matter to the Honorable Ronald L. Ellis, United States Magistrate Judge. On March 30, 1999, Judge Ellis issued a Report and Recommendation (the " Report") advising this Court to deny plaintiff's motion for leave to amend. Plaintiff has since raised several objections to the Report. For the following reasons, plaintiff's motion is denied.

**BACKGROUND**

From August 1994 until December 26, 1996, plaintiff was employed by defendant Lane Bryant, Inc., the owner of a national chain of retail stores specializing in women's clothing, as a store manager in its Long Island District. *See* Am. Compl. ¶¶ 6, 10. Plaintiff's original Complaint stated claims of race discrimination in employment under 42 U.S.C. § 1981, the NYHRL, and the NYCHRL. *See*

Compl. ¶¶ 13-22. On May 29, 1997, having received a "right to sue" letter from the EEOC, plaintiff filed an Amended Complaint, adding a claim under Title VII. *See* First Am. Compl. ¶¶ 27-30. The Court referred the action to Judge Ellis for general pre-trial case management on September 23, 1997.

By Order dated January 9, 1998, Judge Ellis directed the parties to complete discovery by March 31, 1998, although he later extended the discovery deadline to April 24, 1998 to allow plaintiff to take one additional deposition. *See* Report at 1. On May 12, 1998, plaintiff moved to further amend his Complaint, pursuant to Fed.R.Civ.P. 15(a), to add a claim of gender discrimination under the NYHRL and NYCHRL. *See id.* Defendant has opposed plaintiff's motion on the following grounds: (1) unexplained delay in moving to amend, *see* Def. Opp. Mem. at 3; (2) bad faith, *see id.* at 4; (3) failure to cure deficiencies by previous amendments, *see id.* at 5; (4) undue prejudice, *see id.* at 6; and (5) futility of further amendment, *see id.* at 7.

On March 30, 1999, Judge Ellis issued a recommendation that plaintiff's motion be denied. *See* Report at 1, 5. Plaintiff filed timely objections to the Report on April 12, 1999, and defendant submitted a reply to plaintiff's objections on April 22, 1999.

**DISCUSSION**

**I. Standard of Review**

As an initial matter, the Court must determine the appropriate standard of review for considering Judge Ellis's Report. Under Fed.R.Civ.P. 72(b), the recommendation of a Magistrate Judge on a dispositive matter is subject to a *de novo* review by the District Judge to whom the case is assigned,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 145755 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

while Fed.R.Civ.P. 72(a) provides that recommendations on nondispositive matters are to be reviewed under a "clearly erroneous" standard. In this case, *de novo* review is appropriate because Judge Ellis's determination is based in part on the futility of plaintiff's claim. *See HCC, Inc. v. R H & M Mach. Co.,* 39 F.Supp.2d 317, 321 (S.D.N.Y.1999) (Leisure, J.) ("[D]enial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility.").[FN1] Although Judge Ellis's recommendation is based on numerous other grounds in addition to futility, which alone would subject the Report to a "clearly erroneous" standard of review, the Court will review the entire Report *de novo.* In any event, the decision to review the Report *de novo* is irrelevant to the outcome of the matter at hand because, applying either standard, this Court would uphold the Report for the reasons that follow. *See id.* at 322.

> FN1. *See also St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815, 822 (11th Cir.1999); *Hahn v. Star Bank* 190 F.3d 708, 715-16 (6th Cir.1999); *Gohier v. Enright,* 186 F.3d 1216, 1218 (10th Cir.1999); *Glassman v. Computervision Corp.* 90 F.3d 617, 623 (1st Cir.1996); *Gallegos v. Brandeis School,* 189 F.R.D. 256, 258 (E.D.N.Y.1999); *Nettis v. Levitt,* No. 96 Civ. 806, 1999 WL 386711, at *3 (S.D.N.Y. June 11, 1999).

