unjustified loan default, a series of clearly foreseeable, adverse financial and emotional harm befell the plaintiffs (Complaint, Fourth Count, ¶ 15-19). Furthermore, the Complaint alleges that, in regard to these outrageous acts that were intended to cause unjustified financial harm to the plaintiffs, the defendants acted in concert and pursuant to a common design to cause injury to the plaintiffs. In particular, the Nationwide defendants are alleged to have encouraged NFCU to wrongfully and artificially declare Mr. Morin to be in default on his loans as part of an effort to cause financial and emotional injury to the plaintiffs. (Complaint, Fourth Count, ¶ 13-17, 19.) The facts set forth in Mr. Morin's affidavit support these allegations. Since none of those acts pertain to the reporting of information to consumer credit reporting agencies, the defendants are not entitled to a summary judgment on federal preemption grounds in regard to Count 4. Furthermore, to the extent that Count 4 also includes allegations of false reports to credit reporting agencies, such claims are <u>not</u> preempted by § 1681h(e) because that false information is alleged to have been furnished to the credit reporting agency with malice or willful intent to injure the plaintiffs, particularly in light of the additional facts alleged (and supported by the accompanying affidavit) which demonstrate that NFCU and Nationwide engaged in an intentional and coordinated course of conduct to harm Mr. Morin and his family after he left Nationwide.

Count 5 alleges a state law cause of action for invasion of privacy, so preemption under only § 1681h(e), which expressly regulates "any action or proceeding in the nature of defamation," is potentially implicated by that claim. However, the facts underlying Count 5 are not limited to conduct involving the furnishing of information to consumer reporting agencies. While the complaint does allege that NFCU gave unreasonable publicity to Mr. Morin's private life by sending false reports to credit reporting agencies; <u>see</u> Complaint, Fifth Count, ¶ 15; the complaint also alleges that NFCU gave unreasonable publicity to Mr. Morin's private life by

31

disclosing his confidential customer financial information to others. See Complaint, Fifth Count, ¶ 13, 14 and 20. Consequently, because Count 5 pertains to conduct that is not preempted by federal law, the defendants are not entitled to a summary judgment on federal preemption grounds in regard to Count 5. Furthermore, to the extent that Count 5 also includes allegations related to the sending of false reports to credit reporting agencies, liability arising therefrom is not preempted by § 1681h(e) because that information is, under all of the facts, alleged to have been furnished to the credit reporting agency with malice or willful intent to injure the plaintiffs, particularly in light of the additional facts alleged (and supported by the accompanying affidavit) which demonstrate that NFCU and Nationwide engaged in an intentional and coordinated course of conduct to harm Mr. Morin after he left Nationwide.

While Count 6, unlike the other counts, arises exclusively from false information that NFCU provided to credit reporting agencies, common law liability for libel/slander arising from such conduct is not preempted by § 1681h(e) where, as here, such false information is, under all of the facts, alleged to have been furnished to the credit reporting agency with malice or willful intent to injure the plaintiffs, particularly in light of the additional facts alleged (and supported by the accompanying affidavit) which demonstrate that NFCU and Nationwide engaged in an intentional and coordinated course of conduct to harm Mr. Morin after he left Nationwide.

Count 8 seeks recovery under a Connecticut consumer statute that regulates the collection practices of creditors. Because nothing in Count 8 pertains to the reporting of information to consumer credit reporting agencies, the defendants' federal preemption arguments are wholly inapplicable to the plaintiffs' claims under Count 8. Count 8 alleges that NFCU made repeated representations to Mr. Morin that his motor vehicle loan was in default when that was not in fact the case and that NFCU then repossessed the motor vehicle when it had no right to do

so because the loan was not in default. In addition, after repossession, NFCU made representations to Mr. Morin regarding the payments necessary to "redeem" the vehicle notwithstanding that NFCU had already disposed of the vehicle. Because that conduct involves only NFCU's abusive and misleading conduct toward Mr. Morin in violation of Conn. Gen. Stat. § 36a-646, and not any reports to credit reporting agencies, the defendants' preemption arguments will not entitle them to a summary judgment on Count 8.

