**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RONALD P. MORIN, SR., ET AL, | : | CIVIL ACTION NO. |
| | : | 3:03CV277 (CFD) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| NATIONWIDE FEDERAL CREDIT UNION, | : | JUNE 19, 2007 |
| ET AL, | : | |
| | : | |
| Defendants. | : | |

**AFFIDAVIT OF RONALD P. MORIN, SR.**

Ronald P. Morin, Sr., having been duly sworn, hereby deposes and says:

1.     I am over the age of eighteen (18) years, and I understand and believe in the obligations of an oath.

2.     All statements set forth herein are based on my personal knowledge.

3.     For many years prior to 2000, I had been an employee of the defendant Nationwide Mutual Insurance Company and its defendant affiliates (hereinafter "Nationwide"), and then, commencing in approximately 1989, I became an independent contractor agent for the sale of insurance products that were offered by Nationwide. With respect to those insurance products (e.g., investments, and home, automobile, business and life insurance), I sold exclusively for Nationwide. However, with respect to other insurance products (e.g., group health insurance), I was authorized by Nationwide to represent other companies.

4.     As part of my employment with Nationwide, Nationwide had established an Agency Security Compensation Plan similar to a profit sharing or pension plan wherein the contributions were a deferred part of the agent's earnings and are credited to the agent's

1

account to be available to the agent upon retirement.  The details of that Plan are set forth in Section 11 of the Agent's Agreement between myself and Nationwide, a copy of which is attached as Exhibit 1 to the Affidavit of Michael D. Blanchard In Support of Defendants' Motion for Summary Judgment (dated April 11, 2007).

5.      In the late 1990's, Nationwide placed more and more pressure on Nationwide agents, including me, through the imposition of quotas, pressure to sell multiple products to customers at reduced commissions, and Nationwide began its own direct solicitation of customers, competing with its agents in regard to the consumer base.

6.      The strain between Nationwide and its agents lead to Nationwide developing a strategy to deal with its agents who quit or threaten to quit, including retaliatory termination by Nationwide.  As a result of the Nationwide strategy to maximize financial pressure on agents who terminated with Nationwide, Nationwide established a so-called "reflex unit" with the stated intention of putting the departing agents out of business, by among other things trying to wrongfully confiscate agents' retirement accounts and otherwise creating substantial difficulties in terms of the agents' ability to continue to do insurance business.  Creating financial difficulties with respect to an insurance agent's credit and credit rating is particularly significant, beyond the obvious problems that poor credit has for all individuals.  When an independent insurance agent seeks to obtain an appointment from an insurance company to act as its authorized agent, the insurance company will require that the agent have a good credit rating or provide a satisfactory explanation of any blemishes on the prospective agent's credit record.  Therefore, an adverse credit history will have a substantial and detrimental impact on a former Nationwide agent's ability to make a living as an insurance agent and to compete with Nationwide after his or her departure from Nationwide.

2

7.    The defendant Nationwide Federal Credit Union (hereinafter "NFCU") was, at all relevant times, a federally chartered credit union which solicits business from Nationwide employees, agents and their families.  Nationwide had a special program to encourage its agents to utilize NFCU for agency development loans.  In fact, all applications for business loans from NFCU had to be, and were, submitted to and approved by Nationwide prior to any disbursement of loan funds by NFCU.

8.    During the time that I was a Nationwide agent, I maintained several accounts with NFCU, including a savings account and a checking account, under account number 907119006.  In addition, during the time that I was a Nationwide agent, I had obtained several loans from NFCU.  As of February 6, 2000, I had five (5) loans outstanding with Nationwide, plus a Visa credit card account.  Those loans were: (1) a business loan, referred to as a Partnership Plus loan, which was given the account number 907119006-1; (2) an automobile loan for the auto used by my daughter Nicole, which was given the account number 907119006-2; (3) a loan for a recreational vehicle, which was given the account number 907119006-3; (4) a motor vehicle loan for a Dodge Durango, which was given the account number 907119006-4, and (5) an automobile loan for the auto used by my daughter Jennifer, which was given the account number 907119006-6.  (The loans were often referred to by the last digit.  Thus, for example, the business loan was referred to as loan #1.   However, I do note that, in or around November of 2000, NFCU changed the number assigned to the various loans.  The Durango loan became loan #1; the recreational vehicle loan became loan #5; and the Partnership Plus business loan became loan #6.  This change in loan number designation created additional confusion with respect to the proper application of payments and accounting

3

for the same by NFCU.)   Except for the Partnership Plus business loan, each of these outstanding loans was for items purchased for personal use by myself or my family members.

9.    By letter dated February 6, 2000, I gave notice to Nationwide that I was retiring from Nationwide.  (A copy of that letter is attached as Exhibit 2 to the Affidavit of Michael D. Blanchard In Support of Defendants' Motion for Summary Judgment.)   The reasons for my decision to retire from Nationwide and terminate my relationship with Nationwide are set forth in that letter.  At the time that I terminated my relationship with Nationwide, I had no intention to compete against Nationwide or otherwise continue to sell insurance near my former Nationwide office location.   In fact, prior to my termination, I had become licensed to sell insurance in Vermont, and I had made arrangements to begin work, later in February, as an independent insurance agent in Vermont where I had established a residence after selling my house in Connecticut.

10.    The voluntary termination of my relationship with Nationwide constituted a "qualified cancellation" of my Agent's Agreement under Section 11e of the Agent's Agreement, which entitled me to the payment of "extended earnings" under the other terms of Section 11 of the Agent's Agreement.

