**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RONALD P. MORIN, SR., ET AL, | : | CIVIL ACTION NO. |
| | : | 3:03CV277 (CFD) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| NATIONWIDE FEDERAL CREDIT UNION, | : | JUNE 19, 2007 |
| ET AL, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' LOCAL RULE 56(a)2 STATEMENT

Pursuant to Local Rule 56(a)2, the plaintiffs respond as follows to the Defendants' Local Rule 56(a)1 Statement dated April 11, 2007, as follows:

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted.  However, the plaintiff's departure from Nationwide was a "qualified cancellation" of the Agent's Agreement that entitled him to Agency Security Compensation under Paragraph 11e of the Agent's Agreement, and there was no violation of Paragraph 11f at the time of his departure. See Affidavit of Ronald P. Morin, Sr. ("Morin Affidavit"), ¶ 9, 10, 12.

5.    Admitted.    However, the following clarification is required.    All such business loan applications were submitted through and approved by the Nationwide Insurance companies, and account number 907119006 was Mr. Morin's general account number at NFCU for all of his several accounts, including a savings account and a checking account, with his loans being assigned additional sub-account numbers. See Morin Affidavit, ¶ 7, 8.

6.    Admitted.

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.    Admitted.

11.    Admitted.

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Admitted.

16.    Admitted.

17.    The sentence is incomplete in that it fails to set forth the amount of the advance on July 7, 1997; otherwise, admitted.

18.    Admitted.

19.    Admitted.

20.    Admitted.

21.    Admitted.

22.    Admitted.

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.    Admitted.

27.    Admitted.

28.    Admitted.

29.    Admitted.

30.    Denied, in part.  Mr. Morin did not directly or indirectly compete against Nationwide in the insurance business within a 25 mile radius of the business location he had maintained as an agent with Nationwide until after he received Nationwide's letter of February 9, 2000.  See Morin Affidavit, ¶ 9, 10, 12.

31.    Admitted.

32.    Admitted.  However, the information set forth in that letter regarding forfeiture of Extended Earnings and DCIC was inaccurate.  See Morin Affidavit, ¶ 9, 10, 12; see also Deming v. Nationwide Mut. Ins. Co., 279 Conn. 745, 757-69 (2006).

33.    Admitted.

34.    Admitted.

35.    Admitted.

36.    Admitted.

37.    Denied in part.  As to the first sentence, the forms dated July 4, 2000, were signed on that date and returned to NFCU immediately thereafter, so they should have been received by NFCU weeks earlier than August 1, 2000.  See Morin Affidavit, ¶ 16.  As to the second sentence, the $900 semi-monthly amount was to be applied to several personal loans, not just the Durango loan.  See Morin Affidavit, ¶ 16 and Exhibit C-2 attached thereto.  The last sentence is admitted.

38.    Admitted.

39.    It is disputed that NFCU did not receive the July 4 ACH forms until August 1, 2000.  See Response to # 37 above.  NFCU failed to take payments under the new ACH authorization as instructed and as agreed to by NFCU.  See Morin Affidavit, ¶ 16, 20; see also Morin Affidavit, ¶ 19, 21.

40.    Admitted.

41.    Admitted.

42.    Admitted.

43.    Admitted.  However, payment on the business loan was made to NFCU on or about October 17, 2000, when Nationwide Insurance made an electronic payment to NFCU of $31,578.99 that Nationwide had wrongfully withheld from Mr. Morin since at least February of 2000.  See Morin Affidavit, ¶ 18.  That money was applied to the Partnership Plus (business) loan, and NFCU agreed that that payment would keep that loan current through November of 2001.  See Morin Affidavit, ¶ 18.

44.    Admitted.  However, as set forth in Response to # 43 above and in ¶ 18 of the Morin Affidavit, based on the $31,578.99 of Mr. Morin's money that Nationwide had transferred to NFCU in October of 2000 and the understanding of the parties in regard to the application of those funds, monthly payments on Mr. Morin's Partnership Plus (business) loan were current through November of 2001.

45.    Denied.  Based on the $31,578.99 of Mr. Morin's money that Nationwide had transferred to NFCU in October of 2000, and the understanding of the parties in regard to the application of those funds, monthly payments on Mr. Morin's Partnership Plus (business) loan were current through November of 2001.  See Responses to # 43 and # 44 above; see also Morin Affidavit, ¶ 18.

46.    Denied in part.  As to the first and last sentences, Nationwide's payment of the $31,578.99 was made to and received by NFCU on or about October 17, 2000.  See Morin Affidavit, ¶ 18.  In addition, as to the third sentence, the referenced documents appear to have "instructed" Nationwide to make the payment to NFCU; those documents do not appear to have "instructed NFCU" to do so.

47.    Admitted.  However, all loans were up to date at that time, but for NFCU's admitted failure to process the ACH authorization properly.  See Morin Affidavit, ¶ 17-24.

