# EXHIBIT A

Nationwide Federal Credit Union  December 2, 2000
Attn: Warren Brose, V.P. member Services
One Nationwide Plaza
Columbus, Ohio  43215-2220

Re: Account # 907119006
 -Letter of Complaint

Via Certified Mail: # 7099322000093268 2745

Dear Mr. Brose:

I am writing to you to bring several matters of deep concern, which in my opinion represent possible illegal transactions, to your attention for handling. If these concerns should be directed to another department then please forward this letter to the appropriate member of management to resolve my concerns and complaint and advise me as to whom that contact person is.

First, on November 16th you received my agents' contingency bonus payment from Nationwide Insurance and incorrectly applied it to my Agency Partnership loan with NFCU. I am advising you that those funds <u>were not part of the security agreement</u> that NFCU prepared/typed to cover their collateral needs under this Nationwide Insurance Partnership loan program with NFCU. The loan application process was based on my applying to Nationwide Insurance, using my Nationwide security benefits as collateral, which then submitted the approved package to NFCU. The only collateral provided to NFCU, under the agreement they provided to me, was my Commissions, DCIC and Extended Earnings benefits. The contingency bonus is <u>not</u> based on any of the above secured/security items and the application of those funds, in my opinion, amounts to illegal garnishment without due process or theft of those funds.

I am requesting the immediate return to me, by certified check, of those funds that NFCU applied to my loan account under possibly an illegal manner.

Second, I retired from Nationwide Insurance on February 7th, 2000 by certified letter to both our local district office and the home office. The home office did not receive their notice of retirement, which is a qualified termination under my agents' agreement, until February 10th, 2000, while the district office received their certified letter on February 8th, 2000. Yet, I received a letter from NFCU dated February 9th, 2000 indicating that I was in default on my Partnership loan due, not to my retirement, but to Nationwide's special Reflex Unit communicating directly to NFCU personnel information stating that the security benefits were forfeited and thus the implication of default. That letter was sent,

despite the fact that I was paid current at that time and as a retired agent I had adequate security to cover all NFCU loans. The only way that the NFCU could have known this faulty termination information was if Nationwide's special Reflex Unit had direct contact with and worked with NFCU regarding the collateral that Nationwide had provided to NFCU. I am deeply concerned that NFCU failed to insure that my collateral was available, as a retired agent, by not acting in a timely manner to cover their secured interests and may not have an "arm's length" relationship with Nationwide Insurance in this matter. Indeed, every attempt I have made to resolve this Partnership loan collateral issue over the last 10 months with NFCU has been met with disinterest and statements that they cannot even discuss the loan collateral which was provided by me through Nationwide. For that reason, I am requesting the information/notice/source documents that caused the notification letter that was sent, by Bob Collins an NFCU employee, to me on the date of February 9th, 2000. Please note that all other loans have been paid as agreed with few exceptions when NFCU applied payments to the account they chose rather than what was specified in the ACH payment authorization.

For your information, the fact that I retired under a qualified termination, in evidently good standing, can be substantiated by the very fact that Nationwide contacted me and requested that I continue to represent them in the sale of their life company products. A copy of their March 16th, 2000 letter of appointment is attached for your review as evidence that NFCU needs to take action to both investigate and collect from Nationwide Insurance Companies those benefits, which I provided as security for the Partnership loan. I doubt if their offer of appointment supports your February 9th letter that the collateral security had been forfeited upon my retirement. <u>It is important to note that the Nationwide appointment held the date of October 31st, **1988 and thus there was no lapse in my agents' appointment** and the collateral benefits are available per Nationwide's own letter of appointment dated March 16th, 2000.</u> My written attempts to directly resolve this matter with Nationwide Insurance have gone unanswered despite several certified letters to the Company. I fully expect, and consider it a matter of obligation on the part of NFCU, that I am included in any communications between NFCU and Nationwide Insurance based on the events to date.

Third, I am requesting copies of any correspondence that NFCU has sent, or received, regarding their attempts to collect on the collateral that I have provided to them under the Partnership loan with NFCU, Nationwide Insurance Companies and myself. I trust, as a member of the credit union, that you are expending all due diligence to collect on those items that I have provided to you as security under the loan documents. I must advise you that the staff at NFCU has been very difficult to deal with in my attempts to resolve this matter of deep concern. There is a definite attitude that is a barrier in my attempts to resolve this matter. Every attempt I have made to resolve this problem has been declined and I have been told there is nothing the credit union can do to contact Nationwide to collect on the security I provided NFCU. It is my opinion that this appears to be too convenient to both Nationwide, that provided NFCU with confirmation of the collateral security, and NFCU that appears to be working with Nationwide to the detriment of this credit union member.

