UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD P. MORIN, SR., ET AL., | : | CIVIL ACTION NO. |
|    Plaintiffs, | : | |
| | : | 3:03 CV 277 (CFD) |
| v. | : | |
| | : | |
| NATIONWIDE FEDERAL CREDIT UNION, | : | |
| ET AL., | : | |
|    Defendants. | : | August 17, 2007 |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO STRIKE MORIN AFFIDAVIT AND 56(A)(2) STATEMENT

     Defendants Nationwide Federal Credit Union, et al., respectfully submit this Memorandum of Law in Support of their Motion to Strike the Affidavit of Ronald P. Morin, Sr. ("Mr. Morin"), dated June 19, 2007 ("Morin Affidavit") and Plaintiff's Local Rule 56(a)(2) Statement, dated June 19, 2007 ("56(a)(2) Statement").

### Preliminary Statement

     Summary judgment affidavits must be based on the personal knowledge of a witness competent to testify to the facts stated and must present admissible evidence. *See* Fed. R. Civ. P. 56(e). The vast majority of the Morin Affidavit, however, consists of inadmissible conclusory assertions, irrelevant rants, hearsay and legal conclusions—*i.e.*, transparent efforts to create fact issues where, based on the record, none exist. The Morin Affidavit (or large portions of it), along with vast portions of the 56(a)(2) Statement, should therefore be stricken.[1]

     In this case, Mr. Morin has sued Defendants on numerous causes of action arising from certain loan obligations he had with Nationwide Federal Credit Union ("NFCU"), which he ultimately failed to satisfy. The factual issues relative to Mr. Morin's (and his wife's) claims are straightforward: Did Mr. Morin make timely payments on all of his loans (thereby avoiding

---

[1] For the Court's convenience, all of the statements contained in the Morin Affidavit and the 56(a)(2) Statement that fail to comply with Rule 56(e), and the corresponding legal grounds for striking such statements, are set forth in table form in *Exhibits A & B*, respectively.

default)?; Did NFCU disclose false information with respect to Mr. and Mrs. Morin's payment history?; Did NFCU otherwise slander or libel Mr. Morin? Negative answers to these questions resolve this case in Defendants' favor. Defendants' motion for summary judgment presented facts—admissible in evidence—demonstrating that the answer to each of these questions is "no."

In response, Plaintiffs seek to circumvent the very basic requirements for summary judgment set forth in Fed. R. Civ. P. 56, and do little more than reiterate the allegations of the complaint. While Mr. Morin's lengthy affidavit spins a conclusory tale of ill motives and wrongdoing (largely irrelevant to the claims at issue), it is devoid of "concrete particulars." Accordingly, those portions of the Morin Affidavit and the 56(a)(2) Statement that incorporate and, through vague paraphrasing, expound upon, Plaintiffs' *non*-evidence, should be stricken.

## ARGUMENT

Summary judgment is a place of fact, not fiction—evidence, not speculation. For this reason, in the Second Circuit, Rule 56(e) requires that affidavits be based on "concrete particulars" rather than bald assertions and conclusory allegations. *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("non-moving party may not rely on conclusory allegations or unsubstantiated speculation"); *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)) ("To satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations."). Otherwise, exchanging affidavits would degenerate into the "mere elaboration of conclusory pleadings." *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 97 (2d Cir. 1970). This, of course, would run contrary to the fundamental purpose of summary judgment.[2]

---

[2] *See Donnelly v. Guion*, 467 F. 2d 290, 293 (2d Cir. 1972) ("A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to 'smoke out' the facts so that the judge can decide if anything remains to be tried."); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("resolution of evidentiary questions on summary judgment conserves the resources of the parties, the court, and the jury"); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 923 (2d Cir. 1985) (a party opposing summary judgment "may not stand mute in reliance solely upon its allegations when facing a substantial evidentiary submission refuting its claim"); *Applegate*, 425 F.2d at 96 ("Summary judgment…is a valuable tool for piercing conclusory allegations and disposing of unsupportable claims prior to trial.").

