UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD P. MORIN, SR., ET AL., | : | CIVIL ACTION NO. |
| Plaintiffs, | : | |
| | : | 3:03 CV 277 (CFD) |
| v. | : | |
| | : | |
| NATIONWIDE FEDERAL CREDIT UNION, | : | |
| ET AL., | : | |
| Defendants. | : | AUGUST 17, 2007 |

**DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Preliminary Statement**

Plaintiffs' lengthy (though unsupported) submission fails to stave off summary judgment

for Defendants on each remaining count[1] of the Complaint.  In a word, the core facts entitling

Defendants to judgment have been admitted, and the Plaintiffs' conclusory attack on non-

material, collateral matters, is without sufficient factual basis.

Preliminarily, Plaintiffs have admitted those material facts that are core to the disposition

of this motion:

- Mr. Morin owed NFCU a total of $173,245.86 on the Business Loan.  Defendants' Local Rule 56(a)(1) Statement ("Defendants' Facts"), ¶¶ 13-21; Plaintiffs' Local Rule 56(a)(2) Statement ("Plaintiffs' Facts"), ¶¶ 13-21;

- The loan documents executed in connection with the Business Loan contained the following provision: "Property given as security under the [Business Loan] or for any other loan will secure all amounts you owe the credit union now and in the future." Defendants' Facts, ¶12; Plaintiffs' Facts, ¶12 (emphasis added);

- The loan documents executed in connection with the Business Loan contained the following provision: "You will be in default if you do not make a payment of the amount required when it is due." Defendants' Facts, ¶12; Plaintiffs' Facts, ¶12; and

---

[1] Plaintiffs have conceded that Counts 7 and 11 are not legally viable.  *See* Docket No. 99 (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated June 19, 2007), at 1; Docket No. 105 (Plaintiffs' Memorandum of Law in Order to Bring Newly-Decided, Controlling Authority to the Attention of the Court, dated July 19, 2007). Summary judgment should, therefore enter as to Counts 7 and 11.

- Following September 27, 2000, Mr. Morin ceased making automated payments on the Business Loan.  Defendants' Facts, ¶¶ 43-44; Plaintiffs' Facts, ¶¶ 43-44.

Accordingly, as of October 2000, Mr. Morin was in default on his Business Loan, and his Durango -- "property given as security . . . for any other loan" -- was properly seized as security. These established facts dispose of virtually the entire case.

Not to let the facts get in the way of their argument, however, Plaintiffs attempt to oppose summary judgment through a barrage of assertions (mostly concerning non-issues) submitted through Mr. Morin's affidavit.  Plaintiffs' opposition, although lengthy and inventive, amounts to no more than a facade of smoke and mirrors (i) based upon *inadmissible* speculation, belief, conclusions and hearsay;[2] (ii) directly contradicted by Plaintiffs' own documents; and (iii) legally irrelevant in any case.  Plaintiffs' failure to submit facts cognizable on summary judgment renders their opposition superfluous.

## ARGUMENT

### I.    PLAINTIFFS HAVE FAILED TO SAVE COUNTS I AND II FOR BREACH OF CONTRACT AND THE IMPLIED COVENANT

Plaintiffs argue that NFCU breached its contracts with Mr. Morin because (i) NFCU "claimed defaults on underlying loans when none existed" and (ii) "NFCU repeatedly failed to act in accordance with the instructions given by Mr. Morin in regard to the source and method of loan repayment." Opp. at 16.  Both contentions are unsupported by legally cognizable facts, are

---

[2] *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)) ("To satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations.")  As demonstrated in Defendants Memorandum of Law in Support of Motion to Strike the Morin Affidavit ("Def. Motion to Strike Memo"), the bulk of the "facts" on which Plaintiffs rely in their Opposition should be stricken for failure to comply with the requirements of Fed. R. Civ. P. 56(e) and Local Rule 56(a)(3). Even if the Court decides not to strike the Morin Affidavit, however, it should still grant summary judgment in NFCU's favor due to Plaintiffs' failure to raise any disputed issue of material fact by concrete particulars. *See, e.g., Nyack v. Southern Conn. State Univ.*, 424 F. Supp. 2d 370, 376 (D. Conn. 2006) (as to challenged portions of affidavit not stricken, the court would consider defendant's objections when determining the probative value of plaintiff's affidavit; *Hotel & Restaurant Employees Alliance v. Allegheny Hotel Co.*, 374 F. Supp. 1259, 1263 (D. Pa. 1974) (deciding not to strike affidavits but nonetheless holding that challenged affidavits were not sufficient to establish a genuine issue of material fact where they "state information and belief of the affiant, they contain opinions and impressions of the state of mind or intent of other persons, they are based on hearsay, and they express conclusions. None of such testimony would be admissible at trial and it cannot be considered on affidavit submitted under Fed. R. Civ. P. 56(e).").

contradicted by Mr. Morin's own correspondence, and in any event are legally irrelevant. Accordingly, summary judgment must enter for NFCU on Count I (contract) and Count II (implied covenant).

### A.    Mr. Morin Raises No Genuine Issue Of Fact Concerning His Defaults.

Plaintiffs devote inordinate portions of their briefs and affidavits to attempting to demonstrate that Mr. Morin had not defaulted on his loans, largely through indirection of attention to an irrelevant issue.[3] For a litany of reasons, Mr. Morin's arguments fail. But neither Defendants nor this Court need parse through the many pages of smoke and mirror verbiage to conclude, without question, that Mr. Morin defaulted his loans. Rather, to grant NFCU judgment this Court need only see through the sham of a single purported "fact" Mr. Morin asserts.

