UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD P. MORIN, SR., ET AL., : | |
| plaintiffs : | |
| : | |
| v. : | 3:03-cv-277 (CFD) |
| : | |
| NATIONWIDE FEDERAL CREDIT : | |
| UNION, ET AL., : | |
| defendants : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Ronald P. Morin, Sr. ("Morin") and Denise M. Morin brought this case against defendants Nationwide Federal Credit Union ("NFCU") and Nationwide Mutual Insurance Company and its affiliates ("Nationwide") as a result of the actions of all defendants surrounding Morin's termination as an agent for Nationwide and subsequent actions by NFCU relating to several loans it had extended to Morin.[1] The loans were business and personal loans which were secured during the duration of Morin's relationship with Nationwide by Morin's expected post-retirement benefits ("Agency Security Compensation," or "ASC"). Morin has alleged breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq*, and several other claims against NFCU; Nationwide is named as a defendant only in the counts alleging intentional infliction of emotional distress, defamation, and CUTPA. The defendants

---

[1]This action was initially brought in the Connecticut Superior Court, but removed to this Court.

have moved for summary judgment.[2] For the following reasons, the motion is granted in part and denied in part.

I.    **Background**

Ronald P. Morin, Sr. is a former insurance agent of Nationwide. He worked for many years, first as an employee and then as an independent contractor of the Nationwide companies. His agent agreement contained a non-compete clause, which is discussed more fully below. NFCU, the credit union associated with Nationwide, granted Morin a number of business and personal loans and advances between January, 1994 and October, 1999. Morin used the first loan to open two new offices, where his son and son-in-law worked for him selling Nationwide Insurance. Morin's son and son-in-law eventually left the business. The other loans were for personal uses, including a Dodge Durango and other automobiles, a Ski-Doo snowmobile, and a Visa card loan which was granted to both Morin and his wife, jointly.

Morin announced his "retirement" from Nationwide by a letter dated February 6, 2000. Morin's affidavit states that he intended to continue to sell insurance for other providers, but in Vermont in order to remain in business but also comply with the non-compete provision in the Nationwide agent's agreement. He retired from Nationwide for a number of reasons, including a disagreement with Nationwide's business practices and alleged threats from Nationwide surrounding the decision of Morin's son and son-in-law to leave the business. Because, absent violation of the non-compete provision, Morin's departure would have been a "qualified cancellation" under the terms of the agent's agreement, he would be entitled to substantial post-

---

[2]The motion is unopposed by the plaintiffs except where noted in this ruling. The facts related herein are taken from the parties' briefs, affidavits, depositions, and Rule 56(a) statements of fact and are undisputed unless otherwise noted.

termination compensation ("ASC") which he had earned during his years working for Nationwide. It is this compensation, along with the other property, that was pledged as collateral on Morin's loans with NFCU.

Upon receiving Morin's letter, Nationwide informed NFCU that Morin had forfeited his right to the post-termination compensation and NFCU in turn notified Morin in a letter dated February 9, 2000 that because of the forfeiture of the security on his loans, he was in default.[3] Morin then began to compete against Nationwide in Connecticut, rather than moving to Vermont, asserting that this competition was necessitated by Nationwide's withholding of the ASC and NFCU's demand for payment. Morin later failed to make some of the payments on his loans, resulting in NFCU's repossession of the Durango in May, 2001 and NFCU's reporting of the defaults to credit reporting agencies, although the failed payments may have been wholly or partially the result of NFCU errors and/or decisions regarding the application of Morin's payments to the loans. NFCU appears not to dispute that it made errors with respect to the automatic withdrawal of loan payments from Morin's bank account, but the parties dispute the appropriateness of NFCU's application of a $31,578.99 earned compensation payment received by NFCU in September, 2000 to loan principal rather than to monthly payments as well as other incidents in the history of the loan repayments. NFCU also reported incorrectly to credit

---

[3]Morin had not failed to make any loan payments up to this time, and NFCU did not demand immediate full repayment of the loans. It is unclear whether NFCU actually considered Morin to be in default at this time, as an NFCU email dated March 3, 2000 appears to classify Morin's loans as not in default, see Affidavit of Ronald P. Morin, Sr., Ex. B, page N/W RM 10, and NFCU allowed Morin to continue making monthly payments on the loans subsequent to February 9, 2000 without calling the loans or otherwise changing the payments or terms of the loans, notwithstanding NFCU's February 9, 2000 assertion that the loans were unsecured or undersecured after that date.

reporting agencies ("CRAs") that Morin's wife, who is also a plaintiff, was jointly responsible for the loans when she was only jointly responsible for the Visa card portion of the loans, and that Morin had other credit problems. Mrs. Morin subsequently corrected the incorrect information on her credit reports.