## II. Motion for Leave to Amend

**\*2** Fed.R.Civ.P. 15(a) provides that, in general, leave to amend a pleading should be freely granted " when justice so requires." *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir.1991). "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be freely given." *See Foman v. Davis,* 371 U.S. 178, 182 (1962). The Court has broad discretion in

deciding whether or not to grant leave to amend. *See id.*

This Court accepts Judge Ellis's recommendation that plaintiff's motion be denied for the following reasons.[FN2] First, plaintiff has offered no explanation as to why he chose to wait so long to attempt to add gender discrimination claims. *See* Report at 3. Second, plaintiff has known the factual basis for his proposed amendment since commencement of the litigation, yet never sought to plead such claims until just prior to the close of discovery. *See id.* Finally, further amendment would "unduly delay the resolution of this case and prejudice the defendant." *Id.* at 4.[FN3] Although plaintiff argues that Judge Ellis misapplied Second Circuit precedent, *see* Pl. Obj. ¶¶ 1, 5-7, 10, this Court clearly "has discretion ... to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990). [FN4]

> FN2. Plaintiff has observed that during an April 27, 1998 pre-motion conference, this Court originally discouraged defendant from opposing plaintiff's motion. While that may be true, preliminary comments by a court during a pre-motion conference are only meaningful if subsequent consideration of a fully submitted motion supports the initial reaction. It is axiomatic that a court may not use a pre-motion conference to prevent the full-blown presentation of the motion. *See, e.g., Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 935-36 (2d Cir.1992); *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir.1987). With the full record before him, Judge Ellis had all the information needed to make a reasoned determination on this matter. In particular, Judge Ellis had the benefit of defendant's memorandum of law in opposition to plaintiff's motion, which contained arguments this Court had yet to consider when it suggested that defendant not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 145755 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

oppose the motion. *See* Def. Opp. Mem. at 2-7.

FN3. Although the Report does not specify what additional discovery would be necessary, this Court will not substitute its judgment for that of Judge Ellis. Moreover, as discussed above, Judge Ellis's Report can be affirmed on numerous other grounds.

FN4. This Court does not, however, fully adopt Judge Ellis's conclusion that the proposed amendment would be entirely futile. *See* Report at 4. The Court does agree that any claim of gender discrimination under the NYCHRL would be futile, as plaintiff has not asserted that any of the alleged discriminatory acts took place within the boundaries of New York City. *See Duffy v. Drake Beam Morin, Harcourt Gen., Inc.,* No. 96 Civ. 5606, 1998 WL 252063, at *11 (S.D.N.Y. May 19, 1998); *see also Levy v. City Comm'n on Human Rights,* 85 N.Y.2d 740, 743, 628 N.Y.S.2d 245, 246-47, 651 N.E.2d 1264, 1265-66 (1995) ("The Administrative Code of the City of New York vests in the New York City Commission on Human Rights the authority and jurisdiction to eliminate and prevent discrimination *within the City of New York.*" ) (emphasis added). Nevertheless, defendant has failed to demonstrate that plaintiff's NYHRL claim is futile with respect to gender discrimination. Defendant contends that such a claim is subject to dismissal because plaintiff was fired by a man, as the result of a decision by a man, and was replaced by a man. *See* Def. Opp. Mem. at 8. Yet, the Supreme Court has recently found actionable discrimination where the harasser and the harassed employee are members of the same sex. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 76 (1998). Likewise, the fact that an employer hired someone of the same gender as the plaintiff does not itself defeat

an otherwise legitimate inference of gender discrimination. *See Marks v. National Communications Ass'n, Inc.,* 72 F.Supp.2d 322, 329 (S.D.N.Y.1999) (Leisure, J.).

Finally, plaintiff objects to the Report's reliance on *Priestley v. American Airlines, Inc.,* No. 89 Civ. 8265, 1991 WL 64459, at *1 (S.D.N.Y. Apr. 12, 1991), for the proposition that leave to amend should not be denied simply because the proposed amendment is based on an afterthought. While the Second Circuit has held that "amendments seeking to insert or correct matters about which parties should have known but did not know are plainly within the scope of Rule 15(a)," *Hanlin v. Mitchelson,* 794 F.2d 834, 840 (2d Cir.1986), in this case, plaintiff has not identified any matters about which he has not known all along. In addition, if, as here, the plaintiff offers no excuse for the delay, denial of leave to amend is appropriate. *See Berman v. Parco,* 986 F.Supp. 195, 201 (S.D.N.Y.1997); *cf. Barrows v. Forest Labs., Inc.,* 742 F.2d 54, 59 n. 11 (2d Cir.1984) (denying leave to amend where plaintiffs failed to " explain why the new theories could not have been presented in the original complaint as alternatives"). FN5 The longer the period of unexplained delay, the less required of the nonmoving party to establish prejudice. *See Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993).