Finally, Count 12 sounds in a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq*. The CUTPA claim is based on all of the defendants' purposeful conduct alleged in the Complaint (including, the bad faith conduct of the defendants by which defaults were manufactured by the defendants' own conduct and claimed without any proper basis, which led to the improper repossession and disposition of the motor vehicle), which conduct was undertaken pursuant to a coordinated plan to cause economic and emotional injury to departed Nationwide agents. Clearly, no preemption is implicated here because most of that actionable conduct does not involve the furnishing of information to a credit reporting agency. Furthermore, to the extent that false reports to credit reporting agencies are included in Count 12, that conduct is alleged to have been done by NFCU with malice or willful intent to injure the plaintiffs, particularly in light of the additional facts alleged (and supported by the accompanying affidavit) which demonstrate that NFCU and Nationwide engaged in an intentional and coordinated course of conduct to harm Mr. Morin and his family after he left Nationwide. Consequently, the defendants' preemption arguments will not entitle them to a summary judgment on Count 12.

D.   **The Defendants Are Not Entitled To A Summary Judgment on Count 4**

Count 4 seeks recovery for negligent and intentional infliction of emotional distress caused

33

by the conduct of NFCU, conduct which was aided and abetted by Nationwide. Intentional infliction of emotional distress is proven when the plaintiff can demonstrate (1) that the defendant(s) intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Appleton v. Board of Education, 254 Conn. 205, 210-11 (2000); Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17 (1991). By contrast, negligent infliction of emotional distress is proven where "the defendant, or its agents or servants, should have realized that its conduct involved an unreasonable risk of causing the distress, and from the facts known to it, or its agents, should have realized that the distress, if it were caused, might result in illness or bodily harm." Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 341 (1978).

The defendants argue that, in addition to being preempted (which claim is addressed above), the plaintiffs cannot prevail on Count 4 because (i) Mrs. Morin's credit was never adversely affected; (ii) defendants engaged in no "outrageous" conduct; and (iii) there can be no aiding and abetting where there is no predicate claim. These arguments by the defendants, however, are without merit.

First, in 2002, Mrs. Morin was denied credit because of false information regarding her supposed status as a joint obligor with Mr. Morin on his business loan, which information was supplied to credit reporting agencies by NFCU. (Morin Affidavit, ¶ 30.) The fact that that false information, the reporting of which by NFCU was consistent with other evidence (e.g., Morin Affidavit, ¶ 6, 7, 10-29, 31) of the intentional and coordinated activities of NFCU and Nationwide to exert intense economic pressure on the plaintiffs through a series of unconscionable and

34

unlawful acts, was later corrected by Mrs. Morin does not eliminate the fact that injury in the form of denied credit had already been caused to her by the defendants' conduct.

Second, whether the defendants' conduct was sufficiently "outrageous" to support recovery for intentional infliction of emotional distress, or whether the defendants' conduct created an unreasonable risk of causing foreseeable emotional distress of a serious nature, are disputed issues of material fact.  Here, NFCU, in combination with Nationwide, engaged in a purposeful campaign to exert financial pressure on (and thereby cause extreme emotional distress to) Mr. & Mrs. Morin by (a) repeatedly failing to honor agreements affecting the manner and methods by which funds were to be taken to repay loans, (b) repeatedly declaring defaults when none existed (or the same had been wholly manufactured by NFCU's improper conduct), (c) ultimately repossessing a vehicle when there was no default, (d) misrepresenting the disposition of that vehicle in order to extract further payments from Mr. Morin with a promise of redemption that could not be fulfilled, and (e) making false reports to consumer credit reporting agencies.

Specifically, Mr. Morin's affidavit establishes the following facts to support those claims. After he ended his relationship with Nationwide, Mr. Morin worked with NFCU to keep his loans current, notwithstanding repeated instances in which NFCU either failed to take payments that it was authorized and instructed to take and apply to the loans or took payments but misapplied the amounts among the several outstanding loans.  (Morin Affidavit, ¶ 13-23.)  When Mr. Morin authorized NFCU to take a large lump sum amount ($2300) twice monthly from his bank account at the Savings Bank of Rockville to be distributed in payment of all of his outstanding loans, NFCU took the money but did not always apply it to the loans as instructed.  (Morin Affidavit, ¶ 15.) Later, during the summer of 2000, when Mr. Morin then authorized NFCU to take a smaller lump sum amount of money from his bank account at the Savings Bank of Rockville for two of the