11.    As of February 6, 2000, all payments on my loans with NFCU were current.

12.    Notwithstanding the aforesaid, on February 9, 2000, NFCU notified me that I was in default on my Partnership Plus (business) loan.  A copy of that February 9, 2000 letter is attached hereto as Exhibit A.  The letter incorrectly stated that my loan had been in default since February 7, 2000.   The letter also incorrectly stated that my Extended Earnings and Deferred Compensation Incentive Credits (DCIC) had been "forfeited upon the termination of your relationship with Nationwide Insurance."  As noted above, because I had retired by way of

4

a voluntary termination under circumstances that constituted a "qualified cancellation" under Section 11e of the Agent's Agreement, there had been no forfeiture of my Extended Earnings or DCIC. The position taken by NFCU concerning the purported default and the purported forfeiture was part of the "reflex unit" response to my retirement which was intended to wrongfully exert financial pressure on me because I had terminated my relationship with Nationwide. In fact, it was only because Nationwide had, by February 9, apparently taken the position that my Extended Earnings benefits had been forfeited, and consequently those monies would not be available to me to allow me to move to Vermont and establish a new insurance business there, that I then modified my plans and focused my business plan on my Connecticut insurance agency as an independent agent.

13. Prior to my retirement from Nationwide, all of my loans with NFCU had been paid on a current basis by way of deductions from my agent's commissions. During February of 2000, those loans continued to be paid via payroll deductions on the 15th and 25th of the month. In fact, an internal NFCU e-mail dated March 3, 2000, which was disclosed by NFCU during discovery, lists my loans as "either in repayment or promising repayment and **not in default**" (emphasis in original). A copy of that e-mail is reprinted in Exhibit B hereto. Since my loans continued to be paid and since this subsequently-disclosed internal NFCU e-mail confirms that my loans were not regarded as being in default, I believe that NFCU's February 9 letter (Exhibit A) was part of a coordinated effort between NFCU and Nationwide, through the Reflex Unit, to use false and misleading information to harass me and to exert improper financial pressure on me because I had made the decision to leave Nationwide and was contemplating the possibility of continuing to sell insurance. That NFCU was part of

5

Nationwide's Reflex Unit actions is demonstrated in the series of e-mails that are reprinted in Exhibit B hereto.

14.   My commission payments continued into March of 2000, and during that month the loans were paid via deductions from my NFCU account on March 14 or 15 and on March 29.

15.   In March, I became aware that my commission payments from Nationwide would end soon. Because of that, a written payment plan was initiated by me, as a member in good standing at NFCU, under which I was to deposit $2300 into my savings account at NFCU twice a month, and NFCU was to then disperse the $2300 that I had deposited to each of my outstanding loans in the amount that was due on each loan at the time that each loan payment was due. A copy of that directive (ACH authorization), with hand-written notations by NFCU at the top regarding the loans to which the funds were to be dispersed, is attached hereto as Exhibit C-1. That method of payment worked for several months, until NFCU violated the terms of our agreement by failing to apply the deposited funds as directed and/or applying all of the monies in the account to just one loan account, which actions by NFCU disrupted the orderly payment of the loan accounts. When I called NFCU to inquire why the funds were not disbursed in accordance with our agreement, I was told by NFCU that it could do whatever it wanted to do with the funds in that savings account.

16.   As a result of NCFU's actions in misapplying the account funds in payment of the loans, and the fact that it would be impossible to make the aforementioned agreement work if the funds that I was depositing to my account were not applied by NFCU to each loan for the full amount due as we had agreed, I initiated and entered into a new arrangement with NFCU under which NFCU was to make an electronic withdrawal for specific loan payments from my

6

account at the Savings Bank of Rockville (hereinafter "Rockville Bank"). Under that new ACH authorization, which was signed on July 4, 2000, NFCU was to withdraw $900 from my Rockville Bank account twice monthly, which amounts were to be applied to the loan ending in #4 (the Durango), to the loan ending #3 (the recreational vehicle), and to the loan ending in #6 (Jennifer's car) and to the Visa account. (Around that time, I paid off the loan ending #2. The loan ending #1 (the business loan) was to be paid by me directly by check.) A copy of that directive (ACH authorization) is attached hereto as Exhibit C-2. Although this new ACH authorization was dated July 4, 2000, and returned to NFCU immediately thereafter for use by NFCU per the agreement between myself and NFCU, it was not processed by NFCU until August 11, 2000. Because of this delay by NFCU, NFCU did not take payments under the new ACH authorization as instructed, causing the loans to be delinquent.

17. Even though there would have been no delinquencies in regard to my personal loans had NFCU followed the aforementioned agreements, instructions and authorizations with respect to the payment of those loans, all of my loans with NFCU were brought current on or about September 27, 2000, through payment by checks. A check payable to NFCU for $6,775.00 was made to bring the Partnership (business) loan (#907119006-1) current. A check payable to NFCU for $1,028 was made to bring loan #907119006-4 current. A check payable to NFCU for $4,320 was made to pay off loan #907119006-6 in full. These payments corrected the problems that had been brought about by NFCU's failure to deduct and apply payments properly under the aforementioned agreements.

18. At the time of my retirement from Nationwide in February of 2000, Nationwide owed me a substantial amount of money for compensation that had been earned as of December 31, 1999. Those monies should have been paid to me by the time of my retirement.