48.    Denied.  Based on the $31,578.99 of Mr. Morin's money that Nationwide had transferred to NFCU in October of 2000, and the understanding of the parties in regard to the application of those funds, monthly payments on Mr. Morin's Partnership

Plus (business) loan were current through November of 2001  See Responses to # 43 and # 44 above; Morin Affidavit, ¶ 18.

49.    Denied.  See Morin Affidavit, ¶ 20-24.

50.    Denied in part.  As to the first sentence, Mr. Morin's Dodge Durango was repossessed on May 15, 2001; however, at that time, Mr. Morin was current on his NFCU loans, including the Durango loan.  See Morin Affidavit, ¶ 20-24.  As to the third sentence, NFCU had sold the Durango on June 20, 2001, weeks before its July 7, 2001 letter advising Mr. Morin of the sums required to redeem the vehicle.  See Morin Affidavit, ¶ 25 and Exhibit G attached thereto.  As to the remaining sentences, in light of the foregoing, it is disputed that any "deficiency" existed, but it is admitted that no further payment was made on the Durango loan.

51.    Admitted.

52.    Admitted in part.  It appears that NFCU "wrote off" the various loans, but the plaintiffs dispute that any amounts are due or owing on those loans.  See Morin Affidavit, ¶ 17-26.

53.    Denied.  See Morin Affidavit, ¶ 27 and Exhibit K attached thereto.

54.    Denied in part.  NFCU falsely reported to one or more credit reporting agencies information that Mrs. Morin was obligated with Mr. Morin on the Partnership Plus (business) loan.  See Morin Affidavit, ¶ 30.  In addition, whether there actually were non-payments when NFCU reported the same to credit reporting agencies is a disputed issue.  See Morin Affidavit, ¶ 15-23, 29.

55.    Admitted to the extent that the plaintiffs have no knowledge of this and no information to dispute this asserted fact.

56.    Denied.   NFCU appears to have relied on information supplied by Nationwide to shut off the available credit on Mr. and Mrs. Morin's NFCU Visa credit card and to declare a default on Mr. Morin's Partnership Plus (business) loan.   Morin Affidavit, ¶ 6, 12, 13, 31.

57.    Denied.   NFCU disclosed a document regarding Mr. Morin's personal loans to Nationwide.  See Morin Affidavit, ¶ 27 and Exhibit K attached thereto.

58.    Denied.  The facts and reasonable inferences to be drawn therefrom show that the defendants' conduct was a purposeful and coordinated effort to cause emotional harm and distress to the plaintiffs through the misapplication of loan payments, the failure to debit accounts established for automatic payments of loans, wrongfully claiming defaults when loans were current, sending false reports to credit reporting agencies regarding the status of loans, wrongfully repossessing collateral and failing to dispose of that collateral properly, refusing repeated requests for information and clarification, all of which in fact caused such harm to the plaintiffs.  See Morin Affidavit, ¶ 5-13, 15-31.

59.    Denied.  In light of the facts set forth in the Morin Affidavit (¶ 5-13, 15-31), whether NFCU conducted a reasonable investigation and whether NFCU acted properly and acted in good faith is disputed.

60.    Admitted.

61.    Denied.  In light of the facts set forth in the Morin Affidavit (¶ 5-13, 15-31), whether NFCU acted in good faith is disputed.

62.    Denied.  The plaintiffs dispute that any amounts are due or owing on that loan.  See Morin Affidavit, ¶ 17-26.

63.    Admitted.  However, the information in the credit report that Mrs. Morin was had co-signed Mr. Morin's business loan, which information had been supplied to the credit reporting agency by NFCU, was false.  Furthermore, the false information that NFCU had provided to the credit reporting agency had caused Chase Manhattan Bank, N.A. to deny Mrs. Morin's request for a credit limit increase on her Chase Visa credit card on or about March 1, 2002.  See Morin Affidavit, ¶ 30.

64.    Admitted.

65.    Admitted.  But see Response to # 63 above.

66.    Admitted.


## Disputed Issues of Material Fact

A.    Whether NFCU had a proper basis to declare that Mr. Morin was in default on his Partnership Plus (business) loan on February 7, 2000, immediately upon the termination of his relationship with Nationwide.

B.    Whether NFCU failed to follow and thereby breached the successive agreements that were entered into between NFCU and Mr. Morin in March, July, and October of 2000, pertaining to the manner and method of loan repayment through ACH

authorizations that Mr. Morin provided to NFCU and that NFCU had agreed to utilize for the payment of the various loans.

C.     Whether NFCU failed to act in good faith and/or deal fairly with Mr. Morin in regard to the successive agreements that were entered into between NFCU and Mr. Morin in March, July, and October of 2000, pertaining to the manner and method of loan repayment through ACH authorizations that Mr. Morin provided to NFCU and that NFCU had agreed to utilize for the payment of the various loans.

D.     Whether NFCU failed to honor and thereby breached the agreement entered into between NFCU and Mr. Morin in October or November of 2000, pertaining to the application of the $31,578.99 (payment from Nationwide) to successive monthly payments on the Partnership Plus (business) loan that kept the loan current through November of 2001.