Fourth, I have signed several ACH payment authorization forms provided to me by NFCU which clearly state in either your staff's handwriting, or in some cases my handwriting, where the ACH payments are to be applied. These represent interstate transactions which I signed giving NFCU the authority to apply payments to specific accounts. In one case the funds are noted as being deposited to my savings account for specific application to the designated loan numbers. That authority was not honored and individual employee discretion was used so as to apply ACH funds to accounts that NFCU chose without regard to the signed authorizations. I expect those transactions to be corrected, and the necessary actions taken to prevent these types of misappropriations to take place in the future.

Fifth, what actions or communications has the NFCU had with the Nationwide Insurance Companies to attempt to collect their security collateral or to resolve this issue at all? I have been denied any information when I request an update from the staff at NFCU despite the fact that I am by all means an interested party to the problem. I have a right to expect the NFCU to protect both their interests and mine by attempting to collect on what they evidently deemed adequate and secure collateral. The actions on the part of NFCU, in my opinion, are not meeting those expectations.

Sixth, my payments and resolution efforts are being mishandled and misstated. I cannot help but believe that those actions are intentional and, in my opinion, could be part of an overall strategy in concert with Nationwide Insurance and their reflex unit to injure both my credit standing and financial well being which are critical factors in my profession. As an example, I called NFCU on the 20th of this month and was advised that the Partnership loan was in default, despite NFCU misappropriating my contingency bonus bringing it well into a current status, because the November 15th payment was not received. On the 23rd of this month I called the automated account info system, Cupid, to find that the last loan payment was applied to the Partnership loan on the 16th of November thus making the loan current to the next due date of December 15th, 2000 as a minimum. The purpose of my call on the 20th was to resolve my NFCU car loan by trading in the vehicle and paying off the balance if the NFCU would release the title to the buyer. Based on NFCU's staff I could not do that because I was now "in default" on the Partnership loan. This intentional payment misinformation and the fact that NFCU had claimed cross collateralization between the Partnership and car loans were now blocking me.

I have much reason for concern on how my entire account has been handled. Further, as evidenced by the communication process between NFCU and Nationwide under the February 9th letter from Bob Collins, I have reason to believe that the relationship between NFCU and Nationwide Insurance Companies has become too close. It is clearly not one that is in the best interest of either the credit union or myself. As a credit union member, I am due a resolution of this matter as I am of the opinion that NFCU has become a partner with Nationwide Insurance in dealing with those agents that have retired early from Nationwide. The evidence is becoming very clear and I will use any

and all methods to protect my credit rating and financial well being from these unfair and coordinated business and trade actions of both NFCU and Nationwide in this matter.

I will look forward to, and fully expect, a prompt reply to my concerns no later than December 14th, <u>one day before my next Partnership loan due date</u>. By copy of this letter, I also welcome any governing body, or department, to intercede into or conduct their own investigation of the actions that have taken place to date. This includes the actions, or non-actions, of NFCU and the Nationwide Insurance Companies, specifically their Reflex Unit, Agency Operations and NFCU with regards to the communications between the two organizations and their handling of both this loan and the security interests covering the Partnership loan.

I hope and trust that the efforts I have extended to provide for a resolution to this problem can prove to be of benefit to all. Thank you.

                                            Sincerely,

                                            Ronald P. Morin, Sr.
                                            711 Sandstone Drive
                                            South Windsor, CT  06074
                                            Tel: 860-644-4774 (work)
                                                     860-644-6566 (home)

cc: Mike Flack, VP Office of Ethics Nationwide Ins. Cos.
    NCUA, Office of Inspector General
    Banking Dept., State of Connecticut
    Banking Dept., State of Ohio
    Insurance Dept., State of Connecticut
    Attorney General, Connecticut
    U.S. Attorney General, Washington, D.C.
    File

Attachments: Appointment letter from Nationwide
                    Letter from NFCU dated 2-9-00

N/W RM 00067

NATIONWIDE
ONE NATIONWIDE PLAZA
COLUMBUS OHIO 43215-2220

March 16, 2000

Nationwide Financial Institution Distributors Agency
497 Buckland Rd
South Windsor, CT 06074

Dear Broker/Dealer:

We are pleased to inform you that Ronald Morin (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) has been appointed with Nationwide Life Insurance Company in the state of Connecticut for the following lines effective October 31, 1988:

Life, Health, VarAnn, VarLife
 X      X       X       X

When submitting business, please reference the agent's social security number.

We welcome you to Nationwide Life Insurance Company and hope that our relationship will be a mutually beneficial one.

Sincerely,

John Knapp
Licensing Services Division
1-800-321-6064 EXT 92081



N/W RM 00068