Accordingly, a motion to strike is appropriate where affidavit testimony offered in opposition to summary judgment fails to comply with Fed. R. Civ. P. 56(e) because it is irrelevant, not based on personal knowledge, contains nothing more than conclusory allegations or would otherwise be inadmissible at trial. *See Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d. Cir. 1999), *abrogated on other grounds*, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). The Second Circuit has long held that such an affidavit should be stricken where it "flagrantly disregard[ed] the requirements of Rule 56(e), was riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge, and more resemble[d] an adversarial memorandum than a *bona fide* affidavit." *Hollander*, 172 F.3d at 198 (internal quotation marks omitted).[3] Moreover, where a Rule 56(a)(2) statement incorporates the improper portions of a summary judgment affidavit, those portions and any other improper portions should also be stricken.[4] The Morin Affidavit and Rule 56(a)(2) Statement are replete with inadmissible and impermissible statements that should be stricken.

I. **MR. MORIN'S VAGUE ALLEGATION OF AN AGREEMENT WITH A MYSTERY "NFCU REPRESENTATIVE" MUST BE STRICKEN.**

Concerning perhaps the most important fact in this case, Mr. Morin's submission rests *entirely* on his vague assertion of an alleged agreement with NFCU, based upon a purported telephone conversation he had with an unknown and unidentified "NFCU representative," on an

---

[3] *See also Newport Elec., Inc. v. Newport Corp.*, 157 F. Supp. 2d 202, 208 (D. Conn. 2001) ("A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion."); *Doe v. City of Hartford*, No. 3:01CV278(DJS), 2004 WL 2377166 (D. Conn. Oct. 13, 2004) (striking summary judgment affidavit based on hearsay and secondhand information) (copies of all unreported cases cited herein are attached hereto as *Ex. C*); *Richards v. Computer Sciences Corp.*, No. 3-03-CV-00630(DJS), 2004 WL 2211691, at *1 (D. Conn. Sep. 28, 2004) ("A motion to strike is appropriate if documents submitted in support of a motion for summary judgment are not made on the basis of personal knowledge or contain inadmissible hearsay or conclusory statements."); *Keene v. Hartford Hospital*, 208 F. Supp. 2d 238, 245 (D. Conn. 2002) (striking statements in an affidavit because affiant lacked personal knowledge).

[4] *See e.g., Lewis v. Town of Waterford,* 239 F.R.D. 57, 62 (D. Conn. 2006) (striking portions of 56(a)(2) statement referencing inadmissible double hearsay contained in affidavit); *Merry Charters, LLC v. Town of Stonington,* 342 F. Supp. 2d 69, 76 (D. Conn. 2004) (striking exhibit to Rule 56(a)(2) statement that contained inadmissible hearsay).

unknown date. *See* Morin Aff. ¶18. Mr. Morin contends that, during the phone conversation, the unidentified, alleged NFCU representative agreed to modify his Loan Agreement by not objecting to Mr. Morin's proposed payment plan, thus relieving him of his default.[5] The asserted "fact" of the purported phone call, however, lacks a single concrete particular necessary for consideration on summary judgment. *See Patterson*, 375 F.3d at 219; *Scotto*, 143 F.3d at 114; *Schwapp*, 118 F.3d at 111.

Mr. Morin attempts to create a disputed issue of fact on this point, through a single assertion -- that a payment of Mr. Morin's bonus made by his former employer, defendant Nationwide Mutual Insurance Co. ("Nationwide"), to NFCU as security for his loan (as he undisputedly authorized)[6] amounted to "paying his loan forward" *by agreement* between he and NFCU. The *only* basis for NFCU's purported assent to this "agreement" is an alleged telephone conversation between Mr. Morin and an unidentified, assumed NFCU representative, wherein the purported NFCU representative supposedly *did not object* to Mr. Morin's suggestion to apply the funds to loan payments:

> When I learned that the $31,578.99 had gone to NFCU, I contacted NFCU by telephone to discuss the matter with a representative of NFCU. In that conversation, I indicated that since the $31,578.99 represented more than 13 months of payments on the Partnership Plus (business) loan, that payment would constitute monthly payments for each of the months through November of 2001, which would then keep the business loan current until November of 2001 and consequently no payment would be due on that loan until November of 2001. *The NFCU representative voiced no objection* to or concern with that manner of proceeding.