Mr. Morin failed to make payments on the Business Loan from October 2000 onward by revoking his automatic payment authorization and failing to otherwise make payments thereafter. Defendants' Facts, ¶¶ 44-45; Brisendine Aff., *Ex. 21*. Plaintiffs nevertheless purport to dispute this fact stating: "Based on the $31,578.99 of Mr. Morin's money that Nationwide had transferred to NFCU in October of 2000, *and the understanding of the parties* in regard to the application of those funds, monthly payments on Mr. Morin's Partnership Plus (Business) Loan were current through November of 2001" -- over one year later. Plaintiffs' Facts, ¶ 45 (emphasis added).[4] The Plaintiffs' submission on this point fails.

---

[3] Perhaps most distracting and least relevant to any material issue is Mr. Morin's tome about a February 9, 2000 letter he received from NFCU, which indicated that he was in default due to his forfeiture of ASC program benefits (resulting from competition with Nationwide, per his Agent's Agreement). Plaintiffs' contentions about the enforceability of the forfeiture clause (*see* Opp. at 16 -19) are entirely superfluous -- he has no claim for breach of contract against Nationwide. *See* Compl. Counts I and II. Irrelevant also are his assertions of how he did not actually begin competing until a few days after his resignation (*see* Opp. at 18) -- Mr. Morin *does not deny competing* with Nationwide within days of his "retirement" -- he merely blames Nationwide as somehow forcing him to compete. *See* Opp. at 18; Morin Aff. ¶ 12. The assertions are irrelevant to his loan relationship with NFCU, and are irrelevant to his numerous subsequent defaults.

[4] This same assertion, that NFCU somehow was party to an oral "understanding" by which the terms of the loans would be altered, is the basis for Mr. Morin's denial (or partial denial) of at least six paragraphs in Defendants' Facts. *See* Plaintiffs' Facts, ¶¶ 43-48.

### 1.    The Alleged "Understanding" Is
### Not Cognizable On Summary Judgment

The grounds for Mr. Morin's denial of default fails to satisfy Rule 56(e), as Mr. Morin submits no admissible evidence concerning such an "understanding."   Mr. Morin's affidavit, paragraph 18 -- the *only* evidence he offers in support of the "understanding" --  avers:

> When I learned that the $31,578.99 had gone to NFCU, I contacted NFCU by telephone to discuss the matter with a representative of NFCU.   In that conversation, I indicated that since the $31,578.99 represented more than 13 months of payments on the Partnership Plus (business) loan, that payment would constitute monthly payments for each of the months through November of 2001, which would then keep the business loan current until November of 2001 and consequently no payment would be due on that loan until November of 2001. The **NFCU representative voiced no objection to or concern with** that manner of proceeding.

Morin Aff., ¶ 18 (emphasis added).

As explained in Defendant's brief in support of its Motion to Strike the Morin Affidavit and 56(a)(2) Statement, Paragraph 18 is, for summary judgment purposes, wasted ink.  *See* Def. Motion to Strike Memo, at 6 -7.  The alleged "understanding" rests *entirely* on Mr. Morin's conclusory allegation of an agreement based on a purported conversation with an *unknown* and *unidentified* "NFCU representative" on an unknown date in which he or she supposedly agreed to modify the Loan Agreement by not objecting to Mr. Morin's proposed payment plan.  The "understanding" is, therefore, not a fact cognizable under Rule 56(e).  *See Jones v. Peoria County Sheriff's Dept.*, No. 94-1767,  1994 WL 589450, *2 (7th Cir. Oct. 25, 1994) (striking summary judgment affidavit concerning conversation with unidentified person: "The affidavit does not document with whom Jackson spoke, when Jackson spoke with this person, or where Jackson spoke with this person . . . . Jackson's affidavit does not set forth any specific facts, and therefore this court will strike the affidavit and not consider it.").[5]

Even if the Court were to consider this statement, it is patently insufficient to raise a material issue of fact on summary judgment.  Courts have held as a matter of law that the alleged

---

[5] Copies of all unreported cases cited herein are attached hereto as *Ex. A*.

assent of an *unidentified* individual purported to be an agent is insufficient to bind a principal to a modification of a written loan agreement. For instance, in *In re Plenipotentiary, Ltd.*, where the issue was whether the Debtor had defaulted under a loan agreement, the Debtor relied on affidavits of its representatives stating that it had entered into a subsequent oral agreement with the bank that precluded a default. Nos. 92 B 12342, 92 C 2717 & 93 A 00259, 1993 WL 135970 at *6 - *7 (N.D. Ill. Bankr. Apr. 15, 1993). The court held, however, that these affidavits were insufficient to create a genuine issue of material fact because "[n]o affidavit contain[ed] any specific statement attributed to any *identified* [bank] representative that would support the existence of a binding oral agreement to modify the Loan Agreement." *Id.* at *8 (emphasis added).

Similarly, in *International Business Investments, Inc. v. United States*, where the proper interpretation of a contract with the government was disputed, the plaintiff alleged that one of its agents telephoned the government contracting officer's office and received a "go-ahead" to perform consistent with its interpretation of the agreement. 17 Cl. Ct. 122, 124 (1989). But the plaintiff failed to identify the government officer or his title. *Id.* The court held that "plaintiff's *mere inference* that it spoke to an unnamed governmental agent is not enough to bar summary judgment." *Id.* (emphasis added). The court explained:

> Plaintiff must produce sufficient evidence to show that the agreement, assuming that it actually took place, would affect the outcome of the suit. For that to happen, *plaintiff must identify* the government official who purported to confirm plaintiff's interpretation of the contract so that the authority of that official to bind the United States may be ascertained…. Since plaintiff was not able to provide sufficient evidence to support its contentions, plaintiff's objections to the propriety of defendant's motion for summary judgment must be denied.