The complaint contains twelve counts, and the defendants have moved for summary judgment on all of those counts.

## II. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must

be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150-51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. <u>Sologub v. City of New York</u>, 202 F.3d 175, 178 (2d Cir. 2000).

### III.  Discussion

#### A.  Counts 1 and 2: Breach of Contract, Breach of Implied Covenant of Good Faith

The first two counts of Morin's complaint allege breach of contract and a breach of the implied covenant of good faith and fair dealing. The counts are asserted against NFCU only. The Court finds that at least several genuine issues of material fact exist as to both counts, including whether Morin defaulted on his loans in February, 2000 and whether there were irregularities in NFCU's treatment of Morin's subsequent automatic payments and the application of his earned compensation payment to his loans, that caused the subsequent alleged defaults on his loans in 2000 and 2001. The unresolved issues of fact include whether any such irregularities, or NFCU's communications with Nationwide both before and after NFCU extended the loans to Morin (including communications as to the application of Morin's compensation to the loans and communications including Morin in group called "Reflex Agents") constituted actions in breach of the loan agreements or the implied covenant of good faith and fair dealing.

The record of communications between NFCU and Morin with respect to the Durango repossession, as well as NFCU's manner of repossessing the Durango, also create genuine issues

of material fact pertaining to both counts one and two.  NFCU has disclosed documents showing that it sold the Durango to an automobile wholesaler prior to May 21, 2001 and was issued a check for the vehicle's value, notwithstanding NFCU's subsequent attempt of July 3, 2001 to instruct the dealer to "hold the vehicle" until July 24, 2001.  Affidavit of Kathleen Brisendine, tab 23, N/W RM 967-969.  Accordingly, questions of fact exist as to the timing of NFCU's sale of the Durango after it was repossessed, whether Morin was given adequate opportunity to exercise his right to redeem the Durango, and whether NFCU's actions surrounding the repossession and sale were conducted in bad faith or otherwise improperly motivated by its communications or relationship with Nationwide.

The genuine issues of material fact exist even if the Court disregards the portions of Morin's affidavit and statement of facts that are either legal conclusions or are not based on his personal knowledge.[4]  Other evidence in the record creates the questions of fact.  For example, in addition to the documents surrounding the sale of the Durango, noted above, the record contains email documentation indicating that NFCU did classify some agents, including Morin, as "Reflex agents."  See Dkt. # 99, Morin Affidavit, Ex. B (NFCU emails listing Morin as one of the "Reflex agents" not in default as of March 3, 2000, and discussing application of compensation to outstanding loan balances).  Morin's deposition testimony also relates incidents of which he did have personal knowledge, such as his allegation that Joseph Young, a member of Nationwide's management, threatened Morin by telling him that he would have to sue his son

---

[4]See Defendants' Memorandum of Law in Support of Motion to Strike Morin Affidavit and 56(A)(2) Statement filed August 17, 2007 [Dkt. # 113], Defendant's Memorandum in Support of Motion to Strike Scandalous (And Demonstrably False) Accusations filed August 17, 2007 [Dkt. # 111].

and son-in-law, should they decide to leave the business, or he would be fired. See Morin Deposition, 41:1-20. Finally, the Court rejects the defendants' argument that any remaining issues of fact are irrelevant because even if it were shown that NFCU's actions were within the literal terms of its agreements with Morin and that he defaulted on his loans (which the Court does not decide here), that would not foreclose a claim that NFCU's actions were intended to and did cause Morin to default, and that these actions therefore breached the implied covenant of good faith and fair dealing. Accordingly, summary judgment is denied as to counts one and two.

**B.      Count 3: Conversion**

Morin concedes that summary judgment should be granted as to count three.

**C.      Count 4: Intentional Infliction of Emotional Distress**

Morin alleges that both Nationwide and NFCU intentionally inflicted emotional distress. The elements for intentional infliction of emotional distress pursuant to the common law of Connecticut are that: 1) the defendants intended or knew that emotional distress was a likely result of their conduct; 2) the defendants' conduct was extreme and outrageous; 3) the defendants' conduct caused him emotional distress; and 4) the plaintiffs' emotional distress was severe. Lettick v. Nationwide Mut. Ins. Co., Nol 3:98cv1928(AVC), 2000 WL 863028 at *13 (D.Conn. Mar. 31, 2000) (citing Thomas v. St. Francis Hospital & Medical Center, 1998 WL 10417, * 9 (D.Conn. Jan. 12, 1998), Petyan v. Ellis, 200 Conn. 243 (1986)). The claim is not preempted by

15 U.S.C. § 1681t(b)(1)(F)[5] or 15 U.S.C. § 1681h(e)[6] (provisions of the "Fair Credit Reporting Act") because Morin's allegations are not based solely on improper reporting to a credit reporting agency, and his allegations are based at least in part on a claim that "false information [was] furnished with malice or willful intent to injure such consumer" as is noted in the exception to the preemption provision at 15 U.S.C. § 1681h(e).