FN5. *See also* 1 Michael C. Silberberg, *Civil Practice in the Southern District of New York* § 6.27, at 6-55 (2d ed. 1999) (" [T]he Court may deny a motion to amend where the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.").

## CONCLUSION

*3 For the foregoing reasons, plaintiff's motion for leave to further amend his Amended Complaint is HEREBY DENIED. The parties are ordered to appear before this Court at the United States Courthouse, 500 Pearl Street, Courtroom 18B, New

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4

Not Reported in F.Supp.2d, 2000 WL 145755 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**


York, New York, on February 29, 2000, at 11:30 a.m. for a pre-trial conference. Pursuant to Judge Ellis's Order of March 30, 1999, the parties shall submit their Joint Pre-trial Order within twenty-one days of the date of this Memorandum Order.

SO ORDERED.

S.D.N.Y.,2000.
Dais v. Lane Bryant, Inc.
Not Reported in F.Supp.2d, 2000 WL 145755 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 294842 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Levy v. Kosher Overseers Assn. of America, Inc.
S.D.N.Y.,2000.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Don Yoel LEVY, Rabbi and Eliezer Levy, d/b/a
Organized Kashruth Laboratories, Plaintiffs,
v.
KOSHER OVERSEERS ASSOCIATION OF
AMERICA, INC., Defendant.
**No. 92 Civ. 8377 DLC.**

March 21, 2000.

Laurence Shtasel, Blank Rome Comisky &
McCauley, Philadelphia, PA, for Plaintiffs.
Bernard Malina, Malina & Wolson, New York, NY,
for Defendant.

*OPINION & ORDER*
COTE, J.
**\*1** Plaintiffs Don Yoel Levy and Eliezer Levy,
doing business as Organized Kashruth Laboratories
(collectively, "OK Labs"), filed this action in 1992,
claiming that defendant Kosher Overseers
Association of America, Inc. ("KOA") had
infringed a kosher foods certification mark owned
by plaintiffs. Summary judgment for plaintiffs
having been reversed by the Second Circuit Court
of Appeals, and the case having been remanded to
the district court in 1997, defendant now seeks
summary judgment on the grounds that (1) plaintiffs
are not the owners of the certification mark at issue
and (2) plaintiffs have allowed the mark to be used
improperly as a trademark and/or a service mark. In
the alternative, defendant moves to amend its
answer to assert those claims as affirmative
defenses and counterclaims.[FN1] For the reasons
stated below, defendant's motions are denied.

> FN1. Arguments that constitute affirmative
> defenses, although not pled, may be raised

for the first time as grounds for a
defendant's motion for summary judgment.
*See, e.g., Steinberg v. Columbia Pictures
Industries, Inc.,* 663 F.Supp. 706, 715
(S.D.N.Y.1987) ("Although Fed.R.Civ.P.
8(c) generally requires affirmative
defenses to be pleaded, courts have been
more lenient in the context of motions for
summary judgment. Absent prejudice to
the plaintiff, a defendant may raise an
affirmative defense in a motion for
summary judgment for the first time.").
*See also* Part III, *infra.*

BACKGROUND

The mark at issue is a kosher foods certification
mark, used by plaintiffs to identify foods and
related products as having been certified by OK
Labs as meeting the requirements of Jewish law and
fit for consumption by Orthodox Jews. The mark, a
letter K enclosed in a circle (the "Circle-K Mark"),
was registered with the United States Patent and
Trademark Office (the "PTO") in 1965 and given U
.S. Registration No. 795,748.

Defendant's mark is a stylized K, with a
half-moon-shaped spine, enclosed in a circle.
Defendant uses the mark to designate foods
certified as kosher by KOA. In 1989, defendant
sought to register its mark with the PTO;
registration was denied because the PTO deemed
the mark too similar to plaintiffs' Circle-K Mark.
Defendant nevertheless continued to use the mark
as a certification mark. In 1992, plaintiffs filed this
action for infringement, claiming defendant's mark
was confusingly similar to the Circle-K Mark.