35

loans, NFCU again failed to follow those instructions, this time by not even taking money as instructed in July of 2000. (Morin Affidavit, ¶ 16.) By its conduct, NFCU so confused the payment of the loans that clear analysis of the payment status is difficult, at best. But, what appears to be clear is that all loan payments were brought current, to the satisfaction of NFCU, by the end of September of 2000. In fact, by that time, two of the automobile loans that had been outstanding at the time of Mr. Morin's departure from Nationwide had been paid in full, and NFCU's liens on those vehicles were released. (Morin Affidavit, ¶ 16, 17.) Thereafter, the parties agreed that the $31,578.99 in Mr. Morin's earnings that Nationwide paid over to NFCU in October of 2000 would keep the business loan current *until November of 2001*. (Morin Affidavit, ¶ 18.) Nonetheless, almost immediately thereafter, NFCU once again claimed that the business loan was in default. Further, Mr. Morin instructed and authorized NFCU to take the payments for each of the two remaining loans (for the Dodge Durango and for the recreational vehicle) from his bank account at the Savings Bank of Rockville by electronic (ACH) transfers in the exact amount due on each loan twice each month. (Morin Affidavit, ¶ 19.) This arrangement appears to have worked until NFCU failed to take the money from Mr. Morin's bank account as instructed. (Morin Affidavit, ¶ 19-23.) In fact, the Brisendine Affidavit that is relied on by the defendants to support their claim for summary judgment is misleading, to the say the least, when it fails to explain that NFCU did not take the required payments as instructed in January and/or February of 2001, notwithstanding that NFCU's Chief Financial Officer had acknowledged that failure in a letter to Mr. Morin dated March 30, 2001. (Morin Affidavit, ¶ 21 and Exhibit D attached thereto.) Thereafter NFCU took the missed payments, and the only default of which it notified Mr. Morin thereafter was later admitted to be erroneous. (Morin Affidavit, ¶ 22, 23 and Exhibits E and F attached thereto.) Nonetheless, on May 15, 2001, NFCU repossessed the Dodge Durango even though all loans

were then current. (Morin Affidavit, ¶ 24.) In addition, while NFCU asserts that, after its repossession, the Durango was not sold until August of 2001, the documentary evidence demonstrates that the vehicle was actually sold by NFCU on June 20, 2001, notwithstanding NFCU's representations in July of 2001 that Mr. Morin could "redeem" his vehicle by paying a specified amount on the vehicle loan. (Morin Affidavit, ¶ 25, 26 and Exhibits G, H, I and J attached thereto.)

At each step of the way, then, the evidence shows that NFCU, aided by Nationwide[11], sought to manufacture defaults, misrepresent the payment status of the loans, and misrepresent the status of the collateral that it had redeemed. A jury would be entitled to find that that conduct of the defendants was not only part of an intentional corporate strategy unleashed against former Nationwide agents to send a message to all Nationwide agents about the potential consequences of deciding to sell insurance after leaving Nationwide but to further find that that conduct was sufficiently "outrageous" to support recovery for intentional infliction of emotional distress.

---

[11] Connecticut law recognizes that a party may be liable for aiding and abetting the tortious conduct of another. See Connecticut National Bank v. Giacomi, 233 Conn. 304, 329-30 n. 28 (1995) (Giacomi I). A person is liable as an aider and abettor if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. Connecticut National Bank v. Giacomi, 242 Conn. 17, 63 n. 42 (1997) (Giacomi II); Slicer v. Quigley, 180 Conn. 252, 259 (1980); Carney v. DeWees, 136 Conn. 256, 262 (1949); Restatement (Second) of Torts § 879(b) (1979). In addition, aider and abettor liability is present where the defendant "does a tortious act in concert with the other or pursuant to a common design with him"; Giacomi II, 242 Conn. at 63 n. 42; Restatement (Second) of Torts § 876(a); or where the defendant gives substantial assistance to another in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the plaintiff. Giacomi II, 242 Conn. at 63 n. 42; Restatement (Second) of Torts § 876(c).

Here, the facts alleged in the Complaint, which facts are substantiated in the Morin Affidavit, show that the defendants acted in concert and pursuant to a common design in regard to causing injury to the plaintiffs. Furthermore, those facts and all reasonable inferences to be drawn therefrom, demonstrate that the Nationwide defendants encouraged NFCU to wrongfully and artificially declare Mr. Morin to be in default on his loans, and that NFCU was a participant in Nationwide's reflex unit strategy, all of which was a part of the defendants' effort to cause financial and emotional injury to the plaintiffs. (Morin Affidavit, ¶ 6, 7, 10-13, 18, 27, 31.)

Likewise, a jury would be entitled to find that such conduct created an unreasonable risk of causing foreseeable emotional distress severe enough to result in illness or bodily harm sufficient to support recovery for negligent infliction of emotional distress.