7

However, it was not until October 17, 2000, soon after the three remaining loans (including the Partnership Plus (business) loan) were brought current at the end of September of 2000, that Nationwide finally released my earned compensation in the amount of $31,578.99 which Nationwide had wrongfully withheld since February of 2000. Furthermore, that money was never sent to me. Instead, the $31,578.99 was sent by Nationwide to NFCU. I believe that that amount was sent by Nationwide to NFCU electronically on October 17, 2000, because, at or around the time that I became aware of that payment in October of 2000, I had asked NFCU to provide me with a copy of any payment that Nationwide had made by check and none was provided to me. The entire $31,578.99 was applied by NFCU to my Partnership Plus (business) loan. When I learned that the $31,578.99 had gone to NFCU, I contacted NFCU by telephone to discuss the matter with a representative of NFCU. In that conversation, I indicated that since the $31,578.99 represented more than 13 months of payments on the Partnership Plus (business) loan, that payment would constitute monthly payments for each of the months through November of 2001, which would then keep the business loan current until November of 2001 and consequently no payment would be due on that loan until November of 2001. The NFCU representative voiced no objection to or concern with that manner of proceeding. I did not receive any communication from NFCU that this arrangement was not acceptable. Therefore, based on my agreement with NFCU in October or November of 2000, the monthly payments on my Partnership Plus (business) loan were current through November of 2001.

19. Because of the problems that I had encountered with NFCU's application of the $900 (twice monthly) ACH withdrawals from my Rockville Bank account to the other outstanding loans, another change was made in the ACH authorization. Effective October 30,

2000, NFCU was provided with authorization to debit my Rockville Bank account for $355.67 twice monthly to satisfy the amount due on the Durango loan (#907119006-4) and $168.14 twice monthly to satisfy the amount due on the recreational vehicle loan (#907119006-3), which were the only NFCU loans of mine that remained outstanding, with the exception of the business loan that was paid current to November of 2001. A copy of that ACH authorization is attached hereto as Exhibit C-3. Because this new ACH authorization was provided to NFCU at the end of October of 2000, I made payments on both loans by check in November of 2000. Thereafter, all scheduled payments of loans #3 and #4 were to be taken by NFCU from my Rockville Bank account by way of this newest ACH withdrawal authorization. However, I do note that no loan payments were due, and no ACH withdrawal was made by NFCU, in December of 2000 because I participated in NFCU's "holiday skip-a-payment" program, as I had done in each of the preceding years, in which program NFCU permitted credit union members to skip the December payments on their loans in order to have more money available for other holiday season expenses.

20.  If there were insufficient funds in my Rockville Bank account when a third party attempted to withdraw funds by way of an ACH authorization, then I would have been notified of that fact, and charged a fee, by Rockville Bank. At no time did I receive any notice from Rockville Bank that the funds in my Rockville Bank account were insufficient to pay any attempt by NFCU to withdraw funds by way of an ACH authorization.

21.  Soon after the newest ACH authorization was in place, NFCU began a confusing pattern of activity with respect to the ACH withdrawals that I had authorized whereby NFCU either failed to withdraw payments or reversed the withdrawal of payments, and then claimed that the loans were delinquent because no payment had been made. In fact, by letter to me

dated March 30, 2001, Regina M. Lewie, the Chief Financial Officer of NFCU, explained to me

that, with respect to the Durango loan and the recreational vehicle loan (referred to therein as

loan # 1 and loan # 5) that were to be paid by ACH debit:

> On February 16, 2001 NFCU sent you a letter because we did not pull your loan payments as scheduled from Savings Bank of Rockville in January or early February. Unfortunately, you were not the only member affected by this error. In our efforts to try to notify members as quickly as possible, the February 16th letter was sent to the affected members.
>
> Your loans were credited as scheduled at the credit union. The funds due the credit union for the January and February payments were pulled on February 21.

A copy of that letter is attached hereto as Exhibit D.

22.    In fact, in 2001, ACH payments of $355.67 were taken from my Rockville Bank

account by NFCU for the Durango loan twice on February 22, on March 13, on March 28, on

April 12, on April 27 and on May 11.  Because the Durango was repossessed on May 15,

2001, I terminated the ACH authorization, and NFCU's attempt to make further ACH debit from

my Rockville Bank account on May 25, 2001 for the Durango loan was rejected.

23.    Likewise, in 2001, ACH payments of $168.14 were taken from my Rockville Bank

account by NFCU for the recreational vehicle loan on February 16, on February 22, on March

1, on March 16, April 3, on April 13, on April 30, and on May 15.  Notwithstanding that these

payments were being taken electronically by NFCU, on or about March 26, 2001, NFCU sent

me a "Due Notice" indicating that the recreational vehicle loan (account #907119006 sub 5)

was past due.   On April 2, 2001, the day that I received the March 26 Due Notice, I

immediately notified NFCU that this notice was another example of its failure to properly collect

and/or process the ACH payments on my loans.  (A copy of the March 26 Due Notice and my

April 2 letter to NFCU are attached hereto as Exhibit E.)  By letter dated April 18, 2001, NFCU

acknowledged its error and confirmed that the recreational vehicle loan was, in fact, current. (A

copy of that April 18 letter is attached hereto as Exhibit F.)  NFCU sent me no other notice regarding any then-existing default on any of my loans, and Rockville Bank did not notify me of any failed ACH withdrawals regarding either of my loans that were being paid by ACH withdrawal.  Ultimately, because the Durango had been repossessed on May 15, 2001, notwithstanding that I was then current on all of my loan payments, and because it was (again) clear to me that NFCU had no interest in proceeding in good faith in regard to my loans and the electronic ACH withdrawals that I had authorized NFCU to make in order to pay the loans, I terminated the ACH authorization with respect to the recreational vehicle loan as well, and NFCU's attempt to make further ACH debit from my Rockville Bank account on May 31, 2001 for the recreational vehicle loan was rejected.  Instead, on or about June 26, 2001, I paid the $336.28 due on the recreational vehicle loan by check.  At or about this time, NFCU "wrote off" the recreational vehicle loan despite it being current and reported the same as a "charged off" loan to the several credit reporting agencies.