E.     Whether NFCU failed to act in good faith and/or deal fairly with Mr. Morin in regard to the the agreement entered into between NFCU and Mr. Morin in October or November of 2000, pertaining to the application of the $31,578.99 (payment from Nationwide) to successive monthly payments on the Partnership Plus (business) loan that kept the loan current through November of 2001.

F.     Whether any delinquency claimed by NFCU in the repayment of the loans by Mr. Morin, particularly after September of 2000 (when it is undisputed that all loans had been brought current), was caused by NFCU's failure to follow the aforementioned agreements regarding the repayment of the loans.

G.      Whether Mr. Morin was current on his loan payments (or would have been current had NFCU properly followed the aforementioned instructions and agreements regarding the manner and method of loan repayment) on May 15, 2001, when NFCU repossessed his Dodge Durango.

H.      Whether NFCU sent letters to Mr. Morin, in June and July of 2001, demanding the payment of money to "redeem" the repossessed Dodge Durango after it had already sold the vehicle to a third party on or about June 20, 2001.

I.      Whether NFCU's disposition of the collateral (i.e., the repossessed Dodge Durango), including the method, manner, time, place and terms of same, were commercially reasonable.

J.      Whether NFCU provided Mr. Morin with reasonable advance notification of the time and place of the disposition of the collateral (i.e., the repossessed Dodge Durango).

K.      Whether NFCU declared defaults or otherwise showed delinquencies in payment on the various loans, and informed credit reporting agencies of the same, when no such defaults or delinquencies existed, or when any claimed nonpayment regarding the loans were caused by NFCU's conduct in failing to take or apply loan payments as instructed and agreed to between the parties.

L.      Whether NFCU communicated personal information to Nationwide about Mr. Morin's consumer loans (i.e, the loan for the Dodge Durango and the loan for the

Ski-Doo recreational vehicle), that is, personal financial information other than that pertaining to Mr. Morin's Partnership Plus (business) loan.

M.    Whether Mrs. Morin was harmed by the fact that NFCU reported to credit reporting agencies that she was a co-maker on Mr. Morin's business loan when that information was not true.

N.    Whether NFCU gave unreasonable publicity to Mr. Morin's private life when it disclosed the details and status of Mr. Morin's consumer loans to Nationwide and when it disclosed the details and status of Mr. Morin's several loans to his daughter Nicole.

O.    Whether NFCU's disclosure of the details and status of Mr. Morin's consumer loans to Nationwide and the disclosure of the details and status of Mr. Morin's several loans to his daughter Nicole was highly offensive.

P.    Whether NFCU's disclosure of the details and status of Mr. Morin's consumer loans to Nationwide and the disclosure of the details and status of Mr. Morin's several loans to his daughter Nicole was not a matter of legitimate public concern.

Q.    Whether NFCU reported false information to credit reporting agencies concerning loan status information affecting Mr. Morin and/or Mrs. Morin.

R.    Whether NFCU sought to collect on its loans through any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice when it repeatedly claimed defaults and/or delinquencies on Mr. Morin's loans when none existed or when none should have existed had NFCU adhered to its several

agreements with Mr. Morin regarding the manner and method of loan repayment; and/or when it misapplied loan payments and failed to take loan payments when authorized and instructed to do so based on the parties' agreements that NFCU would do so in order to keep the loans current; and/or when it repossessed Mr. Morin's Dodge Durango without authority or basis for the same; and/or when NFCU demanded that Mr. Morin pay a specified sum of money to "redeem" the repossessed vehicle at a time when NFCU had already sold the vehicle to a third party.

S.     Whether, as a result of NFCU misapplying loan payments; failing to take loan payments when authorized and instructed to do so and in violation of the parties' agreement that NFCU would do so; wrongfully claiming defaults/delinquencies on the loans when none existed (or, in good faith, should have existed); sending false reports to credit reporting agencies regarding the status of loans; wrongfully repossessing the Dodge Durango and improperly disposing of same; and refusing Mr. Morin's repeated requests for information and clarification by way of an accounting on the various loans; caused emotional and economic injury to Mr. Morin and Mrs. Morin.

T.     Whether any or all of the aforementioned conduct of NFCU was undertaken in bad faith.

U.     Whether any or all of the aforementioned conduct of NFCU was intentional or otherwise undertaken with an intent to cause harm to the plaintiffs.

V.    Whether any or all of the aforementioned conduct of NFCU was undertaken pursuant to a common plan or design with Nationwide to cause harm to the plaintiffs.

W.    Whether Nationwide knowingly assisted and/or encouraged NFCU to engage in the aforementioned conduct in order to cause emotional and economic injury to the plaintiffs.

X.    Whether NFCU and/or Nationwide engaged in unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce.

PLAINTIFFS,

By_____
Richard P. Weinstein, Esquire of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT  06107
Telephone No. (860) 561-2628
Facsimile No. (860) 521-6150
Federal Bar No. ct06215
rpw1@dtg.net

## CERTIFICATION

I hereby certify that on this 19th day of June, 2007, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Richard P. Weinstein