---

[5] Plaintiffs then perpetuate this conclusory allegation in their 56(a)(2) Statement, which states: "'NFCU agreed that that payment would keep that loan current through November of 2001.' *See* Morin Affidavit, ¶ 18." 56(a)(2) Statement, ¶ 43.

[6] It is undisputed that Mr. Morin assigned as security for the Business Loan his "commissions, extended earnings, deferred compensation incentive credits, bonuses and any other compensation" from Nationwide. Defendants' Facts, ¶7; Plaintiffs' Facts, ¶7. Moreover, the Security Agreement for the loan clearly states: "When you are in default, the credit union can, without advance notice to you, require immediate payment of what you owe under the LOANLINER Credit Agreement and take possession of the property. You agree the credit union has the right to take possession of the property without going to court and without giving you advance notice." Brisendine Aff., *Ex. 1*.

*See* Morin Aff., ¶ 18 (emphasis added).

Thus, the "fact" of the purported assent, which arises from the mere silence of an unidentified individual during an unspecified call, is patently inadequate for summary judgment purposes. Mr. Morin fails to identify the date and time of the call, much less the identity of the "silent listener." He also provides no explanation as to why this purported agreement has been raised only now, for the first time ever, nearly 7 years after the fact.

The Seventh Circuit affirmed the striking of a similarly flawed affidavit in *Jones v. Peoria County Sheriff's Dept.*, a civil rights action against the county sheriff's department. The affidavit stated that an anonymous member of the sheriff's merit commission informed the affiant that the plaintiff's race influenced that member's decision to terminate the plaintiff. The district court granted the Defendants' motion to strike the affidavit. On appeal, the Seventh Circuit affirmed and adopted the district court's decision, which held:

> The court now grants the motions to strike for the following reason: the affidavit is entirely insufficient under F. R. Civ. P. 56(e). The only fact to which Mr. Jackson attests is that he had a conversation with an ***unidentified person*** regarding the influence Jones' race had on his dismissal. ***The affidavit does not document with whom Jackson spoke, when Jackson spoke with this person, or where Jackson spoke with this person.*** Both of the defendants have moved for summary judgment. ***Jackson's affidavit as part of Jones' response to the motion for summary judgment does not meet the standard of Rule 56(e)[.]***
>
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth ***specific facts*** showing that there is a genuine issue for trial. (If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.)
>
> ***Jackson's affidavit does not set forth any specific facts, and therefore this court will strike the affidavit and not consider it.***

No. 94-1767, 1994 WL 589450, *2 (7th Cir. Oct. 25, 1994) (emphasis added). *Cf. Santiago v. City of Hartford*, No. 3:00 CV 2386 WIG, 2005 WL 2234505 at *7 (D. Conn. Sept. 12, 2005) (finding Plaintiffs' testimony regarding the "lack of response of an unidentified telephone

operator" to a her alleged telephone complaint about police conduct was not competent evidence that the city had notice of her telephone complaint).[7]

Likewise here, Mr. Morin's inventive statements (and each affidavit paragraph relying upon them) are incompetent, lack the requisite specifics of Rule 56(e) and should be stricken.[8] Numerous other examples abound:

- Mr. Morin refers generically to the "stated intention" of Nationwide with respect to the so-called "reflex unit," without ever identifying who "stated" the "intention," Morin Aff, ¶ 6;

---

[7] In addition, absent facts demonstrating that the alleged NFCU representative was someone who could bind NFCU, the purported assent is wholly irrelevant and inadmissible. Mr. Morin has offered nothing by way of proving agency. *See*, *e.g.*, *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 128-29 (2d Cir. 2005) ("In order to introduce evidence of an out-of-court statement as nonhearsay under Rule 801(d)(2)(D), a party must lay a sufficient foundation by establishing '(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.'"); *In re Plenipotentiary, Ltd.*, Nos. 92 B 12342, 92 C 2717 & 93 A 00259, 1993 WL 135970 at *8 (Bankr. N.D. Ill. Apr. 15, 1993) (affidavits regarding alleged oral agreement with the bank that precluded a default were insufficient on summary judgment because "[n]o affidavit contain[ed] any specific statement attributed to any *identified* [bank] representative that would support the existence of a binding oral agreement to modify the Loan Agreement." (emphasis added)); *International Business Investments, Inc. v. United States*, 17 Cl. Ct. 122, 124 (1989) ("plaintiff's *mere inference* that it spoke to an unnamed governmental agent is not enough to bar summary judgment…. [P]laintiff *must identify* the government official who purported to confirm plaintiff's interpretation of the contract so that the authority of that official to bind the United States may be ascertained…." (emphasis added)); *DeBruce Grain, Inc. v. Mitchell*, No. 05-1934, 2007 WL 2118769 at *7 (Iowa App. Ct. July 25, 2007) (despite Defendant's allegation at trial that there was a contract modification based on phone call with an unidentified employee of the plaintiff, which he had never mentioned in earlier sworn statements, the court found no evidence of record that the plaintiff accepted such changes).