*Id.* (internal citation omitted and emphasis added).[6]

---

[6] In any event, the apparent authority of an agent is established by the acts of the principal, not the agent. *See D'Occhio v. Connecticut Real Estate Comm'n*, 189 Conn. 162, 180 (1983) ("[A]pparent authority is to be determined, not by the agent's own acts, but by the acts of his principal. And the acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority."). Plaintiffs have not offered any evidence to show that NFCU took actions which could confer apparent authority on that alleged representative.

Absent facts demonstrating that the alleged "NFCU representative" was someone who could bind NFCU and intended to do so, the "fact" of the purported assent lacks a single concrete particular and is woefully insufficient to raise a material issue of fact as to any purported agreement by NFCU on summary judgment. *See Peoria County Sheriff's Dept,  1994 WL 589450, \*2; Patterson*, 375 F.3d at 219; *Scotto*, 143 F.3d at 114; *Schwapp*, 118 F.3d at 111.[7]

### 2.    The Alleged "Understanding" Is Negated By <br> Mr. Morin's Own Correspondence From The Time Period

This Court is not obligated to credit assertions of fact on summary judgment that are contradicted by the proffering party's own previous correspondence. *See, e.g., White v. Washington Gas,* No. Civ. A. DKC 2003-3618, 2005 WL 544733 at \*5 (D. Md. Mar. 4, 2005) (where only evidence to support plaintiff's contention was his own affidavit that was directly contradicted by signed documents, the affidavit was deemed a mere "scintilla of evidence" and summary judgment was granted); *Bill Call Ford, Inc. v. Ford Motor Co.*, 830 F. Supp. 1045, 1050 (N.D. Ohio 1993) ("Plaintiff's affidavit contradicting his own contemporaneous correspondence is, it is believed, only a scintilla of proof on this issue, rendering summary judgment appropriate."). That is precisely the case here.

While asserting an alleged agreement made in "October or November of 2000," (*see* Morin Aff. ¶ 18) for NFCU to keep Mr. Morin's Nationwide bonus and effectively pay his loan forward,  in a December 2, 2000 letter to NFCU, Mr. Morin claimed point blank that NFCU's retention of the money "*amounts to illegal garnishment without due process or theft of those funds*" and accordingly, Mr. Morin "*request[ed] the immediate return . . . of those funds that NFCU applied to my loan account under possibly an illegal manner.*" Supplemental Affidavit of Michael D. Blanchard, dated August 17, 2007 ("Supp. Blanchard Aff."), *Ex. A.*[8]  Mr. Morin's

---

[7] Moreover, as explained in Defendants' brief in support of their Motion to Strike the Morin Affidavit, to the extent the purported assent is offered to prove that NFCU did assent to Mr. Morin's proposed modification of the loan terms, it constitutes an inadmissible hearsay statement. *See* Def. Motion to Strike Memo, at 6, n. 8.

[8] The same correspondence also debunks Mr. Morin's latest assertion about his "belief" that NFCU received the funds in October. *Compare* Morin Aff., ¶ 18 ("I believe that that amount [$31,578.99] was sent by

recent attempt to save his claim with the unsubstantiated story of an "understanding" for NFCU to retain the bonus runs in stark contrast to his contemporaneous correspondence alleging theft of the funds.

Moreover, a party's failure to make any mention, after the fact, of a supposed formation of an oral agreement, in circumstances that would plainly warrant such mention, is fatal to an oral contract claim. In *McCarthy v. Kylberg*, 282 F.3d 70 (1st Cir. 2002), for example, the First Circuit stressed that point in affirming the grant of summary judgment. There, a former radio station employee sued the station's former owner, alleging breach of an oral contract to give the employee $1 million in the event that the station was sold for more than $7 million  *Id*. at 72. The station later sold for $8 million yet the plaintiff did not at that time raise the issue of the $1 million he later claimed to be entitled based on the prior alleged agreement. *Id.*  In affirming the grant of summary judgment, the First Circuit ruled:  "Summary judgment is appropriate when the evidence about the parties' intentions gleaned from their words and actions is so one-sided that no reasonable jury could find a contract." *Id.* at 73.  Applying that black-letter law, the First Circuit held two "contextual facts" to be determinative:

> First, no effort was ever made to reduce the alleged promise to writing. . . .
>
> *Second, [plaintiff] failed to raise the issue of a $1 million bonus when the circumstances obviously called for it*, namely, when the sale occurred in December 1997.  Nor did he make a claim later when he accepted his $5,000 bonus and $50,000 severance payments from Communicom. *His delay in waiting until he left the company hardly suggests that he believed from the outset that he had been promised $1 million.*

*Id.* (emphasis added).   As in *McCarthy*, so too here, innumerable "circumstances obviously called" for Mr. Morin to raise the issue of this alleged oral understanding -- yet he presents no

---

Nationwide to NFCU electronically on October 17, 2000 . . . .") *with* Supp. Blanchard Aff., *Ex. A* ("On November 16th, you received my agents' contingency bonus. . .").

evidence of having ever raised the contention.[9]  To the contrary, the *only* evidence in the record demonstrates that he believed otherwise.