Because the genuine issues of material fact that exist pertain to count four as well as to counts one and two, as outlined above, summary judgment is denied as to count four. But see Lettick, 2000 WL 863028 at *13 (noting that liability has been found only when conduct has been "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

**D.    Count 5: Invasion of Privacy**

Morin alleges in count five that NFCU invaded his privacy through its communications with Nationwide and by having communications about Morin's financial affairs with his

---

[5]15 U.S.C. § 1681t(b)(1)(f) provides that "[n]o requirement or prohibition may be imposed under the laws of any State – (1) with respect to any subject matter regulated under – . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." Id.

[6]15 U.S.C. § 1681h(e) provides that
Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

Id.

daughter, who was a co-maker of one of the notes. Connecticut common law recognizes a claim for invasion of privacy arising from unreasonable publicity given to another's private life. See Goodrich v. Waterbury Republican American, 188 Conn. 107, 128 (1982). "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) Torts, § 652D.

"In the context of a cause of action for invasion of privacy, the term publicity means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Sidiropoulos v. Bridgeport Hosp., No. CV030401830S, 2004 WL 202256 at *2 (Conn. Super. Ct. Jan. 4, 2004) (internal quotations omitted). "[I]t is not an invasion of privacy to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. Publicity is a communication that reaches, or is sure to reach, the public at large." Id. (citing Cyr v. Mountain Grove Cemetery Assoc., No. CV030401575, 2003 WL 21805496 (Conn. Super. Ct. July 18, 2003)). None of Morin's allegations, even if true, establish the element of publicity. Accordingly, the motion for summary judgment is granted as to count five.

**E.    Count 6: Defamation**

Morin alleges in count six that both NFCU and Nationwide committed libel and/or slander against him. As to the allegations of defamation, as noted above, the claim is not preempted because Morin's allegation is based at least in part on a claim that "false information [was] furnished with malice or willful intent to injure such consumer" as is noted in the

exception to the preemption provision at 15 U.S.C. § 1681h(e).  "To establish a defamation claim under Connecticut law, a plaintiff must prove that the defendant published unprivileged false statements that harmed the plaintiff."  Cweklinsky v. Mobile Chemical Co., 297 F.3d 154, 159 (2d Cir. 2002) (citing Torosyan v. Boehringer Ingelheim Pharms., Inc., 234 Conn. 1, 27, 662 A.2d 89 (1995)).  Except in the case of defamation per se (a communication whose defamatory meaning is apparent on its face, see Devito v. Schwartz, 66 Conn. App. 228, 234 (2001)), or which consists of false statements which charge improper conduct or lack of skill or integrity in one's profession or business and are calculated to cause injury to one in his profession or business, see Miles v. Perry, 11 Conn. App. 584, 601 (1987)), the plaintiff must plead and prove actual damages of a material and generally pecuniary nature.  Urban v. Hartford Gas Co., 139 Conn. 301, 308 (1952).

Morin alleges in his complaint that both NFCU and Nationwide defamed him; however, during his deposition, Morin admitted that he could think of no instance in which Nationwide had made any false statements to third parties, and he made no claim as to false statements by Nationwide in his memorandum in opposition to the motion for summary judgment.  Morin Deposition Transcript at 147; see also Dkt. # 99.  Accordingly, the motion for summary judgment is granted as to any defamation claims against Nationwide.