On October 25, 1993, plaintiffs moved for summary
judgment on grounds of collateral estoppel, based
on the PTO's determination that defendant's mark
could not be registered. On July 8, 1994, the
District Court, McKenna, J., granted plaintiffs'
motion; defendant's motion for reargument was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 294842 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

denied on April 7, 1995. On February 14, 1995, defendant filed two motions for summary judgment, the first contesting plaintiffs' successorship to the Circle-K Mark and the second alleging misuse of the mark.

Defendant appealed the Court's decision on plaintiffs' summary judgment motion to the Second Circuit, which reversed the decision on February 7, 1997, holding that the standard that applied to the PTO's determination was not the same as the one to be applied in an infringement action, so that the doctrine of collateral estoppel was inapplicable. *Levy v. Kosher Overseers of America, Inc.,* 104 F.3d 38 (2d Cir.1997). On remand, the parties submitted further briefs relating to defendant's summary judgment motions. On November 17, 1999, defendant moved to amend its answer to assert the ownership and misuse claims as affirmative defenses and counterclaims.

**\*2** This case was reassigned to me on February 10, 2000. I held a pretrial conference with the parties on February 25. By Scheduling Order dated March 2, 2000, this case was placed on the April 3, 2000, trial ready calendar.

## DISCUSSION

Under Rule 56(c), summary judgment may only be granted if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). The substantive law determines what facts are material to the outcome of the litigation. *See Anderson,* 477 U.S. at 248. The initial burden is on the moving party and all facts are viewed "in the light most favorable to the non-moving party." *American Casualty Co. of Reading, PA v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994) (internal citations omitted). Once the moving party meets his burden, the non-moving party has the burden of presenting "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). *Accord Rexnord Holdings, Inc. v. Biderman,* 21 F.3d 522, 525-26 (2d Cir.1994).

The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials. *See Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (internal citations omitted).

### I. The Ownership Issue

In its first motion, defendant makes several claims arising from an alleged defect in the chain of ownership of the Circle-K Mark. It is undisputed that the mark was registered in 1965 by George Goldstein ("Goldstein"), and that Goldstein conveyed the assets of his kosher certification business, including the Circle-K Mark and the trade name "O.K. Laboratories," to Rabbi Bernard Levy and the Va'ad Hakashruth D'America ("Va'ad"), by means of a February 6, 1968 sales agreement (the "Sales Agreement") that did not allocate the assets between Bernard Levy and Va'ad, a nonprofit religious corporation of which Bernard Levy was a principal. It is also undisputed that the assignment of the Circle-K Mark was not registered with the PTO at the time of the sale.

In 1971, Goldstein and Bernard Levy entered into an Assignment of Registration Agreement (the "Assignment Agreement") that reflected the assignment of the Circle-K Mark from Goldstein to Levy and that was recorded with the PTO. Although the Assignment Agreement is dated March 29, 1971, plaintiffs assert that it was intended to function as a *nunc pro tunc* agreement, meeting the PTO's requirements so that the 1968 transfer of the mark could be recorded with the PTO. On May 6, 1971, Bernard Levy filed a Declaration of Use (the "Declaration of Use") with the PTO as required by the Trademark Act. On December 29, 1998, the Circle-K Mark was assigned by Bernard Levy's estate to plaintiffs, Bernard Levy's sons, and their general partnership, O.K. Laboratories.

**\*3** Defendant first challenges plaintiffs' standing to bring this suit on the grounds that plaintiffs are not the owners of the Circle-K Mark as there was never an effective assignment of the mark to Bernard Levy. Defendant's argument hinges on (1) Goldstein's covenant in the Sales Agreement that he would not engage in any kosher certification

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 294842 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

business for the 25 years following the sale; (2) Goldstein's representation in the Assignment Agreement that he was using the Circle-K Mark at that time; and (3) Bernard Levy's statement in the Declaration of Use that he was the owner of the Circle-K Mark pursuant to the March 29, 1971 Assignment Agreement. Defendant argues that the March 29, 1971 assignment was ineffective because Goldstein had abandoned the Circle-K Mark in 1968, under the terms of the Sales Agreement.

In the alternative, defendant challenges plaintiffs' standing to bring this action on the grounds that (assuming the assignment of the Circle-K Mark to Bernard Levy was effective) the mark is currently registered as owned by "Rabbi Don Yoel Levy and Eliezer Levy d/b/a *O.K. Laboratories*," while this action was brought by "Rabbi Don Yoel Levy and Eliezer Levy d/b/a *Organized Kashruth* Laboratories." Defendant also claims that plaintiffs' failure to file a "d/b/a certificate" for "Organized Kashruth Laboratories" violated N.Y. Gen. Bus. Law § 130(1)(ii)(a), so that this action should be dismissed on grounds of unclean hands.