E. **The Defendants Are Not Entitled To A Summary Judgment on the Plaintiffs' Invasion of Privacy and Libel/Slander Claims (Counts 5 and 6)**

Count 5 alleges a claim of invasion of privacy against NFCU. Connecticut common law recognizes a claim for invasion of privacy arising from "unreasonable publicity given to [another's] private life." Goodrich v. Waterbury Republican American, Inc., 188 Conn. 107, 128 (1982). Here, the evidence demonstrates a pattern of disclosures by NFCU to various third parties regarding the details and status of Mr. Morin's personal consumer loans with NFCU. In particular, NFCU discussed that personal information with Mr. Morin's daughter and made derogatory comments to her in regard to the same, and NFCU disclosed information regarding Mr. Morin's personal loans to representatives of Nationwide. See Blanchard Affidavit, Exhibit 3, Morin Deposition Tr. at p. 242 (regarding disclosures to Nicole Morin); Morin Affidavit, ¶ 27 (regarding disclosures to Nationwide regarding Mr. Morin's personal loans). In fact, that NFCU expressly denies that it made any communication to Nationwide regarding Mr. Morin's personal loans (as opposed to his business loan); see Brisendine Affidavit, ¶ 48; when, in fact, there is evidence that NFCU provided Nationwide with, among other things, details concerning Mr. Morin's Dodge Durango and the Ski Doo loans; see Morin Affidavit, ¶ 27 and Exhibit K attached thereto; demonstrates that there may well have been more such inappropriate disclosures of personal information as to which Nationwide had no legitimate interest since those personal loans were not the business loan as to which NFCU claims Nationwide had an interest. Under these circumstances, whether the offending disclosures rise to the level of "unreasonable publicity," whether those disclosures were "highly offensive" and whether those disclosures were "not of

38

legitimate concern" are all disputed issues of fact that may not be resolved by way of a motion for summary judgment.

Count 6 sounds in defamation (libel/slander) arising out of the false information that NFCU provided to credit reporting agencies regarding the status of Mr. Morin's loans with NFCU, which false information was provided with malice or willful intent to injure Mr. Morin as part of the concerted actions of Nationwide and NFCU to retaliate against those who have resigned as Nationwide agents. Although NFCU relies on a claim of "truth" in seeking summary judgment on Count 6, that approach cannot succeed. First, NFCU falsely reported that Mrs. Morin was a co-obligor with Mr. Morin on the <u>business</u> loan. (Morin Affidavit, ¶ 30.) That Mrs. Morin was also jointly obligated with Mr. Morin on the NFCU Visa <u>credit card</u> account (as argued on page 22 of Defendants' Brief) is simply beside the point. Second, NFCU falsely reported that Mr. Morin was delinquent in his loan payments. Obviously, in light of the affidavit evidence already discussed extensively above, whether Mr. Morin was in default on his loans as reported by NFCU to credit reporting agencies is clearly a disputed issue of fact. Accordingly, the defendants are not entitled to a judgment in their favor on Count 6 as a matter of law.

F.      **The Defendants Are Not Entitled To A Summary Judgment on Count 7**

The plaintiffs' claim in Count 7 alleges that personal financial information concerning Mr. Morin has been disclosed to third parties. Specifically, in December of 2000, NFCU made written disclosure to <u>Nationwide</u> pertaining to the amounts owed by Mr. Morin on his <u>personal</u> (Dodge Durango and Ski Doo) loans with NFCU. <u>See</u> Morin Affidavit, ¶ 27 and <u>Exhibit K</u> attached thereto. Connecticut General Statutes § 36a-42 provides, in pertinent part, that "[a] financial

institution[12] may not disclose to any person, except to the customer or the customer's duly authorized agent, any financial records relating to such customer unless the customer has authorized disclosure to such person . . . ." In its summary judgment brief, NFCU correctly points out that, under Conn. Gen. Stat. § 36a-41(2)(B), the "financial records" whose disclosure is regulated by the statute are limited to either "a document granting signature authority", "a statement, ledger or other record", a "check, draft or money order" or a "debit or credit." See Defendants' Brief, p. 23; Conn. Gen. Stat. § 36a-41(2). However, the offending disclosure here arises from NFCU's December 2000 letter, which constitutes an "other record" that provided Nationwide with details regarding Mr. Morin's personal (Dodge Durango and Ski Doo) loans that are part of his share account with NFCU. See Conn. Gen. Stat. § 36a-41(2)(B). Under these circumstances, NFCU's claim for summary judgment on Count 7 must fail.[13]