24.    On May 15, 2001, NFCU repossessed my Dodge Durango.  At that time, I was current on all of my loans with NFCU.

25.    Included in Exhibit 22 to the Affidavit of Kathleen M. Brisendine (dated April 11, 2007), which affidavit has been submitted by the defendants in support of their motion for summary judgment, are documents showing that my Dodge Durango was sold by NFCU (through Southern Auto Sales, Inc. in East Windsor, Connecticut) to a Massachusetts automobile dealer on June 20, 2001.  Those documents, which include what appears to be a bill of sale and a check dated June 21, 2001 for the proceeds of that sale, are attached hereto as Exhibit G.  I was never informed of that sale.  In fact, notwithstanding that my Durango had been sold on June 20, 2001, NFCU thereafter informed me by way of a letter dated July 2,

11

2001, that I needed to pay $145,153.80 within 20 days in order to "redeem [my] vehicle." (A copy of that letter is attached hereto as Exhibit H.)  Soon thereafter, by letter dated July 7, 2001, NFCU indicated that I should disregard the July 2, 2001 letter, and instead informed me that I needed to pay $2614.53 within 20 days in order to "redeem [my] vehicle." (A copy of that letter is attached hereto as Exhibit I.)  As can be seen from a comparison of the two letters (Exhibits H & I), the difference between the amounts listed in the two letters is that the July 7 letter does not list any claim of delinquency on the business (Partnership Plus) loan.  Instead, the loan payment and past due amounts claimed in the July 7 letter pertain exclusively to the Durango loan, as each figure is divisible by the semi-monthly amount of $355.67 that I had been paying on that loan until the date of its repossession on May 15, 2001.

26.     In addition, NFCU's Office of General Counsel sent me a letter dated June 20, 2001, informing me, in pertinent part, that "[u]nless you promptly return all of your NFCU accounts to current status, the repossessed automobile will be sold at auction." (A copy of that letter is attached hereto as Exhibit J.)  However, as noted above, my Durango was sold by NFCU on that very day.

27.     In December of 2000, I received an undated letter from Randall May, Esq., in-house legal counsel for NFCU, which letter was postmarked December 19, 2000.  A copy of that letter is attached hereto as Exhibit K.  That letter includes information regarding not only my business loan with NFCU, but also includes information about my personal loans (Dodge Durango and Ski Doo) with NFCU.  The letter that was sent to me included a third page with a "Bcc" notation indicating that a "blind copy" of the letter was sent to Randy Orr and Gregg Bachmann.  I recognize those individuals (Orr and Bachmann) as attorneys who represent the

Nationwide insurance companies. Therefore, it appears that NFCU was sharing account information with Nationwide regarding my personal loans.

28. As a result of NFCU misapplying payments to my loans; failing to debit accounts established for automatic payments to be made to my loans; wrongfully claiming defaults when my loans were current; sending false reports to credit reporting agencies regarding the status of my loans, including reflecting my wife, Denise M Morin, as a co-maker on one or more those loans when she was never a co-maker on any of the loans; wrongfully repossessing my Dodge Durango; and refusing my repeated requests for information and clarification by way of an accounting on the various loans; my credit rating and that of my wife has been negatively impacted; my ability to do business has been substantially impaired; my ability to enjoy normal social pleasures through the use of credit has been negatively impacted.

29. Because of the false payment status information that NFCU had supplied to credit reporting agencies, Rockville Bank declined to provide me with a loan in 2002. It was only after I provided additional information to Rockville Bank to demonstrate that I had kept current with my obligations to NFCU that Rockville Bank went forward with the loan; however, the loan that was eventually extended to me by Rockville Bank was for a shorter term and at a higher rate of interest than it otherwise would have been had there not been credit report issues because of the loan information from NFCU.

30. On or about March 1, 2002, my wife, Denise Morin, was notified by Chase Manhattan Bank, N.A. that her request for an increase in the limit on her personal Chase Visa credit card was being denied. The reason for that denial of credit was because of false information in her credit report that had been supplied by NFCU. The false credit report

information was that Denise was obligated, with me, on the Partnership Plus (business) loan. In fact, Denise was never obligated on that loan.

31.    Soon after my retirement from Nationwide, NFCU shut off the available credit on the NFCU Visa credit card account that was held jointly by my wife and myself. Specifically, at some point between March and September of 2000, NFCU refused to provide us with otherwise available credit under the NFCU Visa credit card. Although the credit card balance at that time was less than the account's $5,000 credit limit, NFCU informed us that we had no "available credit" on that credit card. Although I continued to make payments on that credit card account until the entire account balance was paid in full some time in early 2004, and even though those monthly payments resulted in a decreasing account balance and a resulting increase in the difference between the balance due and the credit limit, that account continued to have no available credit.

_Ronald P. Morin Sr._
RONALD P. MORIN, SR.

Sworn to and subscribed before me
This _18th_ day of June, 2007.

_Leslie M. Vosburgh_
Leslie M. Vosburgh
Notary Public
My commission expires:

**L. M. VOSBURGH**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2010

14

# EXHIBIT  A

**discover _THE_ difference**



**NATIONWIDE**
FEDERAL CREDIT UNION

Ronald P. Morin
711 Sand Stone Dr.
South Windsor, CT 06074-2869
RE: 90711900-6.1

ONE NATIONWIDE PLAZA
COLUMBUS, OHIO 43215-2220

Mr. Morin:

Your Partnership Plus loan, in the amount of $173,245.86, has been in default since February 7, 2000. This amount does not include interest at 9.50% from January 26, 2000. The loan was secured by Extended Earnings and DCIC, which were forfeited upon the termination of your relationship with Nationwide Insurance.