[8] Additionally, Plaintiffs plainly offer the "NFCU Representative's" silence to prove that NFCU assented to Mr. Morin's proposed modification of the loan terms. *See* 56(a)(2) Statement, ¶ 43 (citing Morin Affidavit, ¶ 18 for the proposition that "NFCU agreed that that payment would keep that loan current through November of 2001"). Accordingly, the silence is offered as an assertion, *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (citing the advisory committee notes to Fed. R. Civ. P. 801, "nonverbal conduct may qualify as a 'statement' for purpose of hearsay rules"), and thereby constitutes inadmissible hearsay. *See United States v. Kenyon*, 481 F.3d 1054, 1064 - 1065 (8th Cir. 2007) (holding that witness' statement that two children whom she asked did not provide her "with any information suggesting anything happened," where offered to show that in fact nothing happened, called for hearsay and was properly stricken); *State v. King*, 249 Conn. 645, 672 (1999) (holding that officer's statement that child did not respond when showed photos, which defendant sought to use as a statement that she could not identify the defendant, was properly rejected as inadmissible hearsay: "as defense counsel articulated the claim to the trial court, he was seeking to use [the out of court declarant's] silence as a nonverbal assertion or statement. . . . the trial court properly rejected [the] testimony as inadmissible hearsay."). Additionally, the statement cannot be deemed an admission by a party opponent because there is no foundation for an agency relationship. *See Marcic*, 397 F.3d at 128-29 ("In order to introduce evidence of an out-of-court statement as nonhearsay under Rule 801(d)(2)(D), a party must lay a sufficient foundation by establishing '(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.'"). As such, this hearsay should be stricken. *See infra* Section II, D.

- Mr. Morin purports to explain the reasons for Rockville Bank's denial of credit to him and Chase Manhattan Bank's denial of credit to his wife without ever identifying the source for these statements, Morin Aff, ¶¶ 29 - 30;

- Mr. Morin explains what NFCU purportedly "informed him" with respect to the available credit on his NFCU Visa card, again, without stating *who* informed him. Aff, ¶ 31; and

- Mr. Morin makes other assertions about instances where "NFCU informed him" of various matters -- each without providing any information regarding *who* at NFCU did the informing. *See, e.g.* Morin Aff. ¶¶ 15, 31.

These assertions, and many others, lack the most fundamental requirements of summary judgment evidence.

II.  **MR. MORIN'S ASSERTIONS WITHOUT PERSONAL KNOWLEDGE, SPECULATIVE BELIEFS, CONCLUSORY ALLEGATIONS AND HEARSAY STATEMENTS MUST BE STRICKEN.**

Rule 56(e) explicitly requires that "opposing affidavits shall be made on *personal knowledge*." Fed. R. Civ. P. 56(e) (emphasis added); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988). Accordingly, courts will strike or disregard affidavits, or portions thereof, that are not based on the personal knowledge of the affiant. *See*, *e.g.*, *United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) (where government submitted three affidavits of dump employees stating that defendant had bribed dump officials, the court properly disregarded single affidavit by defendant's son stating that to the best of his knowledge his father had not paid any bribes); *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (affidavit deemed "entirely insufficient" where crucial statement was not based upon personal knowledge as required under Rule 56(e)); *Rossi v. West Haven Bd. of Educ.*, 359 F. Supp. 2d 178, 181-82 (D. Conn. 2005) (disregarding affidavit in opposition to summary judgment where it was unclear whether the information submitted was based on the affiant's personal knowledge and the affiant did not specify the basis for his personal knowledge).