### 3.    The Alleged "Understanding" Is Legally Irrelevant

Even if the purported assent of a mystery "NFCU representative" could be considered, it is legally irrelevant because any resulting agreement would be unenforceable as a matter of law under two sections of Connecticut's Statute of Frauds.  *See* Conn. Gen. Stat. § 52-550.  The statute of frauds (§ 52-550(a)(6)) requires loan agreements in excess of $50,000 to be in writing, and any modification to such an agreement must also be in writing.  *See Union Trust Co. v. Jackson*, 42 Conn. App. 413, 418 (1996) ("A modification of a written agreement [concerning a loan over $50,000] must be in writing to satisfy the statute of frauds.").  Mr. Morin's loan was for approximately $195,000 (originally $85,000, plus over $110,000 in subsequent advances).  *See* Brisendine Aff., ¶¶ 4-20.  Thus, any modification must have been in writing to be enforceable.  Additionally, the statute requires *any agreement* incapable of being performed within a year to be in writing.  Conn. Gen. Stat. § 52-550(a)(5).  Mr. Morin claims to have made an oral "agreement" in *October of 2000* requiring NFCU to apply the $31,578.99 (which supposedly represented *13 months* of payments) to keep his "loan current through *November of 2001*."  Plaintiffs' Facts, ¶ 43 (emphasis added).[10]  Such "agreement" cannot be performed within one year and, thus, "[n]o civil action may be maintained."  Conn. Gen. Stat. § 52-550(a);

---

[9]  It is notable that, despite the crucial role that this "fact" of a purported "understanding" plays in propping up Plaintiffs' case, the first mention of it -- ever -- is in Mr. Morin's Affidavits submitted in opposition to this Motion.  No mention was made in the Complaint nor during Mr. Morin's deposition.

[10] Mr. Morin vaguely avers that the purported agreement took place in "October or November of 2000." Morin Aff., ¶ 18.  While he may claim that, accordingly, his agreement *could have* been performed within a year *if* made in November, such claim would run contrary to his assertions that the conversation with the "NFCU representative" occurred when he learned of the $31,578.99 payment "in October of 2000" and that the payment constituted "more than 13 months of payments." Morin. Aff., ¶ 18.  And, in any event, it is Plaintiffs' affirmative burden to establish compliance with the Statute of Frauds.  *See Prime Financial Corp. v. First Nat. Bank of Boston*, No. CV 90 0382929S, 1993 WL 265529 at *5 (Conn. Super. Ct. July 8, 1993) ("The burden of proving that a contract is outside the statute of frauds falls upon the plaintiff."); *Salce v. Proto*, No. CVBR 9107-01386, 1992 WL 209619 at * 2 (Conn. Super. Ct. July 22, 1992) *see also E. Paul Kovacs & Co. v. Blumgarten,* 150 Conn. 8, 11 (1962) (defense based on statute of frauds need not be specially pled but available under a general denial); C. Tait, Tait's Handbook of Connecticut Evidence, § 3.6.8(b) (3d ed. 2001) ("[T]he burden is one the plaintiff to allege and prove facts removing the contract from the statute's bar.").

*see also Burkle v. Superflow Mfg. Co.*, 137 Conn. 488, 492-93 (1951) ("Where the time for performance is definitely fixed at more than one year, the contract is, of course, within the statute").[11]

### B.   Plaintiffs Fail To Point To Any Fact To Show That NFCU Failed To Act As Instructed And Even If They Had, No Contract Claim May Be Asserted.

Plaintiffs ramble in their brief about NFCU's purported failure to withdraw and apply loan payments correctly.  Opp. at 7-12, 22-23.  These purported "issues of fact" need not detain long, as they are legally irrelevant.  According to the very ACH agreements Mr. Morin claims NFCU breached, "NFCU's only responsibility to [Mr. Morin] [t]hereunder for failure to perform or error solely caused by NFCU shall be to correct at its own expense any such error."  Brisendine Aff., *Ex. 17*.  The forms also contain explicit hold harmless and indemnification clauses.  *See id*.  Plaintiffs have not even responded to this purely legal defense (*see* Def. Memo, at 9), nor can they.  Summary judgment must enter for NFCU.

But even if the foregoing was not dispositive, Plaintiffs fail to assert facts that could prevent summary judgment.  Conspicuously absent from Plaintiffs' rant on these issues is any citation to a material fact.  Plaintiffs' sole factual predication is Mr. Morin's affidavit.  While replete with conclusory assertions, (*e.g,* "NFCU violated the terms of our agreement by failing to apply the deposited funds as directed . . . ." Morin Aff., ¶15), the affidavit is devoid of evidentiary facts necessary to oppose summary judgment.  *See Bellsouth Telecommunications, Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) ("ultimate or conclusory facts and conclusions of law … are insufficient to raise a triable issue of material fact" and were properly disregarded on summary judgment).

---

[11] Mr. Morin also expends great efforts to convince the Court that NFCU had admitted his loans were not in default, citing to an NFCU email from March 2000 saying the same. *See* Opp. at 19.  Mr. Morin's assertion is irrelevant.  The email indicates that Morin was, as of February 21, 2000, an "agent either in repayment or promising repayment and not in default."  Morin Aff., *Ex. B*.  The fact that Mr. Morin made arrangements to pay (as requested in the February 9 NFCU letter) did not somehow cure the default under the loan agreements.  As the Loan Agreement provides:  "The credit union can delay in enforcing any of its rights under this agreement any number of times without losing the ability to exercise it rights later."  Brisendine Aff., *Ex. 11*.  In any event, the status of Mr. Morin's loans in early 2000 bears no relevance to his default from October 2000 to the present.