Morin's allegation against NFCU is based on alleged false statements to credit reporting agencies concerning the status of his loans.  During the deposition, Morin could not identify any actions by NFCU on which he based his belief that NFCU made false statements to anyone other than credit reporting agencies, and he was unable to identify any specific statements other than those inferrable from the information in his credit reports and from the fact that the Durango was

repossessed. Id. at 145-49. Even assuming that NFCU made false statements to credit reporting agencies with malice and willful intent to injure Morin, nothing in Morin's allegations can be characterized as defamation per se: any statements that he or his wife defaulted on loans do not impugn Morin's professional integrity, and are not defamatory on their face. Therefore Morin is required to allege and prove actual damages. Material questions of fact exist at least as to the damages Morin suffered as a result of any incorrect information reported by NFCU to the credit reporting agencies, and as to the alleged truthfulness of the statements by NFCU to these agencies. Accordingly, the motion for summary judgment is denied as to any defamation claims against NFCU.[7]

**F.     Count 7: Disclosure of Financial Information Under Conn. Gen. Stat. § 36a-41(2)**

Morin concedes that summary judgment should be granted on count seven because there is no private cause of action under the cited statute [Dkt. # 105]. See Rollins v. People's Bank Corp., 283 Conn. 136 (2007).

**G.     Count 8: Connecticut Creditors' Collection Practices Act ("CCPA"), Con. Gen. Stat. §§ 36a-645a, et seq.**

There is no private cause of action under the CCPA. See, e.g., Krutchkoff v. Fleet Bank, 960 F. Supp. 541, 548 (D. Conn. 1996); Pabon v. Recko, 122 F.Supp.2d 311, 314 (D. Conn. 2000); Cliffside Condominium Ass'n, Inc. v. Cushman, No. CV030827483S, 2006 WL 3200034 at *2 (Conn. Super. Ct. Oct. 18, 2006) (citing Yale New Haven Hospital v. DeMatteo, No. CV97

---

[7]The Court notes that Morin's claim for recovery of a significant amount of earned compensation withheld by Nationwide, including his ASC, is considered in a separate case involving Nationwide and is distinct from the analysis of damages from NFCU and Nationwide's reporting to credit agencies in this case.

0407311-S, 1998 WL 563817 (Conn. Super. Ct. Aug. 12, 1988)).  Accordingly, the motion for summary judgment is granted as to count eight.

**H.     Count 9: Conn. Gen. Stat. § 42a-9-503 (rights of secured party)**

Article Nine of the U.C.C., as codified by Connecticut in former Conn. Gen. Stat. § 42a-9-503 *et seq.*, provides for the rights of a secured party to its collateral upon the debtor's default.  As noted above, genuine issues of material fact exist with respect to the manner in which NFCU conducted the repossession and sale of the Durango as well as with respect to NFCU's actions relating to Morin's loans both in February, 2000 and thereafter.  Accordingly, summary judgment is denied as to count nine.

**I.     Count 10: Federal Fair Credit Billing Act, 15 U.S.C. § 1666, et seq.**

The statute of limitations under the Fair Credit Billing Act is one year from the date of the occurrence of the violation.  See 15 U.S.C. § 1640(e).  Morin's allegations concern events in 2001, more than one year prior to his bringing suit against the defendants in Connecticut Superior Court in 2003.  This claim is therefore time-barred and the motion for summary judgment is granted as to count ten.

**J.     Count 11: Federal Fair Credit Reporting Act, 15 U.S.C. § 1681m(b)(1)**

Morin concedes that summary judgment should be granted as to count eleven.

**K.     Count 12: Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, et seq.**

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  To determine whether a practice violates CUTPA, courts examine three factors

known collectively as the "cigarette rule":

>  (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
>
>  (2) whether it is immoral, unethical, oppressive, or unscrupulous;
>
>  (3) whether it causes substantial injury to consumers [competitors or other businessmen]."

Rosenthal v. Ford Motor Co., 462 F.Supp.2d 296, 310 (D. Conn. 2006) (citing Sanghavi v. Paul Revere Life Ins. Co., 214 Conn. 303, 311-12, 572 A.2d 307 (Conn. 1990)); see also FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 244-45 n.5 (1972) (the Connecticut courts' source for this test); McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567-68, 473 A.2d 1185 (Conn. 1984) (the rule's third criterion is equally applicable to substantial injury to competitors or other businessmen).

Morin's CUTPA claim is not preempted because it is based on misconduct that is not encompassed by the credit reporting provisions in the FCRA. See 15 U.S.C. § 1681t(b). Genuine issues of material fact exist that will bear on whether any of the cigarette rule's prongs have been satisfied. Accordingly, summary judgment is denied as to count twelve.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Motion for Summary Judgment [Dkt. # 88] is **GRANTED** in part and **DENIED** in part.

The motion is **GRANTED** as to counts three, five, seven, eight, ten, and eleven, and as any claim of defamation (count six) against defendant Nationwide.  The motion is **DENIED** as to counts one, two, four, nine, and twelve, and denied as to any claim of defamation (count six) against defendant NFCU.

So ordered this 8th day of December, 2008 at Hartford, Connecticut.

    /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**