Finally, defendant seeks cancellation of the Circle-K Mark, on two grounds arising out of the alleged defect in the mark's chain of ownership. First, defendant argues that because the 1971 assignment agreement was ineffective, the mark was jointly owned by Bernard Levy and Va'ad under the Sales Agreement by May 1971. As a consequence, by filing the Declaration of Use on his behalf alone, and declaring himself to be the sole owner of the mark, Bernard Levy violated the requirement under the Trademark Act that an affidavit of use be filed by a mark's owner.

Second, defendant argues that the statement in the Assignment Agreement, which was registered with the PTO, that Goldstein was using the mark as of the date of that agreement, was a knowingly false statement that constituted fraud on the PTO. Defendant also argues that Bernard Levy's statement in the Declaration of Use that he was the sole owner of the mark similarly constituted fraud on the PTO.

## A. Chain of ownership issue

Defendant has not met its burden of showing that there is no material issue of fact regarding the effect of the Assignment Agreement on the chain of ownership of the Circle-K Mark. Plaintiffs' argument that the Assignment Agreement was intended to have retroactive effect, and was dated March 29, 1971 in error, is amply supported by common sense. It would have no meaning in any other context. The Court cannot find, as a matter of law, that the Assignment Agreement was not intended to be effective as of February 6, 1968, or that it failed to effect the assignment of the mark from Goldstein to Bernard Levy. It follows that the Court cannot find that either the statement in the Assignment Agreement regarding Goldstein's use of the mark, or Bernard Levy's statement in the Declaration of Use regarding his sole ownership of the mark, constituted fraud on the PTO. Defendant's motion for summary judgment is denied with respect to these claims.

## B. Trade name issue

**\*4** Defendant's claims arising out of the discrepancy between the names "O.K. Laboratories" and " Organized Kashruth Laboratories" also fail. Absent any evidence of fraud or prejudice to defendant, such a minute discrepancy is insufficient to support defendant's claims. In *Alart Associates, Inc. v. Aptaker,* 279 F.Supp. 269 (S.D.N.Y.1968), for example, the copyright at issue was registered under the name "Alart, Inc.," but the plaintiff had filed its amended complaint under its actual name, "Alart Associates, Inc." The court rejected both the defendant's claim that the plaintiff had no standing to bring the action and its claim that the plaintiff had violated N.Y. Gen. Bus. Law § 130. The court held:
In the absence of prejudice, an innocent clerical error in the application and certificate of registration, unaccompanied by fraud, does not invalidate the copyright or render it incapable of supporting an infringement action.

*Id.* at 270 (citing *United States v. Backer,* 134 F.2d 533 (2d Cir.1943)). *See also Bourne Co. v. Walt*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 294842 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*Disney Company,* No. 91 Civ. 344, 1992 WL 489766 at *1 (S.D.N.Y. Dec. 1, 1992) (where copyright registered under name "Bourne, Inc." but owner actually named "Bourne Co.," copyright not invalid); *Pantone v. Friedman,* 294 F.Supp. 545, 551 (S.D.N.Y.1968) (difference between "Pantone Press, Inc." and "Pantone, Inc." insignificant; "such technical minutiae do not afford a basis for defeating an otherwise valid copyright"); *Allen v. Walt Disney Productions,* 41 F.Supp. 134, 135 (S.D.N.Y.1941) (copyright not invalid where registered in name of "The Thornton Allen Company" but d/b/a certificate filed only for "T.W. Allen Company"). Defendant has shown neither fraud nor prejudice.

## II. The Misuse Issue

Defendant's second motion for summary judgment makes two claims of misuse of the certification mark. First, defendant alleges plaintiffs wrongfully used or authorized the use of the Circle-K Mark as a trademark and service mark for *The Jewish Homemaker,* a magazine published by Besad Productions, Inc. ("Besad"). Defendant submits documents showing that the Circle-K Mark appears next to the name "The Jewish Homemaker" in the magazine, including on its cover, and at the foot of stationary used by *The Jewish Homemaker.* Second, defendant alleges plaintiffs wrongfully authorized the use of the mark as a service mark by Koppers Chocolate Specialty Co. Inc. ("Koppers"), and submits documents showing the use of the Circle-K Mark next to the Koppers' name on its stationary.