G. **Because There Is A Private Right of Action for A Violation of the Connecticut Creditors' Collection Practices Act (CCPA) Based On The Facts Alleged in the Complaint, Defendant NFCU Is Not Entitled to A Summary Judgment on Count 8**

Through the Creditors' Collection Practices Act (CCPA), Connecticut public policy provides consumers with broad protection against any "abusive, harassing, fraudulent, deceptive or misleading representation, device or practice [by a creditor] to collect any debt." Conn. Gen. Stat. § 36a-646. The CCPA applies to the conduct of creditors in regard to, *inter alia*, the collection of loans to individuals for consumer goods, which would include the motor vehicle (Dodge Durango) and recreational vehicle (Ski-Doo) loans at issue in this case. See Conn. Gen. Stat. § 36a-645.

---

[12] The statutory term "financial institution" includes a federal credit union. Conn. Gen. Stat. § 36a-41(1).

[13] NFCU's additional argument, on pp. 23-24 of its Brief, that disclosures to a credit reporting agency are exempted from the confidentiality requirements of § 36a-42 is wholly misplaced because Count 7 is not based on communications with any credit reporting agency.

A.  The Facts Alleged In the Complaint State A Claim Under the CCPA

Here, the Complaint alleges that NFCU made repeated representations to Mr. Morin that his motor vehicle loan was in default when that was not in fact the case and that NFCU then repossessed the motor vehicle when it had no right to do so because the loan was not in default. Contrary to the defendants' claim in its summary judgment brief, those allegations, which are supported by the Morin Affidavit (¶ 13-26), are sufficient to prove a violation of Conn. Gen. Stat. § 36a-646.

Specifically, the administrative regulations implementing the CCPA provide, *inter alia*, that "[a] creditor may not use any fraudulent, deceptive, or misleading representation, device or practice in connection with the collection of any debt," and further provide that the false representation of "the character, amount, or legal status of any debt" and/or "[t]he use of any other false representation or deceptive means to collect or attempt to collect any debt" is conduct that will violate the Act. Regs. Conn. State Agencies §§ 36a-647-6(b)(1) and 36a-647-6(k). As the evidence demonstrates, immediately upon his retirement from Nationwide, NFCU improperly used of the purported forfeiture of Mr. Morin's retirement account as a pretext to declare his loans to be in default. (Morin Affidavit, ¶ 12, 13.) In addition, NFCU repeatedly thereafter claimed that the motor vehicle loan was in default for nonpayment when Mr. Morin was actually current in his loan payments. In fact, the evidence demonstrates that NFCU repeatedly misapplied loan payments that were made by Mr. Morin and failed to take payments (by way of ACH deduction) when it was authorized and had agreed to do so in order to declare the loan to be in default for nonpayment. (Morin Affidavit, ¶ 15-17, 19-24.) Clearly, that is precisely the kind of abusive, harassing, fraudulent, deceptive and misleading conduct and representations that are barred by the CCPA.

Likewise, notwithstanding that Mr. Morin was at all times current in the payments on his loans, and therefore the loans were not in a default status, NFCU repossessed the motor vehicle without the legal right to do so. (Morin Affidavit, ¶ 24.) That conduct, too, violated the CCPA. The administrative regulations implementing the CCPA expressly prohibit such conduct, providing, *inter alia*, that "[a] creditor may not engage in any conduct the natural consequences of which to a reasonable person would be to harass or abuse such person in connection with the collection of a debt. A creditor may not intentionally engage in any conduct which he knows would harass or abuse any person. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . [t]aking . . . any nonjudicial action to effect dispossession . . . of property unless . . . there is a present right to possession of the property claimed as collateral through an enforceable security interest . . . ." Regs. Conn. State Agencies § 36a-647-5(k)(1). Clearly, without a default on the motor vehicle loan, NFCU had no "present right to possession" of Mr. Morin's motor vehicle.

Finally, after it repossessed the vehicle, NFCU sought to collect on the loan by representing to Mr. Morin an amount that he should pay to "redeem your vehicle." (Morin Affidavit, ¶ 25, 26.) Yet, at that time, NFCU had already sold the repossessed vehicle to a third party. (Morin Affidavit, ¶ 25, 26.) Such fraudulent, deceptive and misleading conduct by NFCU in the collection of a debt constitutes another clear violation of the CCPA (Conn. Gen. Stat. § 36a-646) and its administrative regulations (Regs. Conn. State Agencies §§ 36a-647-6(b)(1) and 36a-647-6(k)).