It is imperative that you contact me within seven days to state your intentions as to repayment of the loan. We are willing to set up an alternate method of payment. However, should you be unwilling to meet your contractual obligation, causing the Credit Union a loss, we will be forced to consider exercising our rights as stated in the loan agreement. Additionally, you will be denied further services of the Credit Union and a charge-off will be reported to the national credit bureaus.

So there is no misunderstanding, call me today at 614/249-8430

Sincerely,

Bob G Collins

Nationwide Federal Credit Union
One Nationwide Plaza
Columbus, OH 43215-2220

N/W RM 00345



RECEIVED
FEB 1 0 2000

# EXHIBIT  B

**Nationwide** Michael P. Weisenburger
Federal Credit Union Assistant Vice President
Lending Services
Phone: 614-249-6223
Fax: 614-249-3030
01-01-02
**02/21/03 02:16 PM**

To:    Kathleen Brisendine/Nationwide/NWIE@NWIE
cc:
bcc:
Subject: Re: Reflex Agents

Thanks,

Mike

NFCU HAS MANY TYPES OF LOANS AT GREAT RATES!
http://www.nationwidefcu.org/loans.htm
—— Forwarded by Michael Weisenburger/Nationwide/NWIE on 02/21/03 02:14 PM ——

**Nationwide** Bob G. Collins
Federal Credit Union Manager
Asset Protection Services
Phone: (614) 249-8430
Fax: (815) 425-0628
1-01-02
**03/03/00 12:36 PM**

To:    James M Langenbach/Nationwide/NWIE@NWIE
cc:    Michael Weisenburger/Nationwide/NWIE@NWIE, John A
English/Nationwide/NWIE@NWIE, Jonathan P
Chabra/Nationwide/NWIE@NWIE
bcc:
Subject: Re: Reflex Agents

- Agents in default at this time are: **WITHHOLD COMPENSATION**

**REDACTED**

- Agents either in repayment or promising repayment and **not in default**:
  , Morin,

**REDACTED**

- Charged-off agent loans: **WITHHOLD COMPENSATION**

**REDACTED**

See attached worksheet:        REFLEX.AGENTS
Jim Langenbach, CLU



**Jim Langenbach, CLU**

Manager

Agency Benefits

Location: 1-30-06        Phone: 614-677-7118        Fax: 614-249-1642        3/3/2000 11:02:40 AM

From:    James M Langenbach on 03/03/2000 11:02 AM
To:      Bob G Collins/Nationwide/NWIE@NWIE
cc:
Subject:  Re: Reflex Agents

Bob, is there any update on the payment status of the Reflex agents listed in your note? We are trying to
determine if funds should be held from these agents. Please let me know if you have any questions.
Thanks.

N/W RM 00010

------------------------- Forwarded by James M Langenbach/Nationwide/NWIE on 3/3/2000 10:51:47 AM -------------------------



**R. "Mike" Yoho**

Agency Benefits Consultant

Agency Benefits & Compensation

Location: Home Office 1-30-06          Phone: (614) 249-6054          Fax: (614) 249-1642          3/3/2000 10:53:41 AM

From:     Robert M Yoho on 03/03/2000 10:53 AM
To:       James M Langenbach/Nationwide/NWIE
cc:
Subject:  Re: Reflex Agents

FYI

------------------------- Forwarded by Robert M Yoho/Nationwide/NWIE on 3/2/2000 10:52:54 PM -------------------------



**Jim Langenbach, CLU**

Manager

Agency Benefits

Location: 1-30-06          Phone: 614-677-7118          Fax: 614-249-1642          2/16/2000 03:49:54 PM

From:     James M Langenbach on 02/16/2000 03:49 PM
To:       Robert M Yoho/Nationwide/NWIE@NWIE
cc:
Subject:  Re: Reflex Agents

Mike, you are correct, no ASCP benefits so those funds could not be used to pay on the loans.
------------------------- Forwarded by James M Langenbach/Nationwide/NWIE on 2/16/2000 03:40:57 PM -------------------------



**R. "Mike" Yoho**

Agency Benefits Consultant

Agency Benefits & Compensation

Location: Home Office 1-30-06          Phone: (614) 249-6054          Fax: (614) 249-1642          2/16/2000 02:00:40 PM

From:     Robert M Yoho on 02/16/2000 02:00 PM
To:       James M Langenbach/Nationwide/NWIE
cc:
Subject:  Re: Reflex Agents

Jim, I just want to clarify that this doesn't mean that we are to forward ASCP funds. Since they are Reflex they are not being paid. Thanks
Jim Langenbach, CLU

**N/W RM 00011**

**Jim Langenbach, CLU**

Manager

Agency Benefits

Location: 1-30-06          Phone: 614-677-7118          Fax: 614-249-1642          2/16/2000 08:22:24 AM

From:     James M Langenbach on 02/16/2000 08:22 AM
To:       Laurie Hamilton/Nationwide/NWIE@NWIE
          Carolyn Upshaw/Nationwide/NWIE@NWIE
          Robert M Yoho/Nationwide/NWIE@NWIE
cc:
Subject:  Re: Reflex Agents

I think I provided this information to you previously. If I have please disregard this note.
-------------------- Forwarded by James M Langenbach/Nationwide/NWIE on 2/16/2000 08:13:00 AM
------------------------