A.  **No Personal Knowledge**

Despite Rule 56 requirements, Mr. Morin purports to assert "facts" about which he plainly lacks personal knowledge.  For instance, Mr. Morin seeks to save his claims that NFCU provided false information to third parties, and that he purportedly suffered damages thereby, by claiming that "[b]ecause of the false payment status information that NFCU had supplied to credit reporting agencies, Rockville Bank declined to provide me with a loan…." Morin Aff., ¶ 29.  Similarly, Mr. Morin testifies that his wife "was notified by Chase Manhattan Bank, N.A. that her request for an increase in the limit on her personal Chase Visa credit card was being denied" with the reason for the denial being "false information in her credit report that had been supplied by NFCU." Morin Aff., ¶ 30.

These statements are anathema to summary judgment on several grounds.  First, Mr. Morin demonstrated no knowledge, and cites to no evidence, of what (if any) information NFCU supplied to any party.  Mr. Morin does not include in his opposition a single communication between NFCU and any of these third parties, and he provides no basis for his speculation that such communications were made, let alone the content of such communications.[9]

Second, and more importantly, Mr. Morin's assertions as to the reasons for Rockville Bank's or Chase Visa's alleged actions are pure guesswork.  He provides no statement, communication, affidavit or other evidence from either institution stating the reasons it took any of the alleged actions.  Indeed, the only evidence in the record refutes, rather than supports, his conjectural inferences.  *See* Supp. Blanchard Aff., *Ex. D* (letter from Chase Manhattan Bank USA, N.A. to Denise M. Morin, dated March 1, 2002 explaining the reasons for denial as "insufficient income relative to your outstanding debt" and "[o]ne or more of your past or present account(s) reflect delinquency of 60 days").

---

[9] By contrast, NFCU has provided competent evidence establishing that the only information it provided to credit reporting agencies was the status of Mr. Morin's loans—up to date or not.  *See* Brisendine Aff., ¶ 49.

In *McMillan v. Experian*, this Court (Arterton, J.) addressed a situation very similar to the case at bar. 170 F. Supp. 2d 278 (D. Conn. 2001). In *McMillan*, the plaintiff, after a series of credit denials and discovering that his credit history had been confused with another person of the same name (his son), sued two credit reporting agencies and several other parties allegedly responsible for reporting the incorrect credit information. *Id.* at 280. In the plaintiff's affidavit in opposition to summary judgment, he stated that he was denied car insurance based on his negative credit report. *Id.* at 281. One defendant moved to strike his affidavit for lack of personal knowledge where, *inter alia*, the plaintiff provided no statement to that effect from the denying insurer and the plaintiff's retelling was hearsay. *Id.* The Court agreed, explaining that the plaintiff had not identified any basis for his knowledge of the reasons for the insurance denial, noting "[i]f the plaintiff's basis for his knowledge of the reason for the denial is what [the insurer's] representative told him, his testimony on that fact would be inadmissible hearsay…." *Id.* In the absence of an affidavit or "other admissible evidence" from the insurer regarding the reasons for denial, the Court granted the motion to strike as to that portion of the affidavit. *Id.* The same reasoning and result applies here. Mr. Morin cannot testify on behalf of Rockville Savings or Chase Manhattan. His attempt to do so should be stricken.[10]

### B. Speculative Beliefs

Moreover, in a desperate attempt to create issues of fact where none exist, Plaintiffs spin a tail of retaliatory actions coordinated by a Nationwide "reflex unit," directed at causing Mr. Morin angst for deciding to compete with Nationwide. Apart from not bearing a scintilla's relevance to the fact that Mr. Morin continues to owe $130,000 plus to NFCU to this day, the superfluous story is hollow for summary judgment as it is based entirely upon Mr. Morin's "beliefs," opinions and conclusory assertions.