Charitably, Plaintiffs raise two instances where NFCU allegedly "failed to act in accordance with" Mr. Morin's instructions. The first concerns Mr. Morin's defaults in July/August 2000, wherein Plaintiffs claims that his neglect to make required payments resulted from NFCU's alleged failure to process ACH transfer forms in a timely manner. *See* Opp. at 22. Plaintiffs claim:

> Under the new ACH authorization, which was signed on July 4, 2000, NFCU was to withdraw $900 from Mr. Morin's Rockville Bank account twice monthly . . . . Although this new ACH authorization was dated July 4, 2000, and *returned to NFCU immediately thereafter* . . . it was not processed by NFCU until August 11, 2000.

Opp. at 8 (emphasis added). Mr. Morin's attempt to blame NFCU for his failure to pay is negated, however, by his own signed and dated correspondence. Mr. Morin enclosed the above-mentioned ACH form with a signed letter to Cheryl Tope at NFCU ***dated July 28, 2000*** -- not "immediately thereafter" July 4th as claimed**.** *See* Brisendine Aff., *Ex. 17*, N/W RM 00047.[12] His failure to make payments during the weeks prior to that July 28 correspondence cannot be attributed to NFCU.

Mr. Morin's empty accusations aside, Defendants' evidence established that he transferred funds from his savings account that would have otherwise been available for payments during the July time period, which resulted in insufficient funds for withdrawal and missed payments. *See* Brisendine Aff., ¶ 34. NFCU did not fail to act in accord with Plaintiffs' instructions. Instead, it is undisputed that Mr. Morin simply depleted the funds in his account necessary for ACH withdrawals. *See* Defendants' Facts, ¶ 39 & Plaintiffs' Facts, ¶ 39.

The second issue concerns an NFCU processing error in January 2001, whereby Mr. Morin decries NFCU's inadvertent failure to make withdrawals on two dates in January 2001. Opp. at 23. The very documents Plaintiffs rely upon (a letter from NFCU dated March 30, 2001)

---

[12] The Affidavit of Kathleen Brisendine, established that NFCU did not receive Mr. Morin's ACH change forms until August 1, 2000. *See* Brisendine Aff., ¶ 32 and Ex. 17 (showing a received date of August 1, 2000); 56(a)(1) Statement, ¶ 37. Mr. Morin's self-contradicting, conclusory assertions do not impugn the fact established by Defendants.

establish, however, that NFCU's automated system missed the payments due to a bank holiday, that NFCU apologized, and that the error was immediately corrected.  *See* Morin Aff., *Ex. D*. What Plaintiffs omit from their clever retelling of this sequence of events is Mr. Morin's failure to maintain sufficient funds in his account during the same time period, which thereafter resulted in indisputable defaults on his Durango loan.  When NFCU corrected its error and withdrew funds for the missed payments, as it expressly agreed it would under the ACH agreement,[13] there were insufficient funds in Mr. Morin's account for his regular payments.  This is established by undisputed record evidence and Mr. Morin's own bank statements.  *See* Supp. Blanchard Aff., *Exs. B & C*.[14]  Accordingly, after NFCU corrected its error and withdrew the missed January payments from his account in mid-February, Mr. Morin had insufficient funds in his account to cover *either* February payment and he fell behind (and never caught up) on payments for his Durango, which was eventually repossessed.[15]

## II.     SUMMARY JUDGMENT IS PROPER ON COUNTS III AND IX

Counts three (conversion) and nine (Conn. Gen. Stat. § 42a-9-501, *et seq.*) are premised on the conclusion that NFCU's repossession of Mr. Morin's Dodge Durango in May of 2001 was unlawful.  Yet Plaintiffs concede that "there is no dispute here that NFCU was a secured party"

---

[13] According to the ACH Agreement:  "Correction shall take the form of transferring the correct amount and/or refunding any amounts transferred in error…."  Morin Aff., *Ex. C-3*.

[14] As Plaintiffs admit ,"[e]ffective October 30, 2000, NFCU was provided with authorization to debit Mr. Morin's Rockville Bank account for $355.67 twice monthly to satisfy the amount due on the Durango loan (#907119006-4) and $168.14 twice monthly to satisfy the amount due on the recreational vehicle loan (#907119006-3) . . . ."  Opp. at 10.  Thus, Mr. Morin needed to maintain sufficient funds to cover $523.81 in semi-monthly in withdrawals.  His own bank records make clear, however, that he had $109.25 in his account as of January 1, 2001.  He made two deposits of $525.000 in the month of January (on January 11th and 31st), which were sufficient to cover the two scheduled January withdrawals.  *See* Supp. Blanchard Aff., *Ex. B*.  But he only made one deposit of $525.00 in February (not until February 28th).  *See id.*  Mr. Morin never caught up thereafter.  *See* Brisendine Aff., ¶ 44.