### A. *The Jewish Homemaker*

#### 1. Trademark

Under the Trademark Act, a certification mark is subject to cancellation if the registrant
(A) does not control, or is not able legitimately to exercise control over, the use of such mark, or (B) engages in the production or marketing of any goods or services to which the certification mark is applied, or (C) permits the use of the certification

mark for purposes other than to certify, or (D) discriminately refuses to certify or to continue to certify the goods or services of any person who maintains the standards or conditions which such mark certifies.

**\*5** 15 U.S.C. § 1064(5). In 1998, that section was amended to state:Nothing in paragraph (5) shall be deemed to prohibit the registrant from using its certification mark in advertising or promoting recognition of the certification program or of the goods or services meeting the certification standards of the registrant. Such uses of the certification mark shall not be grounds for cancellation under paragraph (5), so long as the registrant does not itself produce, manufacture, or sell any of the certified goods or services to which its identical certification mark is applied.

15 U.S.C. § 1064.

Long before the 1998 amendment to Section 1064, case law made clear that the owner of a certification mark was not prohibited from using the mark to promote the certification program itself. In *In re Monsanto,* 201 U.S.P.Q. 864 (Trademark Tr. & App. Bd.1978), for example, the PTO Trademark Trial and Appeal Board explained:
[The Trademark Act] is not intended to preclude the use of a designation, per se, for particular goods manufactured by the owner of the mark and the use of this mark in a completely different or recognizably different setting as a certification mark to be used by authorized persons in connection with goods or services of a different character certified as to quality or the like by the owner of the mark. This can best be illustrated by the use of "GOOD HOUSEKEEPING" and "PARENTS MAGAZINE" as trademarks for publications and these same marks in different settings and with other wording denoting certification such as "Approved by", " Tested by", etc. for the goods or services of others that meet their prescribed standards.

*Id.* at 869. *See also In re 88Open Consortium Ltd.,* 28 U.S.P.Q.2d 1314, 1315 (Trademark Tr. & App. Bd.1993) (it is "permissible for a person to utilize the identical designation as both a trademark and as a certification mark provided that when the identical

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 294842 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

designation [is] used as a certification mark, it [is] used in a different setting such that it would be recognized as a certification mark and not as a trademark") (internal quotation marks omitted); *In re University of Mississippi,* 1 U.S.P.Q.2d 1909, 1910 (Trademark Tr. & App. Bd.1987) (under Section 1064(5), "other goods, such as magazines, may be produced by the owner of the mark").

The use of the Circle-K Mark in connection with *The Jewish Homemaker* is entirely consistent with this rule. Its only effect is to promote plaintiffs' certification program. It creates no risk that the mark would not be "recognized as a certification mark" rather than as a trademark when used to certify kosher food products. Defendant's motion with respect to the use of the Circle-K Mark as a trademark fails.

### 2. Service mark

Defendant also alleges that Besad uses the Circle-K mark as a service mark on its promotional materials and business stationary and in connection with the solicitation of advertisers. None of the activities to which defendant refers, however, constitutes a service. Consequently, defendant has failed to establish that plaintiffs have permitted the use of the Circle-K Mark as a service mark by Besad in connection with *The Jewish Homemaker.*

### B. Koppers

*6 With respect to Koppers, defendant's only allegation is that the Circle-K Mark is used as a service mark, "in connection with the manufacture and distribution of *all* its chocolate products both kosher and non-kosher" (emphasis in original). To support that claim, defendant submits documents showing the use of the mark on Koppers' stationary. Defendant does not allege that Koppers uses the mark as a trademark, or submit evidence of the use of the mark on Koppers' products. As noted with respect to *The Jewish Homemaker,* because Koppers does not perform a service, defendant has not established its claim of misuse with respect to Koppers.

### III. Defendant's Motion to Amend its Answer

Finally, defendant moves to amend its answer to the complaint to add as affirmative defenses and counterclaims the claims that were the subject of its motions for summary judgment. Defendant made this motion on November 17, 1999.