Accordingly, the defendants' contention that the plaintiffs have failed to allege any facts in support of their claim under the CCPA is without merit. Not only have the plaintiffs' properly alleged sufficient facts to support the CCPA claim, but the Morin Affidavit demonstrates that there

42

is evidentiary support for those allegations. Therefore, the defendants are not entitled to a summary judgment on Count 8 based on their claim that the facts alleged (or presented) do not support a violation of the CCPA.

      B.     <u>A Private Right of Action Exists Under the CCPA</u>

Furthermore, the defendants' argument that the CCPA does not authorize a private right of action by an injured consumer is incorrect. Although, as the defendants point out, several trial court decisions have concluded that there is no private right of action under § 36a-646 for wrongful collection practices by a creditor, at least one Connecticut court has concluded to the contrary. <u>Connecticut Light and Power v. Clark</u>, 1996 WL 365360, * 2 (Conn. Superior Ct. May 16, 1996) (copy attached). Moreover, while no appellate court has addressed the issue, a proper analysis of the manner by which the existence of a private right of action is to be analyzed demonstrates that a private right of action should exist to enforce a violation of § 36-636.

The following three-prong test is used to determine whether a Connecticut statute will be read to imply a private right of action:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

<u>Napoletano v. CIGNA Healthcare of Connecticut, Inc.</u>, 238 Conn. 216, 249 (1996), <u>cert. denied</u>, 520 U.S. 1103 (1997); <u>Provencher v. Enfield</u>, 98 Conn. App. 271, 274-75, <u>cert. granted</u>, 280 Conn. 950 (2006). Here, there can be little question but that the plaintiff, as a consumer indebted to NFCU on a personal (motor vehicle) loan, is a member of the class of persons for whose benefit § 36a-636 was enacted. The obvious purpose of the statute is to protect consumers, like the plaintiff, from the abusive, misleading, and/or deceptive debt collection practices of their

creditors. Furthermore, there appears to be some indication of at least an implicit legislative intent to create a private remedy for the enforcement of § 36a-646, both because the statutory authority given to the Commissioner of Banking to enforce § 36a-646 is <u>not</u> exclusive and because the statute explicitly recognizes civil liability for its violation. While the Connecticut Commissioner of Banking is authorized to take action against those who violate § 36a-646, including administrative enforcement through Conn. Gen. Stat. § 36a-50; <u>see</u> Conn. Gen. Stat. § 36a-647(b)-(d); Conn. Gen. Stat. § 36a-647(b) clearly recognizes that such administrative enforcement does <u>not</u> preclude private enforcement, because, according to subsection (b) of the statute: "No action taken by the commissioner against a creditor in accordance with section 36a-50 relieves the creditor from civil liability." This legislative recognition that civil liability for a violation of § 36a-646 exists <u>independently of</u> and <u>in addition to</u> any administrative enforcement of the statute is clear evidence of the existence of private means of enforcing the consumer protection provisions in § 36a-646 through judicial action. Finally, such a private right of enforcement is entirely consistent with the underlying purposes of the legislative scheme, set forth in § 36a-636, to provide consumers with broad protections against any "abusive, harassing, fraudulent, deceptive or misleading representation, device or practice [by a creditor] to collect any debt." Conn. Gen. Stat. § 36a-646. Under these circumstances, because the statute does not vest exclusive enforcement powers in an administrative agency and, in fact, the statute explicitly recognizes that simultaneous civil enforcement will further the legislative goals underlying the statute, a private right of action should be recognized. Compare <u>Provencher v. Enfield</u>, 98 Conn. App. 271, 275-77, <u>cert. granted</u>, 280 Conn. 950 (2006) (finding a private right of action under Conn. Gen. Stat. § 22-331(a)) with <u>Asylum Hill Problem Solving Revitalization Ass'n v. King</u>, 277 Conn. 238, 248-59 (2006) (finding no private right of action under Conn. Gen. Stat. § 8-37cc(b)).

Accordingly, because the CCPA was intended to benefit consumers like Mr. Morin, and because the statute expressly recognizes civil liability for the violation of its consumer protection proscriptions and because a private cause of action will further the purposes of the CCPA to protect consumers against abusive collection practices, this Court should conclude that the plaintiffs do, in fact, have a private right of action under the CCPA. Therefore, the defendants are not entitled to a summary judgment on Count 8 based on their claim that the plaintiffs do not have a private right of action to remedy the defendant's violation of the CCPA.[14]

### H. Because the Statute of Limitations Has Not Been Pleaded As an Affirmative Defense, The Plaintiffs' Cannot Rely on the Statute of Limitations to Obtain Judgment in their Favor on Count 10

Rule 8(c) of the Federal Rules of Civil Procedure requires that a responsive pleading must set forth certain enumerated affirmative defenses as well as "any other matter constituting an avoidance or affirmative defense." "[A] party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." Doubleday & Co., Inc. v. Curtis, 763 F.2d 495, 503 (2d Cir. 1985), citing Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984) ("Failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case.") (internal quotation marks omitted).