                                                          **John A English, CPCU, CLU**

                                                                      Director

                                                                 Agency Relations

Location: 1-30-05              Phone: 614-249-6096      Fax:614-249-1642        2/15/2000 05:02:40 PM


From:     John A English on 02/15/2000 05:02 PM
To:       James M Langenbach/Nationwide/NWIE@NWIE
cc:
Subject:  Re: Reflex Agents


-------------------- Forwarded by John A English/Nationwide/NWIE on 2/15/2000 04:59:34 PM
------------------------



                                                          **Jon Chabra, CLU**

                                                      Agency Development Manager

Location: 1-30-01              Phone: 614-249-5771      Fax:614-249-0123        2/9/2000 01:25:11 PM


From:     Jonathan P Chabra on 02/09/2000 01:25 PM

To:       Bob G Collins/Nationwide/NWIE@NWIE
cc:       Michael Weisenburger/Nationwide/NWIE@NWIE; Robert C Richmond-Leeth/Nationwide/NWIE@NWIE;
          John A English/Nationwide/NWIE@NWIE
Subject:  Re: Reflex Agents 📄

John English needs to be aware of this since his area handles agent compensation. By way of this note,
he is now informed of these latest developments.
1-01-02

                                                          **N/W RM 00012**

 **Nationwide·**                       **Bob G. Collins**

          Federal Credit Union                                    Manager

                                                          Asset Protection Services

Location: 1-01-02             Phone: (614) 249-8430     Fax: (815) 425-0628     2/9/2000 08:07:26 AM

From:    Bob G Collins on 02/09/2000 08:07 AM
To:      Jonathan P Chabra/Nationwide/NWIE@NWIE
cc:      Michael Weisenburger/Nationwide/NWIE@NWIE
         Robert C Richmond-Leeth/Nationwide/NWIE
Subject: Reflex Agents

The following is an update of the Reflex agents that have outstanding Partnership Plus loans with NFCU.
Included is Judy Whelan who is not listed as a Reflex agent, but will be charged-off.
Please forward any compensation due these agents, with the exception of Diehl and Rowell.
-------------------- Forwarded by Bob G Collins/Nationwide/NWIE on 2/9/2000 08:16:37 AM --------------------

 **Nationwide**
Federal Credit Union

**Bob G. Collins**
Manager
Asset Protection Services

Location: 1-01-02          Phone: (614) 249-8430          Fax: (815) 425-0628          2/8/2000 06:03:42 PM

From:    Bob G Collins on 02/08/2000 06:03 PM
To:      Michael Weisenburger/Nationwide/NWIE
cc:      Kirsten R Van Gundy/Nationwide/NWIE
         Cheryl A Tope/Nationwide/NWIE
Subject: Reflex Agents

Two new Reflex Agents were recently added that have outstanding Partnership Plus loans. I will make
contact with them to determine their intentions, but suggest that ALL compensation, including
commissions, be directed to the outstanding loan balances.          **TOTAL**

Ronald Morin          06-10509          #90711900-6.1          $173,245.86    $303,000.85

# REDACTED

# EXHIBIT  C-1

**NATIONWIDE**
FEDERAL CREDIT UNION
ONE NATIONWIDE PLAZA · COLUMBUS, OHIO 43215-2220

# AUTHORIZATION FOR THE
# AUTHORIZED PAYMENTS
## ACH Debits

PROGRESSED DATE _3-30-00_
VERIFIED BY _____
VERIFIED DATE _____

*for payment on Visa and loans 1,2,3,4+*

NAME _Ronald P. Morin_    ACCOUNT # _907119006_

I hereby authorize Nationwide Federal Credit Union (NFCU) to initiate debit entries to my
___ Checking _X_ Savings account with the Depository named below in the amount of
$_2,300.00_ beginning on _3-30_ _2000_ with a frequency of:

(circle one):      bi-weekly      (semi-monthly)      monthly

Depository: _SAVINGS BANK OF ROCKVILLE_  (ABA#) _211170318_

City: _SOUTH WINDSOR_    State: _CT_    Zip: _06074_

Name on Account: _RONALD P. MORIN_    Account #: _05-00-0502665_

✱ *Please attach a* ▇▇▇▇▇▇▇ *voided check to this authorization.*

These funds are to be applied to the following NFCU account:
Account # _907119006_ Suffix # _1_ Account Type: ✓ Savings ___ CUChex ___ Loan

This authority is to remain in full force and effect until NFCU has received written notification from me of its termination in such time and in such manner as to afford NFCU and Depository a reasonable time to act on it.

I agree to hold harmless NFCU from responsibility for loss or damage due to errors, delays, inaccuracies in transmission except where same is the result of NFCU's gross negligence or willful misconduct, and from liability arising out of interruption of business due to acts of God, acts of governmental authority, of a public enemy, or of war, riots, fires, floods, civil commotions, insurrections, labor difficulties, severe or adverse weather conditions, equipment or software failure or malfunction, electrical, computer, or mechanical failure or malfunction, delays or failure to act of any carrier or agent or, without limiting the generality of the foregoing, or any other cause beyond NFCU's control.

I also agree to indemnify NFCU for each and all claims, liabilities, suits, judgments, losses, damages, costs and expenses including attorneys' fees incurred by NFCU in providing the services described herein or related to this Agreement except for damages incurred by NFCU as a result of its own gross negligence or willful misconduct. NFCU's only responsibility to me hereunder for failure to perform or error solely caused by NFCU shall be to correct at its own expense any such error. Correction shall take the form of transferring the correct amount and/or refunding any amounts transferred in error provided that I promptly notify NFCU of any error. I shall fully assist NFCU in obtaining a recovery of any funds transferred in error. NFCU shall not have liability to me for errors occurring more than one (1) year prior to notice from me.