For instance, Mr. Morin claims that: "I ***believe*** that NFCU's February 9 letter (Exhibit A) was part of a coordinated effort between NFCU and Nationwide, through the Reflex Unit, to use

---

[10] For the same reasons, statements made in paragraphs 5-7, 13, 16, 18 & 23 should also be stricken.

false and misleading information to harass me and to exert improper financial pressure on me….." Morin Aff., ¶ 13 (emphasis added).  Similarly, he posits that "[t]he positions taken by NFCU concerning the purported default and the purported forfeiture was part of the 'reflex unit' response to my retirement which was intended to wrongfully exert financial pressure on me because I had terminated my relationship with Nationwide."  Morin Aff., ¶ 12.  Mr. Morin provides no evidence from the defendants in support of his beliefs and speculation and, accordingly, his statements based thereon should be stricken.  *See Town of Enfield v. Saltarella*, 427 F. Supp. 2d 62, 66 n. 4 (D. Conn. 2006) (Arterton, J.) (striking paragraphs of plaintiff's affidavit that stated only plaintiff's *beliefs*—not facts—as improper "conclusory allegations"); *see also Scotto*, 143 F.3d at 114 ("non-moving party may not rely on . . . unsubstantiated speculation."); *Reed v. State of Connecticut*, 161 F. Supp. 2d 73, 79 (D. Conn. 2001) (Covello, J.) ("[T]he mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment.")

In *Applegate,* the Second Circuit rejected an affidavit opposing summary judgment based upon similarly titillating novel-esque conspiracy theories that lacked "concrete particulars" for support.  425 F.2d at 97.  In that case, the plaintiff sued for damages stemming from an alleged conspiracy to kidnap his wife and children in retaliation for actions he allegedly took in conjunction with covert intelligence operations that reflected poorly on the CIA.  *Id.* at 94-95.  The Court granted summary judgment in favor of the defendants and in doing so, disregarded the plaintiff's affidavit because it was "grounded on suspicion, [] bound together with rumor and hearsay."  *Id.* at 97.  While the affidavit "provided the court with the characters and plot line for a novel of intrigue," it did not provide "the concrete particulars which would entitle him to trial." *Id.*  Also similar to the case at bar, the court further noted that a substantial portion of the affidavit was dedicated to "setting forth [] disagreements with the CIA." *Id.*  *Compare* Morin Aff. ¶ 5 ("In the late 1990's, Nationwide placed more and more pressure on Nationwide agents, including me, through the imposition of quotas, pressure to sell multiple products to customers at reduced commissions, and Nationwide began its own direct solicitation of customers, competing

with its agents in regard to the consumer base."). While these disagreements were "fascinating indeed" they were "irrelevancies nonetheless." *Applegate*, 425 F.2d at 97.

### C. Conclusory Allegations

Upon casual review, Mr. Morin's numerous accusations of wrongdoing, breaches of contract, and bad faith on the part of NFCU and Nationwide, as well as assertions of his own purported contractual compliance, are exposed for what they truly are—conclusions supported by nothing more than the presumed veracity of his own word, rather than facts and concrete particulars as required. For example, he claims:

> The strain between Nationwide and its agents lead [sic] to Nationwide developing a strategy to deal with its agents who quit or threaten to quit, including retaliatory termination by Nationwide. As a result of the Nationwide strategy to maximize financial pressure on agents who terminated with Nationwide, Nationwide established a so-called "reflex unit" with the stated intention of putting the departing agents out of business, by among other things trying to wrongfully confiscate agents' retirement accounts and otherwise creating substantial difficulties in terms of the agents' ability to continue to do insurance business.

Morin Aff., ¶ 6. For this bold assertion, Mr. Morin relies upon . . . nothing -- no internal memos, no deposition testimony, no emails and no interrogatory responses.

Examples of Mr. Morin's "it is so because I have said it" approach fill his affidavit on point after point:

- For example, Mr. Morin determines that "there would have been no delinquencies in regard to my personal loans had NFCU followed the aforementioned agreements, instructions and authorizations with respect to the payment of those loans" and that payments made "corrected the problems that had been brought about by NFCU's failure to deduct and apply payments properly under the aforementioned agreements." Morin Aff., ¶ 17. Factual support for the "aforementioned agreement" and "corrected problems," however, are absent, as are any records that he became current.