[15] Because his two January deposits were only sufficient to cover two of the four payments NFCU attempted to withdraw in February (the two January withdrawals *and* the two February withdrawals) and Mr. Morin did not make another deposit until February 28th (the last day of the month and *after* both February payments were due) there were insufficient funds in his account to cover the January and February withdrawals.  *See* Supp. Blanchard Aff., *Ex. C*.

and that on default "a secured party has the right to take possession of collateral." Opp. at 25. As explained above, the undisputed facts show that Mr. Morin had been in default on the Business Loan since October of 2000. It is undisputed that the Durango served as collateral for *all* of Mr. Morin's NFCU loans, *including the Business Loan*. *See* Defendants' Facts, ¶ 23 & Plaintiffs' Facts, ¶ 23. Because Mr. Morin had long been in default when NFCU repossessed the Durango (collateral for the Business Loan) there was no conversion and no violation of UCC Article 9 (as enacted in Conn. Gen. Stat. § 42a-9-501, *et seq*.). As explained above, Mr. Morin was also undisputedly behind on the Durango payments themselves. Summary judgment on these counts should be granted.[16]

### III.    SUMMARY JUDGMENT IS PROPER ON COUNTS IV, V, VI, VIII AND XII

Plaintiffs argue that his state law claims, preempted by the federal law, including, *inter alia*, 15 U.S.C. § 1681t(b)(1)(F) and 15 U.S.C. § 1681h(e), are not preempted (1) because Defendants did not formally plead this as an affirmative defense until recently, and (2) there is some purported conduct (hereto unalleged) on which Plaintiffs base these claims, other than furnishing information to consumer reporting agencies ("CRAs") (which is admittedly preempted). *See* Opp. at 27-33. These arguments fail.

As Plaintiffs acknowledge, Defendants moved to amend their Answer to assert federal preemption in conjunction with moving for summary judgment. *E.g., Aetna Casualty And Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005) (per curiam, appendix C, District Court decision) ("Absent prejudice to the plaintiff, a defendant may raise an affirmative

---

[16] With respect to Plaintiffs' claim that NFCU violated Connecticut law by selling the Durango at auction prior to the expiration of pa romised redemption period, predicated on his assertions that Ms. Brisendine lied in her affidavit, Plaintiffs' failure to account for the facts is extreme. *See* Defendants' Memorandum in Support of Motion to Strike Scandalous (and Demonstrably False) Accusations, filed contemporaneously herewith. As is obvious from the undisputed exhibits to the Affidavit of Kathleen Brisendine (which Plaintiffs simply ignore), per NFCU's explicit instructions, the Durango was not sold until August of 2001, well after the period within which Mr. Morin was entitled to redeem the vehicle. *See id.*

defense in a motion for summary judgment for the first time.") Defendants rest on their papers in support of their motion to amend.

Plaintiffs otherwise argue that state law claims based on conduct other than furnishing information to CRAs is not preempted. *See* Opp. at 29. Yet Plaintiffs fail to identify any such conduct, guessing only at Defendants's purported (but unsubstantiated) communications to CRAs, which if valid would be preempted. *See* Opp. at 34 (relying on alleged communication of false information to CRAs with respect to emotional distress claim); Opp. at 39 (relying solely on alleged false reporting to CRAs with respect to defamation claim); Opp. at 48 (relying on "purposefully making false reports to consumer credits reporting agencies" with respect to CUTPA claim).

Finally, Plaintiffs make the specious argument, without any legal authority, that Section 1681t(b)(1)(F)'s preempts only statutes and regulations, not common law causes of action. Opp. at 30. The wealth of caselaw Defendants cite in their initial brief to the contrary defeats this novel, albeit groundless, argument. *See* Def. Memo at 13-14.[17] Summary judgment should be granted on *all* of Plaintiffs' state (common *and* statutory) law claims premised on furnishing false information to CRAs.

## IV.    SUMMARY JUDGMENT IS PROPER ON COUNT IV

Plaintiffs' claim under Count IV (emotional distress) is premised on the following allegations of purported "outrageous" conduct: (1) Mrs. Morin was denied credit because NFCU

---

[17] *See, e.g., Ryder v. Washington Mut. Bank*, 371 F. Supp. 2d 152, 154-55 (D. Conn. 2005) (dismissing, in part, defamation and CUTPA claims based on preemption under § 1681t(b)); *Holtman v. Citifinancial Mortgage Co., Inc.*, No. Civ. A. 3:05-CV-1751, 2006 WL 1699589 at *3-*5 (D. Conn. June 19, 2006) (dismissing defamation, CUTPA and infliction of emotional distress claims related to furnishing information to a CRA based on preemption under § 1681t(b)); *Jarret v. Bank of America*, 421 F. Supp. 2d 1350, 1354 (D. Kan. 2006) (observing that § 1681t(b) would preempt a claim for invasion of privacy against a furnisher of credit information); *Hasvold v. First USA Bank, N.A.*, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002) (state law claims for libel, interference with prospective advantage and invasion of privacy related to defendant's furnishing information to CRAs preempted under § 1681t(b)); *Jaramillo v. Experian Information Solutions, Inc.*, 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001) (claims for defamation and tortious interference with contractual relations preempted under § 1681t(b)).

reported her as a joint obligor on Mr. Morin's Business Loan; (2) NFCU failed to honor agreements regarding the automatic withdrawals to pay Mr. Morin's loans; (3) NFCU declared defaults when none existed; (4) NFCU repossessed the Durango absent default; (5) NFCU misrepresented the disposition of the Durango and Mr. Morin's right to redemption; (6) NFCU made false reports to CRAs. *See* Opp. at 34-35. Allegations 2-5 are disposed of elsewhere in this Reply. With respect to allegations 1 and 6, Plaintiffs simply present no evidence bearing on the reasons why Mrs. Morin was denied credit, nor any evidence of any communications between NFCU and any CRA, let alone false ones. *See* Def. Motion to Strike Memo, at 6-7, 14 and *Exs. A & B.*

In any event, as explained in Defendants' initial brief, even if the above allegations were true, they fail as a matter of law to give rise to the type of "severe" and "outrageous" conduct necessary for an emotional distress claim. *See* Def. Memo, at 16 -18.