Under Rule 15(a), Fed.R.Civ.P., a party may amend a pleading as of right before a responsive pleading has been served, or, if no responsive pleading is required, within twenty days after service of the pleading to be amended. After that point, a party may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Rule 15(a), Fed.R.Civ.P. The Supreme Court has emphasized that amendment should normally be permitted and that a refusal to grant leave must be justified by grounds such as undue delay, bad faith, or futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). *See also Dluhos v. The Floating and Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir.1998). Prejudice to the opposing party is an additional reason to deny leave to amend. *See Foman,* 371 U.S. at 182; *Dluhos,* 162 F.3d at 69. A district court therefore has discretion to deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant." *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,* 157 F.3d 956, 962 (2d Cir.1998) (quoting *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990) ).

"Mere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993). "However, the longer the period of an unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." *Id.* The burden to explain a delay is on the party that seeks leave to amend. *See MacDraw,* 157 F.3d at 962.

Here, defendant's motion is denied on grounds of undue delay and prejudice. The complaint in this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 294842 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

case was filed on November 11, 1992. Defendant's answer was served on February 8, 1993. Plaintiffs moved for summary judgment on October 25, 1993; neither defendant's opposition to that motion nor its papers in support of its motion for reargument raised the claims that are the subject of its motion to amend. Defendant first relied on these claims when it used these theories in support of its motions for summary judgment, filed on February 14, 1995, after plaintiffs' motion for summary judgment had been granted and apparently after the close of discovery in this case. After the case was remanded to the district court on February 7, 1997, defendant waited until November 17, 1999, to file its motion to amend. Defendant did not include a proposed amended answer with its moving papers, so it is difficult for the Court to determine the precise nature of the claims sought to be added, and in particular which claims would be pled as affirmative defenses and which would be brought as counterclaims.

*7 Defendant offers no explanation of its seven-year delay in moving to amend its answer. Moreover, plaintiffs would be unduly prejudiced by this delay. When an amendment to a pleading would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial," the opponent is prejudiced. *Block,* 988 F.2d at 350. While plaintiffs investigated defendant's assertions in preparing their opposition to defendants' motion for summary judgment, it cannot be assumed that significant further investigation would not be necessary in order to defeat these arguments on their merits. Moreover, defendant would be entitled to discovery on these claims and defenses. Defendant's totally unexplained delay in moving to amend its answer, and the prejudice plaintiffs would suffer in having to reopen discovery and prepare for trial on the claims sought to be added by defendant, are ample grounds for the denial of defendant's motion, even under the permissive standard set forth above.

Where an affirmative defense is asserted for the first time in support of a defendant's motion for summary judgment, a court may construe the summary judgment motion as a motion to amend the answer, *see Block v. First Blood Associates,* 988

F.2d 344, 349 (2d Cir.1993), and granting summary judgment permits such an amendment *de facto. See Roloff v. Arabian American Oil Company,* 421 F.2d 240, 242 (2d Cir.1970) ("By granting summary judgment [the court] in effect allowed an amendment to the [defendant]'s pleading since that new defense was the basis of the motion for summary judgment.").

The fate of an affirmative defense asserted for the first time in a defendant's motion for summary judgment, when summary judgment is denied, is less clear. Here, defendant does not ask that the Court construe its summary judgment motion as a motion to amend; the filing of its November 17, 1999 motion to amend suggests that it did not contemplate such a construction. Moreover, there is no analogous authority relating to counterclaims.

The Court need not address these issues, because even if the Court were to construe defendant's motion to amend as made at the time it filed its original motions for summary judgment, its determination would not change. It appears that discovery had concluded before defendant brought its motions for summary judgment. Plaintiffs would have been unduly prejudiced, even in February 1995, by defendant's undue delay in introducing these issues into the case.

Finally, although the Court's determination with respect to undue delay and prejudice means that I need not reach the issue of the futility of the defenses and claims defendant seeks to add, I note that, as the prior discussion makes clear, this would pose another substantial barrier to defendant's motion.

## CONCLUSION

For the reasons stated, both of defendant's motions for summary judgment are denied. Defendant's motion to amend its answer is also denied.

**\*8** SO ORDERED:

S.D.N.Y.,2000.
Levy v. Kosher Overseers Assn. of America, Inc.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 294842 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2000 WL 294842 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.