The statute of limitations defense on which the defendants seek summary judgment in regard to Count 10 must be pleaded as an affirmative defense in order to be relied upon by the

---

[14] It is important to note that even those cases holding that there is no private right of action for a violation of the CCPA do clearly recognize that such a statutory violation will nonetheless constitute an unfair or deceptive act or practice that is actionable under the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a *et seq.* See, *e.g.,* Pabon v. Recko, 122 F.Supp.2d 311, 314 (D. Conn. 2000); Tillquist v. Ford Motor Credit Co., 714 F.Supp. 607, 615-16 (D. Conn. 1989). Consequently, because the facts alleged in the Complaint and the evidence presented by the plaintiffs in opposition to the motion for summary judgment support the claimed violations of § 36a-646, then the violation of § 36a-646 will support the plaintiffs' CUTPA claim under Count 12, even if no recovery is authorized under Count 8.

45

defendants in seeking judgment in their favor. The "statute of limitations" is an affirmative defense that is specifically enumerated in Rule 8(c). Case law, too, recognizes that the statute of limitations must be pleaded as an affirmative defense. See, e.g., Harris v. Secretary, U.S. Dept. of Veterans Affairs, 126 F.3d 339, 343 (D.C. Cir. 1997). Therefore, the defendants are not permitted to rely on any statute of limitations defense in this case, unless the defendants' belated assertion of this defense is excused by the Court. While the defendants have sought leave to plead the statute of limitations as an affirmative defense, the plaintiffs have opposed that motion. If the Court agrees with the plaintiffs that the defendants should not be permitted to belatedly assert this defense at this stage of the proceedings, then the defendants claim for summary judgment in regard to Count 10 on statute of limitations grounds must be rejected.

I.  **Plaintiffs Do Not Contest the Entry of Summary Judgment on Count 11**

Count 11, which is based on a claimed violation of 15 U.S.C. § 1681m(b)(1), arises from actions that NFCU took based on information that had been supplied to it by Nationwide. It appears that, after receiving information from Nationwide regarding the termination of Mr. Morin's relationship with Nationwide, NFCU relied on that information to declare a default on Mr. Morin's business loan (Morin Affidavit, ¶ 12) and then shut off the available credit on Mr. and Mrs. Morin's NFCU Visa credit card. (Morin Affidavit, ¶ 31.)

The defendants have asserted multiple reasons in support of their claim for summary judgment on Count 11. While the plaintiffs believe that the defendants' legal and/or factual analysis is incorrect in regard to several of those asserted reasons for summary judgment, the plaintiffs will concede that Count 11 is not viable for at least one of the reasons raised by the defendants. Accordingly, the plaintiffs will not contest the entry of a summary judgment in favor of NFCU on Count 11.

**J.     The Defendants Are Not Entitled To A Summary Judgment on Count 12**

Count 12 sounds in a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq*.  The defendants pose a two-pronged attack on Count 12.  First, the defendants again argue that the CUTPA claim is preempted under § 1681t(b) to the extent that the CUTPA claim rests on credit reporting matters.  However, not only have the defendants not properly asserted an affirmative defense based on federal preemption, but it is clear that the CUTPA claim rests on unfair and deceptive practices that extend well beyond any matters involving the reporting of information to credit reporting agencies.  Second, the defendants argue that the CUTPA claim must fall because all of the plaintiffs' other claims are not legally viable.  In response, the plaintiffs will only briefly restate their previous contentions regarding the viability of the statutory and common law violations that are alleged in Counts 1 through 10 of the Complaint, all of which when considered together will establish the defendants' liability under CUTPA.