In no event shall NFCU be liable or responsible for any consequential, exemplary, punitive, special or incidental damages or losses, including lost profits (whether or not NFCU has been advised of the possibility of such losses or damages).

X _Ronald P. Morin_    _3/27/00_

Signature    Date

N/W RM 00030

CR-UN-0441  (9/97)

# EXHIBIT  C-2



**Nationwide®**
Federal Credit Union

**AUTHORIZATION FOR**
**PRE-AUTHORIZED PAYMENTS**
ACH Debits

EFFECTIVE DATE _8-1-00_

FILED DATE _08/4/00_

NAME _Ronald P. Moin_                    ACCOUNT # _90711-9006_

I hereby authorize Nationwide Federal Credit Union (NFCU) to initiate debit entries to my
___ Checking ✓ Savings account with the Depository named below in the amount of
$ ~~1000.00~~ (PH) 900.00 beginning on _4-3-8-18_ 20 _00_ with a frequency of:

(circle one):        bi-weekly        every 15 days        monthly

Depository: _Savings Bank of Rockville_ ABA# _211170 31_ ✓

City: _So. Windsor_        State: _CT_        Zip: _06074_

Name on Account: _____        Account #: _050005 02665_ ✓

✗ *Please attach a preprinted deposit slip or voided check to this authorization.*

These funds are to be applied to the following NFCU account:

Account # _90711-9006_ ✓ Suffix # _1_ Account Type: ✓ Savings ___ CUChex ___ Loan

This authority is to remain in full force and effect until NFCU has received written notification from
me of its termination in such time and in such manner as to afford NFCU and Depository a reasonable
time to act on it.

I agree to hold harmless NFCU from responsibility for loss or damage due to errors, delays,
inaccuracies in transmission except where same is the result of NFCU's gross negligence or willful
misconduct, and from liability arising out of interruption of business due to acts of God, acts of
governmental authority, of a public enemy, or of war, riots, fires, floods, civil commotions,
insurrections, labor difficulties, severe or adverse weather conditions, equipment or software failure or
malfunction, electrical, computer, or mechanical failure or malfunction, delays or failure to act of any
carrier or agent or, without limiting the generality of the foregoing, or any other cause beyond NFCU's
control.

I also agree to indemnify NFCU for each and all claims, liabilities, suits, judgments, losses, damages,
costs and expenses including attorneys' fees incurred by NFCU in providing the services described
herein or related to this Agreement except for damages incurred by NFCU as a result of its own gross
negligence or willful misconduct. NFCU's only responsibility to me hereunder for failure to perform or
error solely caused by NFCU shall be to correct at its own expense any such error. Correction shall take
the form of transferring the correct amount and/or refunding any amounts transferred in error provided
that I promptly notify NFCU of any error. I shall fully assist NFCU in obtaining a recovery of any funds
transferred in error. NFCU shall not have liability to me for errors occurring more than one (1) year
prior to notice from me.

In no event shall NFCU be liable or responsible for any consequential, exemplary, punitive, special or
incidental damages or losses, including lost profits (whether or not NFCU has been advised of the
possibility of such losses or damages).

✗ _R. Moin_                    _7-4-00_
Signature                    Date

CR–UN–0441–B

**N/W RM 00043**

*[handwritten at top:]* LOAN Ry 333.
689.49
VISA Acct 212.57
$900.00 SEMI MONTHLY

**NATIONWIDE**
**FEDERAL CREDIT UNION**

ONE NATIONWIDE PLAZA · COLUMBUS, OHIO 43215-2220

# ACH PAYMENT REVOCATION

TODAY'S DATE: X *7-4-00*     AMOUNT: $ *2300.00*

ACCOUNT NAME: *Ronald F. Morin* ACCOUNT NUMBER: *907119006.1*

PAYABLE TO: *NFCU from Savings Bank of Rockville*

REASON: *Changing ACH from $2300 to $900 (RM) Semimonthly*

·REVOCATION TERMS AND CONDITIONS

On the terms hereinafter set out, the undersigned depositor hereby instructs Nationwide Federal Credit Union (hereinafter styled "the Credit Union") not to pay the above described ACH debit.

1. This revocation order shall be effective permanently after receipt by the Credit Union. The Credit Union shall exercise reasonable diligence not to pay the draft.

2. Should the Credit Union ever incur liability to the depositor for payment contrary to revocation instructions, the amount of such liability shall not exceed the amount paid on the debit.

3. A charge as reflected below will be paid by the member for establishing the revocation order.

4. By directing the Credit Union to revoke payment on a debit, the depositor agrees to indemnify and hold the Credit Union harmless against any and all loss, claims, damage, and costs, including court costs and reasonable attorney's fees, that the Credit Union may suffer or incur by reason of not paying said debt if presented prior to withdrawal of these instructions.

Member Signature: X *R. Morin*

PROCESSED BY *Cat.*
PROCESSED DATE *8-11-00*
VERIFIED BY
VERIFIED DATE                     *8/11/00*

SWORN AND SUBSCRIBED BEFORE ME, the undersigned authority, on this the _____ day of _____, 19__, to certify which witness my hand and seal of office.