- Similarly: "I *believe* that that [$31,578.99] amount was sent by Nationwide to NFCU electronically on October 17, 2000…." Morin Aff., ¶ 18 (emphasis added). Mr. Morin apparently offers this assertion in the hope that he can further assert never missing a payment on his business loan, because he has not and cannot dispute making no payments after September, 2000. His "belief," of course, does not generate a fact dispute with NFCU's statement, made upon personal knowledge, that the payment was not made and processed until November. *See Cameron v. Comm. Aid for Retarded Children, Inc.*, 335

F.3d 60, 65 (2d Cir. 2003) (holding that as between conflicting accounts of parties, where defendant's account was based on testimony of witnesses with personal knowledge, plaintiff's conclusory account did not create a disputed issue on summary judgment).

- Attempting to shift blame for insufficient funds resulting in missed payments, Mr. Morin claims: "If there were insufficient funds in my Rockville Bank account when a third party attempted to withdraw funds by way of an ACH authorization, then I would have been notified of that fact, and charged a fee, by Rockville Bank." Morin Aff., ¶ 20. Of course, he fails to offer any evidence supporting his views on Rockville's policies and procedures.

These are but a few of the bald assertions and conclusory allegations that permeate Mr. Morin's affidavit, and should be stricken. *See also* Morin Aff., ¶¶ 6, 12, 13, 15, 16, 18, 21, 23, 25 & 27-31.

In *Enfield v. Saltarella*, where the plaintiff former-police officer brought various claims stemming from his alleged wrongful termination, Judge Arterton ruled that the parts of the plaintiff's affidavit that stated "only plaintiff's *belief* that defendants acted maliciously or with retaliatory motive [were] 'conclusory allegations' that [were] improper and [would] be stricken." 427 F. Supp. 2d at 66 n. 4 (emphasis added). *See also Lachira v. Sutton*, No. 3:05cv1585(PCD), 2007 WL 1346913 at *2 (D. Conn. May 7, 2007) (striking from affidavit conclusory allegations, including statement that "[t]he defendants had a scheme to move me to another building om [sic] plaintiffs home"). Likewise, Mr. Morin's accusations of NFCU's grand scheme against him, as well as his unsupported claims of diligent payment and forthright dealings with NFCU, without more, must be stricken.

### D.    Hearsay

The Morin Affidavit also contains numerous hearsay statements that are not material facts for summary judgment purposes and should be stricken. *See Patterson*, 375 F.3d at 219 (citing *Meiri*, 759 F.2d at 998) ("Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").[11]

---

[11] *See also Raskin*, 125 F.3d at 66 ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment"); *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1992) (hearsay assertion not admissible at trial is not competent material for a Rule 56 affidavit).

Mr. Morin:

- purports to explain the reasons for Rockville Bank's denial of credit to him and Chase Manhattan Bank's denial of credit to his wife (both of which must be based on hearsay statements by bank personnel), Morin Aff, ¶¶ 29 - 30; and

- makes other assertions about multiple instances where "NFCU informed him" of various matters -- each without providing any information regarding who at NFCU did the informing, thus failing to establish whether providing the information was within the person's authority. Morin Aff. ¶¶ 15, 31.

These and other statements that incorporate these hearsay allegations[12] should be stricken.

Moreover, as to the statements that involve purported assertions by "NFCU," these are not admissions by a party opponent because, without indication of who made the statement, Mr. Morin has failed to lay a sufficient foundation. *See Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 128-29 (2d Cir. 2005) ("In order to introduce evidence of an out-of-court statement as nonhearsay under Rule 801(d)(2)(D), a party must lay a sufficient foundation by establishing '(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.'").

Accordingly, these statements, even if they could be considered without identification of the speaker (and they cannot, *see* Supra Part I), amount to nothing more than vague hearsay statements by third parties. Instructive here is the Second Circuit's treatment of hearsay-based affidavit in *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F. 3d 155, 160 (2d Cir. 1999). The *Sarno* court explained:

> [Plaintiff] simply asserted in an affidavit that he "was told" by [a third party] that he was not hired because [Defendant] "would not provide a positive reference". [Plaintiff's] affidavit did not constitute competent evidence of the reason for [the third party's] decision…. [Plaintiff's] statement as to what he "was told" was hearsay that would not be admissible at a trial. Since he presented no sworn statement from [the third party], he failed to adduce any evidence sufficient to create a genuine issue to be tried as to his contention that [Defendant's] neutral communication to [the third party] caused [Defendant] not to hire him and hence was an adverse action.