## V.    SUMMARY JUDGMENT IS PROPER ON COUNT V

Plaintiffs' claim under Count V (invasion of privacy) is premised on a purported "pattern of disclosures by NFCU to various third parties regarding the details and status of Mr. Morin's personal consumer loans." Opp. at 38. This alleged "pattern" consists of two events: (i) a single *alleged* phone call (Mr. Morin provides no evidence of this by way of affidavit or otherwise) between an undisclosed NFCU representative and Mr. Morin's daughter; and (ii) an alleged blind carbon copy to Nationwide of an NFCU letter sent to Mr. Morin concerning his Business Loan and also indicating the balances of his Durango and Ski Doo Loans. *Id.* Regarding the first alleged fact (a phone call between an unidentified NFCU representative and Mr. Morin's daughter), for summary judgment purposes, this hearsay (or double hearsay) call never happened. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F. 3d 155, 160 (2d Cir. 1999) ("[Plaintiff's] statement as to what he 'was told' was hearsay that would not be admissible at a trial. Since he presented no sworn statement from [the third party], he failed to adduce any evidence sufficient to create a genuine issue to be tried . . . ." (citations omitted)).

As to the alleged invasion of privacy by "bcc" to Nationwide -- as a matter of law the purported fact is insufficient. The "publicity" element of a claim for invasion of privacy requires "highly offensive" communication "*to the public at large*, or to *so many persons* that the matter must be regarded as *substantially certain to become one of public knowledge*" *and not to "a single person or even to a small group of persons*." Def. Memo at 19-20 (citing Restatement (Second), Torts § 652D, cmt. c. & *Graff v. O'Connell*, No. CV0100955185, 2002 WL 450534 (Conn. Super. Ct. Mar. 5, 2002). Plaintiffs do not (and cannot) fit their allegations within the elements of the claim.

## VI.    SUMMARY JUDGMENT IS PROPER ON COUNT VI

As the sole basis for Count VI alleging libel/slander, Plaintiffs rely on two purported statements. *See* Opp. at 39. First they claim that NFCU falsely reported that Mrs. Morin was a co-obligor on the Business Loan. Yet Plaintiffs do not present competent evidence that NFCU provided such information (as opposed to an administrative error by a CRA). *See* Def. Motion to Strike Memo, *Ex. A*, ¶ 30 & *Ex. B*, ¶ 54. Defendants, on the other hand, have presented competent evidence that NFCU never provided any false information to CRAs. *See* Brisendine Aff., ¶ 49. Second, they claim that NFCU falsely reported that Mr. Morin was delinquent in his loan payments. As discussed above, he unequivocally was delinquent -- reports of the delinquencies were accurate.

## VII.    SUMMARY JUDGMENT IS PROPER ON COUNT VIII

In Defendants' opening brief, they provide ample legal authority for the proposition that, in addition to being preempted under federal law, Connecticut's Creditor's Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-645a, *et seq.*, provides no private right of action. Def. Memo at 24. Plaintiffs simply ignore the holdings of these cases and rely on one unreported Superior Court case, *Connecticut Light & Power v. Clark*, No. 319078, 1996 WL 365360 (Conn. Super Ct. May 16, 1996). Opp. at 43. That lone case engages in no analysis of whether a right

of private action exists and *assumes, without deciding*, that one does. *See CL&P*, 1996 WL 365360 at \*2.    Numerous recent decisions by this Court and others -- that include legal reasoning -- *hold* that the CCPA conveys enforcement power exclusively to the State Banking Commission and that the CCPA's legislative history does not support a private cause of action. *See Krutchkoff v. Fleet Bank, N.A.*, 960 F. Supp. 541, 548 (D. Conn. 1996) (Squatrito, J.); *Cordova v. Larson*, No. 3:96CV2111, 1997 WL 280496, at \*3 (D. Conn. April 30, 1997) (Nevas, J.); *Yale New Haven Hospital v. DeMatteo*, No. 9704073AS, 1998 WL 563817, at \*2 (Conn. Super. 1998).[18]

## VIII.   SUMMARY JUDGMENT IS PROPER ON COUNT X

As to Count X (Fair Credit Billing Act, 15 U.S.C. §1666, *et seq.*), Defendants in their opening brief point out that Plaintiffs allege no facts to support such a claim and that, in any event, such claim is barred by the express time limitations of the statute. *See* Def. Memo, at 25-26.  Plaintiffs' *sole response* is to argue that Defendants failed to properly raise the preemption defense affirmatively in their answer. *See* Opp. at 46.  Defendants have moved to amend to assert this additional affirmative defense and rely on the arguments and legal authority set forth therein.[19]  *See, e.g., Aetna Casualty*, 404 F.3d at 603 ("Absent prejudice to the plaintiff, a

---

[18] Even if this claim were legally viable (it is not) it suffers from same infirmity of the rest of Plaintiffs' claims -- the absence of facts.  Plaintiffs essentially base the claim on two allegations:  (i) that NFCU told Mr. Morin that his Durango loan was in default when it was not and (ii) that NFCU repossessed his Durango without the right to do so.  *See* Opp. at 41.  As discussed *supra*, Defendants have offered competent evidence that Mr. Morin missed payments on his Durango in February 2001, which was a default.  Mr. Morin fails to come forward with any evidence whatsoever showing that he did in fact make all payments.  As to the right to repossess the Durango, not only had Mr. Morin defaulted on the Durango loan itself, but as discussed *supra*, Mr. Morin had unequivocally defaulted on the Business Loan (for which the Durango was collateral).  Again, other than hollow denials, Mr. Morin comes forward with no competent evidence to dispute these facts.