CUTPA provides, in pertinent part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).  A CUTPA violation may be established by showing either an unfair method of competition, an actual deceptive practice, or a practice amounting to a violation of public policy.  Web Press Services Corp. v. New London Motors, Inc., 203 Conn. 342 (1987); Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747 (1984).  The elements of a claim of violation of CUTPA that is based on an alleged "unfair" practice are summarized in the so-called "cigarette rule", which states that an act or practice violates CUTPA where it offends public policy; is immoral, oppressive, unethical or unscrupulous; and/or causes substantial injury to consumers, competitors or other businessmen.  Willow Springs Condominium Ass'n, Inc. v. Seventh BRT

47

Development Corp., 245 Conn. 1, 43 (1998). All three "cigarette rule" criteria do not need to be satisfied to support a finding of unfairness; a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Id. While proof of an underlying common law cause of action or a statutory violation involving unfairness will usually support a claim of liability under CUTPA; see, e.g., Sportmen's Boating Corp., 192 Conn. at 756-57; Conaway v. Prestia, 191 Conn. 484, 493 (1983); see also Chem-Tek, Inc. v. General Motors Corp., 816 F. Supp. 123, 130-31 (D. Conn. 1993); Tillquist v. Ford Motor Credit Co., 714 F. Supp. 607, 616 (D. Conn. 1989); "CUTPA has come to embrace a much broader range of business conduct than does the common law tort action." Sportsmen's Boating Corp., 192 Conn. at 756. Finally, whether a defendant's acts constitute an unfair trade practice under CUTPA is a question of fact. Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P., 252 Conn. 479, 505 (2000); Demotses v. Leonard Schwartz Nissan, Inc., 22 Conn. App. 464, 466-67 (1990).

The unfair methods of competition and unfair or deceptive acts or practices here include: (a) repeatedly and in bad faith failing to honor agreements affecting the manner and methods by which funds were to be taken to repay loans; (b) repeatedly and in bad faith declaring defaults when none existed (or the same had been wholly manufactured by the defendants' improper conduct); (c) ultimately repossessing a vehicle when there was no default in violation of Conn. Gen. Stat. (Rev. to 2001) § 42a-9-503; (d) disposing of the repossessed vehicle in violation of §§ 42a-9-504(3) and § 42a-9-506; (e) misrepresenting the disposition of that vehicle in order to extract further payments from Mr. Morin with a promise of redemption that could not be fulfilled because the vehicle had already been sold by NFCU; (f) purposefully making false reports to consumer credit reporting agencies regarding the defaults that did not exist and/or had been

manufactured by the defendants' own improper conduct; (g) falsely reporting to credit reporting agencies that Mrs. Morin was a co-obligor on Mr. Morin's business loan; (h) disclosing private financial information and/or protected financial records concerning Mr. Morin's loans and their payment status to third parties (including Nationwide and Mr. Morin's daughter); and (i) engaging in abusive, harassing, fraudulent, deceptive or misleading representations and practices to collect a debt in violation of Conn. Gen. Stat. § 36a-646 (see Footnote 14, supra).  For CUTPA purposes, it is also highly significant that the defendants, in combination, engaged in these acts as part of a purposeful and retaliatory strategy to wreck financial, emotional and professional havoc on Mr. and Mrs. Morin because Mr. Morin had resigned as a Nationwide insurance agent and thereafter chose to continue to do business as a licensed insurance agent. (Morin Affidavit, ¶ 6, 7, 12, 13.)  That effort to suppress competition by interfering with Mr. Morin's ability to do so, and by sending a clear message to other Nationwide agents that the same fate would befall them if they too chose to leave Nationwide and continue to make a living in the insurance business, provides an added dimension to the plaintiffs' CUTPA claim.  Under these circumstances, genuine issues of material fact exist as to whether the defendants engaged in an unfair method of competition, engaged in deceptive practices, and/or engaged in unfair acts or practices that offended public policy, that were immoral, oppressive, unethical or unscrupulous and that caused substantial injury to consumers, competitors or other businessmen.  For these reasons, a summary judgment may not enter on Count 12.

## IV.  CONCLUSION

For all of the foregoing reasons, the defendants' Motion For Summary Judgment should be denied in its entirety, except with respect to Count 11.

```
```
PLAINTIFFS,

By _____
Richard P. Weinstein, Esquire of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107
Telephone No. (860) 561-2628
Facsimile No. (860) 521-6150
Federal Bar No. ct06215
rpw1@dtg.net

## CERTIFICATION

I hereby certify that on this 19th day of June, 2007, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
Richard P. Weinstein

PLAINTIFFS,

By _____
Richard P. Weinstein, Esquire of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107
Telephone No. (860) 561-2628
Facsimile No. (860) 521-6150
Federal Bar No. ct06215
rpw1@dtg.net

## CERTIFICATION

I hereby certify that on this 19th day of June, 2007, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
Richard P. Weinstein