Notary Public in and for the State of Ohio
My Commission Expires: _____

**N/W RM 00044**

CR - UN - 0440

# EXHIBIT  C-3

JU-01-2300 12:02 FROM:BUCKLAND HILLS AGC 860-644-3104          TO:1 614 249 5366          P.004/004

Sent by: N.F.C.U.                              1/614 249 5366;          10/17/00  5:17PM;JetFax #720;Page 2/3

## Nationwide
### Federal Credit Union

# AUTHORIZATION FOR
# PRE-AUTHORIZED PAYMENTS
## ACH Debits

NAME _Ronald P. Morin_                    ACCOUNT # _90 7119006_

I hereby authorize Nationwide Federal Credit Union (NFCU) to initiate debit entries to my ___ Checking ✓ Savings account with the Depository named below in the amount of $ _355.67_ beginning on _October 30_, 20 _00_ with a frequency of:

(circle one):          bi-weekly          (every 15 days)          monthly

Depository: _SAVINGS BANK OF ROCKVILLE_          ABA# _211170318_

City: _So. Windsor_          State: _CT._          Zip: _06074_

Name on Account: _RONALD P. MORIN_          Account #: _05-00-0502665_

✗ *Please attach a preprinted deposit slip or voided check to this authorization.*

These funds are to be applied to the following NFCU account:
Account # _90 7119006_    Suffix # _4_ Account Type: ___ Savings ___ CUChex ✓ Loan

This authority is to remain in full force and effect until NFCU has received written notification from me of its termination in such time and in such manner as to afford NFCU and Depository a reasonable time to act on it.

I agree to hold harmless NFCU from responsibility for loss or damage due to errors, delays, inaccuracies in transmission except where same is the result of NFCU's gross negligence or willful misconduct, and from liability arising out of interruption of business due to acts of God, acts of governmental authority, of a public enemy, or of war, riots, fires, floods, civil commotions, insurrections, labor difficulties, severe or adverse weather conditions, equipment or software failure or malfunction, electrical, computer, or mechanical failure or malfunction, delays or failure to act of any carrier or agent or, without limiting the generality of the foregoing, or any other cause beyond NFCU's control.

I also agree to indemnify NFCU for each and all claims, liabilities, suits, judgments, losses, damages, costs and expenses including attorneys' fees incurred by NFCU in providing the services described herein or related to this Agreement except for damages incurred by NFCU as a result of its own gross negligence or willful misconduct. NFCU's only responsibility to me hereunder for failure to perform or error solely caused by NFCU shall be to correct at its own expense any such error. Correction shall take the form of transferring the correct amount and/or refunding any amounts transferred in error provided that I promptly notify NFCU of any error. I shall fully assist NFCU in obtaining a recovery of any funds transferred in error. NFCU shall not have liability to me for errors occurring more than one (1) year prior to notice from me.

In no event shall NFCU be liable or responsible for any consequential, exemplary, punitive, special or incidental damages or losses, including lost profits (whether or not NFCU has been advised of the possibility of such losses or damages).

✗ _R. Morin_                              _10-26-00_
Signature                                   Date

CR-UN-0441-A

N/W RM 00059

Cousino Town : #523 81

# Nationwide
## Federal Credit Union

## AUTHORIZATION FOR
## PRE-AUTHORIZED PAYMENTS
### ACH Debits

NAME *Ronald P. Morin*                    ACCOUNT # *907119006*

I hereby authorize Nationwide Federal Credit Union (NFCU) to initiate debit entries to my ___ Checking ✓ Savings account with the Depository named below in the amount of $ *168.14* beginning on *October 30*, 20*00* with a frequency of:

(circle one):                bi-weekly          (every 15 days)          monthly

Depository: *SAVINGS BANK OF ROCKVILLE*          ABA# *211170318*

City: *So. Windsor*                State: *Ct*                Zip: *06074*

Name on Account: *Ronald P. Morin*                Account #: *05-00-0502665*

*Please attach a preprinted deposit slip or voided check to this authorization.*

These funds are to be applied to the following NFCU account:

Account # *907119006*    Suffix # *3*   Account Type: ___ Savings ___ CUChex ✓ Loan

This authority is to remain in full force and effect until NFCU has received written notification from me of its termination in such time and in such manner as to afford NFCU and Depository a reasonable time to act on it.

I agree to hold harmless NFCU from responsibility for loss or damage due to errors, delays, inaccuracies in transmission except where same is the result of NFCU's gross negligence or willful misconduct, and from liability arising out of interruption of business due to acts of God, acts of governmental authority, of a public enemy, or of war, riots, fires, floods, civil commotions, insurrections, labor difficulties, severe or adverse weather conditions, equipment or software failure or malfunction, electrical, computer, or mechanical failure or malfunction, delays or failure to act of any carrier or agent or, without limiting the generality of the foregoing, or any other cause beyond NFCU's control.

I also agree to indemnify NFCU for each and all claims, liabilities, suits, judgments, losses, damages, costs and expenses including attorneys' fees incurred by NFCU in providing the services described herein or related to this Agreement except for damages incurred by NFCU as a result of its own gross negligence or willful misconduct. NFCU's only responsibility to me hereunder for failure to perform or error solely caused by NFCU shall be to correct at its own expense any such error. Correction shall take the form of transferring the correct amount and/or refunding any amounts transferred in error provided that I promptly notify NFCU of any error. I shall fully assist NFCU in obtaining a recovery of any funds transferred in error. NFCU shall not have liability to me for errors occurring more than one (1) year prior to notice from me.

In no event shall NFCU be liable or responsible for any consequential, exemplary, punitive, special or incidental damages or losses, including lost profits (whether or not NFCU has been advised of the possibility of such losses or damages).

X *R. Morin*                                        *10-26-00*
Signature                                            Date

CR-UN-0441-A

N/W RM 00060