---

[12] *See* Morin Affidavit at ¶ 6 and 56(a)(2) Statement at ¶¶ 43-46, 48, 63, 65, D, E & G.

*Id.* (internal citations omitted). *See also Hollander* 172 F.3d at 198 (district court properly struck portions affidavit not based on hearsay); *McMillan*, 170 F. Supp. 2d at 281 (striking paragraphs of summary judgment affidavit based on hearsay).

### III.  MR. MORIN'S LEGAL CONCLUSIONS SHOULD BE STRICKEN.

Legal conclusions contained in a party's summary judgment affidavit do not create disputed issues of material *fact*. They are irrelevant and should be stricken. *See Bellsouth Telecomm.'s, Inc. v. W.R. Grace & Company-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (finding that district court properly disregarded statements in summary judgment affidavits that "advocated conclusions of law"); *Lachira*, 2007 WL 1346913, at *1 (explaining that "conclusory allegations, examination of thoughts, opinions, argument and *legal conclusions* are all prohibited from affidavits submitted in support of, or opposition to, a summary judgment motion under Rule 56(e)" and striking same (emphasis added)); *Roberts v. Ground Handling, Inc.*, No. 04 CIV 4955 WCC, 2007 WL 2071568 at *16 (S.D.N.Y. Mar. 30, 2007) (concluding that a legal conclusion included in a summary judgment affidavit "must be stricken from the record"). *See generally* 11 MOORE'S FEDERAL PRACTICE 3D at § 56.14[1][d] ("Allegations that proffer legal conclusions ... but are not buttressed with factual support expressed in the affidavit" may not serve as the basis for supporting or opposing a motion for summary judgment).

The Morin Affidavit is riddled with impermissible legal conclusions that make it read more like a legal brief than an affidavit. For instance, Mr. Morin states: "NFCU violated the terms of our agreement by failing to apply the deposited funds as directed and/or applying all of the monies in the account to just one loan account…", Morin Aff., ¶ 15; "Nationwide had wrongfully withheld [$31,578.99] since February 2000.", Morin Aff., ¶ 18; and "based on my agreement with NFCU in October or November of 2000, the monthly payments on my Partnership Plus (business) loan were current through November of 2001", Morin Aff., ¶ 18.

These are but examples of the many legal conclusions permeating Mr. Morin's "fact" affidavit that should be stricken.[13]  *See, e.g., Lachira*, 2007 WL 1346913, at *1 (striking legal conclusions from affidavit); *Roberts*, 2007 WL 2071568 at *16 (same).  Mr. Morin's lay opinions on the ultimate legal issues in this case have no proper place in his affidavit.

## CONCLUSION

For all of the above-stated reasons, the Defendants respectfully request that the above-referenced portions of the Morin Affidavit and the 56(a)(2) Statement, as more fully-set forth in the attached *Exhibits A & B*, respectively, be stricken.

Respectfully submitted,

**DEFENDANTS NATIONWIDE FEDERAL CREDIT UNION, ET AL**

By: /s/ Michael D. Blanchard
Ben M. Krowicki (ct06153)
Deborah S. Freeman (ct05257)
Michael D. Blanchard (ct25891)
Seth N. Stratton (ct27293)
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT  06103-3178
(860) 240-2700
(860) 240-2818 (fax)
ben.krowicki@bingham.com
deborah.freeman@bingham.com
michael.blanchard@bingham.com
seth.stratton@bingham.com
Their Attorneys

---

[13] *See also* Morin Aff. ¶¶ 10, 12, 16, 17, 19, 21, 28.

## **CERTIFICATION**

I hereby certify that on this 17th day of August, 2007, a copy of the foregoing was sent via the Court's electronic notification system or by first class U.S. mail to:

Richard P. Weinstein, Esq.
Nathan A. Schatz, Esq.
Weinstein & Wisser, P.C.
29 South Main Street, Ste. 207
West Hartford, CT 06107
*Counsel for Plaintiff*

        /s/ Michael D. Blanchard
        Michael D. Blanchard