[19] Plaintiffs' reliance on *Harris v. Secretary, U.S. Dept. of Veterans Affairs*, 126 F.3d 339 (D.C. Cir. 1997) is particularly misguided. *See* Opp., at 46.  In *Harris*, the D.C. Circuit explained:  "Because the Department did not raise the defense in a responsive pleading ***and did not apply to the District Court for leave to amend its answer under Rule 15(a)***, the Court should not, without more, have considered the defense of untimeliness. ***However, this procedural error need not necessarily cause loss of the defense. On remand, the government may seek leave to amend its answers.***" 126 F.3d at 341 (emphases added).  That is precisely what the Defendants have done here -- sought leave to amend under Rule 15(a).

defendant may raise an affirmative defense in a motion for summary judgment for the first time.").

In any event, Plaintiffs fail to even allege what provision of the 10 sections of the Fair Credit Billing Act Defendants supposedly violated and further fail to specify *a single fact* that allegedly violates the Act.  To survive summary judgment, Plaintiffs must go beyond merely invoking the statute, they must present some evidentiary basis for a violation.

## IX.     SUMMARY JUDGMENT IS PROPER ON COUNT XII

Plaintiffs CUTPA claims fail with the predicate claims discussed above.[20]  Here Plaintiffs resort merely to annunciating the legal standard under CUTPA and then reiterating in conclusory fashion the same vacuous accusations they have repeated *ad nauseam.*  The story is much simpler than the long-winded conspiracy theory iterated by the Plaintiffs:  Mr. Morin owed NFCU a substantial amount of money and NFCU acted as permitted under the loan agreements and applicable law to recover its money.  That Mr. Morin was displeased with his credit

---

[20] While Plaintiffs concede that summary judgment must be granted with respect to Count 7 (Conn. Gen. Stat. § 36a-42), they state that "the factual allegations and statutory violation that are at issue in Count 7 . . . are still part of the plaintiff's CUTPA claim in Count 12." Plaintiffs' Memorandum of Law in Order to Bring Newly-Decided, Controlling Authority to the Attention of the Court, dated July 19, 2007.  This claim, however, fares no better under CUTPA.  With respect to Count 7, Plaintiffs rely exclusively on an undated letter from NFCU to Mr. Morin allegedly sent by blind carbon copy to Nationwide personnel (although Plaintiffs have not presented any evidence that such copy was actually sent, nor attempted to prove so through discovery) that deals primarily with the Business Loan, but also references the Durango and Ski Doo loans and their then-outstanding balances. *See* Opp. at 39-40; Morin Aff., *Ex. K*. Section 36a-42 prohibits the unauthorized disclosure of "financial records" without a customer's consent.  Conn. Gen. Stat. § 36a-42.  But Section 36a-41(2) defines "financial records" as including only four categories of records:

> (A) A document granting signature authority over a deposit account or a share account with a financial institution; (B) a statement, ledger card or other record on any deposit account or share account with a financial institution **which shows each transaction in or with respect to that account**; (C) any check, draft or money order drawn on a financial institution or issued and payable by such an institution; or (D) any item, other than an institutional or periodic charge, made pursuant to any agreement by a financial institution and a customer which constitutes a debit or credit to that person's deposit account or share account with such financial institution if the item is not included in subparagraph (C) of this subdivision.

Conn. Gen. Stat. § 36a-41 (emphasis added).  While Plaintiffs claim that the letter constitutes an "other record" under section 36a-41(2)(B), according to the explicit language of the statute it does not.  Under any reasonable interpretation, the letter *does not show each transaction in or with respect to* the referenced account.

predicament does not, however, give rise to a claim for unfair trade practices. *See, e.g., Stoner Group, Inc. v. First Bank of West Hartford,* No. CV-92-0702822-S, 1992 WL 183797, at *4 (Conn. Super. Ct. July 27, 1992) (bank's act of legally exercising a right of setoff against plaintiff's accounts upon loan default did not constitute an unfair act or practice under CUTPA).

## <u>CONCLUSION</u>

For all of the above-stated reasons, the Defendants respectfully request that this Court grant their Motion for Summary Judgment on all counts.

> **DEFENDANTS NATIONWIDE FEDERAL CREDIT UNION, ET AL**
>
> By: /s/ Michael D. Blanchard
>     Ben M. Krowicki (ct06153)
>     Deborah S. Freeman (ct05257)
>     Michael D. Blanchard (ct25891)
>     Seth N. Stratton (ct27293)
>     BINGHAM McCUTCHEN LLP
>     One State Street
>     Hartford, CT  06103-3178
>     (860) 240-2700
>     (860) 240-2818 (fax)
>     Their Attorneys
>     ben.krowicki@bingham.com
>     deborah.freeman@bingham.com
>     michael.blanchard@bingham.com
>     seth.stratton@bingham.com

## **CERTIFICATION**

I hereby certify that on this 17th day of August, 2007, a copy of the foregoing was sent

via the Court's electronic notification system or by first class U.S. mail to:

Richard P. Weinstein, Esq.
Nathan A. Schatz, Esq.
Weinstein & Wisser, P.C.
29 South Main Street, Ste. 207
West Hartford, CT 06107
*Counsel for Plaintiff*


/s/ Michael D. Blanchard
Michael D. Blanchard